IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TINTRI, INC.,[1] | ) | Case No.: 18-11625 (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION FOR ORDER UNDER SECTIONS 105, 345, 363, 364, 503, 1107 AND 1108 OF THE BANKRUPTCY CODE AUTHORIZING (I) MAINTENANCE OF EXISTING BANK ACCOUNTS; (II) CONTINUANCE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, CHECKS AND RELATED FORMS; (III) LIMITED WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") hereby files this motion (the "Motion") for entry of an order, pursuant to 11 U.S.C. §§ 105, 345, 364, 363, 503, 1107 and 1108, authorizing: the (i) maintenance of existing bank accounts, including the authority to pay routine prepetition banking fees owed to financial institutions; (ii) continued use of the Debtor's existing cash management system, bank accounts, and checks (the "Cash Management System"); (iii) limited waiver of section 345(b) deposit and investment requirements to the extent applicable; and (iv) granting related relief. In support of the Motion, the Debtor respectfully represents as follows:

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of*

---

[1] The Debtor and the last four digits of its taxpayer identification numbers are (6978): The headquarters and service address for the above-captioned Debtor is 303 Ravendale Dr., Mountain View, CA 94043.

*Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. The statutory bases for the relief sought in this Motion are sections 105, 345, 363, 364, 503, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"); rules 6003, 6004 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Local Rule 9013-1(f). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3. On the date hereof (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtor's chapter 11 case.

4. The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in

detail in the *Declaration of Robert J. Duffy, in Support of First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.

### Relief Requested

5. By this Motion, the Debtor seeks (a) authority to (i) maintain its existing bank accounts and to pay any prepetition routine banking fees imposed by the financial institutions where the Debtor's bank accounts are maintained and to continue to use its existing business forms and check stock; (ii) continue to use its existing Cash Management System, as provided herein; (iii) obtain a limited waiver of the requirements pursuant to section 345(b) of the Bankruptcy Code to the extent required; and (b) the related relief set forth herein.

### Debtor's Cash Management System and Bank Accounts

6. The Debtor's Cash Management System facilitates the timely and efficient collection, management, and disbursement of funds used in the Debtor's business. The Cash Management System currently consists of nine (9) bank accounts. A list of the Debtor's bank accounts (collectively, the "Bank Accounts") is set forth on **Exhibit A** hereto. A schematic diagram of the Cash Management System is attached as **Exhibit B**.

7. As more fully explained below, the Cash Management System is designed to effectuate the collection of revenue from customers, pay operating expenses, and maintain payroll obligations. Any disruption caused by requiring the Debtor to close its existing bank accounts, open new bank accounts and establish a new cash management system would jeopardize the Debtor's ability to satisfy post-petition obligations and maintain its relationship with customers.

B.   **Overview of the Cash Management System**

8.   The key features of the cash management system are described below. The Debtor's accounts receivable are deposited into its general cash collateral account (the "Cash Collateral Account") and the funds are swept by Silicon Valley Bank ("SVB") to pay down the obligations under the prepetition credit facility (the "Credit Facility") with SVB. From time to time, certain account receivable payments are deposited or wired directly into the main disbursement account ("Main Disbursement Account").

9.   Funds needed to pay employees, to pay vendors, and to meet other operational obligations are funded by daily draw requests made by the Debtor upon the Credit Facility. As draw requests are honored by SVB, the funds are deposited into Main Disbursement Account and then transferred to the appropriate account to pay employees, vendors, or other operational expenditures of the Debtor. All of the Debtor's accounts are FDIC insured. In addition, all of the Debtor's accounts are maintained with SVB, which has been approved as a depository for funds of debtor in possession by the United States Trustee for Region 3.

### The Court Should Authorize the Debtor to Maintain Existing Bank Accounts

10.  The United States Trustee for the District of Delaware has established certain operating guidelines for debtors in possession. One such provision requires chapter 11 debtors in possession to close all existing bank accounts and open new bank accounts. The guidelines also require that debtors maintain new bank accounts in certain financial institutions designated as authorized depositories by the United States Trustee. This requirement, designed to provide a clear line of demarcation between prepetition and post-petition claims and

payments, helps protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

11. The Debtor seeks a waiver of the United States Trustee's requirement for the closure of the Bank Accounts and opening of new post-petition bank accounts at depositories authorized by the United States Trustee. If strictly enforced in this case, the requirement to close and open new accounts would cause a severe disruption in the Debtor's activities and would impair the Debtor's ability to operate under chapter 11. Maintenance of the Bank Accounts and the Cash Management System will greatly facilitate the Debtor's operations in chapter 11. The continued maintenance of the Bank Accounts is of paramount importance because the accounts are used to collect revenues and effectuate payments to employees and vendors.

12. All of the Debtor's Bank Accounts are maintained by SVB, which is on the United States Trustee's approved depository list for the District of Delaware. If the Bank Accounts were closed, the Debtor would have to open new accounts and then attempt to arrange alternative electronic and manual payment procedures for payments into and out of the Debtor's accounts, which would disrupt the flow of postpetition receipts and disbursements. In addition, closing the Bank Accounts would require the Debtor to cancel and reinstitute wire transfer instructions which would be difficult to modify under exigent circumstances. This disruption would severely impact and could irreparably harm the Debtor's ability to operate at this critical juncture. The Debtor should be permitted to maintain its existing Bank Accounts and, if necessary, open new accounts as debtor-in-possession accounts, and/or close any unneeded existing Bank Accounts.

13. To guard against improper transfers resulting from the postpetition honoring of prepetition checks, the Debtor will promptly notify SVB not to honor checks drawn on the Debtor's accounts before the Petition Date, except upon limited Court-approved exceptions. Subject to a prohibition against honoring prepetition checks or offsets without specific authorization from this Court, the Debtor requests that it be authorized to maintain and continue the use of its Bank Accounts in the same manner and with the same account numbers, styles, and document forms as those employed prepetition.

14. If the relief requested herein is granted, the Debtor will not pay, and SVB where the Bank Accounts are maintained will be required not to pay, any debts incurred before the Petition Date, other than as specifically authorized through this Motion or otherwise ordered by the Court.

### The Court Should Authorize the Debtor to Continue Their Existing Cash Management System

15. The Debtor hereby seeks authority to continue to use its Cash Management System as such system may be modified by the Debtor. For the reasons set forth above, the Cash Management System constitutes an essential business practice and was created and implemented by the management of the Debtor in the exercise of its business judgment. The Cash Management System provides numerous benefits including the ability to (a) receive customer payments; (b) allow a mechanism for deposits; (c) pay employee wages and benefits; and (d) pay vendors. In addition, preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that would inevitably be associated with a substantial disruption of the Cash Management System. Moreover, the Debtor submits that the relief requested is consistent

with the relief provided to debtors in a number of other cases pending in this district, as explained below.

### The Court Should Authorize the Payment of Outstanding Routine Prepetition Expenses Relating to the Operation of the Cash Management System

16. In the ordinary course of the operation and maintenance of the Cash Management System, the Debtor incurs routine bank charges and fees relating to the administration of the Cash Management System. While it is difficult to readily determine the aggregate amount of unpaid prepetition banking fees as of the Petition Date (given, for example, SVB's varying timing of charging/deducting such fees from a given account), on average, the Debtor pays approximately $4,500, which amount includes approximately $3,500 in checking account fees, $800 in sweep account fees, and $200 for asset management fees in monthly banking fees and charges. The Debtor seeks authority, in its discretion, to pay any such routine and ordinary course prepetition banking fees and charges owed to any affected bank and to continue the post-petition payment of such fees and charges in the ordinary course of business, subject to the terms of any order authorizing the Debtor to obtain debtor in possession financing (a "Financing Order").

### The Court Should Grant a Limited Waiver Pursuant to Section 345(b) of the Bankruptcy Code

17. The Debtor seeks a waiver of section 345(b) of the Bankruptcy Code to the extent required. The waiver would permit the Debtor to maintain the Bank Accounts without posting a bond or other security, as would otherwise be required under section 345(b) whenever

7

the funds on deposit exceed the amount permitted under section 345(b). As explained above, all of the Bank Accounts are maintained at the Banks, which are federally insured institutions.

### Authority for the Requested Relief

A. **The Continued Use of the Debtor's Routine Cash Management System and Bank Accounts is Essential and Approval to Maintain the Status Quo is Routinely Granted Under Bankruptcy Code Sections 363 and 105**

18. Bankruptcy courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management systems, and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtors and forty-three (43) of their subsidiaries "to continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors." *Id.* at 620. The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtors to utilize their prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

19. Likewise, in another context, the bankruptcy court in the *Columbia Gas* chapter 11 case explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticability of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied*

8

*sub nom Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 114 S. Ct. 1050 (1994). The Third Circuit agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061. *See also In re Southmark Corp.*, 49 F.3d 111, 114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively their financial operations and assets"); *In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984).

20.     Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *Medical Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection and disbursement of cash pursuant to their existing Cash Management System. Additionally the Court may exercise their equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out

the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtor's Cash Management System without interruption is vital to the success of their chapter 11 cases.

21. In other cases in the District of Delaware, this Court has granted relief substantially similar to that requested in this Motion. *See, e.g., In re The Walking Company Holdings, Inc.*, Case No. 18-10474 (LSS) (Bankr. D. Del. Mar. 8, 2018); *In re Aquion Energy, Inc.*, Case No. 17-10500 (KJC) (Bankr. D. Del. March 10, 2017); *In re Basic Energy Services, Inc., et al.*, Case No. 16-12320 (KJC) (Bankr. D. Del. October 26, 2016); *In re Key Energy Services, Inc., et al.*, Case 16-12306 (BLS) (Bankr. D. Del. October 25, 2016); *In re Malibu Lighting Corporation, et al.*, Case No. 15-12082 (KG) (Bankr. D. Del. Oct. 9, 2015); *In re Caché, Inc.*, Case No. 15-10172 (MFW) (Bankr. D. Del. Feb. 5, 2015); *In re Deb Stores Holding LLC*, Case No. 14-12676 (KG) (Bankr. D. Del. Dec. 5, 2014); *In re Ultura (LA) INC., et al.*, Case No. 14-12382 (KH) (Bankr. D. Del. Oct. 23, 2014); *In re Ablest, Inc.*, Case No. 14-10717 (KJC) (Bankr. D. Del. Apr. 2, 2014); *In re AES Eastern Energy, L.P.*, Case No. 11-14138 (KJC) (Bankr. D. Del. Jan. 26, 2012); *In re William Lyon Homes*, Case No. 11-14019 (CSS) (Bankr. D. Del. Dec. 20, 2011); *In re Affiliated Media, Inc.*, Case No. 10-10202 (KJC) (Bankr. D. Del Jan. 26, 2010); *In re Point Blank Solutions, Inc., et al.*, Case No. 10-11255 (PJW) (Bankr. D. Del. Apr. 16, 2010). Accordingly, the Debtor requests that the Court approve the continued use of the Debtor's Cash Management System and Bank Accounts.

B. **The Debtor's Bank Accounts are in Compliance with Section 345(b) of the Bankruptcy Code**

22. Section 345(a) authorizes deposits or investments of money "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." Section 345(b) provides:

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested --
>
> 1) a bond –
>
>    a. in favor of the United States;
>
>    b. secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
>    c. conditioned on --
>
>       i) a proper accounting of all money so deposited or invested and for any return on such money;
>
>       ii) prompt repayment of such money and return; and
>
>       iii) faithful performance of duties as a depository; or
>
> 2) the deposit of securities of the kind specified in section 9303 of title 31 unless the court for cause orders otherwise.

23. As noted above, all of the depository accounts are with SVB, which has been approved as a depository for funds of debtors in possession by the United States Trustee for Region 3. Therefore, the Debtor's Bank Accounts are in compliance with the security or bonding requirements prescribed by section 345(b) of the Bankruptcy Code and no security or

11

bonds are necessary to secure the funds in such accounts. Thus, the funds maintained in the depository accounts are not at risk.

C.  **The Court Should Grant the Debtor Authority to Use Existing Checks and Related Forms**

24. To minimize expense to its estate, the Debtor requests authority to continue using its respective existing pre-printed check stock, deposit slips, and related forms without reference to their "debtor in possession" status until the existing stock has been exhausted, provided that the debtor shall add the "debtor in possession" designation to any new checks ordered after the depletion of the existing stock. The Debtor's business forms are primarily electronically generated, but certain forms used by the Debtor's accounts payable department are preprinted. Parties doing business with the Debtor undoubtedly will be aware, as a result of the notice that will be sent of the filing of the Debtor's chapter 11 case and the publicity of the filing, of the Debtor's status as a chapter 11 debtor in possession. For this reason, the Debtor requests that they be authorized to use existing checks and deposit slips without placing the label "debtor in possession" on each such form until such a time as its existing stocks are depleted.

25. Similar relief has been granted in this district. *See, e.g., In re Aquion Energy, Inc.,* Case No. 17-10500 (KJC) (Bankr. D. Del. March 10, 2017); *In re Malibu Lighting Corporation, et al.,* Case No. 15-12082 (KG) (Bankr. D. Del. Oct. 9, 2015); *In re Muzak Holdings LLC,* No. 09-10422 (KJC) (Bankr. D. Del. Feb. 12, 2009); *In re Portola Packaging, Inc.,* No. 08-12001 (CSS) (Bankr. D. Del. Aug. 29, 2008); *In re Hines Horticulture, Inc.,* No. 08-11922 (KJC) (Bankr. D. Del. Aug. 22, 2008); *In re Pierre Foods, Inc.,* No. 08-11480 (KG)

12

(Bankr. D. Del. July 16, 2008); *In re ACG Holdings, Inc.*, No. 08-11467 (CSS) (Bankr. D. Del. July 16, 2008); *In re Tropicana Entm't, LLC*, No. 08-10856 (KJC) (Bankr. D. Del. May 6, 2008); *In re Leiner Health Prods., Inc.*, No. 08-10446 (KJC) (Bankr. D. Del. Mar. 12, 2008); *In re Wickes Holdings, LLC*, No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008).

### Waiver of Bankruptcy Rules 6003 and 6004

26. Pursuant to Bankruptcy Rule 6003(b), "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described more fully above, and as supported by the First Day Declaration, and to the extent that the relief requested herein implicates Bankruptcy Rule 6003(b), the Debtor submits that the requirements of Bankruptcy Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

27. Finally, to implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

### Notice

28. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel for postpetition and prepetition lenders; and (c) the Debtor's twenty largest unsecured creditors. As

DOCS_SF:96977.4 83990/001

the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

29.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter the Order substantially in the form attached hereto as **Exhibit A** (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated:  July 10, 2018                                      PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
_____
Henry C. Kevane (CA Bar No. 125757)
John D. Fiero (CA Bar No. 136557)
John W. Lucas (CA Bar No. 271038)
Colin R. Robinson (DE Bar No. 5524)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel:  (302) 652-4100
Fax: (302) 652-4400
E-mail:  hkevane@pszjlaw.com
              jfiero@pszjlaw.com
              jlucas@pszjlaw.com
              crobinson@pszjlaw.com

*Proposed Attorneys for Debtor and Debtor in Possession*

DOCS_SF:96977.4 83990/001