IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TINTRI, INC.,[1] | ) | Case No.: 18-11625 (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION PURSUANT TO SECTIONS 105(A), 507(A)(8), AND 541(D) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE PAYMENT OF PREPETITION SALES, USE AND FRANCHISE TAXES AND SIMILAR TAXES AND FEES**

The debtor and debtor in possession in the above-captioned case (the "Debtor") hereby submits this motion (the "Motion") for the entry of an order, substantially in the form annexed hereto as Exhibit A, pursuant to sections 105(a), 507(a)(8), and 541(d) of title 11 of the United States Code (the "Bankruptcy Code") (i) authorizing, but not directing, the Debtor to pay certain prepetition taxes, including, sales and use taxes, personal property taxes, regulatory fees, permits and similar taxes and fees in the ordinary course of business, as the Debtor, in its sole discretion, deem necessary; and (ii) authorizing banks and financial institutions to receive, process, honor and pay all checks and transfers related thereto. In support of the Motion, the Debtor respectfully states as follows:

## Jurisdiction

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[1] The Debtor and the last four digits of its taxpayer identification numbers are (6978). The headquarters and service address for the above-captioned Debtor is 303 Ravendale Dr., Mountain View, CA 94043.

*Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code.

**Background**

4. On the date hereof (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtor's chapter 11 case.

5. The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in

detail in the *Declaration of Robert J. Duffy in Support of First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference[2].

### The Debtor's Tax Obligations

6. In the ordinary course of business, the Debtor collects and pays taxes, including, but not limited to, sales and use taxes and personal property taxes, and certain other business license fees, to various taxing authorities in multiple jurisdictions (the "Taxing Authorities"), as described below.

**A.   Sales and Use Taxes**

7. The Debtor collects and remits sales, use and related taxes ("Sales and Use Taxes") to the Taxing Authorities in the various states in connection with the sale of its goods in those states. The Debtor's liability for Sales and Use Taxes is incurred in connection with the sale of goods to its customers. In general, the Debtor remits such taxes to the applicable Taxing Authorities generally on or about the 20th day of the following month. The Debtor estimates that as of the Petition Date it owes approximately $70,000 in unremitted Sales and Use Taxes for the month of June 2018 and the prepetition portion of July 2018. In addition, the Debtor presently has an ongoing sales tax audits. As a result, the Debtor requests authority to pay any amounts determined to be owed on any audits that may be commenced after the Petition Date.

**B.   Personal Property Taxes**

8. The Debtor is required to pay personal property taxes (the "Personal Property Taxes") in connection with its ownership and use of personal property to applicable

---

[2] Capitalized term used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

DOCS_SF:96980.2

taxing jurisdictions. If these taxes are not paid when due, certain Taxing Authorities may impose liens against the subject personal property upon non-payment. Most jurisdictions assess personal property taxes on an annual or semi-annual basis. The Debtor believes that it is current on the payment of Personal Property Taxes. As of the Petition Date, the Debtor estimates that approximately $234,000 in Personal Property Taxes will come due on August 31, 2018 and request authority to pay such Personal Property Taxes as they come due.

C.      **Business Licenses, Permits, and Other Fees**

9.      The Debtor is required to pay various taxes and fees for business licenses, annual reports, permits, and other similar types of obligations (the "Business Fees") in order to continue conducting their business in conformity with state and local laws. The Debtor remits required amounts for the Business Fees on a monthly, quarterly, or annual basis, depending on the requirements of the particular Taxing Authority or governmental authority. As of the Petition Date, the Debtor does not believe they it is any Business Fees due and owing. Out of an abundance of caution, however, the Debtor requests authority to pay any such Business Fees up to an amount of $5,000.

**Relief Requested**

10.     By this Motion, the Debtor seeks entry of an order pursuant to sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code, authorizing the Debtor to pay any Sales and Use Taxes, Franchise Taxes, Personal Property Taxes and Business Fees (collectively, the "Prepetition Tax Obligations") to the respective Taxing Authorities or to the parties who ordinarily collect the Prepetition Tax Obligations in the ordinary course of the Debtor's business,

4

including, without limitation, Sales and Use Taxes or Franchise Taxes subsequently determined on audit to be owed for periods prior to the Petition Date. The Debtor seeks authority to remit Prepetition Tax Obligations in an aggregate amount (excluding amounts paid prepetition by checks that have not yet cleared[3] and amounts that may be subsequently determined on sales tax audit or adjustment to be owed a particular Taxing Authority or party who ordinarily collects the Prepetition Tax Obligations) not to exceed $309,000 (the "Prepetition Tax Obligations Cap"), without prejudice to the Debtor's rights to contest the amounts of any Prepetition Tax Obligations on any grounds it deems appropriate.[4]

11. The Debtor also requests that all banks and other financial institutions on which checks to third parties are drawn and/or electronic payments are made pursuant to this Motion be authorized to receive, process, honor, and pay any and all such checks (whether issued or presented prior to or after the Petition Date) and electronic payments, and to rely on the representations of the Debtor as to which checks are authorized to be paid.[5]

## Basis for Relief

12. The Court should grant the relief requested herein because: (i) portions of the Prepetition Tax Obligations are not property of the estate; (ii) portions of the Prepetition Tax Obligations are entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code;

---

[3] The Debtor requests authority to reissue any amounts paid by check prepetition that have not cleared as of the Petition Date and are dishonored.

[4] Nothing in this Motion shall be deemed to constitute an admission to any asserted liability or obligation with respect to any Tax. The Debtor reserves any and all rights to contest any Tax asserted against them by any Taxing Authority.

[5] Contemporaneously herewith, the Debtor has filed a motion seeking authority to continue to utilize its cash management system (the "Cash Management Motion"). Details regarding accounts used by the Debtor to pay all obligations in the ordinary course, including taxes, are described in the Cash Management Motion.

5

DOCS_SF:96980.2

(iii) the Taxing Authorities or the parties who ordinarily collect the Prepetition Tax Obligations may file liens, initiate audits, or otherwise proceed against the Debtor for unpaid Prepetition Tax Obligations and such actions will result in unnecessary expense and distraction from the Debtor's efforts to maximize the value of their estates; (iv) failure to pay Business Fees may not only affect current operations, and (v) section 105(a) of the Bankruptcy Code and the Court's general equitable powers permit the Court to grant such relief.

**D.    Certain of the Taxes are Not Property of the Debtor's Estate**

13.    The Debtor's payment of the Prepetition Tax Obligations, though arguably a payment of a prepetition claim, is justified in large part because certain of these amounts are not property of the Debtor's estate pursuant to section 541(d) of the Bankruptcy Code. Specifically, section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section <u>only</u> to the extent of the Debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d) (emphasis added).

14.    Consistent with section 541(d) of the Bankruptcy Code, courts have held that certain types of taxes are not part of a Debtor's estate. *See, e.g., Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the Debtor's property); *DuCharmes & Co., Inc. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (per curiam) (same); *Shank v. Wash. State Dept. of Revenue (In re Shank)*, 792 F.2d 829, 833 (9th Cir. 1986) (sales

tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. New York State Tax Comm'n*, 760 F.2d 432, 435-36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dept. of Revenue (In re Rosenow)*, 715 F.2d 277, 279-82 (7th Cir. 1983) (same); *Western Surety Co. v. Waite (In re Waite)*, 698 F.2d 1177, 1179 (11th Cir. 1983) (same).

15. Here, the Sales and Use Taxes constitute amounts held in trust, which the Debtor is required to hold in trust for payment to the Taxing Authorities. To the extent these Sales and Use Taxes constitute "trust fund" taxes, they are not property of the Debtor's estate under section 541(d) of the Bankruptcy Code. *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-05 (Bankr. E.D. Pa. 1987); *In re Dameron*, 155 F.3d 718, 721-22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties not property of Debtor's estate). Given that the Debtor does not have an equitable interest in such Sales and Use Taxes, the Debtor should be permitted to remit these Sales and Use Taxes to the Taxing Authorities as they become due, irrespective of the commencement of this case.

E. **Payment of the Prepetition Tax Obligations Will Avoid Unnecessary Distractions**

16. Any regulatory dispute or delinquency that impacts the Debtor's ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtor's business operations and restructuring efforts. Specifically, the Debtor's failure to remit the Prepetition Tax Obligations could adversely affect the Debtor's remaining business operations because, among other things (a) the Taxing Authorities could initiate audits of the

Debtor or prevent the Debtor from continuing their business and administering their estate, which, even if unsuccessful, would unnecessarily divert the Debtor's attention from the process of maximizing the value of their estate; (b) the Taxing Authorities could attempt to suspend the Debtor's operations, file liens, seek to lift the automatic stay and pursue other remedies that will harm the estate; (c) some of the Taxing Authorities may seek to collect penalties, cancel franchises or other licenses, or undertake other unfavorable enforcement actions if the Debtor does not pay the Franchise Taxes; and (d) certain directors, officers and employees might be subject to personal liability -- even if such a failure to remit such Prepetition Tax Obligations was not a result of malfeasance on their part -- which would undoubtedly distract these key employees from their duties related to the Debtor's restructuring. In fact, the Taxing Authorities may take such actions regardless of this chapter 11 filing. *See, e.g.*, 11 U.S.C. §§ 362(b)(9) (permitting tax audits and assessments) and 362(b)(18) (allowing creation or perfection of liens for property taxes).

17. Accordingly, the Debtor respectfully requests the authority to remit the Prepetition Tax Obligations as they become due to ensure that they remains focused on their business operations and restructuring efforts.

F. **Certain of the Prepetition Tax Obligations May Constitute Priority Claims**

18. The Debtor submits that authorizing the payment of the Prepetition Tax Obligations is in the best interests of their creditors and estates because substantially all of the Prepetition Tax Obligations constitute priority claims that will be paid in full in the Debtor's bankruptcy case. Accordingly, the proposed relief will only affect the timing of the payment of

8

the Prepetition Tax Obligations and not whether such amounts will be paid. As such, payment of the Prepetition Tax Obligations will not prejudice the rights of general unsecured creditors or other parties in interest.

19. Moreover, to the extent that such claims are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the respective Taxing Authorities may attempt to assess interest and penalties. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

20. Further, the failure to pay certain of the Prepetition Tax Obligations may adversely affect the Debtor's ability to maintain its good standing to operate in the jurisdictions in which it does business, to conduct business in those jurisdictions, and to administer its estate for the benefit of its creditors.

21. In sum, payment of the Prepetition Tax Obligations is in the best interest of the Debtor and its estate, will not harm unsecured creditors and other parties in interest, and will reduce harm and administrative expense to the Debtor's estate.

22. Similar relief is routinely granted by courts in this district and elsewhere. *See, e.g.*, *In re The Walking Company Holdings, Inc.*, Case No. 18-10474 (LSS) (Bankr. D. Del. Mar. 8, 2018); *In re True Religion Apparel, Inc.*, Case No. 17-11460 (CSS) (Bankr. D. Del. Jul. 31, 2017); *In re GST AutoLeather, Inc.*, Case No. 17-12100 (LSS) (Bankr. D. Del. Oct. 27, 2017); *In re M & G USA Corporation*, Case No. 17-12307 (BLS) (Bankr. D. Del. Nov. 30, 2017); *In re American Apparel, LLC,* Case No. 16, 12551 (BLS) Bankr. D. Del. Nov. 15, 2016);

*In re Garden Fresh Restaurant Intermediate Holding, LLC*, Case No. 16-12174 (CSS) (Bankr. D. Del. Oct. 3, 2016); *In re Cache, Inc.*, Case No. 15-10172 (MFW) (Bankr. D. Del. Feb. 4, 2015).

G. **Payment of the Prepetition Tax Obligations is Warranted Under the Doctrine of Necessity**

23.  Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting the debtor the authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants). When authorizing payments of certain prepetition obligations, courts have relied upon several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code.

24.  Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *See, e.g., In re Ionosphere Clubs, Inc.* 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); *In re James A. Phillips, Inc.*, 29 B.R. at 397

(relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

25. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations when such payments are essential to the continued operation of the debtors' business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

26. In addition to the authority granted to a debtor in possession under sections 105(a) and 363(b) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtors'

11

reorganization, *see Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations), including the United States Court of Appeals for the Third Circuit, which recognized the doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

27. In *Lehigh*, the United States Court of Appeals for the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. at 824-25 (noting that debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

28. The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127

12

DOCS_SF:96980.2

B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation . . . ."); 3 COLLIER ON BANKRUPTCY ¶ 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

29. Here, the Debtor's payment of the Prepetition Tax Obligations is an exercise of sound business judgment is vital to the Debtor's restructuring efforts and is necessary to maximize the value of the Debtor's estate for the benefit of its creditors. If the Debtor does not continue paying the Prepetition Tax Obligations when they come due on a timely basis, it is very possible that the Taxing Authorities or those parties who ordinarily collect the Prepetition Tax Obligations may seek to interfere with the Debtor's business and the efficient administration of the estate.

## H. Cause Exists to Authorize the Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers

30. In connection with the payment of the Prepetition Tax Obligations, the Debtor also requests that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment, and to honor all electronic payment requests made by the Debtor related to the prepetition obligations described herein, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtor further requests that all such banks and financial institutions be authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved pursuant to this Motion. The Debtor intends to pay all tax and regulatory obligations in a timely manner, in accordance with their ordinary business practices, and as authorized by the Order approving this Motion.

31. The Debtor has made or will make arrangements to readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Prepetition Tax Obligations. Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and the Court should authorize all applicable financial institutions, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

32. Prompt payment of Sales and Use Taxes will permit the Debtor to avoid interest and penalties.

## Satisfaction of Bankruptcy Rule 6003

33. The Debtor believes that it is entitled to immediate authorization for the relief contemplated by this Motion. Pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001." To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm. Specifically, if the Prepetition Tax Obligations are not paid, the Debtor will be at risk for the business disruptions that would result from, among other things, (i) any liability of the directors and officers for failures to remit the "trust fund" Taxes, (ii) the administrative disruption of unnecessary local audits, and (iii) any operational disruptions or challenges to the Debtor's rights to operate within certain jurisdictions where the Prepetition Tax Obligations were not paid. Addressing any potential subsequent action taken by those Taxing Authorities or those parties who ordinarily collect the Prepetition Tax Obligations would be costly, would place an administrative burden on management, and divert management's attention from the reorganization process. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003.

### Waiver of Bankruptcy Rule 6004

34. The Debtor seeks a waiver of any stay of the effectiveness of the Order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth in the Motion, the payments proposed herein are essential to prevent immediate and irreparable harm to the Debtor's business operations. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Notice

35. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel for postpetition and prepetition lenders; and (c) the Debtor's twenty largest unsecured creditors. As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

36. No prior request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor requests entry of an order, pursuant to sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code, substantially in the form attached hereto, (i) authorizing the Debtor to pay up to the Prepetition Tax Obligations Cap, as it deems necessary in its sole discretion; (ii) authorizing financial institutions to receive, process, honor, and pay all checks issued, and electronic payment requests made, related to the foregoing; and (iii) granting such other and further relief as is just and proper.

Dated: July 10, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

Henry C. Kevane (CA Bar No. 125757)
John D. Fiero (CA Bar No. 136557)
John W. Lucas (CA Bar No. 271038)
James E. O'Neill (DE Bar No. 4042)
Colin R. Robinson (DE Bar No. 5524)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel: (302) 652-4100
Fax: (302) 652-4400
E-mail: hkevane@pszjlaw.com
jfiero@pszjlaw.com
jlucas@pszjlaw.com
joneill@pszjlaw.com
crobinson@pszjlaw.com

Proposed Attorneys for Debtor and Debtor in Possession