IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TINTRI, INC.,[1] | ) | Case No.: 18-11625 (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 362 & 105(a) FOR ENTRY OF INTERIM AND FINAL ORDERS ESTABLISHING NOTIFICATION AND HEARING PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF INTERESTS IN THE DEBTOR'S ESTATE**

Tintri, Inc., the debtor and debtor-in-possession in the above-captioned case (the "Debtor") hereby moves (the "Motion"), pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an interim order substantially in the form annexed hereto as **Exhibit "A"** (the "Interim Trading Order") and a final order substantially in the form annexed hereto as **Exhibit "D"** (the "Final Order") establishing notice and hearing procedures that must be satisfied before certain transfers of common stock of the Debtor or any beneficial interest therein (the "Stock") are deemed effective to July 10, 2018 (the "Petition Date") and granting related relief. In support of the Motion, the Debtor submits the *Declaration of Robert J. Duffy in Support of First Day Relief* (the "Duffy Declaration"), filed contemporaneously herewith, and respectfully submits as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the United States District Court for*

---

[1] The Debtor and the last four digits of its taxpayer identification numbers are (6978): The headquarters and service address for the above-captioned Debtor is 303 Ravendale Dr., Mountain View, CA 94043.

*the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code.

## BACKGROUND

3.  On the date hereof (the "Petition Date") the Debtor commenced its bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). No trustee, examiner, or creditors' committee has been appointed in the Chapter 11 Case. The Debtor is operating its business as Debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Duffy Declaration.

## RELIEF REQUESTED

5.  By this motion (the "Motion"), the Debtor seeks to enforce the automatic stay by implementing court-ordered procedures (the "Procedures") intended to protect Debtor's estate against the possible loss of valuable tax benefits that could flow from inadvertent violations of the automatic stay. Pursuant to sections 105(a) and 362 of the Bankruptcy Code, Debtor requests an order (the "Interim Trading Order") in the form attached hereto as **Exhibit "A"** authorizing Debtor (i) to establish and implement restrictions and notification requirements regarding the Tax Ownership and certain transfers of the Stock. The Debtor also

2

seeks approval of the form of notice attached hereto as **Exhibit "B"**, which will be used to notify holders of Stock whose actions could adversely affect Debtor's tax assets that the Procedures have been established by order of this Court.

## FACTUAL SECTION RELATING TO RELIEF

6. The Debtor has certain attributes for U.S. federal income tax purposes (the "Tax Attributes"), which are expected to include approximately $400,000,000 in estimated, consolidated net operating loss carryforwards ("NOLs") by the end of the Debtor's 2018 taxable year. Thus, the Tax Attributes may be valuable assets. Internal Revenue Code of 1986, as amended (the "Tax Code") generally permits corporations to carry forward its tax attributes to reduce future taxable income. *See* I.R.C. § 172. Accordingly, absent any intervening limitations and depending upon future operating results and the consummation of taxable asset dispositions by Debtor, the Tax Attributes could substantially reduce the Debtor's U.S. federal income tax liability, including during the pendency of the Chapter 11 Case. The Tax Attributes are available to offset any income realized through the taxable year that includes the effective date of a chapter 11 plan, and potentially thereafter. The Tax Attributes could translate into future tax savings over time and the availability of these tax savings may prove crucial to the financial health of the reorganized Debtor.

7. For the reasons discussed below, and consistent with the automatic stay, the Debtor needs the ability to enforce the stay to preclude certain transfers and to monitor and possibly object to other changes in the ownership of Stock. Specifically, trading of Stock could adversely affect Debtor's future ability to utilize the Tax Attributes if too many five percent or greater blocks of equity securities are created through purchases, sales, or issuances, or too many shares are added to or sold from such blocks, such that, together with the previous trading by five

3

percent shareholders during the preceding three year period, a section 382 Ownership Change (as defined below) is triggered prior to the consummation of a confirmed chapter 11 plan.

8.  The Debtor's ability to use the Tax Attributes to reduce future tax liability is subject to certain statutory limitations. Sections 382 and 383 of the Tax Code limit a corporation's use of its tax attributes to offset future income or tax after that corporation has undergone an "ownership change" within the meaning of section 382 of the Tax Code ("section 382" and such ownership change, an "Ownership Change"). Pursuant to section 382, an Ownership Change generally occurs when the percentage of a corporation's equity held by its "5 percent shareholders" (within the meaning of section 382 of the Tax Code) increases by more than 50 percentage points above the lowest percentage of ownership owned by such shareholder(s) at any time during the relevant testing period (usually three years). In addition, an Ownership Change can occur where a "50 percent shareholder" (within the meaning of section 382(g)(4)(D) of the Tax Code) claims a worthlessness deduction in respect of its direct or indirect ownership of the corporation.

9.  In the event a corporation experiences an Ownership Change, section 382 generally imposes a limitation on the amount of NOLs and certain other tax attributes that can be utilized in each subsequent year to offset income. Subject to a number of potentially applicable adjustments, this limitation is generally equal to the product of (1) the equity value of the debtor immediately before the change in ownership multiplied by (2) a long-term tax-exempt rate prescribed by the U.S. Treasury (2.32% for an Ownership Change occurring during the month of July 2018). If the Debtor was to undergo an Ownership Change at a time prior to consummation of a chapter 11 plan, the resulting annual limitation could result in a substantial portion of its NOLs expiring unused.

10. By contrast, in the context of an Ownership Change that occurs pursuant to a confirmed chapter 11 plan, the rules relating to the limitations on the use of tax attributes are more relaxed, particularly where the plan involves the retention or receipt of at least 50 percent of the stock of the reorganized debtor by shareholders or "qualified creditors." *See* I.R.C. § 382(l)(5), (6). Paragraphs 11 and 12 below discuss the special rule under section 382(l)(5) of the Internal Revenue Code ("section 382(l)(5)") that would apply if Debtor's shareholders and "qualified creditors" receive stock pursuant to the chapter 11 plan of reorganization constituting at least 50% of the total value and voting power of Debtor's stock immediately after the ownership change. Paragraph 13 below discusses the special rule under section 382(l)(6) of the Internal Revenue Code ("section 382(l)(6)") that would apply if Debtor do not satisfy the eligibility requirements of section 382(l)(5) or elect out of that provision.

11. Under section 382(l)(5), the limitations imposed by section 382 do not apply to a debtor that undergoes an Ownership Change as a result of the consummation of a chapter 11 plan if the plan provides that the persons or entities who owned the debtor's stock immediately before the relevant Ownership Change and/or "qualified creditors" emerge from the reorganization owning (as a result of its prior ownership of stock or claims that are "qualified indebtedness") at least 50% of the total value and voting power of the debtor's stock immediately after the Ownership Change. *See* I.R.C. § 382(l)(5)(A). Qualified creditors are, in general, creditors who (i) held its claims continuously for at least 18 months at the time the bankruptcy petition is filed or (ii) hold claims incurred in the ordinary course of the debtor's business and held those claims continuously since they were incurred. Claims described in the preceding sentence are "qualified indebtedness." *See* I.R.C. § 382(l)(5)(E); Treas. Reg. § 1.382-9(d)(2).

12. The Debtor has 33,920,522 shares outstanding, with 86 registered holders as of June 25, 2018, and 4,047 beneficial holders as of May 18, 2018.[2] It is expected that Debtor will undergo an Ownership Change for purposes of section 382 upon emergence from chapter 11. In that event, the Debtor seeks to avail itself of the special relief afforded by section 382(l)(5) for changes in ownership under a confirmed chapter 11 plan. However, if the relief requested herein is not granted, there is a significant risk that, as a result of pre-consummation trading, this special relief would not be available to Debtor and the use of Debtor's Tax Attributes could be permanently impaired. Even if the Debtor is ultimately unable to satisfy the requirements of section 382(l)(5) or determine that it is more advantageous to elect not to accept its benefits, it is still in the best interest of Debtor and its estate to restrict Stock trading that could result in a change of ownership of the Debtor before the confirmation of a chapter 11 plan.[3]

13. In order for Debtor to qualify for the favorable valuation rule of section 382(l)(6), an Ownership Change must occur pursuant to the consummation of a chapter 11 plan. Under section 382(l)(6), if Debtor experiences an Ownership Change pursuant to a confirmed chapter 11 plan and section 382(l)(5) does not apply (either because Debtor elects out of that provision or because its requirements are not satisfied), the value of the reorganized Debtor's equity for the purposes of calculating the limitation under section 382 would reflect the increase in value of the reorganized Debtor's equity resulting from the restructuring of creditor claims in the plan. Thus, to the extent the value of the reorganized Debtor's equity increases as a result of

---

[2] These are the most recent quantities reported to the Debtor and represent the best information available.

[3] As discussed above, if a change of ownership occurred before the confirmation of a chapter 11 plan, the limitation under section 382 would be determined based on the equity value of Debtors immediately before the ownership change. Consequently, Debtor's ability to use its NOLs could be severely limited. Accordingly, this Motion proposes restrictions on Stock trading in order to guard against an ownership change and thereby to protect a valuable asset of Debtor's estate.

6

the reorganization (compared to the distressed value of Debtor's equity prior to the reorganization), section 382(l)(6) will provide for a higher annual limitation than would otherwise be obtained under section 382 for an Ownership Change occurring during the time Debtor is operating under chapter 11.

14. The Debtor believes that it has significant Tax Attributes that would be adversely affected (and could be effectively eliminated) by an Ownership Change during the pendency of this case. If such an Ownership Change occurs, the valuation for determining the annual amount of useable Tax Attributes would be at or close to zero, which may effectively eliminate the availability of such Tax Attributes. It is therefore in the best interests of the Debtor and its stakeholders to restrict trading that could result in an Ownership Change *before* the effective date of a chapter 11 plan or applicable bankruptcy court order. Accordingly, the Debtor respectfully requests that the Court approve the procedures proposed herein to protect Debtor's ability to use the Tax Attributes during the pendency of this Chapter 11 Case and potentially thereafter.

## PROPOSED PROCEDURES AND RESTRICTIONS

15. The Debtor seeks to implement the following procedures and restrictions:

   a. <u>Notice of Substantial Equityholder Status.</u> Any Person who is or becomes a Tax Owner as of the Petition Date of at least 1,611,225 shares of Stock, which represents approximately 4.75 percent of the issued and outstanding Stock (a "<u>Substantial Equityholder</u>"), must, on or before the later of: (i) 15 days after the Court's entry of an order approving these Procedures or (ii) 10 days after that Person becomes a Substantial Equityholder, serve on Debtor, the attorneys for Debtor, counsel for TriplePoint Capital LLC, the DIP Lender, and the attorneys for the Creditors' Committee (when appointed) a notice (the "<u>Substantial Equityholder Notice</u>")

DOCS_SF:97209.2 83990/001

containing the Tax Ownership information substantially in the form of **Exhibit 1** annexed to **Exhibit B** hereto.

      b.    <u>Restrictions and Procedures for Trading in Stock.</u>  Any Person that, after the Petition Date,

      i    is not a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of an amount of Stock that would cause the Person to become a Substantial Equityholder;

      ii    is a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of any additional Stock; or

      iii    is a Substantial Equityholder and wishes to sell or otherwise dispose of Tax Ownership of any Stock,

must, prior to the consummation of any such transaction, file with the Court (at the holder's election, in a redacted form that does not include such holder's taxpayer identification number and the aggregate number of shares of Stock that such holder beneficially owns), and serve on Debtor, the attorneys for Debtor, counsel to the DIP Lender, and the attorneys for the Creditors' Committee (when appointed) an unredacted notice in the form attached as **Exhibit 2** to **Exhibit B** hereto, in the case of a proposed acquisition of Stock, or **Exhibit 3** to **Exhibit B** hereto, in the case of a proposed disposition of Stock, including the case of a 50 percent shareholder who intends to claim a worthlessness deduction with respect to such Stock (either such notice, a "<u>Proposed Stock Transaction Notice</u>").  The Debtor shall consult with counsel to the DIP Lender and counsel to the Creditors' Committee (when appointed) prior to responding to any Proposed Stock Transaction Notice.  If written approval of the proposed transaction is filed with the Court by the Debtor within 15 calendar days following the receipt of a Proposed Stock Transaction Notice, then the transaction may proceed.  If written approval of the proposed transaction is not filed by the Debtor with the Court within such period, then the transaction may not be consummated unless approved by a final and nonappealable order of the Court.  Further

transactions within the scope of this Section (b) must be the subject of additional notices as set forth herein with additional waiting periods.

  c. <u>Confidentiality.</u>  The Debtor, its counsel, counsel to the DIP Lender, and counsel to the Creditors' Committee (when appointed) shall keep all information provided in all notices delivered pursuant to the Interim Trading Order strictly confidential and shall not disclose the contents thereof to any person (including any DIP Lender and any member of any Creditors' Committee (when appointed)), except (i) to the extent necessary to respond to a petition or objection filed with the Court, (ii) to the extent otherwise required by law, or (iii) to the extent that the information contained therein is already public; *provided, however*, that Debtor may disclose the contents thereof to its professional financial advisers, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person subject to further Court order. To the extent confidential information is necessary to respond to a petition or objection filed with the Court, such confidential information shall be filed under seal or in redacted form.

  d. <u>Sanctions for Noncompliance.</u>  Acquisitions and dispositions of Tax Ownership of Stock in violation of the restrictions and procedures set forth in Section (b) of this Paragraph 15 shall be void *ab initio*, and the sanction for violating Section (b) of this Paragraph 15 shall be reversal of the noncompliant transaction or such other (or additional) measures as the Court may consider appropriate.

  e. <u>Discretionary Waiver by Debtor.</u>  The Debtor, with the consent of the DIP Lender and the Creditors' Committee (when appointed) or pursuant to an order of the Court, may waive any sanctions, remedies, or notification procedures imposed by the Interim Trading Order; *provided, however*, that any such waiver shall be filed with the Court.

f. <u>Notice Procedures.</u> Within three business days of the entry of the Interim Trading Order, the Debtor shall (i) submit a publication notice of the entry of the Interim Trading Order (substantially in the form attached hereto as **Exhibit C**) for posting on the Bloomberg newswire service; (ii) post such notice together with a copy of the Interim Trading Order on Debtor's case information website (https://cases.kcc.com/tintri); and (iii) serve a notice of the entry of the Interim Trading Order (substantially in the form attached hereto as **Exhibit B**) on (1) the Office of the United States Trustee for the District of Delaware; (2) any identified equity holder of Tintri, Inc.; (3) counsel for the DIP Lender; (4) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtor (on a consolidated basis), as identified in its chapter 11 petition; (5) the Internal Revenue Service; and (6) the Office of the United States Attorney for the District of Delaware. Upon receipt of such notice, counsel to the Creditors' Committee (when appointed) shall send such notice to its respective committee members.

Upon receipt of such notice of Interim Trading Order, any Agent of a beneficial holder of the Stock will be required, within five (5) business days of receipt of such notice and on at least a quarterly basis thereafter, to send the notice of Interim Trading Order to all beneficial holders of the Stock on whose behalf such Agent holds the Stock. To the extent such beneficial holder is also an Agent, such Agent must, in turn, promptly provide the notice of Interim Trading Order to any holder for whose account such holder holds the Stock, and so on down the chain of ownership.

g. <u>Definitions.</u>

For purposes of this Motion:

"**Agent**" means a broker, account manager, agent, custodian, nominee, prime broker, clearinghouse or trustee (including a Trustee but not including a trustee qualified under section 401(a) of the Tax Code).

"**Person**" means a person or Entity (as such term is defined in Treasury regulations section 1.382-3(a)).

"**Tax Ownership**" means beneficial ownership of Stock as determined in accordance with applicable rules under section 382 and, to the extent provided in those rules shall include, but not be limited to, direct and indirect ownership (*e.g.*, a holding company would be considered to have Tax Ownership of all shares owned or acquired by its 100 percent owned subsidiaries), ownership by members of a person's family and persons acting in concert and, in certain cases, the creation or issuance of an option (in any form). Any variation of the term Tax Ownership shall have the same meaning, and an "option" to acquire stock shall include any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

**AMPLE SUPPORT EXISTS FOR THE PROPOSED
RESTRICTIONS AND NOTIFICATION REQUIREMENTS**

16. The Tax Attributes are valuable property of Debtor's estate, and thus protected from actions that would diminish or eliminate its value, including transfers that would affect an Ownership Change. *See* 11 U.S.C. § 362(a)(3) (staying "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"); *see also Official Committee of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565 (2d Cir. 1991), *cert. denied*, 502 U.S. 821 (1991) ("[W]here a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay.").

17. It is well established that a debtor's NOLs are property of the debtor's estate protected by the automatic stay. *See Nisselson v. Drew Indus., Inc. (In re White Metal*

11

*Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them."). The United States Court of Appeals for the Second Circuit, in its seminal *Prudential Lines* decision, affirmed the application of the stay and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction that would have adversely affected the subsidiary's ability to use its NOLs under the special relief provisions of section 382 of the Tax Code. *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565 (2d Cir. 1991). As the Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the Debtor have into the estate." Moreover, . . . [i]ncluding the right to a NOL carryforward as property of [the debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id.* at 573 (internal citations omitted); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'") (quoting *Prudential Lines*, 928 F.2d at 572); *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991) (concluding the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate).

18. In *Prudential Lines*, the Second Circuit determined that, if the parent were permitted to take a worthless stock deduction, it would have an adverse impact on the debtor subsidiary's ability to carry forward its NOLs. Therefore, the Second Circuit noted that, "despite the fact that the [parent corporation's] action is not directed specifically at [the debtor subsidiary], it is barred by the automatic stay as an attempt to exercise control over property of the estate." *Prudential Lines*, 928 F.2d at 573-574.

DOCS_SF:97209.2 83990/001

19. In addition to finding that a debtor's NOLs were protected by the stay, the Second Circuit also held that, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, the bankruptcy court could issue a permanent injunction to protect such NOLs. Because the NOLs were valuable assets of the debtor, the Second Circuit refused to disturb the bankruptcy court's decision preserving the debtor's right to apply its NOLs to offset income on future tax returns. *Id.* at 574.

20. In *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993), the court applied similar reasoning and granted the Debtor's motion to prohibit transfers of its stock that could have an adverse effect on its ability to use NOLs, even though the stockholders did not state any intent to sell its stock and the Debtor did not show that there was a pending sale that would trigger the prescribed ownership change under section 382 of the Tax Code. *See id.* at 927. Despite the "ethereal" nature of the situation, the court observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist Debtor in its reorganization process. This asset is entitled to protection while Debtor move forward toward reorganization." *Id.* (emphasis added).

21. The *Phar-Mor* court also concluded that, because the Debtor were seeking to enforce the stay, they did not have to meet the more stringent requirements for preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits. The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id.* at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

22. Numerous courts in this and other districts have either prohibited or otherwise restricted equity trading to protect a debtor against the possible loss of its NOL carryovers. *See, e.g.*, *In re Pacific Sunwear of California, Inc.*, No. 16-10882 (LSS) (Bankr. D. Del. Apr. 29, 2016) (approving establishment of notification procedures and restrictions on certain transfers of equity interests in Debtor); *In re BPS US Holdings Inc.*, No. 16-12373 (KJC) (Bankr. D. Del. Nov. 28, 2016) (approving notice and hearing procedures for trading in equity interests in Debtor); *In re Spansion, Inc.*, No. 09-10690 (Bankr. D. Del. Apr. 1, 2009) (approving notification procedures and restrictions on certain transfers of equity interests in Debtor); *In re Verasun Energy Corp.*, No. 08-12606 (Bankr. D. Del. Dec. 3, 2008) (approving notification procedures and restrictions on certain transfers of equity interests in Debtor); *In re Trico Marine Servs., Inc.*, Case No. 10-12653 (BLS) (Bankr. D. Del. Sept. 22, 2010) (approving notification procedures and restrictions on certain transfers of equity interests in Debtor), *In re AMR Corp.*, Ch. 11 Case No. 11-15463 (SHL) (Bankr. S.D.N.Y 2013) (approving notification procedures and restrictions on certain transfers of equity interests in the Debtor); *In re Pinnacle Corp.*, Ch. 11 Case No. 12-11343 (REG) (Bankr. S.D.N.Y. 2012) (approving notification procedures and restrictions on certain transfers of equity interests in Debtor); *In re Delta Air Lines, Inc.*, Ch. 11 Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. 2005) (approving notification procedures and restrictions on certain transfers of equity interests in the Debtor); *In re US Airways, Inc.*, Ch. 11 Case No. 04-13819 (SSM) (Bankr. E.D. Va. 2005) (approving notification procedures and restrictions on certain transfers of equity interests in Debtor).

### THE PROPOSED PROCEDURES ARE NECESSARY AND IN THE BEST INTERESTS OF THE DEBTOR, ITS ESTATE, AND CREDITORS

23. The proposed procedures and restrictions are necessary to protect Debtor's NOL carryforwards, which are valuable assets of Debtor's estate, while providing appropriate

latitude for trading in Stock below specified levels. Debtor's ability to meet the requirements of the tax laws to protect its NOL carryforwards may be seriously jeopardized unless procedures are established to ensure that certain trading in Stock is either precluded or closely monitored and made subject to Court approval. However, the Debtor recognizes that trading in the Stock below specified levels (with contemporaneous notice of the transfers) does not, at this time, pose a serious risk to the NOL carryforwards. Given the significant potential value of the Tax Attributes and the tailored approach of the Procedures, the Procedures are a necessary and appropriate exercise of this Court's equitable powers under section 105(a) of the Bankruptcy Code and should be approved.

## **INTERIM TRADING ORDER**

24.    The Debtor seeks the relief requested in this Motion in the form of the Interim Trading Order attached hereto. Within three business days of the entry of the Interim Trading Order, the Debtor shall publish and serve a notice in the manner specified in Section (f) of Paragraph 15.

25.    The Debtor requests that the deadline to file an objection ("Objection") to the Motion shall be 4:00 p.m. (prevailing Eastern Time) on a date established by the Court that is at least seven calendar days prior to any hearing scheduled by the Court with respect to the relief sought herein on a final basis (the "Objection Deadline"). An Objection shall be considered timely only if, on or prior to the Objection Deadline, it is (a) filed with the Court and (b) served upon and actually received by (i) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Timothy J. Fox, Jr.); (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801) (Attn: Colin R. Robinson); (iii) McDermott Will & Emery LLP,

DOCS_SF:97209.2 83990/001

340 Madison Avenue, New York, NY 10173-1922 (Attn: Riley T. Orloff); and (iv) attorneys for any official committee, if then appointed in this case, on or before the Objection Deadline.

26. Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two days before the date of the applicable hearing.

27. If no Objections are timely filed and served as set forth herein, the Debtor shall, on or after the Objection Deadline, submit to the Court a final order substantially in the form attached hereto as **Exhibit D** granting the relief requested herein, which order shall be submitted and may be entered with no hearing and no further notice or opportunity to be heard afforded to any party, and the Motion shall be approved *nunc pro tunc* to the date of the commencement of the Chapter 11 Case. If an Objection is timely filed, a hearing will be held at a date and time to be established by the Court.

28. Until the Court enters a final order, any acquisition or disposition of Tax Ownership of Stock after the Petition Date in violation of the Procedures set forth above shall be null and void *ab initio* as an act in violation of the automatic stay prescribed by section 362 of the Bankruptcy Code and pursuant to this Court's equitable power prescribed in section 105(a) of the Bankruptcy Code.

29. The foregoing notice procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by providing the counterparties with a notice and an opportunity to object and be heard at a hearing. *See, e.g., Harada v. DBL Liquidating Trust (In re Drexel Burnham Lambert Group, Inc.)*, 160 B.R. 729, 733 (S.D.N.Y. 1993) (indicating that opportunity to present objections satisfies due process); *Flynn v. Eley (In re Colo. Mountain Cellars, Inc.)*, 226 B.R. 244, 246 (D. Colo. 1998) (noting that a hearing is not required to satisfy Bankruptcy Rule 9014).

DOCS_SF:97209.2 83990/001

Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing Debtor's estate to unwarranted administrative expenses.

30. The Debtor believes that the above measures constitute a sufficient and cost-effective way of providing notice of the Procedures described above.

## NOTICE

31. Notice of the hearing of this motion shall be provided to (i) the United States Trustee; (ii) any identified equity holder of Tintri, Inc.; (iii) counsel for prepetition and postpetiton lenders and their counsel if known; (iv) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtor, as identified in its chapter 11 petition; (v) the Internal Revenue Service; (vi) the Office of the United States Attorney for the District of Delaware (collectively, the "Notice Parties"), and (vii) all the parties that have requested notice in this proceeding pursuant to Bankruptcy Rule 2002. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered with respect to the Motion in accordance with the Local Rules. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PREVIOUS REQUEST

32. No previous request for the relief sought herein has been made by the Debtor to this or any other court.

WHEREFORE the Debtor respectfully requests (i) entry of an order substantially in the form annexed hereto granting the relief requested herein on an interim basis, (ii) entry of an order granting the relief requested herein on a final basis, and (iii) such other and further relief as is just.

Dated: July 10, 2018

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*

John D. Fiero (CA Bar No. 136557)
Henry C. Kevane (CA Bar No. 125757)
John W. Lucas (CA Bar No. 271038)
Colin R. Robinson (DE Bar No. 5524)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel: (302) 652-4100
Fax: (302) 652-4400
E-mail: jfiero@pszjlaw.com
       hkevane@pszjlaw.com
       jlucas@pszjlaw.com
       crobinson@pszjlaw.com

Proposed Attorneys for Debtor and Debtor in Possession