# EXHIBIT B

## DIP Term Sheet

DOCS_SF:97240.1

*EXECUTION COPY*

## TINTRI, INC.

## SUPERPRIORITY SECURED DEBTOR-IN-POSSESSION CREDIT FACILITY TERM SHEET

### Dated as of July 9, 2018

Reference is made to the following documents (collectively, the "Prepetition TriplePoint Documents") among Tintri, Inc. ("Tintri") and TriplePoint Capital LLC ("TriplePoint"), as such Prepetition TriplePoint Documents have been amended from time to time: (1) Plain English Growth Capital Loan and Security Agreement dated as of February 6, 2015, as amended by (a) the First Amendment to Plain English Growth Capital Loan and Security Agreement dated March 10, 2016, (b) the Second Amendment to Plain English Growth Capital Loan and Security Agreement dated February 24, 2017, (c) the Third Amendment to Plain English Growth Capital Loan and Security Agreement dated June 12, 2017, and (d) the Fourth Amendment to Plain English Growth Capital Loan and Security Agreement dated April 30, 2018 (collectively, the "TriplePoint Growth Capital Loan Agreement"), pursuant to which TriplePoint has made growth capital loans to Tintri (the "Growth Capital Loan Facility"); (2) Plain English Intellectual Property Security Agreement dated as of February 6, 2015, as amended by (x) the First Amendment to Plain English Intellectual Property Security Agreement dated as of March 10, 2016 and (y) the Second Amendment to Plain English Intellectual Property Security Agreement dated as of February 24, 2017 (collectively, the "TriplePoint IP Security Agreement"), pursuant to which Tintri granted TriplePoint a security interest in and to certain intellectual property of Tintri as collateral for the Growth Capital Loan Facility; (3) Pledge Agreement dated as of February 6, 2015 (the "TriplePoint Pledge Agreement"), pursuant to which Tintri pledged certain equity interests to TriplePoint as collateral for the Growth Capital Loan Facility; (4) Deposit Account Control Agreement dated as of February 6, 2015 among Silicon Valley Bank ("SVB"), Tintri, and TriplePoint (the "DACA"), pursuant to which Tintri granted TriplePoint a security interest in cash, funds, or other financial instruments held in certain deposit accounts maintained by SVB as collateral for the Growth Capital Loan Facility; and (5) Securities Account Control Agreement dated as of February 23, 2015 among U.S. Bank, N.A. ("US Bank"), Tintri, and TriplePoint (the "SACA" and, together with the TriplePoint IP Security Agreement, the TriplePoint Pledge Agreement, and the DACA, the "TriplePoint Growth Capital Collateral Documents"), pursuant to which Tintri granted TriplePoint a security interest in securities, financial assets, or other investment property held in a securities account maintained by US Bank as collateral for the Growth Capital Loan Facility.  Reference is also made to that certain Amended and Restated Loan and Security Agreement dated as of April 30, 2018, among Tintri and SVB (as amended from time to time, the "SVB Secured Loan Agreement," together with such ancillary documents executed in connection therewith, the "Prepetition SVB Documents"), pursuant to which SVB has made secured loans to Tintri (the "SVB Credit Facility") and the Subordination Agreement dated as of February 6, 2015, as amended by (i) the First Amendment to Subordination Agreement dated as of February 24, 2017 and (ii) the Second Amendment to Subordination Agreement dated as of April 30, 2018 (collectively, the "SVB Subordination Agreement"), pursuant to which TriplePoint agreed to subordinate its right to payment and security interests under the Prepetition TriplePoint Documents to SVB's right to payment and security interests under the Prepetition SVB Documents.

This term sheet (including all schedules, annexes and exhibits hereto, this "Term Sheet" and together with the Interim Order, the Final Order and the Approved Budget (each as defined below), the "DIP Loan Documentation") describes the terms and conditions of a proposed superpriority secured debtor-in-possession term credit facility (the "DIP Credit Facility") to be provided by the DIP Lender (as defined below) to Tintri in connection with a case (the "Chapter 11 Case") to be filed by Tintri (the "Debtor") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")

pursuant to chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") on or before July 10, 2018 (the "Target Petition Date"). Any rights, consents, or deliverables provided to SVB under this Term Sheet shall cease upon the repayment in full in cash of the amounts owed under the SVB Credit Facility. The Debtor intends to sell substantially all of its assets pursuant to section 363 of the Bankruptcy Code (collectively, the "Sale") in accordance with the DIP Loan Documentation and subject to Bankruptcy Court approval.

This Term Sheet is not an offer for the purchase, sale or subscription or invitation of any offer to buy, sell or to subscribe for any securities. The terms and conditions set forth in this Term Sheet do not constitute or create an agreement, obligation or commitment of any kind by or on behalf of any party, unless and until executed by each of the undersigned parties hereto.

| | |
|---|---|
| Borrower: | Tintri, Inc. |
| Guarantor(s): | None |
| DIP Lender: | TriplePoint Capital LLC |
| Closing Date: | "Interim Closing Date" means the date on which the "Conditions Precedent to the Interim DIP Loan" set forth below shall have been satisfied or waived by the DIP Lender. |
| | "Final Closing Date" means the date on which the conditions precedent to the Final DIP Loan (as defined below) set forth below shall have been satisfied or waived by the DIP Lender. The Interim Order and the Final Order are referred to collectively as the "DIP Orders." |
| Type and Amount: | A loan facility in an aggregate principal amount, before giving effect to the Roll Up (as defined below), of $5,493,000 (the "Maximum Commitment"). |
| Availability: | In accordance with this Term Sheet, to be made available to Borrower as follows: |
| | Interim DIP Loan: A single-draw loan facility to be available on the Interim Closing Date in the aggregate principal amount necessary to fund the Approved Budget (as defined below) until the Final Closing Date, subject to the Draw Conditions (as defined below) and the other provisions of this Term Sheet (the "Interim DIP Loan"); and |
| | Final DIP Loan: A loan facility with two draws in an aggregate principal amount not to exceed (i) the Maximum Commitment (inclusive of the Interim DIP Loan) (the "Final DIP Draws") plus (ii) the amount of any Roll Up (collectively, the "Final DIP Loan" and, together with the Interim DIP Loan, the "DIP Loans"). |
| | Final DIP Draws: The Final DIP Draws shall be made available to the Debtor, subject to the Draw Conditions and the other provisions of this Term Sheet, in two draws, (i) one draw of not more than (a) $4,895,000 less (b) the sum of (I) the Interim DIP Loan and (II) Debtor Excess Cash (as defined below), which draw shall be made available on the Final Closing Date (the "First Final DIP Draw"), and (ii) one draw, Upon Request and Additional Approval (as defined below), of not more than (x) the Maximum Commitment less (y) the sum of (I) the Interim DIP |

- 2 -

Loan, (II) the First Final DIP Draw, and (III) Debtor Excess Cash, which draw (if any) shall be made available after the Final Closing Date and prior to the Maturity Date (as defined below) (the "Second Final DIP Draw").

For purposes of this section, (i) "Debtor Excess Cash" shall mean (a) on the Final Closing Date, the Debtor's available balance of cash and cash equivalents less $500,000, and (b) on the date of the Second Final DIP Draw, the Debtor's available balance of cash and cash equivalents, and (ii) "Upon Request and Additional Approval" shall mean after receipt of a draw request from the Debtor and subject to any legal and business due diligence deemed necessary by the DIP Lender and approval of the DIP Lender, in each case, in its sole discretion.

The DIP Lender shall not be obligated to fund the Interim DIP Loan or the Final DIP Draws unless the Debtor certifies, in a writing signed by an officer of the Debtor, that the following conditions (each, a "Draw Condition") are met as of the date of each draw:

1.  All of the representations and warranties contained in this Term Sheet are true and correct as of that date.

2.  Other than a draw made solely for the purpose of satisfying Payroll Expenses (as defined below), no event has occurred and is continuing, or would result from such draw or any actions related thereto, that constitutes an Event of Default (as defined below) under this Term Sheet; *provided*, that, in the event that (i) the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code or (ii) a chapter 11 trustee or examiner is appointed under section 1104 of the Bankruptcy Code (each, a "Specified Event of Default"), the DIP Lender shall not be required to fund any draw request including a draw request made for the purpose of satisfying Payroll Expenses (except for a draw request that is made by the Borrower before the date of any such conversion or appointment).

3.  The Debtor has delivered to the DIP Lender the most recent Approved Budget and such other information as requested by the DIP Lender, in form and substance satisfactory to the DIP Lender in its reasonable discretion.

4.  The amounts requested by the Debtor shall be used for an authorized purpose as defined under "Purpose" below and in accordance with the Approved Budget, subject to a Permitted Variance (as defined below).

5.  With respect to the Second Final DIP Draw, the Debtor shall have received either Excess Sale Proceeds (as defined below) or proceeds from a sale of a material portion of the assets of the Debtor, in each case on or prior to the date on which the Draw Conditions are measured.

Purpose:    DIP Loans will be used for (a) working capital and general corporate purposes of the Debtor, (b) bankruptcy-related costs and expenses

DM_US 153190626-23.082853.0087

(subject to the Carve-Out (as defined below)), (c) costs and expenses related to the Sale, all in accordance with the Approved Budget and, (d) for any other purpose agreed upon in the DIP Loan Documentation.

Upon the Interim Closing Date, the Debtor shall establish a reserve, utilizing the proceeds of the DIP Loans and/or Cash Collateral (as defined in the DIP Orders) (the "Payroll Reserve"), of $1,890,000 (to be adjusted from time to time pursuant to the Approved Budget) to pay wages, benefits, withholdings, and commissions owed to employees and independent contractors, along with related payroll management expenses (collectively, the "Payroll Expenses"), that have or will come due through the Final Closing Date as set forth in the Approved Budget. Subject to the satisfaction of the Draw Conditions, upon the Final Closing Date, the Debtor shall place additional funds into the Payroll Reserve for Payroll Expenses that will come due for the period from such date through the Outside Date (as defined below) as set forth in the Approved Budget. The funds contained in the Payroll Reserve shall be used only for Payroll Expenses and not for any other purpose; provided, that, (i) notwithstanding the occurrence and continuation of any Event of Default other than a Specified Event of Default (as defined in the DIP Term Sheet), the Debtor shall be authorized to access and use funds contained in the Payroll Reserve and Cash Collateral to pay and satisfy Payroll Expenses accrued through the effective date of a termination of the Debtor's entitlement to use Cash Collateral and/or receive DIP Loans under the DIP Loan Documentation, as applicable, and (ii) notwithstanding the occurrence and continuance of a Specified Event of Default, the Debtor shall be authorized to access and use funds contained in the Payroll Reserve and Cash Collateral to pay and satisfy Payroll Expenses accrued through the date on which such Specified Event of Default shall have occurred. For the avoidance of doubt, notwithstanding the deposit of funds in the Payroll Reserve, the funds contained in the Payroll Reserve shall retain their characteristics as Cash Collateral and remain subject to (a) the DIP Liens, (b) the pre-petition liens and security interests of SVB and TriplePoint, and (c) the Adequate Protection Liens (as defined in the DIP Orders), in each case subject to the priorities set forth in the SVB Subordination Agreement and/or the DIP Loan Documentation, as applicable.

None of the proceeds of the DIP Loans or Cash Collateral shall be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against (a) TriplePoint (in its capacity as Pre-Petition Junior Secured Lender (as defined in the DIP Orders)) or (b) SVB (in its capacity as Pre-Petition Senior Secured Lender (as defined in the DIP Orders)), except up to the amount of $15,000 for an investigation by certain parties in interest as set forth in the DIP Orders.

DM_US 153190626-23.082853.0087

| | |
|---|---|
| Budget, Projections, and Reporting: | Subject to the satisfaction of the conditions precedent set forth below, use of cash shall be subject to (and limited by) (a) the Borrower's calculation of the Borrowing Base (as defined in the SVB Secured Loan Agreement), and (b) a weekly budget for the period commencing on the Target Petition Date and ending on October 5, 2018 (the "Outside Date"), which budget shall include an itemized list of expenses to be incurred during each week along with information sufficient to denote the purpose of such expenses and shall be in form and substance acceptable to the DIP Lender and SVB, in their sole and absolute discretion (the "Approved Budget," a copy of which is attached as Exhibit B to this Term Sheet). The Approved Budget may be amended upon consent of the DIP Lender and SVB and shall, at a minimum, contain the following categories: (i) operating inflows, (ii) operating disbursements, (iii) non-operating disbursements, (iv) bankruptcy related disbursements, and (v) Overadvances (as set forth in Section 2.4 of the SVB Secured Loan Agreement) (each, a "Reporting Category"). |

By no later than 12:00 pm ET on the first Friday following the Petition Date, Borrower shall deliver to the DIP Lender and SVB (a) a variance report (each, a "Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget, and (b) a Borrowing Base Statement (as defined in the SVB Secured Loan Agreement). Thereafter, Borrower shall deliver to the DIP Lender and SVB, by no later than 12:00 pm ET on each Tuesday and Friday after the Petition Date, a Variance Report for the period from the Petition Date through the date prior to such delivery date.

Each Variance Report shall indicate whether there are any adverse variances that exceed the allowed variances, which means, in each case measured on a cumulative basis for each week and for the period from the Petition Date, (x) up to 10% of each Reporting Category, or (y) up to 10% in the aggregate for all cash receipts and cash disbursements (in either case, a "Permitted Variance").

The Debtor shall timely deliver to the DIP Lender and SVB daily reports listing all cash receipts and cash disbursements made during each business day after the Petition Date (each, a "Daily Cash Report" and, together with the Variance Reports, the "DIP Budget Reports"), *provided*, that the Debtor shall provide each such Daily Cash Report no later than 5:00 pm ET on the following business day.

Cash from incoming accounts receivable collections will be deposited upon receipt into the Borrower's existing restricted cash collateral account. Thereafter, collections shall be released from the restricted cash collateral account to the Borrower's operating/disbursement account on a daily basis, and may be utilized by the Debtor strictly in accordance with the Approved Budget and this Term Sheet. On not less than a weekly basis, the Debtor will reconcile against the most recently delivered Borrowing Base Statement and where required make a payment to SVB in the amount of any Overadvance (as defined in the SVB Secured Loan Agreement).

Priority:    The DIP Orders shall also provide authorization for the Debtor to use Cash Collateral of TriplePoint and SVB in the manner, and according to the terms, conditions and limitations, set forth in the DIP Orders and the Approved Budget.

All DIP Loans and other liabilities and obligations of the Borrower to the DIP Lender under or in connection with this Term Sheet, the DIP Loan Documentation, the Interim Order or Final Order (collectively, the "DIP Obligations") shall be:

(i)    pursuant to section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the Chapter 11 Case with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code and including the proceeds of Avoidance Actions (as defined below) only from and after the Final Closing Date and subject to entry of the Final Order (but in all cases subject to the Carve-Out and SVB's 507(b) claims);

(ii)    pursuant to sections 364(c)(2), secured by a perfected first-priority lien on the DIP Collateral (as defined below) to the extent that such Collateral is not subject to valid, perfected and non-avoidable liens as of the Petition Date (but in all cases subject to the Carve-Out and SVB's adequate protection liens);

(iii)    pursuant to section 364(c)(3) of the Bankruptcy Code, secured by a perfected junior priority lien on the DIP Collateral, to the extent that such Collateral is subject to (i) pre- and postpetition liens in favor of SVB, including adequate protection liens (the "SVB Liens"), (ii) Permitted Liens (as defined in the TriplePoint Growth Capital Loan Agreement) that are expressly provided to be senior in priority to liens of TriplePoint under the TriplePoint Growth Capital Loan Agreement, or (iii) valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code (the liens specified in subsections (ii) and (iii) hereof are referred to collectively as "Existing Prepetition Liens"), but in all cases subject to the Carve-Out; and

(iv)    pursuant to section 364(d) of the Bankruptcy Code, secured by a perfected priming security interest and lien granted to the DIP Lender (the "Priming DIP Liens") in and on all the DIP Collateral (but in all cases subject to the Carve-Out), subordinated only to the SVB Liens and Existing Prepetition Liens. All existing liens, rights and interests granted to or for the benefit of TriplePoint under the TriplePoint Growth Collateral Documents or any other creditor that is *pari passu* with or subordinate to TriplePoint shall be primed and made subject to and subordinate to the Priming DIP Liens (but in

DM_US 153190626-23.082853.0087

all cases subject to the Carve-Out).

(v)     The Priming DIP Liens shall not be subject to being treated *pari passu* with or subordinated to any other liens or security interests other than the SVB Liens (whether currently existing or hereafter created, including SVB's adequate protection liens), subject in each case only to permitted exceptions to be expressly agreed upon in writing by the DIP Lender in its sole and absolute discretion or imposed by applicable non-bankruptcy law (collectively, the "Permitted Liens"), and the Priming DIP Liens shall be junior and subordinate to payment of the Carve-Out.

Under the proposed Interim Order, the term "Carve-Out" means, collectively: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) ("US Trustee Fees"), (ii) fees payable to the Clerk of the Bankruptcy Court ("Case Administration Fees"), (iii) unpaid postpetition professional fees and expenses ("Debtor Professional Fees") payable to each legal or financial advisor retained by the Debtor, including the noticing agent (the "Debtor Professionals") that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined in the Interim Order or Final Order as in effect), but subject to the aggregate amount(s) set forth in the Approved Budget and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event); (iv) unpaid professional fees and expenses (together with the Debtor Professional Fees, the "Professional Fees") payable to each legal or financial advisor retained by the Committee that are incurred or accrued prior to the date of the occurrence of a Termination Event but subject to the aggregate amount(s) set forth in the Approved Budget and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event), (v) Case Administration Fees and Professional Fees paid on or after the date of the occurrence of a Termination Event in an aggregate amount not to exceed $25,000, and (vi) in the event this Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, reasonable fees and expenses incurred by a duly-appointed trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $25,000.

The Debtor shall establish a reserve (the "US Trustee Reserve") of funds to pay US Trustee Fees that have or will come due during the pendency of this Chapter 11 Case. After the Petition Date, the Debtor shall periodically place into the US Trustee Reserve an amount equal to the estimated US Trustee Fees as calculated based on the Debtor's accumulated disbursements. The funds contained in the US Trustee Reserve shall be used only for US Trustee Fees and not for any other purpose.

For the avoidance of doubt, to the extent that (a) proceeds from the DIP Loans and/or (b) Cash Collateral are used under the DIP Orders on

- 7 -

account of Professional Fees set forth in the Approved Budget, such amounts shall be deemed to correspondingly reduce the Carve-Out for such Professional Fees, whether or not such funds are disbursed to or for the benefit of such professionals.  The Debtor shall be permitted to establish a segregated escrow account maintained by its general insolvency counsel for the benefit of the holders of Professional Fees to reserve, on a weekly basis, funds in an amount equal to 50% of the Carve-Out for such Professional Fees pending approval of the Bankruptcy Court to disburse such funds to the respective beneficiaries of the Carve-Out (not to exceed the amounts allocated for each such beneficiary under the Approved Budget).  To the extent that (a) any reserved funds are not allowed by the Bankruptcy Court to be disbursed to a beneficiary of the Carve-Out or (b) such reserved funds relate to any period during which such beneficiary of the Carve-Out is no longer employed by the Debtor, such funds shall revert to the Debtor and remain subject to the liens and priorities set forth in the DIP Orders (including the priorities set forth above in the Priorities section of this Term Sheet).

For the avoidance of doubt and notwithstanding anything to the contrary herein or elsewhere, the Carve-Out shall be senior to all claims and liens, including DIP Liens, the SVB Liens and liens granted to TriplePoint under the TriplePoint Growth Collateral Documents, as well as any adequate protection liens and claims described herein, other than Existing Prepetition Liens (except for the SVB Liens insofar as they are defined as Permitted Liens under the TriplePoint Growth Collateral Documents).

| | |
|---|---|
| Roll-Up of Prepetition TriplePoint Documents: | Subject to the entry of the Final Order, on the Final Closing Date, the indebtedness of Borrower under, in connection with, or with respect to the Prepetition TriplePoint Documents, whether for borrowed money, fees, expenses, or otherwise shall be converted into DIP Loans (the "Roll-Up"), subject to customary challenge rights in favor of creditors or any statutory committee; *provided*, that the total amount of the Roll-Up shall not exceed $25 million plus interest payable on such amounts under this Term Sheet from and after the Petition Date.  The Roll-Up is subject to the terms and conditions of this Term Sheet. |
| Adequate Protection: | **SVB:** As adequate protection, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and in consideration for SVB consenting to Borrower's continuing to use SVB's Collateral (as defined in the Prepetition SVB Documents), including Cash Collateral, SVB shall receive, *inter alia*, (a) replacement liens on DIP Collateral securing borrowings made under the Prepetition SVB Documents and (b) a 507(b) Claim (as defined in the Interim Order), in each case, subject to the Carve-Out and in an amount equal to the aggregate diminution in value of its interests in such Collateral occurring on or after the Petition Date. |

In addition to (a) and (b) above, SVB shall receive additional adequate protection as follows: (i) accrual of interest at the Default Rate (as provided in Section 2.5 of the SVB Secured Loan Agreement); *provided*, that the Borrower shall be required to only make current payment of interest at the Applicable Rate or the Non-Formula Applicable Rate, as applicable (each such terms as defined in the SVB Secured Loan

- 8 -

Agreement), and (ii) reimbursement of SVB's reasonable and documented professionals' fees and expenses (such reimbursement to be made in the manner and in accordance with the procedures set forth in the DIP Orders).

**TriplePoint:** As adequate protection, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and in consideration for TriplePoint consenting to Borrower's continuing to use TriplePoint's Collateral (as defined in the Prepetition TriplePoint Documents), including Cash Collateral, TriplePoint shall receive, *inter alia*, (a) replacement liens on DIP Collateral securing borrowings made under the Prepetition TriplePoint Documents, with such adequate protection liens being junior only to (i) the claims and liens of SVB (including SVB's Adequate Protection Liens) and (ii) the claims and liens of the DIP Lender, and (b) a 507(b) Claim (junior in priority to SVB's 507(b) Claim), in each case subject to the Carve-Out and in an amount equal to the aggregate diminution in value of its interests in such Collateral occurring on or after the Petition Date.

| | |
|---|---|
| Collateral | "DIP Collateral" means, collectively, all now owned or hereafter acquired assets and property of the Debtor and its chapter 11 estate, whether real or personal, tangible or intangible, or otherwise, and any and all proceeds therefrom, including, without limiting the generality of the foregoing, all cash, accounts, accounts receivable, inventory, property, plant and equipment, real estate, leaseholds, vehicles, trailers, rolling stock, avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") (from and after the Final Closing Date and subject to entry of the Final Order), all intercompany claims, any and all proceeds available to the Debtor arising from insurance policies (including, without limitation, policies for the benefit of directors and officers of Borrower), all claims and causes of action of the Debtor or its estate and any and all proceeds therefrom, and all intellectual property, which "Collateral," for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of the Borrower that are secured pursuant to the Prepetition TriplePoint Documents. |
| Interest Rate: | 12.75% per annum, with such interest payable in cash monthly in arrears on the monthly anniversary of the Petition Date, computed based on a 360-day year; *provided* that interest payable on the Roll-Up from and after the Petition Date may be paid-in-kind absent an Event of Default, *provided further* that such paid-in-kind interest shall be due and payable in cash upon the Maturity Date. |
| Default Interest: | At all times while a default exists, principal, interest and other amounts shall bear interest at a rate per annum equal to 5.00% in excess of the interest rate set forth under "Interest Rate" above. |
| Maturity Date: | The DIP Loans shall mature on the earliest to occur of the following (such date, the "Maturity Date"): |

       (i)      September 21, 2018; and

      (ii)     the acceleration of any of the DIP Loans and the termination of the commitments to make the DIP Loans in accordance

- 9 -

with the terms of this Term Sheet or the DIP Loan Documentation, as applicable (including, without limitation, the non-satisfaction of any Chapter 11 Milestone (as defined in Exhibit A to the DIP Term Sheet) by the applicable specified deadline and the non-waiver of such non-satisfaction by the DIP Lender).

**Optional Prepayments:** The Borrower may prepay the DIP Loans (subject to repayment of the SVB Credit Facility) and terminate the Maximum Commitment in whole or in part at any time.

**Mandatory Prepayments:** The following amounts shall be applied, after reserving any amounts in the Approved Budget that have not yet been incurred (whether prior to or after a Sale, including the Carve-Out, and net of any associated costs of Sale, such as success fees payable to certain professionals retained by the Debtor with the approval of the Bankruptcy Court) (the "Excess Sale Proceeds"), to repay the SVB Credit Facility, the DIP Loans, and obligations related thereto (each, a "Mandatory Prepayment Event"):

(i)     100% of the Excess Sale Proceeds from any Sale simultaneous with the consummation thereof; and

(ii)    100% of the net proceeds of any sales (other than FFE Sales (as defined below) or other extraordinary receipts (including tax refunds, indemnity payments, pension reversions, acquisition purchase price adjustments and insurance proceeds not included as proceeds of asset dispositions in the Approved Budget) realized by the Debtor.

The Debtor will not seek or support entry of any order that provides for a Sale unless SVB and the DIP Lender consent to such Sale.

The Debtor may use proceeds from the FFE Sales in accordance with the Approved Budget for any authorized purpose.

**Representations and Warranties:** Customary and appropriate for financings of this type, as set forth in the DIP Orders.

**Conditions Precedent** Conditions Precedent to Interim DIP Loan. The obligations of the DIP Lender to make the Interim DIP Loan will be subject to satisfaction, or waiver by the DIP Lender in its sole and absolute discretion, of the following conditions precedent:

(i)     the Debtor shall have timely delivered the Approved Budget to the DIP Lender;

(ii)    the Chapter 11 Milestones listed in Exhibit A hereto shall have been satisfied by the applicable Specified Deadline;

(iii)   the Interim Order, as entered by the Bankruptcy Court, shall not have been reversed, modified, amended, stayed or vacated, without the consent of the DIP Lender. The Borrower shall be in compliance in all respects with the Interim Order;

(iv)    the Debtor shall have insurance (including, without limitation, commercial general liability and property

- 10 -

insurance) with respect to the Collateral in such amounts and scope as is customary; and

(v)    no Event of Default shall have occurred and be continuing on the Interim Closing Date.

The DIP Orders shall contain provisions that the foregoing conditions precedent to making the DIP Loans shall apply with equal force and effect as conditions precedent to the Pre-Petition Lenders' consent to the Debtor's use of Cash Collateral, subject to the exceptions set forth in this Term Sheet for funding of the Payroll Reserve.

Covenants:    The Debtor shall:

(i)    satisfy, or cause to be satisfied, each Chapter 11 Milestone on or before the applicable Specified Deadline set forth in Exhibit A hereto; provided that, in the event that any order specified to be entered by the Bankruptcy Court by a Specified Deadline is not entered by such Specified Deadline, or a hearing to be held by a Specified Deadline is not held by such Specified Deadline, in either case solely by reason of the unavailability of, or inaction by, the Bankruptcy Court, then the Debtor, the DIP Lender, and SVB shall negotiate in good faith for a reasonable extension of such Specified Deadline; provided further that any such extension shall not cause the Maturity Date to extend past September 21, 2018;

(ii)    timely deliver, or cause to be timely delivered, to the DIP Lender and SVB the Approved Budget and DIP Budget Reports, all in accordance with the provisions set forth above;

(iii)    deliver to DIP Lender and SVB financial and other information reasonably requested by DIP Lender and provide access to such other information (including, without limitation, historical information) and personnel (including, without limitation, through in-person meetings), all as may be reasonably requested by the DIP Lender and SVB;

(iv)    maintain sufficient funds in the Payroll Reserve in the amounts set forth in and in accordance with the DIP Orders;

(v)    upon request of the DIP Lender, obtain additional insured and loss payee endorsements, as applicable, to the Debtor's insurance policies with respect to the Collateral that name the DIP Lender and SVB as an additional insured and loss payee, as applicable, in form and substance reasonably acceptable to the DIP Lender and SVB;

(vi)    comply with the provisions of the DIP Loan Documentation; and

(vii)    take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper or advisable

under applicable law, and to execute and deliver such documents and other papers, as may be required or reasonably requested by the DIP Lender and SVB to carry out the provisions of the DIP Loan Documentation.

The Debtor shall not, without the prior written consent of the DIP Lender and SVB, do, cause to be done, or agree to do or cause to be done, any of the following:

(i)     create, incur, assume or suffer to exist any indebtedness, except indebtedness expressly contemplated by this Term Sheet, or cause, permit to be caused, or agree to cause or permit to be caused, any direct or indirect subsidiary of Borrower that is not a Debtor to, create, incur, assume or suffer to exist any such indebtedness other than (x) trade payables created or incurred in the ordinary course of the Debtor's business or (y) indebtedness created or incurred by any of the Debtor's foreign subsidiaries in connection with an orderly liquidation of such subsidiary's foreign assets;

(ii)    create, incur, assume or suffer to exist any lien upon any of its property, assets, income or profits, whether now owned or hereafter acquired, except Existing Prepetition Liens, and shall not cause, or permit to be caused, any direct or indirect subsidiary of Borrower that is not a Debtor to, create, incur, assume or suffer to exist any such liens other than (x) liens arising in connection with trade payables created or incurred in the ordinary course of the Debtor's business or (y) liens created or incurred by any of the Debtor's foreign subsidiaries in connection with an orderly liquidation of such subsidiary's foreign assets;

(iii)   convey, sell, lease, assign, transfer or otherwise dispose of (including through a transaction of merger or consolidation) any of its property, business or assets, whether now owned or hereafter acquired, out of the ordinary course of business, and shall not cause, or permit to be caused, any sales, transfers or other dispositions to or from any of its foreign direct or indirect subsidiaries or affiliates (whether or not such foreign subsidiary or affiliate is a Debtor hereunder) other than (x) furniture, fixtures, equipment, and real property leases conveyed, sold, leased, assigned, transferred or otherwise disposed of (including through a transaction of merger or consolidation) by the Debtor in connection with the closing of one or more of the Debtor's operating locations (collectively, the "FFE Sales"), subject to Bankruptcy Court approval, and (y) assets conveyed, sold, leased, assigned, transferred or otherwise disposed of (including through a transaction of merger or consolidation) by any of the Debtor's foreign subsidiaries in connection with an orderly liquidation of such subsidiary's foreign assets; or

- 12 -

(iv)    incur or make any expenditure (including, without limitation, any capital expenditure), investment or other payment, other than in accordance with the Approved Budget, subject to the Permitted Variances.

<u>Events of Default:</u>    "Events of Default" shall include the following and any other defaults specified as such in the DIP Orders:

(i)    the occurrence of any deviation from the Approved Budget that is greater than the Permitted Variances;

(ii)    failure of any of the Chapter 11 Milestones to be satisfied or, following execution of the asset purchase agreement referenced in the Chapter 11 Milestones, an express written statement indicating that the buyer does not intend to go forward with the sale;

(iii)    failure by the Debtor to be in compliance in all respects with any provision of the DIP Loan Documentation;

(iv)    reversal, modification, amendment, stay or vacation of the Interim Order or the Final Order, as entered by the Bankruptcy Court, without the prior written consent of the DIP Lender and SVB;

(v)    the filing with the Bankruptcy Court of a plan of reorganization or liquidation in the Chapter 11 Case that does not provide for indefeasible payment in full in cash to SVB of amounts outstanding under the SVB Credit Facility and the DIP Lender of the DIP Loans (including the portion of the DIP Loans related to the Roll Up), and all other amounts outstanding under this Term Sheet on the effective date of such plan;

(vi)    the appointment in the Chapter 11 Case of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the business of the Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code);

(vii)    the filing of a motion by the Debtor seeking dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(viii)    the granting of relief from the automatic stay by the Bankruptcy Court as to any material assets of the Debtor to any other creditor or party in interest in the Chapter 11 Case;

(ix)    failure of all amounts due and owing to the DIP Lender under, in respect of or in connection with the DIP Credit Facility to be paid in full in cash on the Maturity Date; and

(x)    any provision in this Term Sheet shall cease to be binding on or enforceable against the parties hereto.

An Event of Default may be waived by the DIP Lender in its sole and absolute discretion; *provided* that any waiver by the DIP Lender shall

- 13 -

not be binding on SVB or SVB's ability to declare an Event of Default under the DIP Orders.

**Remedies Upon Default:**

Upon the occurrence and during the continuance of any Event of Default under this Term Sheet or the DIP Order, subject to three (3) business days' notice to the Debtor and SVB and an opportunity to seek an expedited hearing before the Bankruptcy Court (at which hearing the sole issue shall be limited to whether or not an Event of Default has occurred), the DIP Lender may take all or any of the following actions without further order of or application to the Bankruptcy Court, and notwithstanding the automatic stay:

    (i)      declare the principal of, and accrued interest on, any outstanding DIP Loans to be immediately due and payable;

    (ii)     terminate any further commitment to lend to the Borrower;

    (iii)    subject to the SVB Liens (including adequate protection liens), set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Lender); or

    (iv)    subject to the prior consent of SVB (which consent shall not be unreasonably withheld, denied, delayed or conditioned), and without application or motion to, or further orders from, the Bankruptcy Court or any other court, and without interference from the Debtor or any other party in interest, take any other action or exercise any other right or remedy (including, without limitation, with respect to the Priming DIP Liens and DIP Collateral) permitted under this Term Sheet, the DIP Loan Documentation or under applicable law, including, without limitation, exercising any and all rights and remedies with respect to the DIP Collateral or any portion thereof; *provided*, that, in the event in the reasonable exercise of its discretion, SVB declines to provide its consent to the DIP Lender's exercise of rights and remedies under the DIP Loan Documentation, the DIP Lender shall be entitled to file a motion or application in the Bankruptcy Court seeking, on an expedited basis of not less than two (2) business days' notice to SVB, authorization to exercise such rights and remedies notwithstanding SVB's objection thereto; *provided further*, that SVB's rights to oppose any such motion or application are fully reserved and preserved.

**Other Bankruptcy Matters:**

The Borrower shall indemnify, pay and hold harmless the DIP Lender (strictly in its capacity as such) (and their respective directors, officers, employees and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction).

The DIP Orders shall contain releases and exculpations for TriplePoint

- 14 -

and SVB in respect of any matters arising prior to the Petition Date, subject to customary challenge rights in favor of creditors or any statutory committee.

Governing Law and Jurisdiction

The laws of the State of California (except as governed by the Bankruptcy Code) shall govern this Term Sheet, except with respect to conflicts of laws.

The DIP Loan Documentation will provide that the Borrower, the DIP Lender, and SVB shall submit to the exclusive jurisdiction of the Bankruptcy Court for purposes of resolving any and all disputes as may arise under the DIP Loan Documentation, shall further waive any right to trial by jury, and, to the extent such waiver of the right to trial by jury is found to be unenforceable, shall include customary judicial reference provisions.

*[Signature Pages to Follow]*

DM_US 153190626-23.082853.0087

IN WITNESS HEREOF, the parties hereto have caused this Term Sheet to be executed as of the date set forth above.

**TRIPLEPOINT CAPITAL LLC,**                    **TINTRI, INC.,**
as DIP Lender                                             as Borrower


By: _____                    By: _____
Name: _____                         _____
Title: Chief Executive Officer                      Title: _____




THE FOREGOING IS CONSENTED TO BY:

**SILICON VALLEY BANK,**
As Pre-Petition Senior Secured Lender


By: _____
         _____
Title: _____

[SIGNATURE PAGE TO DIP TERM SHEET]

IN WITNESS HEREOF, the parties hereto have caused this Term Sheet to be executed as of the date set forth above.

**TRIPLEPOINT CAPITAL LLC,**
as DIP Lender

By: _____

Title: _____

**TINTRI, INC.,**
as Borrower

By: _____

Title: _____

THE FOREGOING IS CONSENTED TO BY:

**SILICON VALLEY BANK,**
As Pre-Petition Senior Secured Lender

By: _____

Title: _____

[SIGNATURE PAGE TO DIP TERM SHEET]

**EXHIBIT A**
**TO TERM SHEET**

**CHAPTER 11 MILESTONES**

The obligations of the DIP Lender to advance the DIP Loans shall be subject to the Debtor satisfying, or causing the satisfaction of, the milestones listed below (collectively, the "Chapter 11 Milestones") by the specified deadline (after taking into account any applicable cure period, the "Specified Deadlines"). The non-satisfaction of any Chapter 11 Milestone by the applicable Specified Deadline (and the non-waiver of such non-satisfaction by the DIP Lender and SVB in their sole and absolute discretion) shall be an Event of Default under the DIP Loan Documentation.

| | **Chapter 11 Milestone** | **Specified Deadline** |
|---|---|---|
| 1. | Commencement of the Chapter 11 Case and filing with the Bankruptcy Court of the DIP Motion,[1] and such other first day papers as may be approved or requested by the DIP Lender all of which shall be in form and substance acceptable to the DIP Lender | On or prior to 9:00 am Eastern time on July 10, 2018 (or by such later date as the DIP Lender and SVB may agree in writing) |
| 2. | Entry by the Bankruptcy Court of the Interim Order[2] | By July 12, 2018 (or by such later date as the DIP Lender and SVB may agree in writing) |
| 3. | Filing of the Sale Procedures Motion, which shall be in the form and substance acceptable to the DIP Lender | By July 24, 2018 (or by such later date as the DIP Lender and SVB may agree in writing) |
| 4. | Execution by the buyer and the Debtor of an asset purchase agreement for the sale of substantially all of the Debtor's assets in a form approved by the DIP Lender | By July 24, 2018 (or by such later date as the DIP Lender and SVB may agree in writing) |
| 5. | Entry by the Bankruptcy Court of the Final Order[3] | By August 10, 2018 (or by such later date as the DIP Lender and SVB may agree in writing) |
| 6. | Entry by the Bankruptcy Court of the Sale Procedures Order | By [_____][4] (or by such later date as the DIP Lender and SVB may agree in writing) |

---

[1] "DIP Motion" means a motion, in form and substance acceptable to the DIP Lender, to be filed in the Bankruptcy Court, pursuant to which motion the Debtor shall seek entry of the (i) Interim Order, and (ii) Final Order.

[2] "Interim Order" means an order of the Bankruptcy Court authorizing and approving the DIP Loans (including, without limitation, the Interim DIP Loan) on an interim basis, which order shall be consistent with the terms of this Term Sheet and be in form and substance acceptable to the DIP Lender and SVB in their sole and absolute discretion.

[3] "Final Order" means an order of the Bankruptcy Court authorizing and approving the DIP Loans on a final basis, which order shall be consistent with the terms of this Term Sheet and the DIP Loan Documentation, shall otherwise be in form and substance acceptable to the DIP Lender and SVB in their sole and absolute discretion, and shall include provisions to be specified by the DIP Lender and SVB to which the Debtor agrees.

[4] To be calculated as thirty (30) calendar days after the filing of the Sales Procedure Motion.

|   | **Chapter 11 Milestone** | **Specified Deadline** |
|---|---|---|
| 7. | Auction, in accordance with the Sale Procedures Motion | By no later than 10:00 a.m. Eastern time on [_____][5] (or by such later date as the DIP Lender and SVB may agree in writing) |
| 8. | Entry of an order approving the Sale | September 21, 2018 |

---

[5] To be calculated as twenty (20) calendar days after entry of the Sales Procedure Order.

DM_US 153190626-23.082853.0087

**EXHIBIT B**
**TO TERM SHEET**

**APPROVED BUDGET**

**Tintri**
**DIP Budget - Cash Forecast Summary**
**($ in 000's)**

| | | Wk.1 Jul-18 14-Jul | Wk.2 Jul-18 21-Jul | Wk.3 Jul-18 28-Jul | Wk.4 Aug-18 4-Aug | Wk.5 Aug-18 11-Aug | Wk.6 Aug-18 18-Aug | Wk.7 Aug-18 25-Aug | Wk.8 Sep-18 1-Sep | Wk.9 Sep-18 8-Sep | Wk.10 Sep-18 15-Sep | Wk.11 Sep-18 22-Sep | Wk.12 Oct-18 29-Sep | Wk.13 Oct-18 6-Oct | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **I. Cash Flow** | | | | | | | | | | | | | | |
| | 1.) Receipts | 812 | 915 | 957 | 993 | 989 | 841 | 635 | 1,319 | 252 | 126 | 25,064 | - | - | 32,903 |
| | 2.) Employee Expense | (594) | (138) | (1,084) | (75) | (697) | (233) | (411) | (343) | (382) | (73) | (200) | (23) | (23) | (4,276) |
| | 3.) Occupancy Expense | (204) | - | (233) | (6) | - | (50) | - | (239) | (50) | - | - | - | - | (782) |
| | 4.) Other SG&A Expense | (714) | (645) | (330) | (324) | (253) | (434) | (313) | (156) | (222) | (98) | (148) | (24) | (24) | (3,684) |
| (A) | 5.) Operating Disbursements | (1,511) | (782) | (1,646) | (405) | (950) | (718) | (724) | (738) | (654) | (171) | (348) | (47) | (47) | (8,741) |
| | 6.) Lender's Fees & Interest | (300) | | | | | | | | | | (712) | | | (1,322) |
| | 7.) Wage & Benefit Motion (Employee Expense) | (48) | | | | | | | | | | | | | (48) |
| | 8.) Tax Motion (Property & Franchise) | (30) | | | (233) | | | | | | | | | | (263) |
| | 9.) Utility Deposit | (20) | | | | | | | | | | | | | (20) |
| | 10.) KERP | - | | | | | | | | | | (330) | | | (330) |
| | 11.) Prof Fee Carve Out | (109) | | | | | | | | | | (1,135) | | | (2,543) |
| | 12.) Asset Sale Success Fees (FFE & IB) | - | | | | | | | | | (100) | (400) | | | (500) |
| | 13.) BK Trustee, Wind Down & Other | (10) | | | | | | | | | | | | (688) | (771) |
| (A) | 14.) Total Non Op Disbursements | (516) | (129) | (151) | (507) | (106) | (106) | (129) | (574) | (114) | (114) | (2,582) | (80) | (688) | (5,796) |
| | 15.) Total Disbursements | (2,027) | (911) | (1,798) | (912) | (1,056) | (824) | (853) | (1,312) | (767) | (285) | (2,930) | (127) | (735) | (14,538) |
| (A) | 16.) Net Cash Flow | (1,216) | 4 | (840) | 82 | (68) | 16 | (218) | 7 | (515) | (158) | 22,134 | (127) | (735) | 18,365 |
| | **II. Liquidity** | | | | | | | | | | | | | | |
| | 17.) Beginning Cash | 148 | 433 | 574 | 623 | 82 | 660 | 500 | 467 | 434 | 620 | 507 | 14,467 | 14,340 | 148 |
| (A) | 18.) Net Cash Flow | (1,216) | 4 | (840) | 82 | (68) | 16 | (218) | 7 | (515) | (158) | 22,134 | (127) | (735) | 18,365 |
| | 19.) SVB Revolver Borrowings / (Pay downs) | (155) | - | (195) | (120) | (192) | (284) | (226) | (164) | (180) | (95) | (3,099) | - | - | (4,709) |
| | 20.) DIP - Payroll Reserve Funding | | | | | | | | | | | | | | (598) |
| | 21.) DIP - Payroll Reserve Borrowings | | | | | | | | | | | | | | 4,031 |
| | 22.) DIP - Borrowings / (Pay downs) | | | | | | | | | | | (4,895) | | | (3,633) |
| | 23.) Ending Cash | 433 | 574 | 623 | 82 | 660 | 500 | 467 | 434 | 620 | 507 | 14,467 | 14,340 | 13,605 | 13,605 |
| | **III. Revolver / DIP** | | | | | | | | | | | | | | |
| | 24.) Accounts Receivable | 8,289 | 8,348 | 8,028 | 7,535 | 6,947 | 6,368 | 5,934 | 5,715 | 5,475 | 5,349 | 5,285 | 5,285 | 5,285 | 5,285 |
| | 24.) Accounts Receivable at 75% Advance | 6,217 | 6,261 | 6,021 | 5,651 | 5,210 | 4,776 | 4,450 | 4,286 | 4,106 | 4,012 | 3,964 | 3,964 | 3,964 | 3,964 |
| | 25.) Less Ineligibles | (1,663) | (1,663) | (1,663) | (1,413) | (1,163) | (1,013) | (913) | (913) | (913) | (913) | (913) | (913) | (913) | (913) |
| | 25.) Borrowing Base | 4,554 | 4,598 | 4,358 | 4,238 | 4,047 | 3,763 | 3,537 | 3,373 | 3,193 | 3,099 | 3,051 | 3,051 | 3,051 | 3,051 |
| | 26.) Beginning SVB Debt | 4,709 | 4,554 | 4,554 | 4,358 | 4,238 | 4,047 | 3,763 | 3,537 | 3,373 | 3,193 | 3,099 | - | - | 4,709 |
| | 26.) Change in Debt | (155) | - | (195) | (120) | (192) | (284) | (226) | (164) | (180) | (95) | (3,099) | - | - | (4,709) |
| (A) | 27.) Ending SVB Debt | 4,554 | 4,554 | 4,358 | 4,238 | 4,047 | 3,763 | 3,537 | 3,373 | 3,193 | 3,099 | - | - | - | - |
| (A) | 28.) SVB Over Advance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | 29.) Beginning TPC DIP | - | 1,890 | 2,952 | 2,952 | 2,952 | 4,695 | 4,695 | 4,695 | 4,695 | 4,885 | 4,885 | - | - | |
| | 30.) Funding to Payroll Reserve | 1,890 | - | - | - | 1,743 | - | - | - | - | - | - | - | - | 3,633 |
| | 31.) Other DIP Funding / (Paydown) | - | 1,062 | - | - | - | - | - | - | 200 | - | (4,895) | - | - | (3,633) |
| | 32.) Ending TPC DIP | 1,890 | 2,952 | 2,952 | 2,952 | 4,695 | 4,695 | 4,695 | 4,695 | 4,885 | 4,885 | - | - | - | 0 |
| | 33.) Beginning SVB Payroll Reserve | - | 1,296 | 1,159 | 75 | - | 1,644 | 1,409 | 998 | 655 | 273 | 200 | - | - | |
| | 34.) Funding from Company | | | | | 598 | | | | | | | | | 598 |
| | 35.) Funding from TPC | 1,890 | | | | 1,743 | | | | | | | | | 3,633 |
| | 36.) Payroll Expense | (594) | (138) | (1,084) | (75) | (697) | (234) | (411) | (343) | (382) | (73) | (200) | - | - | (4,231) |
| (A) | 37.) Ending Payroll Reserve | 1,296 | 1,159 | 75 | - | 1,644 | 1,409 | 998 | 655 | 273 | 200 | - | - | - | |
| | **IV. PIK Interest (Roll Up Portion)** | | | | | | | | | | | | | | |
| | 38.) Beginning PIK Interest | - | 57 | 114 | 171 | 228 | 285 | 343 | 401 | 459 | 517 | 575 | - | - | |
| | 39.) Weekly Interest Accrual | 57 | 57 | 57 | 57 | 57 | 58 | 58 | 58 | 58 | 58 | 58 | - | - | 633 |
| | 40.) Payment of PIK | - | - | - | - | - | - | - | - | - | - | (633) | - | - | (633) |
| | 41.) Ending PIK Interest | 57 | 114 | 171 | 228 | 285 | 343 | 401 | 459 | 517 | 575 | - | - | - | - |

Note: (A) Covenant tested line item