IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TINTRI, INC.,[1] | ) | Case No.: 18-11625 (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE DEBTOR'S KEY EMPLOYEE RETENTION PROGRAM FOR CERTAIN NON-INSIDER EMPLOYEES AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") files this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit 1**: (i) authorizing and approving the Debtor's Key Employee Retention Program (the "KERP"), substantially in the form attached hereto as **Exhibit 2**, for twenty-one key non-insider employees (collectively, the "Eligible Employees"), providing for a total award pool of $348,000 in the aggregate and (ii) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

**Preliminary Statement**

1. The Eligible Employees are the lifeblood of the Debtors' business. The Eligible Employees consist of highly qualified personnel who possess the knowledge, experience, and expertise essential to preserving the Debtors' operational stability and maximizing estate value. The Eligible Employees also cannot be easily replaced. Absent the KERP, the Debtors believe that there is significant risk of employee attrition that could disrupt

---

[1] The Debtor and the last four digits of its taxpayer identification numbers are (6978): The headquarters and service address for the above-captioned Debtor is 303 Ravendale Dr., Mountain View, CA 94043.

DOCS_SF:97197.3 83990/001

the Debtors' ability to sell their assets as a going-concern or even their intellectual property on a stand-alone basis as the engineers intimately familiar with and best understand how to utilize and manipulate the IP. If the Eligible Employees leave prior the identification of a going concern buyer, the Debtor believes that stakeholder value will be substantially impaired pending the consummation of a sale of the Debtor's assets.

2. The KERP specifically targets the Eligible Employees whose continued retention and employment is most necessary in order to preserve and maximize going concern value. Under the KERP, the Debtors propose to provide an aggregate payment pool of $348,500, with an average award opportunity of $16,571 per participant. No single Eligible Employee will be eligible for an award totaling more than $30,000. Importantly, no insider (as that term is defined by section 101(31) of the Bankruptcy Code) is an Eligible Employee.

3. The Debtor and its advisors believe that the KERP is consistent with programs implemented by similarly-situated chapter 11 debtors and will provide stability to the Debtor's operations and drive value for the benefit of all economic stakeholders as the Debtor markets its assets through the conclusion of a sale.

### Jurisdiction

4. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief requested herein are sections 363(b) and 503(c)(3) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

7. On the date hereof (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in the possession of its property and has continued to operate and manage its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtor's chapter 11 case.

8. Tintri is an enterprise cloud storage company founded in 2008 with the initial objective to solve the mismatch caused by using old, conventional physical storage systems with applications in virtual machine (VM) environments. The company created storage products that are optimized for virtualization and cloud computing platforms. Over time, the company has expanded its focus to also address the cloud needs of enterprise customers. Its customers include leading enterprises across a broad range of industry segments, including education, financial services and insurance, healthcare, manufacturing and automotive technology, as well as cloud service providers (CSPs).

3

9. The Debtor provides large organizations and cloud service providers with an enterprise cloud platform that offers public cloud capabilities inside their own data centers and that can also connect to public cloud services. Its enterprise cloud platform delivers many of the benefits of public cloud infrastructure and also gives organizations the control and functionality to run both enterprise and cloud-native application in their own private cloud.

10. The Debtor's customers use its enterprise cloud platform for a variety of workloads and use cases, including virtualized desktop infrastructure (VDI), development and test environments (DevOps), which are sometimes referred to as Continuous Integration Continuous Delivery (CI/CD), and other virtualized workloads, including virtualized servers, databases, and mixed workloads. The Debtor's software products are sold separately from its core enterprise cloud platform solution, enabling customers to tailor their infrastructure to their specific needs.

11. The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Robert J. Duffy, Chief Restructuring Officer, in Support of First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.

## The Proposed Key Employee Retention Program

**A.   The Debtor's Need for the KERP**

12. Operating in the Silicon Valley in Northern California, which has close to no unemployment in the highly competitive tech sector, the Debtor has been able to hire and retain personnel such as the Eligible Employees using competitive salaries and commission

4

structures, benefits, and a stock appreciation rights program. However, the Debtor believes that the recent reductions in force, the bankruptcy filing, and the marketing of the sale of the business will negatively impact its ability to retain the Eligible Employees.

13. First, the Debtor recently laid-off approximately 74% employees so that it could better position itself to address short and long-term operating expenditures in the face of declining revenues. Now with a skeletal staff, the Debtor believes that its remaining work-force will be forced to look for alternative employment unless the Debtor can assure them they will be compensated for their services as the Debtor markets its assets for sale.

14. Second, the bankruptcy filing is likely to compound the atmosphere of uncertainty to employees generally following the reduction in force that took place prior to the Petition Date. The Eligible Employees specifically may be concerned that workforce reductions are not complete and inevitable as the Debtor seeks to sell its assets and liquidate its remaining affairs after the conclusion of any sale.

15. Third, the bankruptcy filing will render the stock appreciation rights held by the Eligible Employees worthless, and reduces compensation that such employees were otherwise counting on.

16. Fourth, with a skeletal staff, many of the Eligible Employees are expected to assume significant additional duties and responsibilities following the bankruptcy filing. These factors have greatly increased the risk that other companies in a highly competitive employment market may successfully recruit the Eligible Employees, who are the Debtor's most talented and experienced operating personnel. To maintain the consistency that is crucial to

providing the platform to market the Debtor's assets as a going concern or a stand-alone sale of the key assets, the Debtor has developed the KERP.

## B. The Principal Terms of the KERP

17. The Debtor's proposed KERP is attached hereto as **Exhibit 2** and can be summarized as follows:

| Max. Participants | Average Individual Award | Max. Individual Award | Total Cost |
|---|---|---|---|
| 20 employees | $16,571 | $30,000 | $348,000 |

18. The Debtor proposed awards for each Eligible Employee are identified on **Exhibit 2** attached hereto. The individual amounts have been determined through management's analysis of the appropriate amount for each Eligible Employee taking into account all relevant factors.

19. Each Eligible Employee shall earn and be entitled to receive the full amount of his or her retention payment on the KERP Payment Date (as defined below), so long as he or she is employed by the Debtors through the closing or completion date of the sale of substantially all of the Debtor's assets (the "Effective Date" or "KERP Payment Date").

20. Notwithstanding the foregoing, if an Eligible Employee's employment with the Company is terminated prior to the Effective Date without Cause (as defined below), or due to death or disability, then such Eligible Employee shall earn and be entitled to receive the retention payment on the KERP Payment Date.

21. As used in the KERP, the term "Cause" means any of the following reasons: (a) the commission of any act of fraud, dishonesty, embezzlement or similar act against

the Debtor; (b) unauthorized use or disclosure of any proprietary information or trade secrets of the Debtor or any other party to whom an Eligible Employee owes an obligation of nondisclosure as a result of a relationship with the Debtor; (c) material breach of any obligations under any written agreement or covenant with (or made for the benefit of) the Debtor, provided that an Eligible Employee will have seven (7) calendar days to cure such material breach to the extent that it is curable; (d) conviction (including any plea of no contest) of a felony or a crime involving moral turpitude; (e) failure or inability to perform any assigned duties after written notice from the Debtor of, and a 7-day opportunity to cure, such failure or inability; or (f) gross negligence or willful misconduct in the performance of any duties to the Debtor that has resulted or is likely to result in damage to the Debtor.

22.     Payments under the KERP are subject to and conditioned upon approval of the KERP by the Bankruptcy Court presiding over the Debtor's chapter 11 case. If Bankruptcy Court approval is not obtained, the KERP shall be null and void and the Debtor will have no obligation to make the payments under the KERP.

23.     Except as provided in the KERP, payments under the KERP will be in lieu of any other performance bonus, retention, or severance compensation otherwise payable to the Eligible Employees by the Debtor pursuant to any prepetition bonus plan or employment agreement between the Eligible Employee and the Debtor. However, any Eligible Employee that accrued "paid time off" ("PTO") prior to the Petition Date will still receive compensation for such PTO upon termination to the extent permitted under any wage/benefit motion that is approved by the Bankruptcy Court.

24. Except as otherwise provided in the KERP, upon approval of the KERP by this Court, the Eligible Employees, in consideration of the benefits offered hereunder, shall release the Debtor and all of the Debtor's present or former managers, equity holders, officers, agents, financial advisors, attorneys, employees, partners, affiliates, representatives and their respective property from any and all claims and causes of action which the Eligible Employees may have in connection with their employment by the Debtor in any capacity whatsoever, including as managers and/or officers of the Debtor, and including, but not limited, to any claim or cause of action the Eligible Employees may have for unpaid salary, commissions and any claims arising under any employment agreement by and between any Eligible Employee and the Company (the "Claims"), *provided, however*, that the foregoing shall not operate as a waiver of or release of any Claims that an Eligible Employee may have for claims against the Company for (a) payment of wages earned by the employee but which remain unpaid, (b) retention payments earned and due under the KERP, or (c) indemnification that arises from such employee's status, to the extent applicable, as an officer or representative of the Company pursuant to applicable law and/or pursuant to an indemnification agreement between such employee and the Company.

C. **The Eligible Employees**

25. As noted above, the Eligible Employees are 20 key non-insider employees identified by the Debtor, as listed on **Exhibit 2** attached hereto. These individuals hold various titles with the Debtor, including: vice president, director, and senior manager of various departments, among others.

26. Notwithstanding the foregoing titles, the Eligible Employees do not include any employee that: (a) reports directly to the Company's board of directors; (b) is

8

appointed directly by the Company's board; (c) exercises managerial control over the Debtors' operations as a whole; (d) controls Company policy generally; or (e) directs the Debtors' overall corporate governance.

27. The Debtor is a moderately-sized enterprise whose activities are directed primarily by the Chief Technology Officer (Kieran Harty) and Mr. Duffy, who is the CRO (collectively, "Senior Management"), who are not Eligible Employees. While certain employees junior to Senior Management may have the title of vice president, director, senior supervisor, or senior manager, these employees do not exercise material levels of control over the Debtor's governance, budgeting, operations, or strategic direction, as to warrant "insider" status.

28. Thus, none of the Eligible Employees, although important to the Debtor's businesses, qualify as an "insider" in terms of wielding executive power over the Debtor's business and/or corporate affairs.

29. The Debtor believes the award opportunities provided under the KERP are consistent with market practice for similarly situated employers and are, both individually and in the aggregate, reasonable under the circumstances of this chapter 11 case.

## Relief Requested

30. The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit 1**: (a) authorizing and approving the KERP; and (b) granting related relief.

## Basis for Relief

31. The KERP reflects a sound exercise of the Debtor's business judgment and should be approved pursuant to sections 363(b) and 503(c)(3) of the Bankruptcy Code. Further, the Debtor respectfully submits that the provisions otherwise applicable to retention

programs pursuant to section 503(c)(1) of the Bankruptcy Code are inapplicable here because no "insiders" (as that term is defined by section 101(31) of the Bankruptcy Code) will participate in the proposed KERP.

A. **The Key Employee Retention Program Is a Sound Exercise of the Debtors' Business Judgment**

32. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that debtors "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Elpida Memory, Inc.*, 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (noting that it is "well-settled" that a debtor may use its assets outside the ordinary course where such use "represents the sound exercise of business judgment"); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (stating that judicial approval under section 363 of the Bankruptcy Code requires a showing that the proposed action is fair and equitable, in good faith, and supported by a good business reason). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

DOCS_SF:97197.3 83990/001

33. Here, the business justification supporting the KERP is clear. The Debtor requires the key non-insider employees' specific knowledge and skill sets to maintain their business operations so that their assets can be positioned for an asset sale. The Eligible Employees are intimately familiar with the Debtor's operations and have skills that are unique and difficult to replace. The loss of such employees will negatively affect the Debtor because the Debtor will be required to incur costs associated with recruiting and training replacement workers at the same time that they are operating under chapter 11, in a region that is highly competitive with close to no unemployment, and when the Debtor is seeking to sell its assets and discontinue its operations. The Debtor believes that the cost of the KERP is less than the cost of recruiting and training replacement employees. Retaining the Eligible Employees will maintain operational stability and allow the Debtors to focus their efforts on selling the business, which will inure to the benefit of all stakeholders in this case. The Debtor further believes that the KERP will improve employee morale overall and incentivize employees to remain with the Debtor. In sum, the Debtor believes that the KERP is vital to retaining the Eligible Employees and protecting enterprise value.

34. In chapter 11 retail cases, courts in this district have approved retention plans similar to the one proposed by the Debtors in these cases. *See, e.g., In re Pacific Sunwear of California, Inc.*, Case No. 16-10882 (LSS) (Docket No. 335) (Bankr. D. Del. May 12, 2016); *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (MFW) (Docket No. 1722) (Bankr. D. Del. May 4, 2016); *In re Fresh & Easy LLC*, Case No. 15-12229 (BLS) (Docket No. 289) (Bankr. D. Del. Dec. 3, 2015); *In re Quiksilver Inc.*, Case No. 15-11880 (BLS) (Docket No. 514) (Bankr. D. Del. Dec. 12, 2015); *In re RadioShack Corp.*, No. 15-10197 (BLS) (Docket No. 811)

11

(Bankr. D. Del. Mar. 4, 2015); *In re Coldwater Creek Inc.*, No. 14-10867 (BLS) (Docket No. 527) (Bankr. D. Del. June 6, 2014); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Docket No. 534) (Bankr. S.D.N.Y. Aug. 1, 2016). For the reasons discussed below, the Debtors' KERP likewise should be approved.

B.  **The Key Employee Retention Program is Justified by the Facts and Circumstances of These Chapter 11 Cases**

35. Section 503(c)(3) of the Bankruptcy Code generally prohibits certain transfers made to officers, managers, consultants, and others that are not justified by the facts and circumstances of the case. *See* 11 U.S.C. § 503(c)(3). Importantly, section 503(c)(3)'s "facts and circumstances" justification test "creates a standard no different that the business judgment standard under section 363(b) of the Bankruptcy Code." *In re Borders Group, Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011) (citations omitted); *see also In re Global Home Prods., LLC*, 369 B.R. 778, 783 (Bankr. D. Del. 2007) ("If [the key employee retention program is] intended to incentive management, the analysis utilizes the more liberal business judgment review under § 363"); *In re Nobex Corp.*, No. 05-20050 (MFW), 2006 WL 4063024, at * 3 (Bankr. D. Del. Jan. 19, 2006) (concluding that the standard under section 503(c)(3) reiterates the business judgment standard).

36. For the reasons discussed above, attrition of the Eligible Employees is a real risk, and a loss of the Eligible Employees would disrupt the Debtor's ability to preserve and maximize value for the benefit of stakeholders. Because implementation of KERP would likely mitigate flight risk of the Eligible Employees, the KERP is justified by the facts and circumstances of these chapter 11 cases and is a sound exercise of the Debtor's business

12

judgment. *See, e.g., In re Mesa Air Group, Inc.*, No. 10-10018 (MG), 2010 WL 3810899, *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (holding that bonus payments are "'justified by the facts and circumstances of the case' under section 503(c)(3) [where] they are within the 'sound business judgment' of the Debtors" (citation omitted)).

C. **Section 503(c)(1) of the Bankruptcy Code Is Inapplicable to the Key Employee Retention Program**

37. Section 503(c)(1) of the Bankruptcy Code generally restricts payments to "insiders" made for the sole or primary purpose of inducing the "insider" to remain with a debtor's business, unless certain statutory requirements are met. 11 U.S.C. § 503(c)(1). Section 101(31) of the Bankruptcy Code provides that where a debtor is a corporation, insiders include any "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor . . . or [iv] relative of a . . . director, officer or person in control of the debtor." 11 U.S.C. § 101(31)(B).[2] By its terms, section 503(c)(1) does not apply where, as here, participants in a retention-based program are not insiders. *See, e.g., Global Home*, 369 B.R. at 784 (noting that section 503(c)(1) only applies "if a bankruptcy court is asked to authorize payments to insiders for the purpose of inducing insiders to remain in a debtor's employ"). And, as a general matter, the Bankruptcy Code's distinction between "insiders" and "non-insiders" is intended to draw a line between those individuals who exercise control over corporate activities and corporate policy, and those that do not.

38. As noted above, certain of the Eligible Employees have job titles identifying such individuals as vice president, director, or senior manager. The Debtor submit

---

[2] The other criteria, none of which are relevant here, are partnerships in which the debtor is a partner, a general partner of the debtor, and any relative of a person who is an insider under these criteria. 11 U.S.C. § 101(31)(B)(iv)–(vi).

that such titles are not dispositive of those individuals' substantive role in the Debtor's organization and that such titles do not cause section 503(c)(1) to apply here. *See In re Foothills Tex., Inc.*, 408 B.R. 573, 579 (Bankr. D. Del. 2009) ("[T]he mere title of a person does not end the inquiry."). In determining whether a particular employee is an "insider," courts consider not only an employee's job title but also the employee's role with the debtor. *See, e.g., In re Global Aviation Holdings, Inc.*, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) ("[T]itles such as 'vice president' are not determinative."); *Borders Group*, 453 B.R. at 468–69 (holding that an individual's title, by itself, is insufficient to establish insider status under section 101(31) of the Bankruptcy Code (citing *In re Longview Aluminum, LLC*, 419 B.R. 351, 355 (Bankr. N.D. Ill. 2009) ("[I]t is not simply the title 'director' or 'officer' that renders an individual an insider; rather, it is the set of legal rights that a typical corporate director or officer holds."); *NMI Sys. v. Pillard (In re NMI Sys.)*, 179 B.R. 357, 370 (Bankr. D.D.C. 1995)). Thus, a particular job title might create the presumption that an individual is an insider per section 101(31) of the Bankruptcy Code, but this presumption may be rebutted by a showing that the individual in question does not exercise material levels of management control over a debtor or its operations as a whole. *Cf. Foothills Texas*, 408 B.R. at 583.

39.     This analysis focuses on, among other things, whether the employee at issue has the authority to implement company policy or whether the employee reports directly to a company's board of directors, *see Borders Group*, 453 B.R. at 469, such that there is a plausible concern that the employee could have gained an "unfair advantage" by virtue of their position, *see Foothills Texas*, 408 B.R. at 583. In short, the determination as to whether any

14

particular employee is an "insider" requires an analysis as to whether the individual in question "is taking part in the management of the debtor" *Id.* at 579.

40. No Eligible Employees are insiders by this measure. No Eligible Employee: (a) has a job title, such as "CEO, president, secretary, or treasurer," *Borders Group*, 453 B.R. at 468; (b) controls or directs the operations of any of the Debtors, *see NMI Systems*, 179 B.R. at 370 ("[Employee] was still in charge of a unit of [a] division . . . . But [the employee's] position was not one in the inner circle making the company's critical [] decisions."); (c) has executive oversight authority for the Debtors' operations as a whole, *see Global Aviation*, 478 B.R. at 148 ("[A] vice president was not an insider because he was conferred the title 'for purposes of marketing' only . . . ."); (d) has broad responsibilities over a large portion of the Debtors' businesses, *cf. Foothills Texas*, 408 B.R. at 584 ("Given their broad responsibilities over significant aspects of the Debtors' business as well as the fact that they report directly to the Debtors' President, both men are clearly participating in the management of the Debtors."); or (e) has direct input into the governance or direction of the Debtors' operations or a material component of their assets, *cf. In re Kunz*, 489 F.3d 1072, 1077 (10th Cir. 2007) ("[A]s it is used in the statutory definition of 'insider,' the term plainly means a person who is a member of the governing board of the corporation and participates in corporate governance.").

41. This distinction is also borne out by the financial incentives at issue. The maximum award payable to any one Eligible Employee under the KERP is $30,000. No individual will be disproportionately rewarded as a result of his or her participation in this process, but the Debtor believes such cost is far exceeded by the business risk that might result without their ability to retain such key employees.

15

42.     In sum, the Eligible Employees, although critical to the Debtor's operations, do not have the type of broad responsibility or control to make strategic decisions, set company policy, or develop employee compensation. As a result, any concerns that the KERP results from "an unfair advantage" are not justified by the record here. Rather, the Eligible Employees are the rank and file employees that are necessary for the Debtor to maintain its operations at the current level and preserve value during this chapter 11 case so that a sale can be achieved for the benefit of all stakeholders.

## Notice

43.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Debtor's postpetition and prepetition lenders, or their counsel if known; and (c) the Debtor's twenty largest unsecured creditors. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## Conclusion

44. For the reasons set forth herein, the Debtor respectfully requests that the Court enter the order substantially in the form attached hereto as **Exhibit 1**: (a) authorizing and approving the KERP; and (b) granting related relief.

Dated: July 10, 2018

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Colin R. Robinson
_____
Henry C. Kevane (CA Bar No. 125757)
John D. Fiero (CA Bar No. 136557)
John W. Lucas (CA Bar No. 271038)
Colin R. Robinson (DE Bar No. 5524)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel: (302) 652-4100
Fax: (302) 652-4400
E-mail: hkevane@pszjlaw.com
 jfiero@pszjlaw.com
 jlucas@pszjlaw.com
 crobinson@pszjlaw.com

Proposed Attorneys for Debtors and Debtors in Possession