**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TINTRI, INC.,[1] | ) | Case No. 18-11625 (KJC) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | **Re: Docket No. 10** |
| | ) | |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
363, 364, AND 507 (I) AUTHORIZING DEBTOR TO OBTAIN SECURED
SUPERPRIORITY POSTPETITION FINANCING, (II) GRANTING LIENS AND
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) AUTHORIZING THE
USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION,
(V) SCHEDULING A FINAL HEARING AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Tintri, Inc. as a debtor and debtor in possession (the

"Debtor") in the above-captioned chapter 11 case (the "Case"), pursuant to sections 105, 361,

362, 363(c), 364(c), 364(d)(1), 364(e) and 507 of Title 11 of the United States Code, 11 U.S.C.

§§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2, 9006-1 and

9013-1, 9014-1 and 9014-2 of the Local Bankruptcy Rules for the District of Delaware (the

"Local Rules"), seeking, *inter alia*, entry of an Interim Order (this "Interim Order") and a Final

Order (the "Final Order"):

(i)     authorizing the Debtor, on the terms set forth in the Superpriority Secured Debtor-

In-Possession Credit Facility Term Sheet (the "DIP Term Sheet"), a copy of which is attached

hereto as **Exhibit A**, to obtain a secured, superpriority postpetition multi-draw term loan facility

(the "DIP Credit Facility" and, the loans under such facility, the "DIP Loans") in an aggregate

principal amount of up to $5,493,000 plus interest, costs, fees, and other expenses and amounts

---

[1]     The Debtor and the last four digits of its taxpayer identification numbers are (6978):  The headquarters and
service address for the above-captioned Debtor is 303 Ravendale Dr., Mountain View, CA 94043.

provided for in the DIP Term Sheet, this Interim Order, or the Final Order, with the initial sum of $2,952,000 being available to the Debtor, on an interim basis pursuant to this Interim Order pending entry of a Final Order, from TriplePoint Capital LLC (in such capacity, the "DIP Lender");

(ii)     authorizing the Debtor to execute and deliver additional documentation and authorize the filing of UCC filing statements consistent with the terms of (or as may be required by) the DIP Term Sheet and the other DIP Loan Documentation (as defined in the DIP Term Sheet), or as may be reasonably requested by the DIP Lender, and to perform such other and further acts as may be necessary or appropriate under or in connection with the DIP Loan Documentation;

(iii)     authorizing the Debtor to use proceeds of the DIP Loans (as defined herein) (collectively, the "DIP Loan Proceeds") as permitted in the DIP Loan Documentation and in accordance with this Interim Order and the Approved Budget (as defined herein);

(iv)     granting the DIP Lender an allowed superpriority administrative expense claim in the Case and any Successor Case (as defined herein) for the DIP Credit Facility and all obligations owing thereunder and under the DIP Loan Documentation (collectively, and including all DIP Loans and the Roll-Up, the "DIP Loan Outstandings"), subject to the Carve-Out (as defined herein) and 507(b) Claim (as defined herein) of the Pre-Petition Senior Secured Lender (as defined herein), as more fully set forth in this Interim Order;

(v)     granting the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected (i) security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"), that prime certain pre-petition security

interests (other than security interests of the Pre-Petition Senior Secured Lender) on the terms set forth in the DIP Term Sheet, (ii) senior security interests in and liens on all Unencumbered Property (as defined herein), and (iii) non-priming security interests in and liens on the DIP Collateral in which there are certain pre-existing permitted senior liens, all as set forth in greater detail in the DIP Loan Documentation;

(vi)  authorizing the Debtor to (a) subject to the terms and provisions hereof, use all Cash Collateral pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Pre-Petition Collateral (as defined herein), (b) provide adequate protection to the Pre-Petition Senior Secured Lender under the Pre-Petition Senior Secured Loan Documents (as defined herein), and (c) provide adequate protection to the Pre-Petition Junior Secured Lender (as defined herein) under the Pre-Petition Junior Secured Loan Documents (as defined herein);

(vii)  authorizing and directing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under the Pre-Petition Senior Secured Loan Documents (subject to paragraph 32 of this Interim Order) and the DIP Loan Documentation as they become due (subject to the provisions of paragraphs 3 and 4 of this Interim Order), including, without limitation, those fees set forth in the DIP Loan Documentation and the fees and disbursements of the DIP Lender's attorneys, advisors, accountants, and other consultants;

(viii)  vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documentation and this Interim Order;

(ix)  subject only to and effective upon entry of the Final Order, waiving the Debtor's ability to surcharge against any DIP Collateral or Pre-Petition Collateral pursuant to section

3

506(c) of the Bankruptcy Code and any right of the Debtor under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(x)     scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") on the Motion to consider the entry of the Final Order authorizing the borrowings under the DIP Loan Documentation on a final basis and approving the form of notice procedures with respect thereto;

(xi)     waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including under Bankruptcy Rule 6004); and

(xii)     granting the Debtor such other and further relief as is just and proper.

The Court having considered the Motion, the exhibits attached thereto, the DIP Term Sheet, the First Day Declaration (as defined in the Motion), the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on July 11, 2018 (the "Interim Hearing"); notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and the Local Rules; all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for the continued operation of the Debtor's business until the consummation of a Sale (as defined in the DIP Term Sheet); and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTOR, THE DEBTOR AND DIP LENDER STIPULATE AND THE COURT**

**HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      *Petition Date:* On July 10, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), commencing the Case.

B.      *Debtor in Possession.* The Debtor is continuing in the management and operation of its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Case.

C.      *Jurisdiction and Venue.*  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Statutory Committee.*  As of the date hereof, the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors or other official committees in the Case pursuant to section 1102 of the Bankruptcy Code (each, a "Statutory Committee").

E.      *Debtor's Stipulations.*  After consultation with its attorneys and financial advisors, the Debtor (on behalf of itself and its estate) admits, stipulates, acknowledges and agrees (but subject to paragraph 36 of this Interim Order) that (collectively, paragraphs E(i) through E(viii) below are referred to herein as the "Debtor's Stipulations"):

(i)      *Pre-Petition Senior Secured Loan Agreement:* Pursuant to the Amended and Restated Loan and Security Agreement, dated as of April 30, 2018 (as amended, supplemented

or otherwise modified, renewed or replaced from time to time, the "Pre-Petition Senior Secured Loan Agreement" and, together with such loan documents related thereto, the "Pre-Petition Senior Secured Loan Documents"), between the Debtor and Silicon Valley Bank (the "Pre-Petition Senior Secured Lender"), the Pre-Petition Senior Secured Lender made certain secured advances to the Debtor (the "Pre-Petition Senior Secured Credit Facility") in accordance with the terms thereof. Pursuant to the Pre-Petition Senior Secured Loan Documents, the Debtor granted to the Pre-Petition Senior Secured Lender a lien, senior to all other prepetition liens, on substantially all of the Debtor's assets (the "Pre-Petition Senior Secured Collateral");

(ii) *Pre-Petition Junior Secured Loan Agreement*: Pursuant to the Plain English Growth Capital Loan and Security Agreement dated as of February 6, 2015 (as amended, supplemented or otherwise modified, renewed or replaced from time to time, the "Pre-Petition Junior Secured Loan Agreement," together with such loan documents related thereto, the "Pre-Petition Junior Secured Loan Documents," and together with the Pre-Petition Senior Secured Loan Documents, "Pre-Petition Loan Documents"), between the Debtor and TriplePoint Capital LLC (in such capacity, the "Pre-Petition Junior Secured Lender" and, together with the Pre-Petition Senior Secured Lender, the "Pre-Petition Lenders"), the Pre-Petition Junior Secured Lender made certain secured advances to the Debtor (the "Pre-Petition Junior Secured Credit Facility") in accordance with the terms thereof. Pursuant to the Pre-Petition Junior Secured Loan Documents, the Debtor granted to the Pre-Petition Junior Secured Lender a second-priority lien, senior to all other prepetition liens (except the liens granted to the Pre-Petition Senior Secured Lender under the Pre-Petition Senior Secured Loan Documents), on substantially all of the Debtor's assets (the "Pre-Petition Junior Secured Collateral").

6

(iii)    *Intercreditor Agreement*:  Pursuant to that certain Intercreditor Agreement, dated as of February 6, 2015, between the Pre-Petition Senior Secured Lender and the Pre-Petition Junior Secured Lender (as amended, supplemented or otherwise modified, renewed or replaced from time to time, the "Intercreditor Agreement"), the Pre-Petition Senior Secured Lender and the Pre-Petition Junior Secured Lender agreed on the relative priority of the liens granted under the Pre-Petition Senior Secured Loan Documents and the Pre-Petition Junior Secured Loan Documents, respectively.

(iv)    *Pre-Petition Collateral.*  The liens and security interests granted to the Pre-Petition Senior Secured Lender pursuant to the Pre-Petition Senior Secured Loan Documents (a) are valid, perfected, and enforceable, (b) were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), and (c) are senior in priority to all other prepetition liens on the Pre-Petition Senior Secured Collateral (except for Permitted Liens as defined in the Pre-Petition Senior Secured Loan Agreement).  The liens and security interests granted to the Pre-Petition Junior Secured Lender pursuant to the Pre-Petition Junior Secured Loan Documents (w) are valid, perfected, and enforceable, (x) were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), (y) are senior in priority to all other prepetition liens on the Pre-Petition Junior Secured Collateral (except for the Pre-Petition Senior Secured Lender's liens on the Pre-Petition Senior Secured Collateral and Permitted Liens as defined in the Pre-Petition Junior Secured Loan Agreement), and (z) are second in priority to the Pre-Petition Senior Secured Lender's liens on the Pre-Petition Senior Secured Collateral.  The Pre-Petition Senior Secured Collateral and the Pre-

7

Petition Junior Secured Collateral, together with all prepetition proceeds, products, rents, or profits of or from such collateral, constitute the "Pre-Petition Collateral".

    (v)    *Pre-Petition Obligations:* As of the Petition Date:

        (i)    the outstanding principal amount of the Pre-Petition Senior Secured Credit Facility is $4,785,780.43, and the amount of interest accrued and payable thereon is $0.00.

        (ii)    the outstanding principal amount of the Pre-Petition Junior Secured Credit Facility is $50,000,000.00, and the amount of (a) interest accrued and payable thereon plus (b) end of term payments with respect thereto is $6,408,313.99.

The Debtor acknowledges that the amounts specified above do not include default interest, fees, expenses or other amounts which are chargeable or otherwise reimbursable under the Pre-Petition Senior Secured Loan Documents and/or Pre-Petition Junior Secured Loan Documents (all such amounts described above in this Paragraph (E)(v) being collectively, the "Pre-Petition Obligations"). The Debtor has no rights, and will not assert any rights, of set-off, offset, counterclaim or deduction with respect to any such amounts. The Pre-Petition Obligations constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with their respective terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code).

    (vi)    *Default of the Debtor:* As of and upon the Petition Date, events of default have occurred under the terms of the Pre-Petition Senior Secured Loan Agreement and the Pre-Petition Junior Secured Loan Agreement, respectively.

    (vii)    *Debtor's Release of Claims.* In consideration of (a) the DIP Credit Facility and the agreements of the DIP Lender contained in the DIP Loan Documentation and (b) the consents by each of the Pre-Petition Lenders to the Debtor's use of Cash Collateral, the Debtor, individually and on behalf of its successors, assigns, agents, attorneys, officers, directors,

8

partners, relatives, executors, administrators, shareholders, subsidiaries, other affiliates and representatives (in their representative capacities, the foregoing individuals and entities herein referred to as the "Releasors"), stipulates and agrees to release and discharge the Pre-Petition Lenders, and each of their respective past and present officers, partners, members, principals, shareholders, employees, agents, directors, predecessors, parents, subsidiaries, affiliated entities, successors, assigns, attorneys, insurers, transferees, and representatives (the foregoing individuals and entities herein referred to as the "Releasees"), from all manner of actions, and any and all claims, suits, damages, and causes of action, whether arising from statutory law, constitutional law, federal law, state law or otherwise (the foregoing herein referred to collectively as the "Releasor Claims"), which the Releasors, as of the Petition Date, currently have (whether known or unknown) against any one or more of the Releasees arising out of, in connection with, or as a result of the Pre-Petition Loan Documents or any of the transactions or other matters contemplated thereby or by any such document. To the fullest extent permitted under applicable law, and subject to the terms of the DIP Orders, the foregoing release applies to all Releasor Claims, whether based on contract, tort or any other theory, and such release shall extend to each Releasee notwithstanding the sole or concurrent negligence of every kind or character whatsoever, whether active or passive, whether an affirmative act or an omission, including, without limitation, all types of negligent conduct identified in the Restatement (Second) of Torts, of one or more of the Releasees or by reason of strict liability imposed without fault on any one or more of the Releasees. The Debtor acknowledges that it is its intention, on behalf of itself and the Releasors, to effect a general release as provided in California Civil Code§ 1542, and the Debtor specifically waives the protections of California Civil Code § 1542, which reads as follows:

DOCS_DE:220261.1 83990/002

"A general release does not extend to claims, which the creditor does not know or suspect to exist in his or her favor at the time of execution of the release, which if known by him or her must have materially affected his or her settlement with the debtor."

The Debtor, on behalf of itself and the Releasors, expressly waives and releases any right or benefit which it or they might now or in the future have under California Civil Code Section 1542 (or any other laws of similar effect) to the fullest extent that such rights or benefits may be lawfully waived and released. The Debtor, on behalf of itself and the Releasors, acknowledges that it may hereafter discover facts different from the facts now known or believed by the Debtor and/or the Releasors to be true with respect to the matters covered by this release, and agrees that this release nevertheless will be binding on the Debtor and the Releasors and remain in full force and effect.

F.    *Findings Regarding the Postpetition Financing*

(i)    *Need for Postpetition Financing and Use of Cash Collateral.*  Good cause has been shown for entry of this Interim Order. The Debtor's need to obtain credit pursuant to the DIP Credit Facility and to continue to use the DIP Collateral (as defined herein) and the Pre-Petition Collateral, including the Cash Collateral, is immediate and critical to enable the Debtor to continue operations, to minimize the disruption of the Debtor as a "going concern," to facilitate a successful sale process under section 363 of the Bankruptcy Code, to make payroll and satisfy other working capital and general corporate purposes of the Debtor, and to administer and to preserve the value of its estate. The Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its property in the ordinary course of business without the DIP Credit Facility and use of Cash Collateral. The Debtor needs to obtain credit pursuant to the DIP Credit Facility and the ability to use Cash Collateral on an interim basis, pending entry of a Final Order, in order to (i) maintain, finance, and ensure the

ongoing operations of the Debtor, (ii) assure the satisfaction of the Payroll Expenses incurred by the Debtor pending the Final Hearing, (iii) execute the orderly sale strategy described in the First Day Declaration, and (iv) avoid immediate harm and prejudice to the Debtor's estate and all parties in interest.

(ii)    *No Credit Available on More Favorable Terms.*    Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Credit Facility. The Debtor is unable to obtain unsecured credit allowable under sections 503(b), 507(a) and 507(b) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code.  The Debtor also is unable to obtain credit: (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien pursuant to section 364(c)(2) of the Bankruptcy Code.  Within the timeframe required by its need to avoid immediate and irreparable harm, financing on a postpetition basis is not otherwise available without granting the DIP Lender the protections set forth in this Interim Order and the DIP Loan Documentation.

(iii)    *Use of Proceeds of the DIP Credit Facility and Cash Collateral.*  The DIP Lender is providing the DIP Credit Facility, and the Pre-Petition Lenders are consenting to the Debtor's use of Cash Collateral, to fund the Debtor's filing, the administration of the Case, and required operations of the Debtor.  As a condition to the entry into the DIP Loan Documentation and the extension of credit under the DIP Credit Facility and the Pre-Petition Lenders' consent to the

Debtor's use of Cash Collateral, each of the DIP Lender and the Pre-Petition Lenders require, and the Debtor has agreed, that proceeds of the DIP Credit Facility and Cash Collateral shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Documentation, this Interim Order and the Approved Budget (as defined herein and as the same may be modified from time to time), as applicable, solely for (1) working capital and general corporate purposes, (2) bankruptcy-related costs and expenses (subject to the limitations of the Carve-Out defined herein), (3) costs and expenses related to the Sale, and (4) for any other purpose agreed upon in the DIP Loan Documentation, and as approved by the Court.

(iv)     *Sections 506(c) and 552(b).*  Upon entry of the Final Order, in light of the DIP Credit Facility, the Pre-Petition Lenders' consent to use of Cash Collateral, and the agreements of the DIP Lender and the Pre-Petition Lenders to subordinate their respective rights of payment, liens and superpriority/priority claims to the Carve-Out, the DIP Lender and Pre-Petition Lenders are entitled to and shall receive (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

G.     *Good Faith of the DIP Lender and the Pre-Petition Lenders*

(i)     *Willingness to Provide Financing.*  The DIP Lender has indicated a willingness to provide financing to the Debtor, and the Pre-Petition Lenders are prepared to consent to the Debtor's use of Cash Collateral, subject to: (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Credit Facility and the DIP Loan Documentation; and (c) entry of findings by this Court that such financing and Cash Collateral usage is essential to the Debtor's estate, that the DIP Lender is extending credit to the Debtor pursuant to the DIP Loan Documentation in good faith, and that each of the Pre-Petition Lenders

12

have consented to the Debtor's use of Cash Collateral in good faith, and that the DIP Lender's and the Pre-Petition Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Loan Documentation will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e).*  The terms and conditions of (a) the DIP Credit Facility and the DIP Loan Documentation and (b) use of Cash Collateral, and the fees paid and to be paid thereunder and adequate protection granted therefor, are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Credit Facility and the terms upon which the Debtor shall continue to use Cash Collateral were each negotiated in good faith and at arm's length between the Debtor, the DIP Lender, and the Pre-Petition Lenders.  The draws advanced under the DIP Credit Facility, and the Debtor's use of the Pre-Petition Lenders' Cash Collateral, shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses within the meaning of section 364(e) of the Bankruptcy Code.  Accordingly, the DIP Lender and the Pre-Petition Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

(iii)     The Interim Order and any other order will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

DOCS_DE:220261.1 83990/002

H.    *Final Hearing.*  At the Final Hearing, the Debtor will seek final approval of the proposed postpetition financing arrangements pursuant to a proposed Final Order, which shall be in form and substance acceptable to the DIP Lender and the Pre-Petition Lenders, approving such postpetition financing arrangements, notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

I.    *Notice.*  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the U.S. Trustee; (ii) counsel to the DIP Lender; (iii) counsel to the Pre-Petition Lenders; (iv) other parties with liens of record on assets of the Debtor as of the Petition Date; and (v) the Debtor's twenty (20) largest unsecured creditors.  The parties have made reasonable efforts to afford the best notice possible under the circumstances and the notice provided complies with the Bankruptcy Rules and Local Rules.

J.    The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(b).  Consummation of the DIP Credit Facility and the continued use of the DIP Collateral (including the Cash Collateral) in accordance with this Interim Order and the DIP Loan Documentation are, therefore, in the best interest of the Debtor's estate.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, effective immediately, that:

1.    Interim Financing Approved.  The Motion is granted as set forth herein, the Interim Financing (as defined herein) and Cash Collateral usage is authorized, subject to the terms and conditions set forth in this Interim Order, and the Debtor is authorized to obtain borrowings under the DIP Credit Facility on an interim basis in an amount up to $2,952,000,

14

pending entry of a Final Order. Upon entry of the Interim Order, the Debtor shall be permitted immediately to use Cash Collateral unless and until the Debtor has notice that the Interim Closing Date did not occur pursuant to the DIP Loan Documentation.

2. <u>Objections Overruled</u>. All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

## DIP Credit Facility Authorization

3. <u>Authorization of the DIP Financing and DIP Loan Documentation</u>. The Court hereby approves the DIP Credit Facility and authorizes the Debtor to enter into the DIP Credit Facility with the DIP Lender on the terms and conditions set forth in the DIP Term Sheet and other DIP Loan Documentation. The terms of the DIP Credit Facility, including without limitation, interest rate, maturity date, and Draw Conditions (as defined in the DIP Term Sheet), shall be those set forth in the DIP Term Sheet, which is expressly incorporated herein by reference. The Debtor is immediately authorized and empowered to execute and deliver such additional documentation as the DIP Lender may reasonably request and, subject to the terms of this Interim Order and the DIP Loan Documentation, to authorize or execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Credit Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Loan Documentation. Upon repayment of amounts advanced under the DIP Credit Facility, such amounts shall be deemed fully earned, indefeasibly paid, and non-refundable. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by the Approved Budget, other DIP Loan Documentation, and the Intercreditor Agreement.

15

4.     Fees.  All fees, costs and/or expenses payable or reimbursable by the Debtor as set forth in the DIP Loan Documentation are hereby approved, subject to review for reasonableness consistent with the procedures set forth in this Interim Order.  The Debtor is hereby authorized and directed to promptly pay the fees, costs, and expenses incurred by the DIP Lender in connection with the DIP Credit Facility, including, without limitation, fees incurred by professionals retained by the DIP Lender prior to or after the Petition Date, in accordance with the terms of this Interim Order, notwithstanding anything herein or in the Approved Budget to the contrary and without the DIP Lender or its counsel having to file any further application with this Court for approval or payment of such fees, costs or expenses.  Any such fees, costs and expenses incurred by professionals retained by the DIP Lender shall be paid within fourteen (14) calendar days of delivery of an invoice to the Debtor, with a copy to the U.S. Trustee, counsel to the Pre-Petition Senior Secured Lender and any Statutory Committee appointed in the Case; provided, however, that, if the Debtor, U.S. Trustee, the Pre-Petition Senior Secured Lender, or any Statutory Committee objects to the reasonableness of such fees and expenses and cannot resolve the objection within five (5) business days of service of such invoice(s), the Debtor, U.S. Trustee, the Pre-Petition Senior Secured Lender, or any Statutory Committee, as the case may be, shall file and serve upon the DIP Lender an objection with the Court (the "Fee Objection") limited to the issue of the reasonableness of the disputed fees and expenses; and, provided, further, that the Debtor shall timely pay in accordance with this Interim Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed.  All such unpaid fees, costs and expenses of the DIP Lender (or, if there is a Fee Objection, to the extent such fees, costs, and expenses are determined to be reasonable by the Court), including, without limitation, all fees referred to in the DIP Loan Documentation (including,

16

without limitation, all attorneys' and other professionals' fees and expenses), shall constitute DIP Loan Outstandings and shall be secured by the DIP Collateral and afforded all priorities and protections afforded to the DIP Loan Outstandings under this Interim Order and the other DIP Loan Documentation.

5.    <u>Authorization to Borrow</u>. Until the earlier of (a) the Maturity Date (as defined in the DIP Term Sheet), or (b) the termination of obligations under the DIP Loan Documentation upon the occurrence and during the continuation of an Event of Default (as defined herein), (the first to occur of (a) and (b) being a "<u>Termination Event</u>"), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documentation, and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to borrow, on an interim basis, a principal amount not to exceed $2,952,000 (the "<u>Interim Financing</u>") under the DIP Credit Facility upon entry of this Interim Order.

6.    <u>Representations and Warranties of the Debtor</u>. As a Draw Condition under the DIP Credit Facility, the Debtor shall make the following representations and warranties as of the date of such draw:

(a)    *Collateral Title*. The Debtor has the corporate power to transfer each item of the Collateral upon which it has granted a DIP Lien pursuant to the DIP Loan Documentation, free of all liens whatsoever, except for Permitted Liens (as defined in the Pre-Petition Junior Secured Loan Agreement), DIP Liens, and liens in favor of the Pre-Petition Lenders.

(b)    *Due Organization*. The Debtor is a corporation duly organized, legally existing and in good standing under the laws of the State of Delaware, and (except for Illinois and Colorado) is duly qualified as a foreign corporation in all jurisdictions in which the conduct of its business or its ownership of property requires such qualification and where the failure to do so

17

could reasonably be expected have a Material Adverse Effect (as defined in the Pre-Petition Junior Secured Loan Agreement) on the Debtor's business.

(c) *Compliance with Applicable Laws.* By entering into the DIP Loan Documentation, the Debtor is not in violation of any law, rule or regulation or in default with respect to any judgment, writ, injunction or decree of any governmental authority, where such violation or default could reasonably be expected to result in a Material Adverse Effect.

(d) *Conflict.* Subject to the approval of the Court, the DIP Loan Documentation does not (a) violate any provisions of the Debtor's articles or certificate of incorporation, as applicable, or bylaws, or any material law, regulation, order, injunction, judgment, decree or writ to which the Debtor is subject or (b) other than (i) the commencement of the Case and as a reasonable consequence of the commencement of the Case, or (ii) the Pre-Petition Senior Secured Loan Agreement or the Pre-Petition Junior Secured Loan Agreement, conflict with or result in the material breach or termination of, constitute a default under or accelerate or permit the acceleration of any performance required by, any material lease, agreement or other contract to which the Debtor is a party or by which the Debtor or any of its property is bound.

(e) *Material Adverse Effect.* Other than the commencement of the Case and as a reasonable consequence of the commencement of the Case, or as has been publicly disclosed by the Company in its reports filed pursuant to the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder, no event that has had or could reasonably be expected to have a Material Adverse Effect has occurred and is continuing since the Petition Date.

(f) *Information Correct.* No information, report, financial statement, exhibit or schedule furnished by or on behalf of the Debtor to the DIP Lender in connection with the

negotiation of any DIP Loan Documentation contains, when furnished, any material misstatement of fact or omitted or omits, when furnished, to state any material fact necessary to make the statements, in the light of circumstances under which they were, are or will be made, not misleading (it being recognized by DIP Lender that (i) projections and pro forma financial information, including the Approved Budget, are based upon good faith estimates and assumptions believed by the Borrower to be reasonable at the time made, and (ii) projections and estimates as to future events are not to be viewed as facts and that the actual results during the period or periods covered by any such projections and estimates may differ materially from projected or estimated results).

7. <u>DIP Loan Outstandings</u>. The DIP Loan Documentation shall constitute and evidence the validity and binding effect of the DIP Loan Outstandings, which DIP Loan Outstandings shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceeding superseding or related to any of the foregoing (collectively, "<u>Successor Case</u>"). Upon entry of this Interim Order, the DIP Loan Outstandings will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Lender under the DIP Loan Documentation, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loan Documentation. The DIP Loan Outstandings shall be due and payable, without notice or demand, upon the occurrence of a Termination Event.

8. <u>DIP Liens and DIP Collateral</u>. Effective immediately upon the execution of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy

Code, the DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected security interests in and liens (the "<u>DIP Liens</u>") on any and all presently owned and hereafter acquired personal property, real property and other assets of the Debtor, including, without limitation, the following (collectively, the "<u>DIP Collateral</u>"): all (i) property of the Debtor; (ii) all rights or interests that the Debtor has in property consigned by or to or leased to or from the Debtor (to the extent permitted by applicable nonbankruptcy law), (iii) all proceeds, products, rents, or profits of or from the foregoing; and (iv) upon entry of a Final Order, all of the proceeds of avoidance actions and claims arising under chapter 5 of the Bankruptcy Code, and (v) all of the proceeds of property described in clauses (i) through (iii).

9. <u>DIP Lien Priority</u>. The DIP Liens securing the DIP Loan Outstandings shall be junior in priority to the (a) Carve-Out, (b) liens of the Pre-Petition Senior Secured Lender (whether pursuant to the Pre-Petition Senior Secured Loan Documents or this Interim Order), (c) Permitted Liens (as defined in the Pre-Petition Junior Secured Loan Agreement) that are expressly provided to be senior in priority to liens of the Pre-Petition Junior Secured Lender under the Pre-Petition Junior Secured Loan Agreement, and (d) any valid, non-avoidable lien that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and shall otherwise be senior in payment and priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral (the "<u>DIP Priority Collateral</u>"). Other than as set forth herein, the DIP Liens shall be senior to, and shall not be made subject to or *pari passu* with, any lien or security interest hereinafter granted in the Case or any Successor Case. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or

upon the dismissal of the Case or Successor Case. Upon entry of the Final Order, the DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. Upon entry of the Final Order, no lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

10.     DIP Superpriority Claim.   Upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Case (collectively, the "DIP Superpriority Claim") for all DIP Loan Outstandings. The DIP Superpriority Claim shall be subordinate in payment and priority only to the Carve-Out and the 507(b) Claim (as defined herein) of the Pre-Petition Senior Secured Lender, and shall otherwise have priority over any and all administrative expenses and unsecured claims against the Debtor or its estate in the Case and any Successor Case, at any time existing or arising, of any kind or nature whatsoever.

11.     Roll-Up of Amounts Owed by Debtor Under the Pre-Petition Junior Secured Credit Facility.   Subject to the entry of the Final Order, on the Final Closing Date, the indebtedness of the Debtor to the Pre-Petition Junior Secured Lender under the Pre-Petition Junior Secured Loan Documents, whether for borrowed money, fees, expenses, or otherwise, but not to exceed $25 million plus interest payable on such amounts under the DIP Term Sheet from and after the Petition Date (the "Roll-Up"), will be added to the DIP Credit Facility, *provided* that the Roll-Up shall remain subject to (a) the priorities set forth in this Interim Order and (b) the reservation of certain rights of the Statutory Committee and other parties in interest set forth in paragraph 36 of this Interim Order.

12.     No Obligation to Extend Credit.   The DIP Lender shall not have any obligation to make any loan or advance under the DIP Loan Documentation unless the conditions precedent to

the making of such extension of credit under the DIP Term Sheet or other applicable DIP Loan Documentation, including, without limitation, the Draw Conditions, have been satisfied in full or waived by the DIP Lender.

13.     <u>Amendment of the DIP Loan Documentation</u>.  The DIP Loan Documentation may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if the amendment, modification, or supplement is (a) in accordance with the DIP Loan Documentation, (b) beneficial to the Debtor, (c) no less favorable to the Pre-Petition Senior Secured Lender than the DIP Loan Documentation as in effect prior to such amendment, modification, or supplement, and (d) not prejudicial in any material respect to the rights of third parties.  The parties to the DIP Loan Documentation are not required to (x) obtain the consent of the Statutory Committee or (y) request whether the U.S. Trustee has any objection to, or seek further approval of the Court to effectuate, any such amendment, modification or supplement otherwise permitted under this paragraph.  Except for an amendment, modification, or supplement that satisfies subsections (a)-(d) set forth above, any amendment, modification, or supplement to the DIP Loan Documentation shall be subject to appropriate approval of the Court on due notice to the U.S. Trustee, the Pre-Petition Senior Secured Lender, the Statutory Committee, and any such affected third party.

14.     <u>Approved Budget</u>.  Attached to the DIP Term Sheet as **<u>Exhibit B</u>** is a thirteen (13) week budget (the "<u>Approved Budget</u>") for the period from the week ending on July 13, 2018 through and including the week ending on October 5, 2018, which has been consented to by the DIP Lender and the Pre-Petition Lenders.  The Approved Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis and includes all necessary and required expenses that the Debtor expects to incur during each week of the Approved Budget.

DOCS_DE:220261.1 83990/002

From and after the Petition Date, the Debtor shall use loans under the DIP Credit Facility only for the purposes specifically set forth in this Interim Order and the DIP Loan Documentation and in compliance with the Approved Budget. Notwithstanding any first-day orders entered authorizing the Debtor to pay any prepetition or other expenses, all such payments shall be made in accordance with the Approved Budget. The Approved Budget may not be amended by the Debtor without the consent of the DIP Lender and the Pre-Petition Lenders.

15. <u>Payroll Reserve</u>. Upon the Interim Closing Date (as defined in the DIP Term Sheet), the Debtor shall establish a reserve, utilizing the DIP Loan Proceeds and Cash Collateral (the "<u>Payroll Reserve</u>"), of $1,890,000 (to be adjusted from time to time pursuant to the Approved Budget) to pay wages, benefits, withholdings, and commissions owed to employees and independent contractors, along with related payroll management expenses (collectively, the "<u>Payroll Expenses</u>"), that have or will come due through the Final Closing Date as set forth in the Approved Budget. Subject to the satisfaction of the Draw Conditions, upon the Final Closing Date, the Debtor shall place additional funds into the Payroll Reserve for Payroll Expenses that will come due for the period from such date through the Outside Date as set forth in the Approved Budget. The Debtor is not permitted to use funds contained in the Payroll Reserve for any purpose *other than* for Payroll Expenses without further order of this Court; *provided*, that, (i) notwithstanding the occurrence and continuation of any Event of Default other than a Specified Event of Default (as defined in the DIP Term Sheet), the Debtor shall be authorized to access and use funds contained in the Payroll Reserve and Cash Collateral to pay and satisfy Payroll Expenses accrued through the effective date of a termination of the Debtor's entitlement to use Cash Collateral and/or receive DIP Loans under the DIP Loan Documentation, as applicable, and (ii) notwithstanding the occurrence and continuance of a Specified Event of

23

Default, the Debtor shall be authorized to access and use funds contained in the Payroll Reserve and Cash Collateral to pay and satisfy Payroll Expenses accrued through the date on which such Specified Event of Default shall have occurred. For the avoidance of doubt, notwithstanding the deposit of funds in the Payroll Reserve, the funds contained in the Payroll Reserve shall retain their characteristics as Cash Collateral and remain subject to (a) the DIP Liens, (b) existing liens in favor of the Pre-Petition Lenders as of the date of this Interim Order, and (c) the Adequate Protection Liens granted pursuant to this Interim Order, in each case subject to the respective priorities set forth in the DIP Loan Documentation.

16. <u>US Trustee Reserve</u>. Upon the Interim Closing Date, the Debtor shall establish a reserve (the "<u>US Trustee Reserve</u>") of funds sufficient to satisfy fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) (the "<u>US Trustee Fees</u>") that have or will come due during the pendency of the Case. At the end of each month following the Petition Date, the Debtor shall periodically place into the US Trustee Reserve an amount equal to the estimated US Trustee Fees as calculated based on the Debtor's accumulated disbursements. The Debtor is not permitted to use funds contained in the US Trustee Reserve for any purpose *other than* for US Trustee Fees without further order of this Court. To the extent that the amount held in the US Trustee Reserve exceeds the amount payable as US Trustee Fees, such funds shall revert to their characteristics as Cash Collateral and remain subject to (a) the DIP Liens, (b) existing liens in favor of the Pre-Petition Lenders as of the date of this Interim Order, and (c) the Adequate Protection Liens granted pursuant to this Interim Order, in each case subject to the respective priorities set forth in the DIP Loan Documentation.

17. <u>Professional Fee Reserve</u>. Upon the Interim Closing Date, the Debtor is authorized to establish a reserve (the "<u>Professional Fee Reserve</u>") of funds sufficient to satisfy

Professional Fees (as defined herein) that have or will come due during the pendency of the Case. At the end of each week following the Petition Date, the Debtor may allocate funds to the Professional Fee Reserve in an amount equal to 50% of the Carve-Out amount allocated for Professional Fees for that week under the Approved Budget, pending approval of the Bankruptcy Court to disburse such funds to the respective beneficiaries. The Debtor is not permitted to use funds contained in the Professional Fee Reserve for any purpose *other than* for Professional Fees without further order of this Court. For the avoidance of doubt, to the extent that (a) DIP Loan Proceeds and/or (b) Cash Collateral are used to fund the Professional Fee Reserve, such amounts shall be deemed to correspondingly reduce the Carve-Out for such Professional Fees, whether or not such funds are disbursed to or for the benefit of such professionals. To the extent that (i) any funds in the Professional Fee Reserve are not allowed by the Bankruptcy Court to be disbursed to a beneficiary of the Carve-Out or (ii) such reserved funds relate to any period during which such beneficiary of the Carve-Out is no longer employed by the Debtor, such funds shall (x) revert to the Debtor, (y) revert to their characteristics as Cash Collateral, and (z) thereafter, be subject to (A) the DIP Liens, (B) existing liens in favor of the Pre-Petition Lenders as of the date of this Interim Order, and (C) the Adequate Protection Liens granted pursuant to this Interim Order, in each case subject to the respective priorities set forth in the DIP Loan Documentation.

18.    <u>Modification of Automatic Stay</u>.   The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to grant the DIP Liens, Adequate Protection Liens (as defined herein), and DIP Superpriority Claim; (b) permit the Debtor to incur all liabilities and obligations under the DIP Loan Documentation; (c) permit the Debtor to perform such other acts as are necessary to effectuate the terms of this

25

Interim Order; and (d) authorize the Debtor to pay the Pre-Petition Senior Secured Lender and the DIP Lender in accordance with the terms of this Interim Order.

19.    <u>Proceeds of Subsequent Financing</u>.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in the Case or any Successor Case shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documentation and this Interim Order at any time prior to (a) the indefeasible repayment in full in cash of all Pre-Petition Obligations owing to the Pre-Petition Senior Secured Lender and DIP Loan Outstandings and (b) the termination of the DIP Lender's obligation to extend credit under the DIP Credit Facility, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Pre-Petition Senior Secured Lender to be applied to the Pre-Petition Obligations owing to such Lender, and thereafter, to the extent remaining, to the DIP Lender to be applied to the DIP Loan Outstandings.

20.    <u>Maintenance of DIP Collateral</u>.  Until the payment in full in cash of all DIP Loan Outstandings, and the termination of the DIP Lender's obligation to extend credit under the DIP Credit Facility, the Debtor shall maintain customary insurance on the DIP Collateral as required under the DIP Term Sheet.

21.    <u>Disposition of DIP Collateral: Rights of DIP Lender</u>.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or Pre-Petition Collateral outside of the ordinary course of business without the prior written consent of the DIP Lender and the Pre-Petition Lenders (with the exception of FFE Sales (as defined in the DIP Term Sheet)).

DOCS_DE:220261.1 83990/002

22.   DIP Termination; Termination of Consent to Use Cash Collateral.   Upon the occurrence of a Termination Event, (a) all DIP Loan Outstandings shall be immediately due and payable and all commitments to extend credit under the DIP Credit Facility will terminate and (b) each Pre-Petition Lender's consent to the Debtor's use of Cash Collateral will terminate; *provided* that the Pre-Petition Junior Secured Lender's consent to the Debtor's use of Cash Collateral shall not terminate prior to the Outside Date (as defined in the DIP Term Sheet) unless the Termination Event occurs by reason of an Event of Default under the DIP Loan Documentation.

23.   Events of Default.   The occurrence of an "Event of Default" under the DIP Term Sheet (subject to any extensions or waivers as permitted under the DIP Loan Documentation), or a default under the terms and conditions of this Interim Order, shall constitute an event of default under this Interim Order, unless expressly waived in writing by the DIP Lender and the Pre-Petition Lenders, as applicable, (collectively, the "Events of Default"); *provided* that any waiver by the DIP Lender of an Event of Default under the DIP Loan Documentation shall not be binding on (or constitute a waiver of) the Pre-Petition Secured Lender's ability to declare an Event of Default under the DIP Orders.   Furthermore, an Event of Default hereunder shall occur if, until and unless the DIP Loan Outstandings and the Pre-Petition Obligations owing to the Pre-Petition Senior Secured Lender have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Credit Facility have been terminated, the Debtor seeks or consents to, directly or indirectly, without the prior written consent of the DIP Lender and the Pre-Petition Lenders, as applicable: (a) any modification, stay, vacatur, amendment, or supplement to this Interim Order (provided that the modified, amended, or supplemented order is not in form and substance acceptable to the DIP Lender and the Pre-Petition Lenders in their sole discretion); (b)

DOCS_DE:220261.1 83990/002

a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Case or any Successor Case, equal or superior to the DIP Superpriority Claim, other than the Carve-Out and the 507(b) Claim of the Pre-Petition Senior Secured Lender; or (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, other than existing pre-petition liens and Adequate Protection Liens granted to the Pre-Petition Senior Secured Lender.

24. <u>Rights and Remedies Upon Event of Default</u>. Upon the occurrence and during the continuation of an Event of Default, and in compliance with applicable notice requirements set forth in the DIP Term Sheet, (i) each of the Pre-Petition Lenders may terminate their respective consents to the Debtor's use of Cash Collateral, (ii) the DIP Lender may declare all DIP Loan Outstandings owing under the DIP Loan Documentation to be immediately due and payable, (iii) any further commitment of the DIP Lender to extend credit to the Debtor (to the extent any such commitment remains) may be terminated, restricted, or reduced, (iv) subject to the liens and security interests granted to the Pre-Petition Senior Secured Lender, the DIP Lender may set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Lender), and (v) subject to the prior consent of the Pre-Petition Senior Secured Lender (which consent shall not be unreasonably withheld, denied, delayed or conditioned), and without application or motion to, or further orders from, the Bankruptcy Court or any other court, and without interference from the Debtor or any other party in interest, take any other action or exercise any other right or remedy (including, without limitation, with respect to the DIP Liens and DIP Collateral) permitted under the DIP Loan

Documentation or under applicable law, including, without limitation, exercising any and all rights and remedies with respect to the DIP Collateral or any portion thereof; *provided*, that, in the event in the reasonable exercise of its discretion, the Pre-Petition Senior Secured Lender declines to provide its consent to the DIP Lender's exercise of rights and remedies under the DIP Loan Documentation, the DIP Lender shall be entitled to file a motion or application in the Bankruptcy Court seeking, on an expedited basis of not less than two (2) business days' notice to the Pre-Petition Senior Secured Lender, authorization to exercise such rights and remedies notwithstanding the Pre-Petition Senior Secured Lender's objection thereto; *provided further*, that the Pre-Petition Senior Secured Lender's rights to oppose any such motion or application are fully reserved and preserved. Subject to the immediately preceding sentence, any automatic stay otherwise applicable to the DIP Lender is hereby modified so that the DIP Lender shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documentation and this Interim Order, without notice to or interference from the Debtor or any other party in interest, and shall be permitted to satisfy the DIP Loan Outstandings and the DIP Superpriority Claim, subject to the Carve-Out and the security interests granted to the Pre-Petition Senior Secured Lender. Unless the Court orders otherwise, the automatic stay shall automatically be terminated at the end of any applicable grace or cure period provided in the DIP Loan Documentation without further notice or order, and the DIP Lender shall be permitted to exercise all remedies set forth herein, in the DIP Term Sheet and/or the DIP Loan Documentation, as applicable, and as otherwise available at law against the DIP Collateral, without any further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and

29

remedies granted to the DIP Lender with respect thereto pursuant to the DIP Loan Documentation or this Interim Order. Upon termination of the DIP Credit Facility and termination of the automatic stay in favor of the DIP Lender, the DIP Lender may, in its discretion and without liability of any kind, in connection with its enforcement rights against the DIP Collateral, use any real or personal property constituting DIP Collateral, without the payment of fees to the Debtor and without prejudice to any of the DIP Lender's rights to foreclose, repossess, or exercise other remedies as a secured party.

25.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  Through the date hereof, the DIP Lender and the Pre-Petition Lenders have acted in good faith in connection with negotiating the DIP Loan Documentation and making loans under the DIP Credit Facility and consenting to the Debtor's use of Cash Collateral, and their respective reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender and the Pre-Petition Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

26.     <u>Reporting Requirements</u>.  Debtor shall observe and comply with all of the financial reporting and performance covenants and conditions set forth in the DIP Loan Documentation, including, without limitation, the DIP Budget Reports (as defined in the DIP Term Sheet) and the Borrowing Base Statements (as defined in the Pre-Petition Senior Secured Loan Agreement).

DOCS_DE:220261.1 83990/002

27.     Rights of Access and Information.     Without limiting the rights of access and information afforded the DIP Lender under the DIP Loan Documentation, the Debtor shall afford representatives, agents and/or employees of the DIP Lender and the Pre-Petition Lenders reasonable access to the Debtor's premises and its books and records and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.     In addition, the Debtor authorizes its independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Lender and the Pre-Petition Lenders all such non-privileged information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtor.

28.     Carve-Out.

(a)     *Carve-Out.*     As used in this Interim Order, the "Carve-Out" shall encompass the following expenses, (i) US Trustee Fees, (ii) fees payable to the Clerk of the Bankruptcy Court ("Case Administration Fees"), (iii) unpaid postpetition professional fees and expenses ("Debtor Professional Fees") payable to each legal or financial advisor retained by the Debtor, including the noticing agent (the "Debtor Professionals") that are incurred or accrued prior to the date of the occurrence of a Termination Event, but subject to the aggregate amount(s) set forth in the Approved Budget and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event); (iv) unpaid professional fees and expenses (together with the Debtor Professional Fees, the "Professional Fees") payable to each legal or financial advisor retained by the Committee that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined in the Interim Order or Final Order as in effect) but subject to

31

the aggregate amount(s) set forth in the Approved Budget and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event), (v) Case Administration Fees and Professional Fees paid on or after the date of the occurrence of a Termination Event in an aggregate amount not to exceed $25,000, and (vi) in the event the Case is converted to a case under chapter 7 of the Bankruptcy Code, reasonable fees and expenses incurred by a duly-appointed trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $25,000.

(b)     *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.* Neither the DIP Lender nor the Pre-Petition Lenders shall be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained by the Debtor and/or the Statutory Committee incurred in connection with the Case or any Successor Case. Nothing in this Interim Order or otherwise shall be construed (i) to obligate the DIP Lender or any Pre-Petition Lender in any way to pay compensation to or to reimburse expenses of any professionals retained by the Debtor and/or the Statutory Committee, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve-Out if actual Professional Fees incurred after a Termination Event exceed the applicable Carve-Out limitation; or (iii) as consent to the allowance of any professional fees or expenses of any professionals retained by the Debtor and/or the Statutory Committee, with the rights of the DIP Lender and the Pre-Petition Lenders to object to any Professional Fees expressly reserved. For the avoidance of doubt, the Carve-Out (as set forth in the Approved Budget) does not constitute a cap on the allowance or payment as an administrative expense of any Professional

32

Fees; *provided* that the Carve-Out for Professional Fees shall not exceed the amount set forth in the Approved Budget irrespective of the amount of Professional Fees allowed by the Court.

29.     <u>Cash Collateral</u>.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall include and consist of, without limitation, all of the cash proceeds of the accounts receivable, inventory and other property constituting Pre-Petition Collateral in which any of the DIP Lender or the Pre-Petition Lenders has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Petition Date or arises thereafter pursuant to this Interim Order, any other order of this Court, applicable law or otherwise.

30.     <u>Use Of Pre-Petition Collateral (including Cash Collateral)</u>. Subject to the Debtor's reservation of rights in this Interim Order, the Debtor is hereby authorized to continue to use the Pre-Petition Collateral and all Cash Collateral during the period from the Petition Date through and including the date on which a Termination Event occurs for general corporate purposes in accordance with the terms and conditions of this Interim Order and the DIP Loan Documentation (including the Approved Budget), provided that (i) the principal amount outstanding under the Pre-Petition Senior Secured Credit Facility shall not increase, (ii) the Pre-Petition Obligations owing to the Pre-Petition Senior Secured Lender are paid down in the manner set forth in the Approved Budget, and (iii) the Pre-Petition Senior Secured Lender and Pre-Petition Junior Secured Lender are granted adequate protection as set forth in paragraph 32 of this Interim Order.

31.     <u>Limitations on the DIP Credit Facility, DIP Collateral, and Carve-Out</u>.  The DIP Credit Facility, DIP Collateral, Cash Collateral, and Carve-Out may not be used: (a) in

DOCS_DE:220261.1 83990/002

connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of (x) the DIP Lender, or its rights and remedies under the DIP Loan Documentation (except for an objection of the Statutory Committee to the Motion), (y) the Pre-Petition Junior Secured Lender, or its rights and remedies under the Pre-Petition Junior Secured Loan Documents, or (z) the Pre-Petition Senior Secured Lender, or its rights and remedies under the Pre-Petition Senior Secured Loan Documents, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Loan Outstandings, Pre-Petition Junior Secured Credit Facility, or the Pre-Petition Senior Secured Credit Facility, (ii) for monetary, injunctive or other affirmative relief against the DIP Lender and/or the Pre-Petition Lenders, or (iii) preventing, hindering or otherwise delaying the exercise by the DIP Lender and/or the Pre-Petition Lenders of any rights and remedies under this Interim Order, the DIP Loan Documentation, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Lender upon any of the DIP Collateral or by the Pre-Petition Lenders upon any of the Pre-Petition Collateral; (b) to make any distribution under a plan of reorganization in the Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Lender and the Pre-Petition Lenders, except as contemplated by the Approved Budget and approved by the Court; (d) to object to, contest, or

34

interfere with in any way the DIP Lender's or the Pre-Petition Lenders' enforcement or realization upon any of the DIP Collateral or Pre-Petition Collateral, as applicable, once an Event of Default has occurred; (e) to use or seek to use any insurance proceeds constituting DIP Collateral or Pre-Petition Collateral without the prior written consent of the DIP Lender and the Pre-Petition Lenders; (f) to incur Indebtedness (as defined in the Pre-Petition Junior Secured Loan Documents) outside the ordinary course of business without the prior written consent of the DIP Lender and the Pre-Petition Lenders; (g) to object to or challenge in any way the claims, security interests, liens, or other interests (including interests in the Pre-Petition Collateral or DIP Collateral) held by or on behalf of the DIP Lender and/or the Pre-Petition Lenders; (h) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the DIP Lender and/or the Pre-Petition Lenders; (i) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Pre-Petition Senior Secured Credit Facility, Pre-Petition Junior Secured Credit Facility, DIP Loan Outstandings, or DIP Liens or any other rights or interests of the DIP Lender and/or the Pre-Petition Lenders; or (j) to prevent (or attempt to prevent), hinder or otherwise delay the exercise by the DIP Lender and/or the Pre-Petition Lenders of any rights and remedies granted under this Interim Order; *provided*, that Statutory Committee(s) may use up to $15,000 (in the aggregate) in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against (a) the Pre-Petition Junior Secured Lender (in its capacity as such) or (b) the Pre-Petition Senior Secured Lender (in its capacity as such).

DOCS_DE:220261.1 83990/002

32. <u>Adequate Protection</u>. The Pre-Petition Lenders are entitled to and are hereby granted, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, adequate protection of their respective interests in their respective collateral, including the Pre-Petition Collateral and Cash Collateral, in an amount equal to the aggregate diminution in value of their respective interests in such collateral occurring on or after the Petition Date, including, without limitation, any such diminution resulting from the use by the Debtor of the Cash Collateral and any other Pre-Petition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "<u>Adequate Protection Obligations</u>"). As adequate protection, the Pre-Petition Senior Secured Lender and the Pre-Petition Junior Secured Lender are hereby granted the following (but only to the extent of any Adequate Protection Obligations):

(a) *Adequate Protection Liens.* Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Pre-Petition Senior Secured Lender and the Pre-Petition Junior Secured Lender are hereby granted by the Debtor continuing valid, binding, enforceable and perfected, liens and security interests in and on all of the DIP Collateral to the extent of the Adequate Protection Obligations (together with any additional adequate protection liens, if any, authorized pursuant to further order of the Court, the "<u>Adequate Protection Liens</u>"). The Adequate Protection Liens granted hereby shall be silent, subordinated liens and the holders thereof shall have no rights of enforcement against collateral other than the right to receive proceeds of collateral in the order of priority set forth herein. The Adequate Protection Liens of the Pre-Petition Senior Secured Lender shall be senior to the DIP Liens and subordinate only to the Carve-Out. The Adequate Protection Liens of the Pre-Petition Junior Secured Lender shall be subordinate to: (1) the Carve-Out, (2) the Pre-Petition Senior Secured Lender's prepetition

liens, (3) the Pre-Petition Senior Secured Lender's Adequate Protection Liens, and (4) the DIP Liens. The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, and not subject to further subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Case and any Successor Case, subject to paragraph 36 of this Interim Order. Except as described in this paragraph, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or *pari passu* with the Adequate Protection Liens in the Case or any Successor Case without the prior written consent of the parties affected thereby.

(b)    *507(b) Claims.*  The Pre-Petition Lenders shall have, pursuant to section 507(b) of the Bankruptcy Code, an allowed super-priority administrative expense claim subject to proof (the "507(b) Claims") against the Debtor and its estate to the extent that the adequate protection afforded herein for any Adequate Protection Obligations proves to be inadequate. The 507(b) Claim of the Pre-Petition Senior Secured Lender, if any, hereunder shall be subordinate only to the Carve-Out. The 507(b) Claim of the Pre-Petition Junior Secured Lender, if any, hereunder shall be subordinate only to the Carve-Out, the 507(b) Claim of the Pre-Petition Senior Secured Lender, and the DIP Superpriority Claim. Except as expressly permitted herein, no cost or expense of administration under any provision of the Bankruptcy Code (whether incurred in the Case or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise), shall be senior to, equal to, or *pari passu* with, any 507(b) Claim granted hereby. Each 507(b) Claim shall be deemed a legal, valid, binding, and enforceable claim against the Debtor and its estate, and not subject to subordination (except as expressly provided in this Interim Order), impairment or avoidance, for all purposes in the Case and any Successor Case. The 507(b) Claims shall be payable from, and have recourse to, any

DOCS_DE:220261.1 83990/002

and all property and assets of the Debtor, subject to the Carve-Out, but not in any event to the proceeds of Avoidance Actions until entry of the Final Order.

(c) *Payment of Certain Non-Default Interest; Payment of Professional Fees and Expenses.* As further adequate protection, and without limiting any rights of the Pre-Petition Lenders under section 506(b) of the Bankruptcy Code which are hereby preserved and subject in all respects to section 506(b) of the Bankruptcy Code and paragraph 33 of this Interim Order, and without limiting any rights of any Statutory Committee or other party in interest under paragraph 36 of this Interim Order, (i) the Debtor shall pay to the Pre-Petition Senior Secured Lender, on a current basis, interest accruing upon the Pre-Petition Obligations owing to the Pre-Petition Senior Secured Lender at the non-default rate of interest as provided in and otherwise subject to the terms of the Pre-Petition Senior Secured Loan Documents (provided that the Pre-Petition Obligations owing to the Pre-Petition Senior Secured Lender shall continue to accrue interest at the applicable default rate of interest under the Pre-Petition Senior Secured Loan Documents), and (ii) the Debtor shall promptly pay on a current basis the reasonable out-of-pocket fees, costs and expenses (whether incurred before or after the Petition Date) of the Pre-Petition Senior Secured Lender and its attorneys in connection with (w) the negotiation and administration of the Cash Collateral use arrangement implemented by this Interim Order, (x) the review and negotiation of any amendment, supplement, waiver or modification to this Interim Order, the other DIP Loan Documentation and any documentation related hereto or thereto, (y) the monitoring of and involvement and participation in the Case or any Successor Case and the consummation and administration of the transactions contemplated by this Interim Order and the other DIP Loan Documentation and (z) the preservation and protection of the Pre-Petition Senior Secured Lender's rights under this Interim Order or any documentation related hereto, in each

38

case whether or not such amounts are included in the Approved Budget or arose before or after the Petition Date, all without further notice, motion, fee application or order of the Court (except as provided below) and whether such interest, fees, costs and expenses accrued prior to or after the Petition Date (all such payments, under this subparagraph (c), the "Permitted Adequate Protection Payments"). None of the fees, costs and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtor shall pay the fees, costs and expenses provided for in this paragraph promptly and, in any event, not later than fourteen (14) days of delivery of an invoice to the Debtor, with a copy to the U.S. Trustee, counsel to the DIP Lender and any Statutory Committee appointed in the Case; provided, however, that, if the Debtor, U.S. Trustee, the DIP Lender, or any Statutory Committee objects to the reasonableness of such fees and expenses and cannot resolve the objection within five (5) business days of service of such invoice(s), the Debtor, U.S. Trustee, the DIP Lender, or any Statutory Committee, as the case may be, shall file and serve upon the Pre-Petition Senior Secured Lender a Fee Objection limited to the issue of the reasonableness of the disputed fees and expenses; and, provided, further, that the Debtor shall timely pay in accordance with this Interim Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed.

33. <u>Reservation Of Rights Of Pre-Petition Senior Secured Lender and the Pre-Petition Junior Secured Lender</u>. Based upon the terms and conditions of this Interim Order, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Pre-Petition Senior Secured Lender and the Pre-Petition Junior Secured Lender.

DOCS_DE:220261.1 83990/002

Notwithstanding any other provision hereof, the grant of adequate protection to any party pursuant hereto is without prejudice to the right of such party to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection and without prejudice to the right of the Debtor or any other party in interest to contest any such modification. Except as expressly provided herein, nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall impair, prejudice or modify any rights, claims or defenses available in law or equity to the Pre-Petition Senior Secured Lender and the Pre-Petition Junior Secured Lender, including, without limitation, the right to (a) request payment of interest on the Pre-Petition Obligations at the applicable default rate of interest set forth in the Pre-Petition Obligations, (b) request conversion of the Case to chapter 7, (c) seek to terminate the exclusive rights of the Debtor to file, and solicit acceptances to, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (d) object to the fees and expenses of any retained professionals of the Debtor or any Statutory Committee that may be appointed, and (e) seek relief from the automatic stay. All such rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved.

34.     Perfection of DIP Liens and Adequate Protection Liens. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance

40

with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtor is authorized and directed to execute and deliver promptly upon demand to the DIP Lender, all such financing statements, mortgages, notices and other documents as the DIP Lender may reasonably request. The DIP Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

35. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary. Subject to paragraph 36 of this Interim Order, the Debtor's Stipulations shall be binding on all parties-in-interest, including, without limitation, any committees appointed in the Case (and any subsequent trustee of the Debtor's estate).

36. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. The Debtor's Stipulations shall be binding upon the Debtor and its estate in all circumstances upon entry of this Interim Order. The Debtor's Stipulations shall be binding upon each other party in interest, including any Statutory Committee, except to the extent and only to the extent such Statutory Committee or, solely as provided in clause (y) below, any other party in interest with

standing (including any chapter 11 trustee) other than the Debtor (or if the Case is converted to a case under chapter 7 prior to the expiration of the Challenge Period (as defined herein), the chapter 7 trustee in such Successor Case), *first*, commences, no later than (x) with respect to any Statutory Committee, sixty (60) calendar days after the formation of any Statutory Committee, and (y) with respect to other parties in interest with requisite standing other than the Debtor or any Statutory Committee, seventy-five (75) calendar days following the date of entry of the Interim Order (such time period established by whichever of clauses (x) and (y) may be applicable, as the same may be extended in accordance with this paragraph, shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined herein) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date") a contested matter, adversary proceeding, or other matter challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations (each, a "Challenge"), and second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "Successful Challenge"). If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed or elected. Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in the Case and any Successor Case (and

DOCS_DE:220261.1 83990/002

after the dismissal of the Case or any Successor Case), (i) any and all payments made to or for the benefit of the Pre-Petition Lenders or otherwise authorized by this Interim Order (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (iii) the Pre-Petition Lenders shall be deemed to have fully allowed claims within the meaning of section 506 of the Bankruptcy Code for all of the Pre-Petition Obligations owed to such Pre-Petition Lender, and (iv) the Debtor's Stipulations shall be binding on all parties in interest in the Case or any Successor Case, including any Statutory Committee or chapter 11 or chapter 7 trustee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtor's Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Statutory Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtor's Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge.  The Challenge Period may be extended only (i) with the written consent of the Debtor and the applicable Pre-Petition Lender or (ii) by order of this Court, on motion and (A) notice of at least five (5) business days to the Debtor and the applicable Pre-Petition Lender, for good cause shown, or (B) such lesser notice as may be permitted by the Court based on a showing of exigent circumstances.  Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing on any party in interest, including any Statutory Committee, to bring any Challenge on behalf of the Debtor's estate.  The failure of any party in interest, including any Statutory

Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtor's estate shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this paragraph or to require or permit an extension of the Challenge Period Termination Date. The Challenge Period Termination Date will be deemed to be tolled by thirty (30) days in the event that a motion requesting standing to bring a Challenge is filed prior to the Challenge Period Termination Date; *provided* that no Challenge filed by a party without proper standing to assert such Challenge may be cured by a subsequent order or finding of the Court made or entered after the Challenge Period Termination Date.

37.    No Deemed Control.  In making decisions to issue funds under the DIP Credit Facility, or in taking any other actions related to this Interim Order or the other DIP Loan Documentation (including, without limitation, the exercise of its approval rights with respect to the Approved Budget), the DIP Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of Debtor or to be acting as "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), and DIP Lender's relationship with Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind.

38.    Section 506(c) Claims.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Case or any Successor Case at any time shall be charged against (i) any of the DIP Lender, the Pre-Petition Senior Secured Lender, or the Pre-Petition Junior Secured Lender, (ii) any of their respective claims, or (iii) the DIP

44

Collateral or Pre-Petition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the applicable DIP Lender, the Pre-Petition Senior Secured Lender, or the Pre-Petition Junior Secured Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by any such lenders.

39. <u>Waiver of Marshaling</u>. Upon entry of the Final Order, the DIP Lender and the Pre-Petition Lenders shall not be subject to the equitable doctrine of 'marshaling' or any similar doctrine with respect to the DIP Collateral and/or Pre-Petition Collateral, as applicable, and any such claims are expressly waived by the Debtor on behalf of itself and other parties in interest.

40. <u>No Subrogation</u>. In no event shall any person or entity who pays (or through the extension of credit to the Debtor, causes to be paid) any of the DIP Loans be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon, the DIP Lender by the terms of this Interim Order, the other DIP Loan Documentation, or otherwise at law or contract or in equity, unless and until such time as all of the DIP Loans have been indefeasibly paid in full in cash on a final basis and all lending commitments have been terminated under the DIP Credit Facility and the DIP Lender has received a full release in connection therewith.

41. <u>Rights Preserved</u>. Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender and the Pre-Petition Lenders are preserved.

42. <u>Indemnification</u>. The Debtor shall indemnify, pay and hold harmless the DIP Lender (strictly in its capacity as such) (and their respective directors, officers, employees and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated by the DIP Loan Documentation or the use or the proposed use of the DIP Loan

DOCS_DE:220261.1 83990/002

Proceeds (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction).

43. <u>No Waiver by Failure to Seek Relief</u>. The failure of any of the DIP Lender, the Pre-Petition Senior Secured Lender, or the Pre-Petition Junior Secured Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the other DIP Loan Documentation, the Pre-Petition Senior Secured Loan Documents, the Pre-Petition Junior Secured Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

44. <u>Binding Effect of Interim Order</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the DIP Lender, the Pre-Petition Senior Secured Lender, and the Pre-Petition Junior Secured Lender, all other creditors of the Debtor, the Statutory Committee or any other court appointed committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Case or Successor Case.

45. <u>Interim Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Loan Documentation or this Interim Order, the provisions of this Interim Order shall govern and control.

46. <u>Notice</u>. All notices required or permitted under this DIP Order shall be sent to the respective party and such party's attorney at the address listed below by electronic mail, certified mail, return receipt requested, recognized overnight courier, or hand-delivery. In the event of

46

notice by certified mail, notice shall be effective upon receipt or refusal of delivery as shown by the return receipt. In the event of notice by electronic mail, notice shall be effective upon successful transmission. In the event of notice by hand-delivery, notice shall be effective upon receipt. In the event of notice by overnight courier, notice shall be effective upon delivery, without the necessity of acknowledgement of receipt.

If notice is given to DIP Lender, it shall be sent to:

> TriplePoint Capital LLC
> 2755 Sand Hill Road
> Menlo Park, California 94025
> Attn: Sajal Srivastava, President
> Email: sks@triplepointcapital.com

> With a copy to:

> McDermott Will & Emery LLP
> 2049 Century Park East, 38th Floor
> Los Angeles, California 90067
> Attn: Gary Rosenbaum
> Email: grosenbaum@mwe.com

> and

> McDermott Will & Emery LLP
> 340 Madison Avenue
> New York, New York 10173
> Attn: Tim Walsh & Riley Orloff
> Email: twwalsh@mwe.com;
>          rorloff@mwe.com

If notice is given to Debtor, it shall be sent to:

> Tintri, Inc.
> 303 Ravenwood Drive
> Mountain View, California 94043
> Attn: George de Urioste, CFO
> Email: gdeurioste@tintri.com

> With a copy to:

> Pachulski Stang Ziehl & Jones LLP

150 California Street, 15th Floor
San Francisco, California 94111
Attn: Henry Kevane & John Lucas
Email: hkevane@pszjlaw.com
        jlucas@pszjlaw.com

If notice is given to Pre-Petition Senior Secured Lender, it shall be sent to:

Silicon Valley Bank
2400 Hanover Street
Palo Alto, California 94304
Attn: Ben Yu
Email: byu@svb.com

With a copy to:

Riemer & Braunstein LLP
Times Square Tower, Suite 2506
Seven Times Square
New York, New York 10036
Attn: Steven Fox
Email: sfox@riemerlaw.com

and

Riemer & Braunstein LLP
Three Center Plaza, 6th Floor
Boston, Massachusetts 02108
Attn: Paul Samson
Email: psamson@riemerlaw.com

47.    <u>Exclusive Jurisdiction; Waiver of Jury Trial; Judicial Reference</u>. THE DEBTOR,

ON BEHALF OF ITSELF, ITS AFFILIATES, AND ITS INSIDERS, THE DIP LENDER, AND

THE PRE-PETITION LENDERS AGREE THAT THIS COURT HAS EXCLUSIVE

JURISDICTION OVER MATTERS ARISING OUT OF OR RELATED TO IN ANY WAY TO

THE DIP CREDIT FACILITY, THE DIP COLLATERAL, OR ANY OF THE DIP LOAN

DOCUMENTATION AND HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL

IN CONNECTION THEREWITH. TO THE EXTENT THIS WAIVER IS FOUND TO BE

UNENFORCEABLE, THE DEBTOR, ON BEHALF OF ITSELF, ITS AFFILIATES, AND ITS

48

INSIDERS, THE DIP LENDER, AND THE PRE-PETITION LENDERS RECOGNIZE AND AGREE THAT ALL CONTROVERSIES, DISPUTES AND CLAIMS RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS, HIS OR HER OWN CHOICE, EACH PARTY KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF ALL PARTIES, AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY CONTROVERSY, DISPUTE OR CLAIM BETWEEN OR AMONG THEM ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.

48. <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Case or a Successor Case. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Lender, pursuant to this Interim Order and/or the other DIP Loan Documentation, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall maintain their priority as provided by this Interim Order until all DIP Loan Outstandings have been indefeasibly paid in full. The terms and provisions concerning the indemnification of the DIP Lender shall continue in the Case, in any Successor Case, following dismissal of the Case or any Successor Case, following termination of the DIP Loan Documentation and/or the repayment of the DIP Loan Outstandings.

49.     <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Credit Facility is scheduled for ~~July~~ *August 10,* [ ], 2018 at *10* a.m. (Eastern Time) before the Honorable Judge Kevin J. Carey, United States Bankruptcy Judge, [*5TH*] Floor Courtroom, Room [*5*], at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., Wilmington, DE, 19801.  On or before *July 13*, 2018, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with a copy of this Interim Order and the Motion, on: (a) the U.S. Trustee; (b) counsel for the DIP Lender; (c) counsel for the Pre-Petition Lenders; (d) other parties with liens of record on assets of the Debtor as of the Petition Date; (e) the Debtor's twenty (20) largest unsecured creditors; (f) counsel for any Statutory Committee, if any, and (g) all other parties requesting special notice pursuant to Bankruptcy Rule 2002.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on *August 3, 2018* [ ] at [*4:00*.m.] (Eastern Time), which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtor, (ii) the U.S. Trustee; (iii) counsel for the DIP Lender; (iv) counsel for the Pre-Petition Lenders; (v) other parties with liens of record on assets of the Debtor as of the Petition Date; (vi) the Debtor's twenty (20) largest unsecured creditors; (vii) counsel for any Statutory Committee, if any, and (viii) all other parties requesting special notice pursuant to Bankruptcy Rule 2002.

50.     <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

51. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

52. <u>Waiver of Stay of Effectiveness of the Interim Order</u>. Notwithstanding Bankruptcy Rules 6003 and 6004 or any other Bankruptcy Rule, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

Dated: _July 11, 2018_
Wilmington, Delaware

_____
Honorable Kevin J. Carey
United States Bankrutpcy Judge