IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TINTRI, INC.,[1] | ) | Case No.: 18-11625 (KJC) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO ENTER INTO DIRECT RESELLER AGREEMENT PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") hereby files this motion (the "Motion") for entry of an order the Court pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order substantially in the form attached hereto as **Exhibit A,** authorizing the Debtor to enter into a direct reseller agreement and respectfully represent as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28

---

[1] The Debtor and the last four digits of its taxpayer identification numbers are (6978): The headquarters and service address for the above-captioned Debtor is 303 Ravendale Dr., Mountain View, CA 94043.

U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**Background**

2.   On July 10, 2018 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtor's chapter 11 case.

3.   The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Robert J. Duffy in Support of First Day Pleadings* (the "First Day Declaration") [D.I. 2], fully incorporated herein by reference.

**The Proposed Direct Reseller Agreement with DataDirect Networks, Inc.**

4.   The Debtor develops hardware and software products and systems, and also provides support for those products and systems to its customers. The Debtor's products and systems are used by large organizations for critical informational technology applications.

5. Prior to the Petition Date, customers purchased the Debtor's products and systems because (a) the Debtor provided excellent post-purchase technical support (*i.e.*, 7 days a week and 24 hours a day), (b) the Debtor was financially and operationally stable and would therefore continue to provide customers with additional products as their needs evolved, and (c) the Debtor had a strong product roadmap that ensured customers that new features and capabilities would continue to be made available to them.

6. The Debtor has a base of approximately 1500 customers which, with its reduced staff (less than one tenth of the Debtor's prepetition employee staff remains) and limited liquidity, it is being pushed to the limit to support, service, provide additional products to, and reassure that it will serve customers ongoing needs in the future.

7. The Debtor's current distressed situation hinders the Debtor's ability to provide the same level of support that its customers are accustomed to receiving. For example, the Debtor currently has two technical support employees to address world-wide support request on a 24-hours per day, 7-days per week basis. While the Debtor has the ability to continue purchasing part and other products to customers through its sole provider, Flextronics, the Debtor has limited liquidity and in the event the Debtor is requested to provide numerous full systems it likely does not have the available cash to do so without DDN's assistance. The Debtor's engineering team can no longer develop a roadmap as more than 90% of the engineering team has been terminated or left.

8. To preserve the value of the estate and slow down and ultimately stop the significant value erosion that is taking place daily, the Debtor believes its necessary to enter into

an agreement with a strong reseller who will deploy significant resources in cash, people, and supply chain to stabilize and instill confidence in the Debtor's customer base, and generate revenue for the benefit of the Debtor, the estate, and creditors.

9. The Debtor proposes to enter into a direct reseller agreement (the "Agreement") with DataDirect Networks, Inc. ("DDN"), which would provide the Debtor with the following benefits:

    a. Access at no cost to a service organization that will service its installed base, improve customer satisfaction, and slow down the customer attrition and decline in revenue.

    b. Access at no cost to a global account executive and field technical organization to promote the Debtor's products.

    c. Continued access to products currently held by Flextronics, the Debtor's largest unsecured creditor who will only ship to the Debtor on a cash in advance basis, something which the company may not have sufficient liquidity to do.

    d. Marketing and financial resources that will benefit the Debtor and its estate by exhibiting at VMWorld, which is a national technology conference in Las Vegas, Nevada August 26-30, 2018. The participation at this conference will reassure its customers that the Debtor's products and systems will have the necessary support on a go-forward basis thereby preserving the Debtor's ability to retain its current large customer base. Or to put it another way, the Debtor's absence at VMWorld will accelerate the erosion of its customer basis and drive

customers to other providers, which significantly reduce value and hinder the Debtor's ability to sell its assets as a going concern.

10. The Debtor believes that entry into the Agreement normally would be an ordinary course transaction as the agreement is non-exclusive and does not prevent the Debtor from entering into any other agreements with third parties or continuing to perform under its existing reseller agreements. However, as the Court is aware, *see* [Docket No. 35], DDN signed a letter of intent to purchase substantially all of the Debtor's assets. In addition, the Debtor expects to file a sale and bidding procedures motion contemporaneously with this Motion that seeks the approval of DDN as a stalking horse buyer. As result, the Debtor is seeking approval to enter into the Agreement out of an abundance of caution.

**Terms of the Agreement**

11. The proposed Agreement includes the following terms:[2]

    a. DDN is permitted to sell, on a world-wide and non-exclusive basis, the Debtor's products and support, directly or indirectly through multiple layers of resellers (including sub-resellers, VARs and distributors) to end users;

    b. DDN will pay for orders within 30 days of shipment;

    c. Initial term of 1 year, after which it shall automatically renew for successive 1 year terms;

    d. After the initial term, either party may terminate by providing notice 60 days prior to the beginning of a renewal term;

---

[2] The description of the terms is intended as a summary and the terms of the Agreement shall control in the event there is any conflict.

e. Debtor must use reasonable efforts to coordinate, facilitate and support DDN's efforts to provide support services to end users that have purchased directly or indirectly from DDN;

f. Permits DDN to purchase, for resale, hardware at 77.5% off list and software at 87.5% off list; and

g. Requires DDN to purchase a minimum of 1 year of support for each hardware and software product sold at a cost of 10% or 12% of DDN's net price for such products for "Gold" or "Platinum Support," respectively.

## Relief Requested

12. By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, Rules 2002 and 9014 of the Bankruptcy Rules and Rules 2002-1 and 9006-1 of the Local Rules, the Debtors request that the Court enter an order in the form of which is attached hereto as **Exhibit A** authorizing the Debtor to enter into the Agreement with DDN, a copy of which is attached as **Exhibit B**. In support of this Motion, the Debtor submits the declaration of Robert J. Duffy attached hereto as **Exhibit C** (the "Duffy Declaration").

## Basis For Relief

**A. Entry into the Reseller Agreement is Warranted Under Section 363 of the Bankruptcy Code**

13. Section 363 of the Bankruptcy Code provides that the debtor may, "after a notice and a hearing . . . use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363. In turn, section 105(a) of the Bankruptcy Code provides that the

court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. It is well established that the use of estate property outside the ordinary course of business under section 363(b)(1) is entrusted to the sound business judgment of a debtor. *See*, *e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d. Cir. 1996) ("[U]nder normal circumstances the [bankruptcy] court would defer to the trustee's [or debtor-in-possession's] judgment so long as there is a legitimate business justification.") (citation omitted); *Computer Sales Int'l, Inc. v. Fed. Mogul Global (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) ("[I]n the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction.") (citations omitted).

15. Moreover, once a debtor articulates a valid business justification for the proposed use of estate property, the bankruptcy court should give great weight to that judgment. *See In re Commercial Mortg. & Fin., Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting that a debtor in possession "has the discretionary authority to exercise his business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation") (citations and quotation marks omitted).

**B. The Debtor Has Demonstrated Sound Business Justification for Entry into the Agreement**

16. As set forth herein, the Debtor has demonstrated a sound business justification for entry into the Agreement.

17. All of the benefits described above will carry over and benefit any purchaser of the Debtor's assets even if it is not DDN. For example, the Agreement enables the Debtor to stabilize its customer base, generate revenue, provide significantly better service and support coverage for customers, an ability to purchase products from Flextronics in the event the Debtor receives orders that exceed its ability to prepay, and having a reseller agreement with a great reseller that will greatly benefit any purchaser even if DDN is not the ultimate buyer of the Debtor's assets. The Debtor believes that DDN will invest nearly $6.5 million in expenses operating as a reseller and servicer of the Debtor's products.

18. The Debtor believes that in the absence of a reseller agreement that can go in effect immediately, revenue will continue to decline, customer satisfaction will reach unacceptably low levels and could cause an acceleration of customer migration, it will not be able to fulfill customer orders for full systems that exceed its currently liquidity constraints requiring payment to Flextronics in advance, which will also drive customers away, and not being present at VMWorld will send a strong message to the industry and the Debtor's customer base that its product and any potential going concern has a limited life at best.

19. Accordingly, the Debtor submits that entry into the Agreement is warranted pursuant to section 363 of the Bankruptcy Code as a sound exercise of the Debtor's business judgment.

DOCS_SF:97280.2 83990/002

## Requests for Immediate Relief and Waiver of Stay

20. Pursuant to Bankruptcy Rule 6004(h), the Debtor seeks a waiver of any stay of the effectiveness of an Order approving the relief sought in this Motion. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is necessary and appropriate to maximize the value of the Debtor's estate for the benefit of its economic stakeholders. Accordingly, the Debtor submits that ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h), to the extent that such Rule applies.

## Notice

21. Notice of the hearing of this Motion has been provided to: (i) the U.S. Trustee; (ii) Debtor's prepetition and postpetition lenders; (iii) those parties listed on the list of creditors holding the 20 largest unsecured claims against the Debtor, as identified in its chapter 11 petition; and (iv) parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

22. No prior request for the relief sought herein has been made to this Court or any other court.

DOCS_SF:97280.2 83990/002

WHEREFORE, the Debtor respectfully requests that the Court an order substantially in the form attached hereto as **Exhibit A** and grant such other and further relief to the Debtor as the Court may be appropriate.

Dated:  July 18, 2018              PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Henry C. Kevane (CA Bar No. 125757)
John D. Fiero (CA Bar No. 136557)
John W. Lucas (CA Bar No. 271038)
Colin R. Robinson (DE Bar No. 5524)

919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel:  (302) 652-4100
Fax: (302) 652-4400
E-mail:  hkevane@pszjlaw.com
         jfiero@pszjlaw.com
         jlucas@pszjlaw.com
         crobinson@pszjlaw.com


Proposed Attorneys for Debtor and Debtor in Possession

-10-