**<u>Exhibit B</u>**

**(Agreement)**

DIRECT RESELLER AGREEMENT

This **DIRECT RESELLER AGREEMENT** (this "<u>Agreement</u>") is entered into as of the date of the last signature of the parties hereto (the "<u>Effective Date</u>"), by and between Tintrí, Inc., a Delaware USA corporation having its principal place of business at 303 Ravendale Drive, Mountain View, CA 94043 (the "<u>Company</u>"), and DataDirect Networks, Inc. a California corporation having its principal place of business at 9351 Deering Avenue, Chatsworth, California 91311 ("<u>Reseller</u>") (each a "<u>party</u>," and collectively the "<u>parties</u>"), in reliance on the following:

A.    WHEREAS, the Company develops hardware and software products and systems and provides support for those products and systems;

B.    WHEREAS, Reseller is in the business of reselling technology products and is interested and able to successfully introduce, promote, resell and support the Company products in the Territory (as defined in Section 1.1);

C.    WHEREAS, Reseller wishes to be appointed as a non-exclusive reseller of the Company products in the Territory, and the Company is willing to grant such appointment, on the terms set forth below; and

D.    WHEREAS, Reseller intends to purchase Company products directly from the Company and resale such Products to End Users and Sub-Reseller (as defined in Section 1.1) in the Territory.

NOW, THEREFORE, in consideration of the foregoing and the agreements contained herein, the parties agree as follows:

1.    <u>DEFINITIONS</u>.

1.1    As used in this Agreement, the following terms shall have the following meanings:

"<u>Documentation</u>" means the then-current Product literature produced by or on behalf of the Company that includes without limitation product specifications, disclaimers and warranties and any updates thereto.

"<u>End User</u>" means a person or entity that is located in the Territory and purchases (and/or, as applicable, licenses) Products from Reseller or Sub-Reseller for use in such person's or entity's regular internal business purposes within the Territory, and not for resale or sublicensing.

"<u>End User License Agreement</u>" means the Company's End User License Agreement found at <u>https://www.tintri.com/company/legal/products-services-terms-conditions</u> (and the agreements, terms and conditions and limited warranties referenced therein).

"<u>Excluded Countries</u>" shall mean the countries where Reseller and Sub-Resellers are not authorized to sell Product(s) directly or indirectly.  Excluded Countries include those countries listed in <u>Exhibit B</u> hereto and any other countries to which such sales are prohibited by U.S. law or by this Agreement.

"<u>Products</u>" means each of the Hardware (as defined in Section 6.2), Software (as defined in Section 6.2) and Support provided by the Company under this Agreement and set forth on <u>Exhibit A</u> hereto.

"<u>Sub-Resellers</u>" mean value added resellers, distributors and other intermediaries that may purchase Products and Support from Reseller, for resale to End Users, pursuant to the terms of this Agreement.

"Support" means the particular Product support provided by the Company or Reseller, as set forth in Exhibit A hereto.

"Territory" shall mean the territory in which the Company authorizes Reseller, on a nonexclusive basis, to sell and promote Product(s) as specified in Exhibit B attached to this Agreement. Reseller may not sell, promote or deploy Product(s) in any other location.

"Trademarks" means all names, marks, logos, designs, trade dress and other brand designations the Company uses in connection with the Products.

1.2     Sale.  All references in this Agreement to the "sale" or "resale" of, or "selling" or "reselling" Products, (a) with respect to Hardware, shall mean the transfer of title to such Hardware to the applicable purchaser and (b) with respect to any Software, shall mean granting the applicable purchaser a non-exclusive license to use the copy of such Software in accordance with the applicable license terms.

1.3     Days.  All references to in this Agreement to "days" shall mean calendar days, unless otherwise specified.

2.     APPOINTMENT.

2.1     Appointment.  The Company appoints Reseller as an "Authorized Reseller," and Reseller accepts such appointment.  Such appointment is limited, non-exclusive and effective only so long as Reseller complies with the terms and conditions of this Agreement and is subject to termination in accordance with the terms of this Agreement.  As an Authorized Reseller, Reseller may only sell Products, to End Users and Sub-Resellers (for resale directly or indirectly via other Sub-Resellers to End Users) in the Territory during the Term (as defined in Section 11.1), on the terms and subject to the conditions set forth in this Agreement.

2.2     Sub-Resellers.  Reseller shall require each Sub-Reseller to comply with the terms and conditions of this Agreement and not perform any act inconsistent with the terms and conditions of this Agreement, including in particular the requirements set forth in Section 3.5 ("End User License Agreements").  Reseller shall be responsible for its Sub-Resellers' compliance with the terms and conditions of this Agreement.  Reseller shall ensure that all Sub-Resellers cease distribution and sale of Products upon termination of this Agreement or of Reseller's rights hereunder.

2.3     No Representations.  Reseller shall not make any representations, warranties or guarantees to Sub-Resellers, End Users, the trade or others with respect to specifications, features, capabilities or warranties of Products that are inconsistent with the applicable Documentation.

2.4     No Stockpiling.  Reseller and Sub-Resellers shall not stockpile Products.  For the avoidance of doubt, Reseller shall only submit purchase orders in accordance with Section 3.2 below upon receipt of a firm purchase order from an End User, or upon the prior written approval of the Company.

3.     TERMS AND CONDITIONS FOR SUPPLY OF PRODUCTS.

3.1     Forecasts.  At the request of the Company, Reseller will provide the Company with a twelve (12)-month rolling forecast setting forth Reseller's estimated requirements for Product shipment by month.  Such forecasts shall be for planning purposes only and will not be binding on either party.

3.2     Purchase Orders.  Subject to Section 2.4 above, Reseller will submit to the Company, in written or electronic form, purchase orders specifying (a) Products ordered, (b) quantity, (c) requested target shipment date and shipment method, (d) bill-to and ship-to destinations, (e) unit and extended

price in U.S. dollars and (f) routing instructions. All purchase orders submitted by Reseller will be governed exclusively by the terms of this Agreement. Preprinted terms and conditions on any Reseller purchase order that are in addition to, or inconsistent with, the terms contained in this Agreement shall have no effect unless the Company specifically agrees in writing to such terms. No purchase order will be binding on the Company unless the Company accepts such purchase order in writing, or ships the Products, provided that a shipment shall constitute acceptance only with respect to the shipped portion of the ordered Products.

3.3     Delivery.  The Company will ship all Products FCA the Company's manufacturing facility located in Milpitas View, CA or such other location designated by the Company (Incoterms 2010). Reseller will inspect all Products promptly upon receipt thereof and shall be deemed to waive all claims with regard to obvious defects and shipment errors, unless the Company receives Reseller's detailed written rejection notice within five (5) days of delivery.

3.4     Reports.   At the request of the Company, Reseller shall provide the Company with written reports detailing (a) for each Product, such information as is reasonably requested by the Company regarding such End Users, including without limitation End User name, address, and contact information; (b) Reseller's current inventory level of the Products, if any, including spares; and (c) such other information as may be reasonably requested by the Company, including without limitation such information that may be necessary to confirm Reseller's compliance with this Agreement.

3.5     End User License Agreements.  As a condition of any sale of Product(s) to an End User, Reseller or Sub-Resellers shall obtain such End User's agreement to be bound by the terms and conditions of the Company's End User License Agreement, Support Services Terms and Conditions, and Limited Warranties, copies of which can be found at http://www.tintri.com/support.   The End User License Agreement shall be included with each Product sold to an End User and Reseller shall not alter or remove such End User License Agreement.  Notwithstanding the above, Reseller may provide support directly to End Users, and in such event the Company agrees to provide its reasonable efforts to coordinate, facilitate and support Reseller's efforts to provide such support services to End Users.

3.6     End User Purchase Orders.   Upon the Company's request, Reseller shall promptly provide the Company with copies of End User purchase orders; provided, however, that Reseller shall be permitted to redact any pricing information.

3.7     Import and Export Requirements.  The Reseller shall, at its own expense, pay all import and export licenses and permits, customs charges and duty fees, if any, and shall take all other actions, if any, required to accomplish the import and/or export of the Products purchased by the Reseller.  The Reseller acknowledges that any obligation of the Company to provide Products under this Agreement shall be subject in all respects to all United States laws and regulations governing the license and delivery of technology and products abroad by persons subject to the jurisdiction of the United States.  The Reseller shall not export, directly or indirectly, any Products or related information without first obtaining all required licenses and approvals from the appropriate government agencies.

4.     PRICE AND PAYMENT.

4.1     Price and Payment Terms.  The Company will invoice Reseller in U.S. dollars based on the Company's then current list prices and the discounts set forth in Exhibit A hereto.  Reseller shall pay the Company such amount(s) as invoiced by the Company within thirty (30) days of the receipt of each invoice, with interest accruing thereafter at the lesser of 1.5% per month or the maximum permitted by law.  If Reseller is delinquent in the payment of any amount due under any invoice, the Company will have the right to suspend performance until such delinquency is corrected, in addition to all other rights or remedies available to the Company at law or in equity.  Whether or not Reseller is, or ever has been, in

default or delinquent in the payment of any invoice(s), and whether or not the Company is withholding or ever has withheld any shipments, the Company may, at any time, at its sole discretion, require Reseller to prepay (in part or in whole) any purchase order. Reseller shall determine its own resale prices to End Users unilaterally and shall not be required to share any such price information with the Company. The Company may advise Reseller on suggested resale prices, but Reseller shall have the right to determine its own prices for the resale of any Product to End Users.

4.2     Taxes.  The prices the Company charges for Products under this Agreement do not include, and Reseller shall pay or refund the Company for, all taxes (including without limitation sales, withholding, value-added and similar taxes) or customs duties paid or payable, however designated, based on the sale of Products under this Agreement, with the exception of the Company's U.S. income taxes (collectively "Taxes").  Reseller shall gross-up all payments to ensure remittance to the Company of any amounts invoiced.

4.3     Collection Costs.   In the event that Reseller fails to promptly pay any amounts owed to the Company, Reseller shall be liable and shall indemnify and reimburse the Company for all collection costs, including, but not limited to, reasonable attorneys' fees and expenses incurred in enforcing the terms of this Agreement.

4.4     No Set-Off.  Reseller's payment obligations to the Company shall be unconditional and not subject to any abatement, defense, counterclaim, or set-off arising against the Company out of this Agreement or any other agreement or claim; provided that such payment shall not impair any claims which Reseller may otherwise have against the Company arising from its performance or non-performance under this Agreement or any other agreement.

5.     RECORDS AND REPORTING.

5.1     Recordkeeping; Audit.  Reseller shall maintain, during the Term and for a period of one (1) year thereafter, written records, all contracts, all accounts and other information relating to the sale and Support of the Products.  The Company shall have the right, during the Term and for a period of one (1) year thereafter, to audit such records, contracts, accounts and other information, upon reasonable written notice to Reseller.

5.2     Financial Statements.  Upon the Company's request, Reseller shall promptly provide the Company with: (i) annual audited financial statements prepared in accordance with GAAP, and (ii) quarterly unaudited financial statements prepared in accordance with GAAP.  "GAAP" means generally accepted accounting principles as in effect from time to time.

5.3     Notices.  Reseller shall promptly notify the Company in writing: (a) of any claim or proceeding involving any Product, no later than ten (10) days after Reseller first learns of any such claim; and (b) of all claimed or suspected Product defect(s).

6.     PROPRIETARY RIGHTS.

6.1     Trademarks.  During the Term, Reseller is authorized by the Company to use the Company's trademarks, trade names, logos and trade designations in connection with Reseller's advertisement, promotion and distribution of Products in accordance with this Agreement and the Company's policies in effect from time to time.  Reseller shall include on each Product that it distributes all trademarks, copyrights and other notices of proprietary rights included by the Company on such Products.  Reseller shall not remove, alter, erase, deface or overprint any such notice on Products and shall not attach any additional trademarks, logos or other trade designations to Products.

**DIRECT RESELLER AGREEMENT**

6.2     License.  Reseller acknowledges that Products may include (a) hardware ("Hardware"), (b) operating system software included with hardware ("Operating System Software") and (c) stand-alone software for sale by the Company ("Stand Alone Software," and with the Operating System Software, the "Software").  Reseller understands and acknowledges that (i) the Company sells, and authorizes Reseller to resell subject to the terms of this Agreement, Hardware and Stand-Alone Software; and (ii) the Company does not sell Operating System Software separately from the Hardware.  With respect to Operating System Software, the Company extends to Reseller a limited, non-exclusive, non-transferable, non-sublicenseable, revocable license to transfer such Operating System Software to End Users with the Hardware pursuant to the terms of this Agreement.  The Software is proprietary to the Company, contains the Company trade secrets and is subject to applicable copyright and patent protection.  The Software is subject to End User License Agreements which accompany such Software.  The Software may only be installed on the applicable Product as an upgrade or replacement to the original software on the Product.  Any upgrade to the Software or replacement Software is considered to be the same as the software that it upgrades or replaces and no new licenses shall be granted.  Upgrades or replacement Software are provided solely at the Company's discretion.  Except for the limited license provided to Reseller in this Section 6.2, the Company reserves all right, title, and interest in and to each proprietary right embedded in or contained in any Product. Reseller acknowledges that, except as provided in this Agreement, it shall not copy Software for the benefit of, or distribute, any software to, any other person or entity, including without limitation other resellers.

6.3     Ownership; Restrictions.  Reseller agrees and acknowledges that the Company owns all patents, trademarks, trade names, inventions, copyrights, know-how, and trade secrets relating to the design, manufacture, operation and support of the Products.  Reseller will secure and protect the Products consistent with maintenance of the Company's proprietary rights.  Except as expressly permitted by this Agreement, Reseller shall not, and Reseller shall use its best efforts to ensure that none of its End Users: (a) produce, manufacture, electronically distribute or otherwise copy any Product; (b) reverse engineer, disassemble, or decompile any Product, or otherwise attempt to discover the source code or structure, sequence or organization of the Products or underlying Confidential Information (as defined in Section 9), in whole or in part; (c) reproduce, copy, alter or modify any Product; or (d) prepare or create any derivative works thereof.  Reseller will promptly notify the Company if Reseller reasonably suspects any infringement or unauthorized use of the Products or the Company's Confidential Information.

7.     LIMITED WARRANTY.

7.1     End User Limited Warranty.  The Company provides limited warranties to each End User for Product, as set forth in the End User License Agreement.  Reseller will not make any commitments, warranties or representations with respect to the Company or the Products, except as authorized in advance in writing by the Company or derived from and consistent in all respects with materials provided to Reseller by the Company.

7.2     NO OTHER WARRANTIES.  THE COMPANY MAKES NO WARRANTIES OR REPRESENTATIONS AS TO PERFORMANCE OF ANY PRODUCT(S) OR PRODUCT SUPPORT TO RESELLER OR TO ANY OTHER PERSON, EXCEPT AS SET FORTH IN THE COMPANY'S LIMITED WARRANTIES SET FORTH IN THE END USER LICENSE AGREEMENT.  THE COMPANY RESERVES THE RIGHT TO CHANGE THE LIMITED WARRANTIES AND SUPPORT SERVICES IT MAY PROVIDE AT ANY TIME, WITHOUT FURTHER NOTICE AND WITHOUT LIABILITY TO RESELLER OR TO ANY OTHER PERSON, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.  ALL IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT, ARE HEREBY EXPRESSLY EXCLUDED.

8.     INDEMNIFICATION

8.1     Intellectual Property Infringement.  The Company shall (a) defend Reseller against any third party claim that the Products infringe a patent or copyright existing in the United States of America; and (b) pay the actual costs and damages finally awarded against Reseller by a court of competent jurisdiction or the amounts stated in a written settlement negotiated and approved by the Company.  The foregoing obligations are conditioned upon Reseller (i) notifying the Company promptly in writing of such claim; (ii) granting the Company sole control over the defense and settlement thereof; (iii) cooperating in response to the Company's requests for assistance, information and authority in connection with the foregoing; and (iv) not being in breach of this Agreement.  The Company will not be bound by any settlement Reseller enters into without the Company's prior written consent.  The Company will have no obligation under this Section 8 to the extent any claim is based on negligent acts or willful misconduct by Reseller or Reseller's employees, independent contractors or representatives.  Should any such Product become, or in the Company's opinion be likely to become, the subject of such a claim, the Company may, at its option and expense, (i) procure for Reseller the right to make continued use thereof; (ii) replace or modify such Product so that it becomes non-infringing; or (iii) request return of such Product and, upon receipt thereof, refund the applicable price paid by Reseller.  The Company shall have no liability or obligation under this Section 8 to the extent that the alleged infringement arises out of or relates to: (A) the use or combination of the Products with third party products or services; (B) the use for a purpose or in a manner for which the Products were not designed or intended or inconsistent with the Documentation; (C) any modification or alteration to the Products made by any person other than the Company or its authorized or designated representatives; (D) any modifications or alterations to the Products made by the Company pursuant to Reseller's specific requests or instructions; (E) any technology owned or licensed by Reseller from third parties; or (F) use of any older version of the Products when use of a newer version made available to Reseller would have avoided the infringement (collectively the "Excluded Claims").  THIS SECTION 8 STATES RESELLER'S SOLE AND EXCLUSIVE REMEDY AND THE COMPANY'S ENTIRE LIABILITY AND OBLIGATION FOR THIRD PARTY CLAIMS AGAINST RESELLER OF INFRINGEMENT BY THE PRODUCTS.

8.2     Disclaimer and Limitation of Liability.  THIS SECTION 8 STATES THE ENTIRE LIABILITY AND OBLIGATIONS OF THE COMPANY, AND THE EXCLUSIVE REMEDY OF RESELLER, WITH RESPECT TO ANY ALLEGED OR ACTUAL INFRINGEMENT OF PATENTS, COPYRIGHTS, TRADE SECRETS, TRADEMARKS AND OTHER INTELLECTUAL PROPERTY RIGHTS BY THE PRODUCTS.

8.3     Indemnification.  Reseller agrees to defend and hold the Company (and its affiliates, stockholders, directors, employees and representatives) harmless against any damages, loss, liability and expense (including reasonable attorneys' fees and costs) arising from claims brought or threatened against the Company (or any of its affiliates, stockholders, directors employees and representatives) by any other party arising out of or related to (a) the Excluded Claims; (b) Reseller's misuse, modification, alteration, adaptation, promotion, marketing, sublicensing or distribution of the Product; (c) Reseller's acts or omissions in breach of this Agreement, including without limitation any of Reseller's representations and claims regarding the Products that are contrary to or inconsistent with the Documentation; or (d) any negligent acts or willful misconduct by Reseller or Reseller's employees, independent contractors or representatives.  The Company agrees to defend and hold Reseller (and its affiliates, stockholders, directors, employees and representatives) harmless against any damages, loss, liability and expense (including reasonable attorneys' fees and costs) arising from claims brought or threatened against Reseller (or any of its affiliates, stockholders, directors employees and representatives) by any other party solely arising out of any fraudulent acts or willful misconduct by the Company or the Company's employees, independent contractors or representatives if determined by a court of competent jurisdiction in a final non-appealable order.  For the avoidance of doubt the Company will not indemnify Reseller for any Excluded Claims.

8.4     Conditions of Indemnity.  In order to claim the benefit of indemnification or defense under this Section 8, the party requesting it (the "Benefiting Party") must (a) inform the other party (the

"<u>Defending Party</u>") within thirty (30) days of receiving the claim; (b) cooperate fully with the Defending Party, at the Defending Party's expense, in investigating and defending the Claim; and (c) allow the Defending Party full authority to defend or settle the claim.  Notwithstanding the foregoing, the Defending Party may not settle a claim without the Benefiting Party's prior written consent if the proposed settlement modifies the Benefiting Party's intellectual property rights or imposes any duty (other than the payment of money) on the Benefiting Party.

9.  <u>CONFIDENTIAL INFORMATION</u>.  For the period of three (3) years after the date of disclosure of Confidential Information (as defined below) by one party or its representatives (the disclosing party) to the other party or its representatives (the receiving party), (a) the receiving party shall not disclose or permit the disclosure of any such Confidential Information of the disclosing party to any person and shall use reasonable measures to protect the confidentiality of such Confidential Information, and (b) the receiving party shall not use or permit the use of any such Confidential Information of the disclosing party for any purposes other than in connection with the relationship and transactions contemplated by this Agreement and in accordance with this Agreement.

Notwithstanding the foregoing, the receiving party may disclose Confidential Information of the disclosing party (i) to its employees or independent contractors for the purpose of performing its obligations or exercising its rights hereunder, provided that each such employee and independent contractor is advised of the confidential nature of such information and is subject to confidentiality obligations and use restrictions that are at least as protective as those set forth herein; and (ii) if required by applicable law or regulation, provided that the receiving party uses reasonable efforts to limit disclosure and to obtain confidential treatment or a protective order and allows the disclosing party to participate in the proceeding.

"<u>Confidential Information</u>" means and includes the terms of this Agreement, Products and all confidential and proprietary information of a party and/or its affiliates, including without limitation, software, know-how, trade secrets, intellectual property, processes, ideas, inventions (whether patentable or not), designs and other technical, business, financial, customer, supplier and product information of any nature and in any form whatsoever, provided that such information is marked or designated in writing as "confidential," "proprietary," or any other similar term or designation or is of such a nature or is disclosed in such a manner that a reasonable person would understand that such information is confidential and proprietary.  Reseller agrees without limitation that the Company's prices, discounts, proposals and quotes to Reseller are the Company's Confidential Information.

Confidential Information does not include information that receiving party can demonstrate: (A) is or becomes (through no improper action or inaction by the receiving party) readily available to the public; (B) was in its possession or known by it without restriction on disclosure or use prior to receipt from the disclosing party; (C) was rightfully disclosed to it by a third party that rightfully received such information without restriction on disclosure or use; or (D) was independently developed without use of any Confidential Information of the disclosing party.

Reseller acknowledges and agrees that any feedback, suggestions, comments, improvements, modifications and other information (including any ideas, concepts, "know-how" or techniques contained therein) that Reseller provides to the Company about the Products or their performance (collectively, the "<u>Feedback</u>") shall not be deemed as Reseller's Confidential Information and may be used, disclosed, disseminated or published by Company for any purpose, including without limitation developing, manufacturing and marketing products and services incorporating Feedback, without obligation of any kind to Reseller.  Reseller waives any rights whatsoever in or to all Feedback.

10.  <u>LIMITATION OF LIABILITY</u>.  WHETHER UNDER ANY WARRANTY, CONTRACT, TORT, NEGLIGENCE OR OTHER LEGAL OR EQUITABLE THEORY, THE FOLLOWING WILL APPLY TO THE COMPANY AND ITS

AFFILIATES AND ALL PRODUCTS IN ALL CIRCUMSTANCES: (A) NEITHER PARTY WILL BE RESPONSIBLE OR LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY, OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, LOSS OF REVENUES, LOSS OF PROFITS OR LOSS OR INACCURACY OF DATA, EVEN IF ADVISED OF THE POSSIBILITY THEREOF; AND (B) THE COMPANY'S CUMULATIVE LIABILITY FOR ANY AND ALL DAMAGES WILL BE LIMITED TO THE AMOUNTS SET FORTH IN THE COMPANY'S LIMITED WARRANTIES AND IN NO EVENT OR CIRCUMSTANCE WILL EXCEED THE AMOUNTS PAID TO THE COMPANY BY RESELLER FOR THE PARTICULAR PRODUCTS WITH RESPECT TO WHICH A CLAIM IS MADE DURING THE TWELVE MONTH PERIOD IMMEDIATELY PRECEDING THE CLAIM. THE PARTIES AGREE THAT THESE LIMITATIONS WILL SURVIVE AND APPLY EVEN IF ANY LIMITED REMEDY SPECIFIED HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION AND EXCLUSION MAY NOT APPLY TO RESELLER. The foregoing shall not apply to the extent not prohibited by applicable law.

11.    TERM AND TERMINATION.

11.1    Term.  This Agreement will become effective on the Effective Date and will remain in effect for an initial term of one (1) year ("Initial Term").  At the end of the Initial Term, this Agreement shall renew automatically and remain in effect for an additional one (1)-year term (a first "Renewal Term," and with the Initial Term, the "Term").  This Agreement shall be automatically renewed for a one-year term at the end of each Renewal Term.

11.2    Termination for Convenience.  Notwithstanding the foregoing, after the Initial Term, either party may terminate this Agreement for convenience and without cause at any time by providing sixty (60) days prior written notice to the other party before the beginning of a Renewal Term.

11.3    Termination for Cause.  Notwithstanding the foregoing, this Agreement may be terminated by either party upon written notice, if the other party (a) breaches any material term or condition of this Agreement and fails to remedy the breach within thirty (30) days after being given written notice by the other party; (b) becomes the subject of any voluntary or involuntary proceeding under insolvency or bankruptcy laws, and such proceeding is not terminated within thirty (30) days of its commencement; or (c) ceases to be actively engaged in business or does not pay its debts in the ordinary course of business.

11.4    Effect of Termination.  Upon any termination or expiration of this Agreement:

(a)    Neither party will have any liability to the other for any claims arising out of a termination of this Agreement, including without limitation, for compensation, reimbursement or damages for the loss of prospective profits, anticipated sales or goodwill.  However, termination will not extinguish any liability of either party arising before termination of this Agreement, including without limitation for payment due for the Products.  Notwithstanding the foregoing, if the Company terminates this Agreement for cause, the Company may, in its sole discretion, cancel any or all of Reseller's orders for the Products which have not yet been delivered to Reseller.

(b)    Each party will return to the other party all Confidential Information received from the other party, except as necessary for accounting and clause (a) above, and certify compliance with this subsection (b) in writing on request from time to time.

11.5     Survival Provisions.  The provisions of Sections 5, 6, 7, 8, 9, 10, 11.4, and 12 will survive the termination of this Agreement for any reason.

12.     MISCELLANEOUS.

12.1     Choice of Law, Jurisdiction, Venue.  If Reseller's principal executive offices are located in the United States, Canada or Mexico, this Agreement shall be governed by the laws of the State of California applicable to contracts signed and to be performed in such State, and if Reseller's principal executive offices are located elsewhere, this Agreement shall be governed by the laws of England applicable to contracts signed and to be performed in such country, in each case without regard to or the application of (i) any choice of law rules that would result in the application of laws of any other jurisdiction, (ii) the Uniform Computer Information Transactions Act, which will not apply, or (iii) the United Nations Convention on Contracts for the International Sale of Goods, which will not apply (collectively, "Applicable Law").

If Reseller's principal executive offices are located in the United States, Canada or Mexico, the parties agree to jurisdiction and venue for claims or actions arising under this Agreement in the state or federal courts located in Santa Clara County, California, USA. If Reseller's principal executive offices are located elsewhere, then any dispute between the parties arising under this Agreement shall be finally settled by binding arbitration in London, England. Such arbitration shall be conducted in English in accordance with the rules of the International Chamber of Commerce by one (1) arbitrator appointed in accordance with such rules. The arbitrator shall allow such discovery as is appropriate to the purposes of arbitration in accomplishing a fair, speedy, and cost-effective resolution of the dispute, and shall be expressly empowered to issue appropriate injunctive relief. The award of arbitration shall be final and binding upon both parties, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Any monetary award shall be payable in United States dollars. Notwithstanding the foregoing, either party may also seek and obtain appropriate relief in any court of competent jurisdiction for claims regarding (i) the scope of any licenses granted herein or (ii) either party's intellectual property rights and confidential information. The prevailing party in an action to enforce this Agreement shall be entitled to costs and attorneys and experts fees and expenses.

12.2     Compliance with Laws.  Reseller and its directors, officers, employees and agents will comply with all applicable laws and regulations in connection with any matter arising out of or in connection with this Agreement, including without limitation all applicable anti-corruption laws and regulations and the U.S. Foreign Corrupt Practices Act of 1977, as amended.  Company will not be liable for any claims, losses, or damages arising from or related to any failure by Reseller to comply with any such laws or regulations and Reseller will indemnify and hold Company and its directors, officers, employees and agents harmless against any claims, losses, or damages that they incur related to any failure of Reseller to comply with any laws or regulations.

Reseller shall not engage in any deceptive, misleading or unethical practices that are or might be detrimental to the Company.  Reseller represents that it has not paid, offered or authorized any monies or given anything of value, and agrees that it will not pay, offer or promise to pay, or authorize the payment of any monies or give anything of value, directly or indirectly, to any government entity or any political party or candidate for political office for the purpose of influencing any act or decision of such person, obtaining or retaining any business, directing business to any person, or for any other improper advantage.

Reseller agrees to comply with applicable import and/or export laws and regulations, including but not limited to the U.S. Export Administration Regulations and Executive Orders ("Export Controls"). Reseller warrants and represents that it: (i) is not a company or person restricted or prohibited by the Export Controls; and (ii) shall not export, directly or indirectly, re-export, divert, or transfer the Products

or, any materials, items or technology relating to the Products (including, without limitation, third party materials) to any destination, company or person restricted or prohibited by the Export Controls.

Reseller shall comply with all applicable privacy and data protection laws, and shall maintain appropriate technical and organizational measures to protect data (including data that personally identifies an individual) that it collects, accesses or processes, against unauthorized or unlawful processing or transfer, and against unauthorized access, loss or destruction.

12.3    <u>Assignment</u>.  The rights and liabilities of the parties will bind and inure to the benefit of their successors and permitted assigns, provided, however that Reseller may not assign this Agreement or delegate any of its rights or duties under this Agreement, whether by operation of law or otherwise, without the prior written consent of the Company.  This Agreement shall survive any change in ownership or control of either party and may be assigned by the Company in connection with any merger, acquisition or sale of all or substantially all of its assets.  Any attempted assignment inconsistent with this Section 12.3 shall be void.

12.4    <u>Severability</u>.  If any provision of this Agreement is declared by a court of competent jurisdiction to be unenforceable, this Agreement will continue in full force and effect without that provision.  If, however, such omission materially changes the economic benefit of this Agreement to either the Company or Reseller, then the illegal or unenforceable provision will be deemed amended to conform to applicable law to best achieve the parties' original intent.

12.5    <u>Notices</u>.  Any notices will be given in writing to the address of each party set forth above, or to such other address as either party may substitute by written notice to the other in the manner contemplated herein, and will be deemed given when delivered or, if delivery is not accomplished by some fault of the addressee, when tendered.

12.6    <u>Force Majeure</u>.  Neither party will be liable to the other for any default (other than failure to pay money) hereunder, for so long as such default is caused by an event beyond such parties reasonable control, including without limitation acts or failures to act of the other party; strikes, labor or civil disputes; component shortages; unavailability of transportation; fires, war, governmental requirements; and acts of God.  In the event of threatened or actual nonperformance as a result of any of the above causes, the non-performing party will exercise commercially reasonable efforts to avoid and cure such nonperformance.

12.7    <u>Governmental Consent</u>.  Reseller represents and warrants that, as of the Effective Date of the Agreement, no consent, approval or authorization of, or designation, declaration or filing with, any governmental authority in the Territory, which has not been made or obtained by Reseller prior to the Effective Date, is required in connection with the valid execution, performance and delivery of this Agreement.

12.8    <u>Publicity</u>.  Except as expressly provided in this Agreement, neither the Company nor Reseller will issue press releases or make other public announcements that identify Reseller as an authorized or registered Reseller without the express written consent of the other party.  In addition, Reseller shall at no time (nor cause any third party to) take any action, publish or otherwise communicate anything that is or may be detrimental to the business reputation of the Company.

12.9    <u>Independent Contractors</u>.  The relationship between the Company and Reseller is that of independent contractors, and nothing contained in this Agreement will be construed to constitute the parties as partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking.  All sales and other agreements between Reseller and its Sub-Resellers and End Users are Reseller's exclusive responsibility.

12.10    <u>Entire Agreement</u>.    This Agreement and any terms or documents incorporated by written reference (including written reference to information contained in a URL or Documentation) (a) is the complete statement of the agreement of the parties with regard to the subject matter hereof; and (b) may be modified only by a writing signed by both parties.  All terms of any purchase order or similar document provided by Reseller, including without limitation to any pre-printed terms thereon and any terms that are inconsistent or conflict with this Agreement, shall be null and void and of no legal force or effect.  The failure by either party to enforce any rights hereunder will not be construed as a waiver of any rights of such party.

**DIRECT RESELLER AGREEMENT**

IN WITNESS WHEREOF, the following individuals certify that they are authorized to bind their respective company.

TINTRÍ, INC.                                RESELLER: DATADIRECT NETWORKS, INC.

Signature:_____     Signature: _____

Name: _____     Name: Alex Bouzari

Title: _____     Title: CEO and Co-Founder

Date:_____     Date: July 18, 2018

# TINTRI, INC.

**DIRECT RESELLER AGREEMENT**

IN WITNESS WHEREOF, the following individuals certify that they are authorized to bind their respective company.

TINTRÍ, INC.

Signature: _____

Name: __Kieran Harty_____

Title: __Chief Technical Officer_____

Date: _____

[Signature Page to the Direct Reseller Agreement]

**DIRECT RESELLER AGREEMENT**

## EXHIBIT A

## PRODUCTS AND TERMS

Reseller is eligible for:

- The following discount(s) off the Company's then current applicable list price shall apply to hardware and software Products for all deals including **registered** deals and standard (un-registered) deals per the price list attached as Exhibit C.

| Product | Discount |
|---------|----------|
| Tintri VMStore Hardware | 77.5% |
| Tintri Software | 87.5% |

SPECIAL TERMS FOR DIRECT PURCHASE OF HARDWARE

If Company is unable to pay its contract manufacturer, Flextronics Telecom Systems, Ltd. ("Flextronics"), the fees necessary for Flextronics to deliver Hardware ordered by Reseller, Company and Reseller will use reasonable efforts to cooperate to enable Reseller to purchase such Hardware directly from Flextronics (the "Flex Procured Hardware").  In the event that Reseller makes such Hardware purchases directly from Flextronics, then Reseller's net amount owed to Company for such Flex Procured Hardware shall be 8.2 % of the list price for such Hardware, regardless of the amount paid to Flextronics for such Hardware. Notwithstanding the Maintenance and Support Fees described below, annual Support fees owed by Reseller to Company for Flex Procured Hardware shall be equal to the list price for such Hardware multiplied by 22.5%, and multiplied further by 10% for Gold Support or 12% for Platinum Support.

> Support Fees for Flex Procured Hardware
> List Price * .225 * [.10 for Gold Support] or [.12 for Platinum Support]

MAINTENANCE AND SUPPORT FEES

- Reseller must pay Company the following 1st annual maintenance / support fees for all hardware and software Products purchased directly from the Company to be resold by the Reseller to End Users. Reseller may purchase up to five years of support at the time of the initial purchase of each order of Products.  Reseller may purchase annual or multi annual renewals of support for each order of Products at the same annual rate of the initial purchase of support for such order of Products

| Annual Support | Price Paid by Reseller |
|----------------|------------------------|
| Gold Level Support | 10% of Net Product Fees paid to Company |
| Platinum Level Support (where available) | 12% of Net Product Fees paid to Company |

Any Company software or hardware shall constitute a "Product" for purposes of this Reseller Agreement.  Company may change its list price for Products and/or Support and its discount terms at any time with 30 days advance written notice.

**EXHIBIT B**

**AUTHORIZED TERRITORY AND EXCLUDED COUNTRIES**

Authorized Commercial Territory:                           Worldwide, excepting Excluded Countries


Excluded Countries:


This list of Excluded Countries may be updated from time to time, however, Reseller shall be responsible for compliance with U.S. Laws at all times:


1.        Countries Excluded Due to Prohibitions Under U.S. Law:

        CUBA
        IRAN
        IRAQ
        LIBYA
        NORTH KOREA
        SUDAN
        SYRIA

2.        Other Excluded Countries

        GUATEMALA
        BELIZE
        HONDURAS
        NICARAGUA
        COSTA RICA
        PANAMA
        EL SALVADOR
        DOMINICAN REPUBLIC
        HAITI

**DIRECT RESELLER AGREEMENT**

**EXHIBIT C**

**Price List**

**[Follows this Page]**