# Exhibit C

**Duffy Declaration**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TINTRI, INC.,[1] | ) | Case No.: 18-11625 (KJC) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DECLARATION OF ROBERT J. DUFFY IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO ENTER INTO DIRECT RESELLER AGREEMENT PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

I, Robert J. Duffy, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I am the Chief Restructuring Officer of the above-captioned debtor and debtor in possession (the "Debtor"). I submit this declaration (the "Declaration") in support of the Debtor's *Debtor's Motion for Entry of an Order Authorizing Debtor to Enter Into Direct Reseller Agreement Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Granting Related Relief* (the "Motion"). Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's employees, or my opinion based on my experience with the Debtor's operations and financial condition. In making my statements based on my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's employees, I

---

[1] The Debtor and the last four digits of its taxpayer identification numbers are (6978): The headquarters and service address for the above-captioned Debtor is 303 Ravendale Dr., Mountain View, CA 94043.

have relied upon these employees accurately recording, preparing or collecting such documentation and other information.

2.  I am and have been a Managing Director with Berkeley Research Group, LLC ("BRG"), effective as of May 24, 2016.  BRG is a professional services firm with an office located at 2200 Powell Street, Suite 1200, Emeryville, California 94608.

3.  BRG's practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing financial, business, and strategic assistance typically in distressed business settings. BRG serves troubled companies, debtors, and secured and unsecured creditors, equity holders, and other parties in both in-court and out-of-court engagements similar to the Debtors in the State of Delaware and elsewhere.  BRG's professionals have experience working on cases with similar fact scenarios in which they were presented with issues and performed analyses similar to the work at hand in this case.[2]

4.  If I were called to testify as a witness, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion.  I am authorized to submit this Declaration on behalf of the Debtor.

**Overview of the Direct Reseller Agreement**

6.  The Debtor develops hardware and software products and systems, and also provides support for those products and systems to its customers. The Debtor's products and systems are used by large organizations for critical informational technology applications.

---

[2] Additional background regarding my professional experience is set forth in greater detail in my declaration filed in connection with the petition and other first day pleadings. See [Docket No. 2].

7. Prior to the Petition Date, customers purchased the Debtor's products and systems because (a) the Debtor provided excellent post-purchase technical support (*i.e.*, 7 days a week and 24 hours a day), (b) the Debtor was financially and operationally stable and would therefore continue to provide customers with additional products as their needs evolved, and (c) the Debtor had a strong product roadmap that ensured customers that new features and capabilities would continue to be made available to them.

8. The Debtor has a base of approximately 1500 customers which, with its reduced staff (less than one tenth of the Debtor's prepetition employee staff remains) and limited liquidity, it is being pushed to the limit to support, service, provide additional products to, and reassure that it will serve customers ongoing needs in the future.

9. The Debtor's current distressed situation hinders the Debtor's ability to provide the same level of support that its customers are accustomed to receiving. For example, the Debtor currently has two technical support employees to address world-wide support request on a 24-hours per day, 7-days per week basis. While the Debtor has the ability to continue purchasing part and other products to customers through its sole provider, Flextronics, the Debtor has limited liquidity and in the event the Debtor is requested to provide numerous full systems it likely does not have the available cash to do so without DDN's assistance. The Debtor's engineering team can no longer develop a roadmap as more than 90% of the engineering team has been terminated or left.

10. To preserve the value of the estate and slow down and ultimately stop the significant value erosion that is taking place daily, I believe it is necessary to enter into an agreement with a strong reseller who will deploy significant resources in cash, people, and

supply chain to stabilize and instill confidence in the Debtor's customer base, and generate revenue for the benefit of the Debtor, the estate, and creditors.

11. The Debtor proposes to enter into a direct reseller agreement (the "Agreement") with DataDirect Networks, Inc. ("DDN"), which I believe would provide the Debtor with the following benefits:

a. Access at no cost to a service organization that will service its installed base, improve customer satisfaction, and slow down the customer attrition and decline in revenue.

b. Access at no cost to a global account executive and field technical organization to promote the Debtor's products.

c. Continued access to products currently held by Flextronics, the Debtor's largest unsecured creditor who will only ship to the Debtor on a cash in advance basis, something which cannot currently do.

d. Marketing and financial resources that will benefit the Debtor and its estate by exhibiting at VMWorld, which is a national technology conference in Las Vegas, Nevada August 26-30, 2018. The participation at this conference will reassure its customers that the Debtor's products and systems will have the necessary support on a go-forward basis thereby preserving the Debtor's ability to retain its current large customer base. Or to put it another way, the Debtor's absence at VMWorld will accelerate the erosion of its customer basis and drive customers to other providers, which significantly reduce value and hinder the Debtor's ability to sell its assets as a going concern.

12. As the Court is aware, *see* [Docket No. 35], DDN signed a letter of intent to purchase substantially all of the Debtor's assets. In addition, the Debtor expects to file a sale and bidding procedures motion contemporaneously with this Motion. As a result, the Debtor is seeking authority to enter into the Agreement out of an abundance of caution.

13. I believe that entry into the Agreement should provide the Debtor with the benefits described above and they will carry over and benefit any purchaser of the Debtor's assets even if it is not DDN. For example, the Agreement enables the Debtor to stabilize its customer base, generate revenue, provide significantly better service and support coverage for customers, an ability to purchase products from Flextronics in the event the Debtor receives orders that exceed its ability to prepay, and having a reseller agreement with a great reseller that will greatly benefit any purchaser even if DDN is not the ultimate buyer of the Debtor's assets. I believe that DDN will invest nearly $6.5 million in expenses operating as a reseller and servicer of the Debtor's products.

14. I believe that in the absence of a reseller agreement that can go in effect immediately, revenue will continue to decline, customer satisfaction will reach unacceptably low levels and could cause an acceleration of customer migration, it will not be able to fulfill customer orders for full systems that exceed its currently liquidity constraints requiring payment to Flextronics in advance, which will also drive customers away, and not being present at VMWorld will send a strong message to the industry and the Debtor's customer base that its product and any potential going concern has a limited life at best.

15. As set forth above, I believe the Debtor has demonstrated a sound business justification for the entry into the Agreement. In addition, the Debtor, together with its advisors, determined that the terms of the Agreement are fair and reasonable.

16. For the foregoing reasons, I believe that the Debtor's entry in to the Agreement reflects the sound exercise of the Debtor's business judgment and is in the nest interests of the Debtor's estate and its creditors.

[*remainder of page intentionally left blank*]

I declare under penalty of perjury under the United States of America that the foregoing is true and correct.

Executed this 18 day of July, 2018 at Boston, MA.

_____
Robert J. Duffy