IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-11625 (KJC) |
| TINTRI, INC., | |
| | Re: Docket No. 69 |
| Debtor. | |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO ENTER INTO DIRECT RESELLER AGREEMENT PURSUANT TO SECTIONS 105(A) AND 363(B) OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

Andrew R. Vara, the Acting United States Trustee for Region 3 ("United States Trustee"), through his undersigned attorney, responds to the relief sought in Tintri, Inc.'s (the "Debtor") Debtor's Motion for Entry of An Order Authorizing Debtor to Enter Into Direct Reseller Agreement Pursuant to Sections 105(A) and 363(B) of the Bankruptcy Code and Granting Related Relief (the "Reseller Agreement Motion" or "Motion"). The United States Trustee states as follows:

**Jurisdiction**

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this Objection.

2. Under 28 U.S.C. § 586, the United States Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere

pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

3. Under section 307 of title 11 of the United States Code (the "Bankruptcy Code"), the United States Trustee has standing to be heard on the Reseller Agreement Motion and the issues raised in this Objection.

**Background**

4. On July 10, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor develops hardware and software products and systems for critical informational technology applications, and provides support for those products and systems to its customers, consisting of large organizations. Motion (Dkt. No. 69) at ¶ 4. The Debtor has a large customer base, and after reductions in force, less staff to provide post-purchase technical support. *Id.* at ¶¶ 5-7.

6. The Debtor remains in possession of its assets and continues to manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. On July 18, 2018, the Debtor filed the Reseller Agreement Motion.

8. On July 20, 2018, the United States Trustee appointed an official committee of unsecured creditors. *See* Dkt No. 78.

9. The Debtor also seeks to sell substantially all of its assets free and clear of all liens, claims, and encumbrances to DataDirect Networks, Inc. as a Stalking Horse purchaser ("DDN") under a Bid Procedures Motion filed contemporaneously with the Reseller Agreement

Motion. *See* Motion at ¶ 10; *see also* Bid Procedures Motion Dkt. No. 71. The proposed sale seeks Bid Protections. Bid Procedures Motion at ¶ 15.

10. The Reseller Motion seeks authority for the Debtor to enter into an Agreement with DDN, to allow DDN to sell the Debtor's products and support, directly or indirectly to end users; for an initial term of 1 year; subject to automatic renewal or 60 days-notice for termination upon the expiration of the initial term; and allowing DDN to purchase Debtor's products at a discount. Reseller Agreement Motion at ¶¶ 11 & 12. The Reseller Agreement Motion is to be heard on July 25, 2018. The Bid Procedures Motion is currently scheduled for hearing on August 6, 2018.

11. Section 11.3 of the Reseller Agreement provides that it may be terminated upon written notice if either party: "(b) becomes the subject of any voluntary or involuntary proceeding under insolvency or bankruptcy laws, and such proceeding is not terminated within thirty (30) days of its commencement; or (c) ceases to be actively engaged in business or does not pay its debts in the ordinary course of business." *Id.* at Direct Reseller Agreement § 11.3 p. 8. There is no provision limiting the application of Section 11.3 for the Debtor's current circumstances, *i.e.* the Debtor is already subject of a voluntary bankruptcy proceeding.

12. Further, if a buyer other than DDN becomes the successful purchaser of the Debtor's assets, no provisions of the Reseller Agreement or Motion provide a mechanism for the other buyer to terminate the Reseller Agreement, prevent DDN from retaining customers it services under the Reseller Agreement, or allow for any re-evaluation of the Reseller Agreement by the successful buyer.

**Objection**

*The Reseller Agreement Motion is Improper as Currently Proposed*
*And Will "Chill" the Bidding Process*

13. Aside from Section 11.3 posing a potential problem in that the Debtor is already the subject of a voluntary insolvency proceeding an overarching concern is that DDN may discourage others from participating in the sales process by virtue of its status a Reseller and Proposed Stalking Horse.

14. The Debtor asserts, without substantiating, that any buyer will be able to enjoy the benefits of the Reseller Agreement "even if it is not DDN." Reseller Motion at ¶ 17. However, entry into the Reseller Agreement as currently proposed locks all potential buyers into a relationship that they have not had any chance to negotiate and without any safeguards to maintain the value of the assets they would acquire. The term of the Reseller Agreement is fixed at one year and subject to automatic renewal if 60 days-notice of termination is not provided. The economic terms of the Reseller Agreement are not demonstrated to have been market for similarly situated resellers, and do not appear to be subject to adjustment by a buyer other than DDN. Further, there is an air of "putting the fox in charge of the hen house" of allowing DDN, a potential competitor for other buyers, to be in position to service the very customers a buyer will count on to drive value of the enterprise after the conclusion of the sale process. This is an unusual situation and made all the more complicated by virtue of Bid Procedures being pending on a later date.

15. The Bid Procedures Motion requests that the sale hearing following a potential auction occur no later than August 29, 2018 or two business days from conclusion of the Auction, which is only just over 3 weeks of time from the scheduled Bid Procedures Hearing.

16. This means that with the hearing on the Bid procedures on August 6, 2018,[1] other potential bidders will have less than three weeks to determine whether or not submitting a competing bid is possible, conduct due diligence, and submit a qualifying bid, all the while wondering if it will even be worth it given the strategic advantages the Reseller Agreement provides to DDN. The Motions do not allege any circumstances or unique factors about the Debtor or the assets to justify the extraordinarily compressed timeline. Under the facts and circumstances here, the common refrain of customer attrition due to the ongoing bankruptcy case present in nearly every quick-sale case, should not be sufficient to allow a sales process to proceed to a forced conclusion.

17. Rather than serving as a catalyst or inducement to competitive bidding, the Reseller Agreement and Bid Procedures may actually chill bidding by giving an excessive advantage to DDN. As a result the Court should deny the Motion.

## Conclusion

18. For reasons set forth in detail above, the United States Trustee respectfully request that this Court sustain this Objection.[2]

19. The United States Trustee leaves the Debtor to its burden of proof, and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

---

[1] A date four days earlier than the balance of other second day items, scheduled to be heard August 10, 2018.
[2] The United States Trustee has issues with respect to other aspects of the relief sought in the Bid Procedures Motion, which will be addressed as appropriate.

**WHEREFORE,** for the foregoing reasons, the United States Trustee respectfully requests that this Court sustain this Objection.

Dated: July 24, 2018  
       Wilmington, Delaware

Respectfully submitted,

**Andrew R. Vara**  
**ACTING UNITED STATES TRUSTEE**

By: */s/ Timothy J. Fox* .  
    Timothy J. Fox, Jr.  
    Trial Attorney  
    United States Department of Justice  
    Office of the United States Trustee  
    J. Caleb Boggs Federal Building  
    844 King Street, Suite 2207, Lockbox 35  
    Wilmington, DE 19801  
    (302) 573-6491  
    (302) 573-6497 (Fax)