# Exhibit 1

# Bid Procedures

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TINTRI, INC.,[1] | ) | Case No.: 18-11625 (KJC) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## BID PROCEDURES FOR SALE OF
## SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

The above-captioned Debtor and Debtor in possession (the "Debtor") filed a motion dated July 18, 2018 (the "Motion"),[2] seeking, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which they will determine the highest or best offer for the sale of substantially all of the business assets of the Debtor (the "Assets"). On August 1, 2018, the Bankruptcy Court entered its order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures. Debtor will seek to enter into a Purchase Agreement with a stalking horse bidder (the "Stalking Horse Purchaser") for the sale of the Assets, subject to higher or better bids that may be submitted in accordance with these Bid Procedures.

On August 28, 2018, at 1:30 p.m. (Eastern time), as further described below and in the Bid Procedures Order, the Bankruptcy Court shall conduct the "Sale Hearing" at which the Debtor shall seek entry of the Sale Order authorizing and approving the sale of the Assets to the Stalking Horse Purchaser or to one or more other Qualified Bidders (defined below) that the Debtor, in its sole discretion (in consultation with the Committee, SVB, and TPC (each as defined below)), determine to have made the highest or best offer.

*Competing Agreement*

Prospective bidders should submit a proposed asset purchase agreement (a "Competing Agreement"), similar in form and substance, as modified, to the Purchase Agreement. Subject to the approval of the Court, the highest or best bidder(s) at the auction will purchase the Assets, and assume certain executory contracts and unexpired leases of the Debtor, free and clear of any Liens, Claims and Encumbrances, and other interests. The transaction contemplated is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code sections 363 and 365.

---

[1] The Debtor and the last four digits of its taxpayer identification numbers are (6978): The headquarters and service address for the above-captioned Debtor is 303 Ravendale Dr., Mountain View, CA 94043.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion or Purchase Agreement, as applicable.

*Assets for Sale*

The Debtor is offering for sale the Assets, which generally consist of its enterprise cloud products and service business, together with substantially all of the Debtor's other business assets and property associated with that technology. Except as otherwise provided in the Purchase Agreement, all of the Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of any Liens, Claims and Encumbrances, and other interests (other than Permitted Liens, Claims and Encumbrances and/or except as otherwise provided in the Competing Agreement) to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances, and other interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Liens, Claims and Encumbrances, and other interests applied against the Assets.

*Participation Requirements*

In order to participate in the bidding process and to otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtor and its counsel, not later than two (2) business days before the Bid Deadline (defined below), unless otherwise modified by the Debtor in its reasonable discretion after consultation with the Official Committee of Unsecured Creditors (the "Committee"), Silicon Valley Bank ("SVB") and TriplePoint Capital, LLC ("TPC") (subject to the requirements of section 4.7(a) of the Purchase Agreement):

(a) Non-Disclosure Agreement. An executed non-disclosure agreement substantially in the form of the NDA included in Houlihan Lokey's electronic data room;

(b) Identification of Potential Bidder. Concurrently with its Bid (as defined herein), identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(c) Corporate Authority. Concurrently with its Bid, written evidence satisfactory to Debtor of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction;

(d) Disclosure. Written disclosure of any connections or agreements with the Debtor, the Stalking Horse Purchaser, any other known Potential Bidder or Qualified Bidder (as defined below), and/or any officer, director or direct or indirect equity security holder of the Debtor; and

(e) Proof of Financial Ability to Perform. Prior to or at the time of presentation of a Bid, written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, *inter alia*, the following:

(1) the Potential Bidder's current financial statements (audited if they exist);

(2) contact names and numbers for verification of financing sources;

(3) evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

(4) any such other form of financial disclosure of credit-quality support information or enhancement acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated transaction.

### *Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the Assets of the Debtor do not overlap and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described above and otherwise satisfies the requirements of the Bid Procedures Order and the procedures set forth herein, and that the Debtor, in its discretion in consultation with the Committee, SVB, and TPC, determines is reasonably likely to submit a *bona fide* offer for the Assets and to be able to consummate a sale if selected as a Successful Bidder.

The Debtor, in its sole discretion and in consultation with the Committee, SVB and TPC, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

The Stalking Horse Purchaser is hereby deemed to be a Qualified Bidder.

### *Access to Due Diligence Materials*

Only Potential Bidders that execute and deliver a confidentiality agreement satisfactory to the Debtor, in its sole discretion, are eligible to receive due diligence access or access to additional non-public information. The Debtor shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtor believes that such disclosure would be detrimental to the interests of the Debtor. If the Debtor determines that a Potential Bidder that has satisfied all requirements to become a Qualified Bidder and yet does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or access to additional non-public information shall terminate. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline. The Debtor is not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

### *Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (each, a "Bidder") (and, collectively, "Bidders") shall comply with all requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtor to determine that a bid made by a Qualified Bidder is not a Qualified Bid (as defined herein).

## Bidding Process

The Debtor and its advisors, shall (in consultation with the Committee, SVB and TPC): (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets. The Debtor (in consultation with the Committee, SVB and TPC) shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order that will better promote the goals of such process.

### *Bid Deadline*

On or before August 23, 2018 not later than 5:00 pm Eastern time, or such other date as set by the Bankruptcy Court (the "Bid Deadline"), a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written and electronic copies of its Bid to Tintri, Inc., 303 Ravendale Drive, Mountain View, California 94043, Attn: Kieran Harty, and kieran@tintri.com, with copies to: (i) Houlihan Lokey, 245 Park Avenue New York, NY 10167, Attn: Jay Weinberger, and JWeinberger@HL.com; (ii) Alvarez & Marsal, 540 W, Madison St., Suite 1800, Chicago, IL 60661, Attn: Rich Newman and Byron Smyl and newman@alvarezmarsal.com and bsmyl@alvarezmarsal.com and (iii) counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: John D. Fiero, Esq. and Colin R. Robinson, Esq. The Debtor shall promptly provide copies of all Bids to counsel for the Stalking Horse Purchaser, the Committee, SVB and TPC.

The Bid Deadline may be extended by the Debtor in consultation with the Committee, SVB and TPC, provided that no such extension shall be inconsistent with the Purchase Agreement.

### *Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor (in consultation with the Committee, SVB and TPC) to satisfy each of the following, unless otherwise modified by the Debtor in its reasonable discretion in consultation with the Committee, SVB and TPC. (subject to the requirements of section 4.7(a) of the Purchase Agreement):

(i) be submitted in writing to Seller and Purchaser and their respective counsel on or before 5:00 p.m. (Eastern Time) on August 23, 2018, or such other date as set by the Bankruptcy Court;

(ii) provide for a purchase price to be paid to Seller or provides the material terms of a proposed plan transaction that exceeds the Stipulated Value by at least the amount of the Breakup Fee and Expense Reimbursement (as defined below) plus the initial Overbid Increment (as defined below);

(iii) be accompanied by a signed asset purchase agreement in form and substance substantially similar to this Purchase Agreement, together with a redlined, marked copy showing all changes to the Purchase Agreement (the "Competing Agreement");

(iv) must not be subject to due diligence contingencies or other conditions beyond those imposed by Purchaser;

(v) remain open until the conclusion of the Sale Hearing (as defined below);

(vi) contain terms and conditions no less favorable to Seller than the terms and conditions of the Purchase Agreement;

(vii) be accompanied by evidence establishing that the bidder is capable and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Competing Agreement or a proposed plan transaction;

(viii) be accompanied by a cashier's check or other good funds made payable to the order of Seller in an amount of One Hundred Fifty Thousand U.S. Dollars ($150,000.00) (the "Overbidder's Deposit"), and further provide that (A) if the Bankruptcy Court approves a sale of the Purchased Assets to that bidder, Seller may retain the Overbidder's Deposit, and (B) if the Bankruptcy Court does not approve a sale of the Purchased Assets to that Qualified Bidder, Seller will promptly return the Overbidder's Deposit to such Qualified Bidder;

(ix) be for any of the Purchased Assets;

(x) include a provision that any Cure Costs are final and binding upon the applicable counterparty and Seller is authorized to pay such Cure Costs directly from the sale proceeds; and

(xi) include a provision that Purchaser, the Committee, SVB and TPC shall be provided all Qualified Bids (as defined below) and the supporting documentation and evidence that each Qualified Bid satisfies the requirements of the Bid Procedures Order.

(xii) No Fees Payable to Qualified Bidder. A Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bid Procedures.

(xiii) Immediate Payment of the Breakup Fee. A Bid must allow for the immediate payment of the Breakup Fee and Expense Reimbursement to the Stalking Horse Purchaser from the first proceeds of the cash portion of the purchase price of such Bid.

(xiv) Non-Reliance. A Bid must include an acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and Assumed Liabilities prior to making its bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid," if the Debtor believes, in its sole discretion (in consultation with the Committee, SVB and TPC), that such Bid would be consummated if selected as the Successful Bid. The Debtor shall have the right to reject any and all Bids that they believe, in its sole discretion (in consultation with the Committee, SVB and TPC), do not comply with the Bid Procedures. In the event that any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the

Potential Bidder shall be refunded its Overbidder's Deposit. The Debtor reserves the right, in consultation with the Committee, SVB and TPC, to negotiate with any Qualified Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid.

*Breakup Fee*

Recognizing the Stalking Horse Purchaser's expenditure of time, energy and resources, and that the Stalking Horse Purchaser provides a floor bid with respect to the Assets that it offers to purchase, the Debtor is authorized (pursuant to the Bid Procedures Order) to provide the following bidding protections to the Stalking Horse Purchaser.

(f) The Debtor has agreed to pay the Stalking Horse Purchaser (i) a Breakup Fee in the amount of $1.2 million and (ii) Expense Reimbursement of up to $400,000, in each case pursuant to and in accordance with terms of the Purchase Agreement and Bid Procedures Order.

(g) Any Bid submitted prior to the Bid Deadline by a party or parties other than the Stalking Horse Purchaser must be in an amount that is sufficient to pay the Breakup Fee and Expense Reimbursement and result in additional consideration to the Debtor's estate in the amount of at least $100,000 (as compared to the Purchase Price offered by such Stalking Horse Purchaser), after payment of the Breakup Fee and Expense Reimbursement.

*Right to Credit Bid*

Notwithstanding anything to the contrary herein, in the event that the Debtor does not receive any Qualified Bids, TPC shall be (a) deemed a Qualified Bidder under these Bid Procedures and (b) permitted to credit bid amounts owed to it under the DIP Credit Facility and the Pre-Petition Junior Secured Credit Facility as those terms are defined in the Debtor's *Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Authorizing Debtor to Obtain Secured Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 10]; *provided* that TPC's right to credit bid under these Bid Procedures shall not otherwise effect the challenge rights of the Committee and certain other parties in interest which are set forth in greater detail in paragraph 36 of the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Authorizing Debtor to Obtain Secured Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 50] (or such analogous paragraph of a related final order). In the event that TPC submits a credit bid, its consultation rights under these Bid Procedures shall terminate.

### Auction

If the Debtor receives at least two Qualified Bids (inclusive of the Qualified Bid from the Stalking Horse Purchaser) prior to the Bid Deadline, then the Debtor shall notify the Stalking Horse Purchaser and each other Qualified Bidder that the Debtor intends to conduct an auction (the "Auction") to consider all Qualified Bids and to determine the highest or otherwise best bid with respect to the Assets. The Debtor shall provide the Stalking Horse Purchaser, the

Committee, SVB and TPC with copies of all Qualified Bids not later than twenty-four (24) hours after the Bid Deadline, but except as to the Committee's professionals, may exclude any confidential financial information, as reasonably designated by the applicable Qualified Bidder. Unless otherwise designated by the Debtor, the Debtor anticipates that the Auction will commence on August 27, 2018 at 10:00 a.m. (prevailing Eastern Time) at the offices of Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, or such other place and time determined by the Debtor (following consultation with the Committee, SVB and TPC).

Not less than forty-eight (48) hours in advance of the Auction, the Debtor will notify all Qualified Bidders in writing of (i) the highest or otherwise best Qualified Bid, as determined by the Debtor in its discretion (the "Baseline Bid") and (ii) the time and place of the Auction.

If the Debtor does not receive at least two Qualified Bids from Qualified Bidders (inclusive of the Qualified Bid from the Stalking Horse Purchaser), then no Auction shall be scheduled or conducted, and the Debtor shall proceed at the Sale Hearing to request approval of the proposed sale to the Stalking Horse Purchaser as set forth in the Purchase Agreement, and shall not consider any competing or alternative offers or proposals to purchase the Assets.

If the Auction is necessary, such Auction shall be conducted according to the following procedures:

(a) **Participation at the Auction**

Only the Stalking Horse Purchaser, SVB and TPC, and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction. Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Debtor, the Committee, SVB, TPC, the U.S. Trustee, and any other party in interest that provides notice to the Debtor twenty-four hours prior to the Auction, shall be permitted to attend the Auction.

Except as otherwise set forth herein, the Debtor (in consultation with the Committee, SVB and TPC) may conduct the Auction in the manner it determines will result in the highest or best offer for the Assets in accordance with the Bid Procedures.

After the conclusion of the Auction, in the Debtor's sole discretion (after consultation with the Committee, SVB and TPC), the Debtor may resume an auction for the sale of discrete assets and/or discrete groups of assets, if any, which are not included in the Successful Bid, on such bidding procedures as may be implemented by the Debtor in its discretion (in consultation with the Committee, SVB and TPC.

(b) **The Debtor Shall Conduct the Auction**

The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall be made by the Debtor in its discretion (in consultation with the Committee, SVB and TPC), and may take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate (the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtor (in consultation with the Committee, SVB and TPC) reserves the right to conduct the Auction in the manner designed to maximize value based upon the nature and extent of the Qualified Bids

received in a manner not inconsistent with the Bid Procedures. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Bid Procedures, the Auction or the proposed transaction.

(c) **Terms of Overbids**

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(d) **Minimum Overbid Increment**

During the Auction, bidding shall begin initially with the Baseline Bid. Any Overbid after the Baseline Bid shall be made in increments of at least $100,000 ("Overbid Increment") in cash or other consideration acceptable to the Debtor (in consultation with the Committee, SVB and TPC); *provided, however*, that any Overbid by the Stalking Horse Purchaser thereafter shall only be required to be equal to the sum of (1) the then existing lead Bid plus (2) the $100,000 Overbid less (3) the amount of the Breakup Fee and Expense Reimbursement.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor (in consultation with the Committee, SVB and TPC) accepts a higher Qualified Bid as an Overbid.

(e) **Consideration of Overbids**

The Debtor reserves the right, in its reasonable business judgment (following consultation with the Committee, SVB and TPC), to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment (following consultation with the Committee, SVB and TPC), may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

(f) **Additional Procedures**

The Debtor may adopt rules for the Auction at or prior to the Auction that, in its reasonable discretion (in consultation with the Committee, SVB and TPC), will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order or the Bankruptcy Code. All such rules will provide that all Bids shall be made and received in one room and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified.

The Debtor (in consultation with the Committee, SVB and TPC may (a) determine which Qualified Bid, if any, is the highest or best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving the sale of the Assets pursuant to a

Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code or these Bid Procedures; or (iii) contrary to the best interest of the Debtor, its estate and its creditors.

      (g)    **Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

      (h)    **Closing the Auction**

Upon conclusion of the bidding, the Auction shall be closed, and the Debtor (in consultation with the Committee, SVB and TPC) shall immediately identify the highest or best offer for the Assets (which may be an aggregate of bids for less than all of the Assets) (the "Successful Bid" or the "Successful Bidder APA") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest or best offer will provide the greatest amount of net value to the Debtor, its creditors and the next highest or best offers after the Successful Bid (the "Back-up Bid") and the entity or entities submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination. Upon three (3) days' prior notice by the Debtor, the Back-up Bidder selected by the Debtor must immediately proceed with the closing of the transaction contemplated under the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

As stated above, the Bids of the Successful Bidder and the Back-up Bidder must be irrevocable until the Termination Date, *provided* that in the event that the Successful Bid is submitted by a party other than the Stalking Horse Purchaser, and the Stalking Horse Purchaser's Bid (or as amended by the Stalking Horse Purchaser at the Auction in response to competitive bidding) is declared to be the Back-Up Bid, then the Stalking Horse Purchaser's Bid must only be irrevocable for fifteen (15) calendar days from the conclusion of the Sale Hearing.

### Acceptance of Successful Bid

The Debtor shall sell the Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate except to the extent set forth in the Successful Bidder APA. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection

therewith or the Auction, except as expressly stated in these Bid Procedures or the Successful Bidder APA.

### Free of Any and All Interests

Except as otherwise provided in the Successful Bidder APA and subject to the approval of the Bankruptcy Court, all of Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of any Liens, Claims and Encumbrances, and other interests to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances, and other interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Liens, Claims and Encumbrances, and other interests applied against the Assets.

### Sale Hearing

The Debtor has requested that the Sale Hearing occur on or about August 28, 2018, or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale in accordance with the applicable asset purchase agreement or such agreement is terminated, the Debtor shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting the next highest such Bid without further order of the Bankruptcy Court.

### Return of Good Faith Deposit

The Overbidder's Deposit of the Successful Bidder (or the Back-up Bidder that becomes a Successful Bidder) shall be applied to the purchase price of such transaction at Closing. The Debtor will hold the Overbidder's Deposits of the Successful Bidder and the next highest Qualified Bidder in a segregated account until the closing of the sale with the Successful Bidder; Overbidder's Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective bidders following the conclusion of the Auction. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain the Successful Bidder's Overbidder's Deposit as part of the Debtor's damages resulting from such Successful Bidder's breach or failure to perform.