# EXHIBIT A



Cisco Systems Capital Corporation
170 West Tasman Drive, Mailstop SJ-13/3
San Jose, CA 95134

No. 11304-MM002-0
Lease Preparation Date: November 10, 2016

## AGREEMENT TO LEASE EQUIPMENT

| Legal Name of Lessee<br>TINTRI, INC. | | D.B.A. Name | Federal Tax ID |
|---|---|---|---|
| Address<br>201 Ravendale Dr | | | County |
| City<br>Mountain View | State<br>CA | Zip<br>94043 | Jurisdiction of Organization/Entity Type<br>Delaware |
| Contact Name<br>Monica Damron | | Phone Number<br>6507723803 | Fax Number |

| | | |
|---|---|---|
| Total Amount Financed  $241,037.02<br>Periodic Rent:<br>    1 to 3        $0.00***<br>    4 to 36     $7,304.15***<br>Lease Term:        36  (Months)<br>End of Lease Option:  $1 buy out<br>Equipment Location:  See Attached "Annex A"<br><br>***(Plus applicable taxes) | | Quantity    Model    Equipment Description    Serial #<br><br>SEE ATTACHED "ANNEX A" |
| Credit Expiration Date:     March 9, 2017 | | |

**1. Lease of Equipment.** Subject to the terms and conditions of this Agreement to Lease Equipment (this "**Lease**"), Cisco Systems Capital Corporation ("**Lessor**") shall lease to Lessee, and Lessee shall lease from Lessor, the personal property described in Annex A hereto together with all substitutions, replacements, repairs, parts and attachments, improvements and accessions thereto (the "**Equipment**"), and any one-time charges for related expenses financed by Lessor ("**Soft Costs**"). Annex A hereto is expressly incorporated herein and made a part of this Lease. Lessor shall have no obligation to enter into this Lease, or any obligation to Lessee or pay any vendor for the Equipment or Soft Costs whatsoever, unless each of the following conditions has been fully satisfied or confirmed on or before the Credit Expiration Date set forth above: (i) Lessee shall have executed and delivered to Lessor or, pursuant to the provisions of Section 2 below, the Lessor shall have executed the Certificate of Acceptance and Lessee shall have executed and delivered any other documents reasonably required by Lessor, including evidence that the Lessee's execution of such documents is authorized and approved, and the persons executing the documents are duly authorized to do so; and, (ii) no Credit Event shall have occurred (as determined by Lessor in its sole and absolute discretion). If such conditions have not been satisfied in full as of the Credit Expiration Date, then Lessor, in its sole and absolute discretion, may elect to: (x) notify Lessee in writing that this Lease is cancelled and that it and any related lease documents immediately shall be void and of no force and effect and Lessor shall have with no obligation to Lessee hereunder, or (y) if requested by Lessee, agree to extend the Credit Expiration Date and confirm such extended Credit Expiration Date by written notice thereof to Lessee. For purposes of this Lease, a "**Credit Event**" means, as of any date: (i) Lessee or any guarantor of the Lease fails to satisfy Lessor's then current credit approval standards, policies or practices, (ii) the occurrence of any change in global or national political conditions or general economic or market conditions which adversely affect the jurisdiction and/or the industry in which the Lessee operates, or (iii) the occurrence of any Event of Default (as defined below) or any event or condition that, with notice or the passage of time, or both, would be an Event of Default.

**2. Term of Lease.** The term of this Lease shall commence on the date of execution of the Certificate of Acceptance ("**Commencement Date**"), and continue for the number of months set forth above (the "**Initial Term**"). If Lessee fails to return the Certificate of Acceptance within 5 days of acceptance of the Equipment, Lessee shall (i) be deemed to have accepted and ratified such Certificate of Acceptance and (ii) be deemed to have authorized Lessor to complete and legally sign the Certificate of Acceptance on behalf and in the name of Lessee. Unless (a) Lessor receives written notice, at least 90 days prior to the expiration of the Term, of Lessee's intent to (i) purchase the Equipment pursuant to Section 15, or (ii) not renew the Lease, or (b) the "**End of Lease Option**" above specifies "$1 Buyout", this Lease shall renew automatically in 90-day non-cancelable increments (each an "**Extended Term**", and any Extended Term, together with the Initial Term, the "**Term**"). This Lease is non-cancelable for any reason whatsoever, prior to the end of the Lease Term.

**3. Rent.** Lessee agrees to pay Lessor the rent set forth above ("**Rent**") for the Equipment and any Soft Costs beginning the first day of the calendar month immediately following the Commencement Date (unless the Commencement Date is the first day of the month, in which case the first Rent payment shall be due on such date) at the address specified above. The Rent for any Extended Term shall be payable monthly, in advance, and shall be in an amount equal to that of the original Rent, adjusted, as applicable, for Soft Costs.

**4. Advance Change Agreement.** Lessee acknowledges that complete and definitive information regarding the Equipment may not be available at the time of execution of this Lease and any Certificate of Acceptance. Lessee hereby irrevocably authorizes Lessor, without any further action or agreement by Lessee, to (a) modify or replace Annex A or any Certificate of Acceptance in order to supplement, correct, or replace descriptive or location information regarding the Equipment, and (b) increase or decrease the total amount financed under this Lease, provided such increase or decrease shall in no event exceed five percent (5%) of the amount set forth in the Lease as originally executed by the parties, as Lessor may deem appropriate, to the extent necessary to accurately document the Equipment information and/or the amount financed under this Lease. Lessee agrees to be bound by such changes made by Lessor as though set forth herein at the time of Lessee's execution of this Lease or the Certificate of Acceptance.

**5. Disclaimers; Warranties.** Lessee represents and acknowledges that the Equipment is of a size, design, capacity and manufacture selected by it. **LESSEE LEASES THE EQUIPMENT AS IS AND, NOT BEING THE MANUFACTURER OF THE EQUIPMENT, THE MANUFACTURER'S AGENT OR THE SELLER'S AGENT, LESSOR MAKES NO WARRANTY OR REPRESENTATION WHATSOEVER, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, DESIGN OR CONDITION OF THE EQUIPMENT, OR INTELLECTUAL PROPERTY RIGHTS (INCLUDING WITHOUT LIMITATION ANY PATENT, COPYRIGHT AND TRADEMARK RIGHTS, OF ANY THIRD PARTY WITH RESPECT TO THE EQUIPMENT, WHETHER RELATING TO INFRINGEMENT OR OTHERWISE) WITH RESPECT TO THE EQUIPMENT. LESSOR SHALL NOT BE RESPONSIBLE FOR ANY DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM POSSESSION OR USE OF THE EQUIPMENT.** All transferable manufacturer and supplier warranty rights are, to the extent such rights have been transferred to Lessor, hereby assigned without representation or warranty by Lessor to Lessee for the Lease Term, which warranties Lessee is authorized to enforce.

**6. Net Lease; Payments Unconditional. THIS LEASE IS A NET LEASE. LESSEE'S OBLIGATION TO PAY ALL RENT AND OTHER SUMS HEREUNDER, AND THE RIGHTS OF LESSOR IN AND TO SUCH PAYMENTS, SHALL BE ABSOLUTE AND UNCONDITIONAL, AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SETOFF, OR RECOUPMENT, FOR ANY OTHER REASON WHATSOEVER.**

**7. Use of Equipment.** Lessee shall use the Equipment solely in the conduct of its business, in a manner and for the use contemplated by the manufacturer thereof. So long as no Event of Default exists, neither Lessor nor its assignee shall interfere with Lessee's right to use the Equipment under any Lease. Lessee acknowledges and represents that the Equipment shall be and remain personal property, notwithstanding the manner by which it may be attached or affixed to realty.

**8. Delivery; Installation; Return; Maintenance and Repair; Inspection.** Lessee shall be solely responsible for: (a) the delivery of the Equipment to Lessee, (b) the return of Equipment to Lessor, upon expiration or termination of the Lease, in good repair, condition and working order, ordinary wear and tear excepted, at the location(s) within the continental United States specified by Lessor, and (c) the installation, de-installation, maintenance and repair of the Equipment. Lessee shall, at its expense, keep the Equipment in good repair, condition and working order, ordinary wear and tear excepted. Unless Lessee is purchasing the Equipment pursuant to Section 15, Lessee shall return the Equipment to Lessor within 15 days of the termination or expiration of this Lease. Lessee shall remain obligated to pay Rent until the Equipment is accepted by Lessor in the condition required by this section. Lessee warrants that the Equipment, upon return to Lessor, will be acceptable to the manufacturer for maintenance. Lessor shall be entitled to inspect the Equipment at reasonable times.

**9. Taxes.** Lessee shall pay, and hereby indemnifies and holds Lessor harmless from all fees, assessments, taxes, and charges imposed by any governmental body or agency upon or with respect to any of the Equipment, or the possession, ownership, use or operation thereof. Lessor shall file and shall pay personal property taxes payable with respect to the Equipment. Lessee shall pay to Lessor the amount of all such personal property taxes within 15 days of its receipt of an invoice for such taxes.

**10. Risk of Loss.** Lessee assumes all risk of loss for Equipment upon delivery to Lessee. If the Equipment is lost or damaged beyond repair (a "**Loss Event**"), Lessee shall pay to Lessor, within 30 days of a Loss Event, an amount equal to all payments due and payable with respect to such Equipment on or prior to such Loss Event, plus a sum equal to the casualty value ("**Casualty Value**") of such Equipment as of such date. The Casualty Value of the Equipment shall be 110% of the total Equipment cost set forth above, decreased from month to month thereafter by 1.69% of the total Equipment cost. Upon making such payment, the Rent for such Equipment shall cease to accrue, the Term of the Lease as to such Equipment shall terminate.

**11. Insurance.** Lessee shall maintain property damage, liability insurance, insurance against loss or damage to the Equipment in an amount no less than the Casualty Value of the Equipment, with each such insurance policy naming Lessor as loss payee or additional insured thereof. Lessee shall provide Lessor with a Certificate of Insurance upon request.

**12. Indemnity.** Lessee hereby indemnifies and holds harmless Lessor from and against any and all liability, damages, and costs arising from this Lease.

**13. Prohibitions Related to Lease and Equipment.** Without the prior written consent of Lessor, Lessee shall not assign, lend, pledge, transfer, or sublease the Equipment or the Lease, permit to exist any security interest, lien or encumbrance with respect to any of the Equipment; or cause or permit any of the Equipment to be moved from the location specified in Annex A.

**14. Alterations and Modifications.** Any alteration or improvement to any item of Equipment shall belong to and become the property of Lessor unless, at Lessee risk, cost, and expense, it is removed prior to the return of such item of Equipment by Lessee.

**15. End of Term Purchase.** If the "End of Lease Option" identified above specifies "FMV", then upon termination or expiration of this Lease: (a) provided no Event of Default exists, and (b) Lessee has provided 90 days prior written notice to Lessor of its intent to purchase, Lessee shall have the option to purchase all (not part) of the Equipment at Fair Market Value without recourse or warranty. The "**Fair Market Value**" of the Equipment shall be the then retail market price determined by the mutual agreement of Lessor and Lessee. Title to the Equipment shall automatically pass to Lessee upon payment in full of the purchase price but in no event earlier than the expiration of the Term of this Lease. If the parties are unable to agree on the purchase price, or the terms and conditions of the purchase, then this Lease shall remain in full force and effect, and Lessee will be invoiced, and agrees to pay Rent for the Equipment beyond the termination or expiration of the Lease until the Fair Market Value payment has been received by Lessor. If the

"End of Lease Option" identified above specifies "$1 Buyout", then upon expiration of the Initial Term, provided no Event of Default exists, Lessee shall purchase the Equipment hereunder by remitting One Dollar ($1.00) to Lessor on the last day of the Initial Term. Notwithstanding any purchase option hereunder, until all obligations of this Lease have been fulfilled, Lessor shall retain a purchase money security interest in the Equipment and this Lease shall constitute a security agreement under the Uniform Commercial Code of the state in which the Equipment is located.

16. **Financial Statements.** Lessee shall promptly furnish to Lessor such financial or other statements regarding the condition and operations of Lessee and any guarantor of any Lease, and information regarding the Equipment, as Lessor may from time to time reasonably request.

17. **Events of Default.** The occurrence of any of the following shall constitute an "**Event of Default**" hereunder: if (a) Lessee fails to pay any Rent or other amount due within five days after it becomes due and payable; (b) Lessee fails to maintain insurance as required herein; (c) Lessee is in breach of Section 13; (d) bankruptcy, receivership, insolvency, reorganization, dissolution, liquidation or other similar proceedings are instituted by or against Lessee; or (e) Lessee defaults under any other Lease or agreement between the parties.

18. **Remedies.** If an Event of Default exists, Lessor may exercise any one or more of the following remedies, in addition to those arising under applicable law: (a) cancel any or all Leases by notice to Lessee and peacefully take possession of any or all of the Equipment; (b) recover all sums due and accelerate and recover the present value of the remaining payment stream of all Rent due under this Lease, together with Rent and all other amounts currently due including without limitation, any and all direct, indirect and consequential damages; (c) sell or re-lease any or all of the Equipment, through public or private sale or lease transactions, and apply the proceeds thereof to Lessee's obligations hereunder, and (d) exercise any other remedy in accordance with applicable provisions of the Uniform Commercial Code. Lessee shall remain liable for any resulting deficiency and Lessor may retain any surplus it may realize. Lessee shall pay all costs and expenses (including reasonable attorneys' fees) incurred by Lessor in retaking possession of, and removing, storing, repairing, refurbishing and selling or leasing such Equipment and enforcing any obligations of Lessee hereunder. The present value of the remaining payment stream of Rent shall be calculated using the Discount Rate (as defined in the following sentence) if the "End of Lease Option" identified above specifies "FMV" or, if the "End of Lease Option" specifies "$1 Buyout" the present value of the remaining Rent shall be calculated using the lesser of the Discount Rate and the implicit rate of the Lease. As used herein, the "**Discount Rate**" shall be the rate for U.S. Treasury obligations having a constant maturity of three months, as specified in the Federal Reserve Statistical Release H.15 (or replacement publication) issued most recently prior to the date of Lessor's termination or cancellation of the Lease.

19. **Assignment by Lessor.** Lessor may assign or transfer any or all of Lessor's interest in this Lease without notice to Lessee. Any assignee of Lessor shall have all of the rights, but none of the obligations (unless otherwise provided in the applicable assignment), of a "Lessor" under this Lease. Upon notice of such assignment or transfer, Lessee will pay all Rent and other sums due under this Lease to such assignee or transferee. Lessee agrees that it will not assert against any assignee any defense, counterclaim or offset that Lessee may have against Lessor or any preceding assignee.

20. **Entire Lease.** No waiver or amendment of, or any consent with respect to, any provision of this Lease shall bind either party unless set forth in a writing signed by both parties. **TO THE EXTENT PERMITTED BY APPLICABLE LAW AND NOT OTHERWISE SPECIFICALLY GRANTED TO LESSEE HEREUNDER, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS OR REMEDIES CONFERRED UPON A LESSEE UNDER THE CODE OR ANY OTHER APPLICABLE LAW OR STATUTE.**

21. **Default Rate.** Any nonpayment of Rent or other amount payable hereunder shall result in Lessee's obligation to promptly pay Lessor on such overdue payment, for the period of time during which it is overdue (including during any grace period), interest at a rate equal to the lesser of 14% per annum, or (b) the highest rate of interest permitted by applicable law (each, the "**Default Rate**").

22. **Governing Law. The parties expressly agree this Lease shall be governed in all respects by the laws of the state of California. Lessee hereby consents to personal jurisdiction and venue in the courts of the State of California.**

23. **Survival.** All obligations of Lessee to make payments to Lessor under this Lease or to indemnify Lessor, and all rights of Lessor hereunder with respect to this Lease, shall survive the termination of this Lease and the return of the Equipment.

24. **Security.** Lessee hereby appoints Lessor as its attorney-in-fact, coupled with an interest, to file such financing statements, amendments and any other instruments related to this Lease without Lessee's consent. Lessee hereby grants Lessor a security interest in Lessee's right, title and interest, now existing and hereafter arising, in and to all Equipment and any other rights to payment arising out of this Lease. The original of this Lease shall constitute chattel paper for purposes of the Uniform Commercial Code. If there exist multiple originals of this Lease, the one marked "Lessor's Copy" or words of similar import, shall be the only chattel paper.

25. **NOTICE.** Any notice, request, demand, consent, approval or other communication provided for or permitted in relation to this Lease shall be in writing (including via facsimile) and shall be delivered to the parties at their respective addresses set forth above.

LESSEE, BY THE SIGNATURE BELOW OF ITS AUTHORIZED REPRESENTATIVE, ACKNOWLEDGES THAT IT HAS READ THIS LEASE, UNDERSTANDS IT, AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS. EACH PERSON SIGNING BELOW ON BEHALF OF LESSEE REPRESENTS AND WARRANTS THAT HE OR SHE IS AUTHORIZED TO EXECUTE AND DELIVER THIS LEASE ON BEHALF OF LESSEE.

LESSOR: CISCO SYSTEMS CAPITAL CORPORATION
Signed: _____ Date: 11/2/2016
Name/Title: Craig Schauman, Operations Business Lead

LESSEE: TINTRI, INC.
Signed: _____ Date: 11/11/16
Name/Title: DOUGLAS L. KAHN / VP Operation



## CERTIFICATE OF ACCEPTANCE

THIS CERTIFICATE OF ACCEPTANCE (this "Acceptance Certificate") UNDER AGREEMENT TO LEASE EQUIPMENT NO. 11304-MM002-0 IS BETWEEN **Cisco Systems Capital Corporation**, Lessor, and **TINTRI, INC.**, Lessee.

This Acceptance Certificate is issued pursuant to the Agreement to Lease Equipment ("Lease") identified above. The terms used in this Acceptance Certificate shall have the same meanings defined in such Lease.

Lessee acknowledges that each item of Equipment specified on Annex A, attached hereto, has been delivered to and accepted as of this date by Lessee for purposes of the Lease. Except as expressly set forth otherwise in the Lease, the Commencement Date shall be the execution date of this Acceptance Certificate.

Lessee confirms and agrees that no Event of Default under the Lease has occurred and is continuing.

The person signing this Acceptance Certificate on behalf of Lessee hereby certifies that such person has read and acknowledges all terms and conditions of the Lease, and is duly authorized to execute this Acceptance Certificate on behalf of Lessee. This Certificate shall be executed by Lessee and promptly returned to Lessor.

**TINTRI, INC.**, Lessee

By: _/s/_

Title: General Counsel

Acceptance Date: 12/19/16



# ANNEX A

**TINTRI, INC.**
Agreement to Lease Equipment No. 11304-MM002-0

| Sales Order | Lessee PO Number | CSC PO Number | Invoice Number | Invoice Date | Group Asset Type | Part Number | Qty | Unit Price | Extended Amount | Net Amount | Shipping & Handling | Street 1: | Street 2: | City | St | Zip | Serial Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N/A | PS-0000093663 | 117627 | FZL2531 | 15-NOV-2016 | Cisco Software | L-ASA5555-TA-3Y | 4 | $6,680.52 | $26,722.08 | $26,722.08 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | FZL2531 | 15-NOV-2016 | Cisco Software | FS-VMW-SW-K9 | 1 | $4,512.31 | $4,512.31 | $4,512.31 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | FZL2531 | 15-NOV-2016 | Cisco Maintenance | CON-SAU-VMW | 1 | $4,251.27 | $4,251.27 | $4,251.27 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GBB4780 | 17-NOV-2016 | Cisco Equipment | N2K-C2248TF-E | 4 | $4,235.00 | $16,940.00 | $16,940.00 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GBB4780 | 17-NOV-2016 | Cisco Maintenance | CON-SNTP-2248EFA | 4 | $893.27 | $3,573.08 | $3,573.08 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GBB4780 | 17-NOV-2016 | Shipping | FREIGHT & HANDLING | 1 | $0.00 | $0.00 | $0.00 | $175.80 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GCF2593 | 23-NOV-2016 | Cisco Equipment | N9K-C93180YCEXB18Q | 2 | $17,325.00 | $34,650.00 | $34,650.00 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GCF2593 | 23-NOV-2016 | Shipping | FREIGHT & HANDLING | 1 | $0.00 | $0.00 | $0.00 | $322.88 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GCM9412 | 28-NOV-2016 | Cisco Maintenance | CON-SNTP-93180YBN | 2 | $4,494.68 | $8,989.36 | $8,989.36 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GCM9412 | 28-NOV-2016 | Cisco Maintenance | CON-SNTP-93180YBN | 2 | $4,494.68 | $8,989.36 | $8,989.36 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GDS8476 | 03-DEC-2016 | Cisco Equipment | N9K-C93108TCEXB18Q | 2 | $17,325.00 | $34,650.00 | $34,650.00 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GDS8476 | 03-DEC-2016 | Shipping | FREIGHT & HANDLING | 1 | $0.00 | $0.00 | $0.00 | $339.31 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GDZ6512 | 05-DEC-2016 | Cisco Maintenance | CON-SNTP-93108TBN | 2 | $4,494.68 | $8,989.36 | $8,989.36 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GDZ6512 | 05-DEC-2016 | Cisco Maintenance | CON-SNTP-93108TBN | 2 | $4,494.68 | $8,989.36 | $8,989.36 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GFX3547 | 08-DEC-2016 | Cisco Equipment | ASA5555-FPWR-K9 | 1 | $11,824.89 | $11,824.89 | $11,824.89 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | FTX2050Y06N |
| N/A | PS-0000093663 | 117627 | GFX3547 | 08-DEC-2016 | Cisco Equipment | ASA5555-FPWR-K9 | 1 | $11,824.89 | $11,824.89 | $11,824.89 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | FTX2050Y06Q |
| N/A | PS-0000093663 | 117627 | GFX3547 | 08-DEC-2016 | Cisco Equipment | ASA5555-FPWR-K9 | 1 | $11,824.89 | $11,824.89 | $11,824.89 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | FTX2050Y06U |
| N/A | PS-0000093663 | 117627 | GFX3547 | 08-DEC-2016 | Cisco Equipment | ASA5555-FPWR-K9 | 1 | $11,824.89 | $11,824.89 | $11,824.89 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | FTX2050Y06S |
| N/A | PS-0000093663 | 117627 | GFX3547 | 08-DEC-2016 | Cisco Maintenance | CON-SNT-A55FPK9 | 4 | $7,427.32 | $29,709.28 | $29,709.28 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GFX3547 | 08-DEC-2016 | Cisco Equipment | ASA-PWR-AC | 1 | $693.00 | $693.00 | $693.00 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | FS1002790G0700A6AW1Z |
| N/A | PS-0000093663 | 117627 | GFX3547 | 08-DEC-2016 | Cisco Equipment | ASA-PWR-AC | 2 | $693.00 | $1,386.00 | $1,386.00 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| N/A | PS-0000093663 | 117627 | GFX3547 | 08-DEC-2016 | Cisco Equipment | ASA-PWR-AC | 1 | $693.00 | $693.00 | $693.00 | $0.00 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | FS1002790G0700A6AW1L |
| N/A | PS-0000093663 | 117627 | GFX3547 | 08-DEC-2016 | Shipping | FREIGHT & HANDLING | 1 | $0.00 | $0.00 | $0.00 | $447.97 | 303 RAVENDALE DR | | Mountain View | CA | 94043 | UNASSIGNED |
| | | | | | **Location Subtotal** | | | | **$241,037.02** | **$241,037.02** | **$1,285.96** | | | | | | |
| | | | | | Financed Taxes | | | | $0.00 | $0.00 | | | | | | | |
| | | | | | **Grand Total** | | | | **$241,037.02** | **$241,037.02** | **$1,285.96** | | | | | | |