# EXHIBIT A
# (License Agreement)

DocuSign Envelope ID: 058294F2-AC1A-47D8-B1C4-2BE08778DDC4

# MASTER LICENSE AND SERVICES AGREEMENT

This Master License and Services Agreement (this "**Agreement**") is made as of December 24, 2014 (the "**Effective Date**"), by and between Tintri, Inc., a Delaware corporation ("**Client**"), and Leeyo Software, Inc., a Delaware corporation ("**Leeyo**"). Client and Leeyo may also be referred to individually as a "**Party**" and collectively as the "**Parties.**"

## RECITALS

A. Leeyo provides certain business process automation software and services for revenue management.

B. Client may order software and services under this Agreement pursuant to an Order that references and incorporates the terms of this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and intending to be legally bound hereby, the Parties agree as follows:

1. **Definitions**. All definitions below or elsewhere in this Agreement apply to both their singular and plural forms, as the context may require. All references in this Agreement to "**sale**" or "**purchase**" of any software or other embodiment of Intellectual Property only means the sale or purchase of a license to use such software or Intellectual Property pursuant to this Agreement.

"**Acceptance**" or "**Accepted**" means, only in the situation where Leeyo provides Licensed Software implementation services under a Services Order, the earliest date to occur of the following:

(a) when Client has successfully completed the UAT for the Licensed Software, and has provided written notice to Leeyo of such completion; or

(b) if, through no fault of Leeyo, Client does not provide notice of UAT completion within 60 days after Leeyo reasonably notifies Client in writing that the Licensed Software is ready for the UAT; or

(c) 9 months after the Effective Date.

"**Action**" means any claim, suit, action or proceeding.

"**Affiliate**" with respect to a Party means another entity controlled by, controlling or under common control with such Party, where "control" means the legal, beneficial or equitable ownership, directly or indirectly, of more than 50% of the aggregate of all voting interests in such entity. Such other entity is an Affiliate only during the period that such "control" exists.

"**Base Fees**" the total fees paid (including any accrued but unpaid amounts) by Client to Leeyo under this Agreement during the 12 months immediately preceding the date of an Action.

"**Documentation**" means the user or technical manuals for the Licensed Software(s) provided in HTML, Word, or PDF formats.

"**Intellectual Property**" or "**Intellectual Property Rights**" collectively means any and all patents, patent registrations, patent applications, data rights, utility models, business processes, trademarks or names, service marks or names, trade secrets, know how, mask works, copyrights, moral rights and any other form of proprietary protection arising or enforceable under the laws of the United States, any other jurisdiction or any bi-lateral or multi-lateral treaty.

"**Licensed Software**" is defined in each Software Order or Subscription Services Order.

License & Services Agreement - Form v.10-29-14     Leeyo License Svcs Agt [Tintri] (Executable version 12-23-14)
Leeyo Software Confidential Information

"**Order**" means an agreement for the licensing of specific Licensed Software from Leeyo to Client and/or for the performance of any Services, executed by an authorized representative of each Party, which references and incorporates this Agreement.

"**Services**" means any services to be provided by Leeyo, as defined in an Order.

"**Support Start Date**" means the date when the Licensed Software is Accepted, in the instance where Leeyo provides Licensed Software implementation services under a Services Order; otherwise, the Effective Date.

**"UAT"** or **"User Acceptance Test"** means the test that determines whether the Licensed Software operates in accordance with the functional and technical specifications agreed to by the Parties under a separate Statement of Work, if any, for the installation and implementation of the Licensed Software.

2. **Leeyo Licensed Software and Services**.

   2.1 Licensed Software and Services. Leeyo hereby agrees to provide to Client the Licensed Software and/or Services set forth in one or more Orders that may be entered into from time to time by the Parties.

   2.2 Affiliate Rights. Client Affiliates shall be permitted to use the Licensed Software and Services subject to the terms of this Agreement and the applicable Order. Client shall ensure that each Client Affiliate using the Licensed Software and Services as authorized herein agrees to be subject to the terms and conditions of this Agreement. Client shall remain liable for any and all acts or omissions in violation of the terms of this Agreement by any Client Affiliate and shall immediately notify Leeyo of any violation of the terms of this Agreement by a Client Affiliate unless the Client Affiliate is a signatory and a direct party to this Agreement or the applicable Order.

3. **License Grant**.

   3.1 Licenses. The license(s) granted to Client with respect to any Licensed Software will be set forth in the applicable Order.

   3.2 Reservation of Rights. Leeyo reserves all rights not expressly granted to Client under this Agreement or in an Order. Nothing in this Agreement shall limit in any way Leeyo's right to develop, use, license, create derivative works of, or otherwise exploit Leeyo Intellectual Property Rights, or to permit third parties to do so; subject to the restrictions on use of Client's Confidential Information (defined in Section 5.1). Leeyo shall be free to use the ideas, concepts, techniques and know-how used and developed in connection with this Agreement; subject to the restrictions on Client's Confidential Information. In any event, Leeyo shall be free to perform similar services for other clients and customers, including competitors of Client, using general knowledge, skills and experience obtained in connection with this Agreement.

   3.3 Restrictions on Use. Client agrees that, except as authorized in an Order, neither it nor its Affiliates, and their employees, agents or contractors, will (a) decompile, reverse engineer, disassemble or otherwise reduce the Licensed Software or Services to a human perceivable form or permit any other party to do so, or (b) copy, modify, adapt, translate, rent, lease, sublicense, loan, resell, distribute, time-share, compile, or create any derivative work of the Licensed Software or Services.

   3.4 Proprietary Rights.

   (a) Licensed Software and Services. Leeyo shall exclusively own all right, title and interest in and to (i) the Licensed Software and Services (and all of the underlying technology, software and analytics) provided by Leeyo, including any related methods, algorithms, discoveries, inventions, modifications, customizations, enhancements, derivatives, Documentation, (ii) any enhancement, customization, derivative or other modification of the Licensed Software, whether made solely by a Party or jointly ("**Software Modifications**"), and upon creation, such Software Modifications will become part of the Licensed Software, (iii) any work product that is conceived, originated, developed or prepared by Leeyo in connection with the Services provided by Leeyo; and (iv) any Intellectual Property Rights associated with (i) (ii) and (iii) above, except as may be expressly provided otherwise in a particular Order.

(b) Custom Software. Client shall own all right, title and interest in any custom software developed by Leeyo at Client's request ("**Custom Software**"), provided that such ownership shall not include any pre-existing Leeyo Intellectual Property ("**Pre-Existing IP**"). In the event Client and Leeyo mutually agree to undertake a project that would be done on a "work for hire" basis, the Parties will enter into a mutually agreed Services Order or Statement of Work for such project which includes the terms and conditions of such project, such as the applicable ownership (*i.e*., designation of "Custom Software") and license rights to any Pre-Existing IP. In no event will Software Modifications become Custom Software.

(c) Feedback. Client may provide feedback to Leeyo related to the Licensed Software, which may include comments, suggestions or other input regarding Leeyo's Confidential Information prior to or after the date of this Agreement ("**Feedback**"). Client grants to Leeyo has an unrestricted, irrevocable, royalty free, and worldwide right to use Feedback in connection with its Licensed Software and services and for any other purposes.

4. **Fees and Payments**.

    4.1 Licensed Software and Service Fees. All fees and charges will be set forth in the applicable Order.

    4.2 Payment. All fees, charges and expenses invoiced under this Agreement will be due and payable by Client, in United States currency, net 30 days from the invoice date. Each invoice will set forth in reasonable detail the Licensed Software or Services it covers. All fees payable under this Agreement are exclusive of tax. Client shall pay any applicable taxes, including sales, use, personal property, value added, excise, customs fees or other taxes and duties imposed under applicable law with respect to all Licensed Software and Services provided under this Agreement, excluding only income taxes and real property taxes payable by Leeyo.

5. **Confidentiality**.

    5.1 Confidential Information. "**Confidential Information**" is any information that is marked as confidential or proprietary or which should reasonably be considered to be confidential or proprietary, including without limitation any such information that relates to: the financial and/or business operations of the party disclosing such information ("**Disclosing Party**"), including but not limited to, marketing and product plans, ideas, concepts, business plans, financial condition, employees, inventions, algorithms, decision technology and/or models, processes, designs, specifications, drawings, samples, improvements, developments, applications, engineering, manufacturing and marketing data and plans, software code (object and source), functionality, security procedures and approaches, know-how, customer names and information, customer transaction information, experimental work, distribution arrangements and trade secrets.

    5.2 Duties. Each Party receiving information under this Agreement ("**Receiving Party**") agrees that it will not, at any time during or after the Term disclose or disseminate to any other person or entity, or use except as permitted by this Agreement, any Confidential Information of the Disclosing Party disclosing information under this Agreement or of third parties obtained during the course of performance under this Agreement. Each Receiving Party will ensure that any Confidential Information obtained from the Disclosing Party will be disclosed only to the Receiving Party's employees and agents and only on a "need-to-know" basis, and that such employees and agents will be subject to a duty (a written agreement in the case of non-employees) to maintain the confidentiality of and not use (except as necessary to satisfy obligations under this Agreement) the Confidential Information similar to the obligations under this Agreement. Each Party shall be liable for a breach of these confidentiality provisions by its employees, agents or subcontractors.

    5.3 Exceptions. Nothing contained herein will be construed to restrict or impair in any way the right of the Receiving Party to disclose or communicate any information which Receiving Party can prove (a) is at the time of its disclosure hereunder generally available to the public; (b) becomes generally available to the public through no fault of the Receiving Party; (c) is acquired by the Receiving Party from any third party having a right to disclose it to the Receiving Party; or (d) is independently developed by the Receiving Party without reference to the Disclosing Party's Confidential Information.

    5.4 Compelled Disclosure. In the event that Receiving Party or anyone to whom Receiving Party has transmitted the Confidential Information pursuant to this Agreement becomes legally compelled (by interrogatories, subpoena, regulatory requirements, civil investigative demand or other process of law) to disclose any of the

Confidential Information, Receiving Party will provide to the other prompt, written notice of such demand so that it may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. In the event that such protective order or other remedy is not obtained, or that Disclosing Party waives compliance with the provisions of this Agreement, Receiving Party will furnish only that portion of the Confidential Information which is legally required and will exercise its commercially reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

5.5 Injunctive Relief. Receiving Party acknowledges that the Confidential Information received from Disclosing Party under this Agreement contains proprietary information, the disclosure of which may cause irreparable harm to Disclosing Party that may not be remedied by the payment of damages alone. Accordingly for any breach by Receiving Party of this Section 5, Disclosing Party may be entitled to seek from any court of competent jurisdiction (a) a temporary restraining order; and/or (b) a preliminary and permanent injunctive relief or other equitable remedy the court may order. The remedies provided under this Section shall not be the exclusive remedies of the Parties.

5.6 Separate Confidentiality Agreements. Notwithstanding anything in this Agreement to the contrary, the terms set forth in this Section 5 (Confidentiality) augment, but do not supersede or replace, and are not superseded or replaced by, any separate confidentiality or nondisclosure agreement(s) between the Parties.

6. **Indemnification**.

6.1 Leeyo Indemnification. Leeyo shall defend, indemnify and hold harmless Client against all claims, liabilities and costs, including reasonable attorney's fees, reasonably incurred in the defense of any claim brought against Client by unaffiliated third parties alleging that Client's use of the Licensed Software infringes a third-party Intellectual Property Right recognized under the laws of the United States. Leeyo shall have no obligation to indemnify Client for infringement Claims to the extent based on (a) any unauthorized use of the Licensed Software or Service, (b) the combination, operation or use of the Licensed Software with software, hardware, data or other technology or services which was not otherwise specified in the Documentation, or (c) modifications to Licensed Software or Services not performed or authorized by Leeyo. Should Licensed Software or a Service become, or in Leeyo's opinion be likely to become, the subject of a Claim for infringement, Leeyo shall at its sole option and expense, (i) procure for Client the right to continue to use the Licensed Software or Service, (ii) modify or replace the Licensed Software with software that has comparable functionality to the Licensed Software, so that the Licensed Software becomes non-infringing, or in the event options (i) and (ii) are not reasonably available, (iii) terminate this Agreement and/or the applicable Order and remove the Licensed Software and reimburse Client for its unamortized cost of the Licensed Software using a three (3) year straight-line amortization period (or if such Licensed Software or Service is provided on a subscription basis, Leeyo shall reimburse Client for all prepaid amounts for the Licensed Software or Service for the remaining portion of the then-current subscription term). Leeyo reserves the right to modify its Licensed Software or Services at any time to make them non-infringing provided that they retain substantially the same functionality as the prior version.

6.2 Procedures for Indemnification. Leeyo's indemnification obligation under this Agreement is subject to the following: (a) Client providing Leeyo prompt written notice of any claim, action or demand for which indemnity is sought; (b) control of the investigation, preparation, defense and settlement thereof by Leeyo; and (c) such reasonable cooperation by Client, at Leeyo's request and expense, in the defense of the claim. The provisions of this Section 6 state the sole and entire liability of Leeyo to Client, and is Client's sole remedy, with respect to the infringement of third party Intellectual Property Rights.

6.3 Insurance. Leeyo agrees to carry and maintain during the Term, at its own cost, the insurance policies and coverage amounts set forth below. Leeyo shall maintain such insurance with companies that are rated a minimum of A-VII in AM Best's Insurance Rating Guide or are otherwise reasonably acceptable to Client. Upon Client's request, Leeyo shall provide evidence of such insurance and the certificates of insurance shall provide at least 30 days' advance written notice to Client of any cancellation or material modification in such insurance coverage.

   (a) Statutory worker's compensation in accordance with applicable state laws.

(b) Employer's liability insurance in an amount of not less than $1,000,000 each accident, each employee and policy limit.

(c) Commercial general liability, including bodily injury, property damage, owners and contractors protective liability, products and completed operations liability and contractual liability, with a per occurrence limit of not less than $1,000,000 and a general aggregate limit of not less than $2,000,000.

(d) Information and Network Technology errors and omissions insurance in an amount of not less than a $2,000,000 aggregate limit and $1,000,000 each claim.

(e) Employee Dishonesty coverage, with Third Party Client coverage for limits not less than $1,000,000.

7. **Warranties**.

7.1 Warranties.  Each Party warrants to the other (a) that it is a corporation duly organized and existing under the laws of the state of its incorporation; (b) that it has the right to enter into this Agreement; and (c) that its entry into this Agreement will not cause a breach of its contractual obligations to third parties.

7.2 Licensed Software and Services Warranties.  All warranties applicable to Leeyo's Licensed Software and Services will be set forth in the applicable Order(s).

7.3 Warranty Disclaimer.  EXCEPT FOR THE EXPRESS WARRANTIES IN THIS SECTION 7 OR IN AN APPLICABLE ORDER, NEITHER PARTY MAKES ANY OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, UNDER THIS AGREEMENT AND HEREBY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY WARRANTIES REGARDING MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, ACCURACY OF DATA, ANY WARRANTY ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE. CLIENT IS SOLELY RESPONSIBLE FOR DETERMINING AND MONITORING THE ACCOUNTING POLICIES AND STANDARDS TO BE USED WITH LEEYO'S LICENSED SOFTWARE AND LEEYO DISCLAIMS ANY WARRANTY OR LIABILITY FOR THE ACCOUNTING POLICIES AND STANDARDS USED BY CLIENT.

8. **Limitation of Liability**.

8.1 Limitation on Types of Damages.  EXCEPT WITH RESPECT TO (a) LEEYO'S INDEMNIFICATION OBLIGATIONS SET FORTH IN SECTION 6, (b) A BREACH OF THE CONFIDENTIALITY PROVISIONS IN SECTION 5, OR (c) A BREACH OF LEEYO'S INTELLECTUAL PROPERTY RIGHTS BY CLIENT: (i) NEITHER PARTY SHALL BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL OR PUNITIVE DAMAGES (INCLUDING LOST PROFITS), REGARDLESS OF WHETHER THE CLAIM GIVING RISE TO SUCH DAMAGES IS BASED UPON BREACH OF WARRANTY, BREACH OF CONTRACT, STRICT LIABILITY, NEGLIGENCE OR OTHER THEORY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY THEREOF, AND (ii) IN NO EVENT SHALL LEEYO BE LIABLE TO CLIENT FOR ACTUAL DAMAGES IN EXCESS OF TWO (2) TIMES THE AMOUNT OF THE BASE FEES.

9. **Term and Termination**.

9.1 Term.  This Agreement shall begin on the Effective Date and remain in effect until all Orders have expired or terminated.

9.2 Termination for Breach.  Each Party shall have the right to terminate this Agreement for Material Breach after a 30-day cure period following notice by the non-breaching Party of such breach.  For purposes of this Agreement, a "**Material Breach**" is: (i) any act or omission by the other Party that causes substantial harm to the other Party, such as costs or losses that significantly exceed the contract value, or failure to pay any amounts due under this Agreement; or (ii) any breach by the other Party of the material terms, obligations, covenants, representations or warranties under this Agreement.

9.3  Effect of Termination.  Upon termination of this Agreement due to breach by Client, (a) all rights to use the Licensed Software and Services will automatically terminate, and Client will remove all copies of the Licensed Software and Documentation from Client's computers and systems and return or destroy all physical copies thereof; (b) all undisputed fees due or payable as of the termination date shall become immediately due; and (c) both Parties will promptly return to the other Party all of the other Party's Confidential Information.  Sections 3.2, 3.3, 3.4, 4, 5, 6 (with the exception of Section 6.3), 7, 8, this Section 9.3 and Section 10 and those sections of an Order intended to survive any termination of expiration of this Agreement will survive and continue in effect after the termination or expiration of this Agreement.

10. **Provisions of General Applicability**.

10.1  Assignment.  Neither Party may assign or subcontract its rights or obligations under this Agreement without the prior written consent of the other Party, which consent will not be unreasonably withheld, delayed or conditioned.  Notwithstanding the foregoing, either Party may assign its rights under this Agreement to an Affiliate or in connection with the sale of such Party, whether by merger, asset sale, stock sale or otherwise. Further, Leeyo may perform any or all of its obligations through an Affiliate or a third party contractor so long as Leeyo remains responsible for such obligations.

10.2  Non-Waiver.  Neither Party will, by the lapse of time, and without giving written notice, be deemed to have waived any of its rights under this Agreement.  No waiver of a breach of this Agreement will constitute a waiver of any prior or subsequent breach of this Agreement.

10.3  Entire Agreement; Amendment.  This Agreement, including any particular Order with respect to the applicable Licensed Software or Service, constitutes the sole, final and entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior communications regarding its subject matter.  This Agreement will not be more strongly construed against either Party, regardless of who is more responsible for its preparation.  This Agreement may not be amended except by a written agreement that acknowledges modification of this Agreement and which is signed by authorized representatives of Client and Leeyo.

10.4  Order of Precedence.  In the case of any conflict between the provisions of this Agreement and a given Order, with respect to the subject matter of the given Order, the provisions of the Order shall control.

10.5  Notices.  All notices and requests in connection with this Agreement shall be deemed given as of the day they are received by messenger, overnight courier service or facsimile transmission or three business days after being sent by certified, first class, postage pre-paid mail, to the following addresses, or to such other address as the party to receive the notice or request so designates by written notice to the other.  The Parties may change their addresses by giving notice of such change to the other Party as provided in this Section.

If to Client:

Tintri, Inc.
303 Ravendale Drive
Mountain View, CA 94043

Tel: (650) 810-8200
Fax: (___)
Attention: _____

If to Leeyo:

Leeyo Software, Inc.
2841 Junction Avenue, Suite 201
San Jose, CA 95134
Phone: (408) 988-5800
Fax:  (408) 228-8755
Attn: Legal Department

10.6 <u>Severability</u>.  If any part of this Agreement is found to be illegal or unenforceable, then that part will be curtailed only to the extent necessary to make it, and the remainder of the Agreement, legal and enforceable, so long as the legal or economic substance of this Agreement is not materially adversely affected for a party.

10.7 <u>Governing Law</u>.  This Agreement and the rights and obligations of the Parties hereunder shall be governed, construed and interpreted solely and exclusively in accordance with the laws of the State of California, without giving effect to any laws which would result in the application of the laws of another jurisdiction.

10.8 <u>Cooperation</u>.  In order for Leeyo to perform its obligations under this Agreement, Client must provide Leeyo with good faith cooperation and access to such information as may be reasonably required by Leeyo, including without limitation, providing correct, accurate and complete data, office accommodations, access to a virtual private network, facilities, equipment and security access; personnel assistance as may be reasonably requested by Leeyo from time to time; reasonable access to business and IT personnel regarding business requirements, Client revenue recognition policies and process flows; reasonable access to information about Software installation; required data and structure; cooperation with Leeyo; and making decisions and communicating information in a timely manner.  Client acknowledges and agrees that Leeyo's performance hereunder is both contingent and dependent upon such cooperation by Client.

10.9 <u>Force Majeure</u>.  Notwithstanding anything to the contrary herein, neither Party shall be deemed to be in default of any provision or obligation of this Agreement, including any Order, or be liable to the other Party or to any third party for any delay, error, failure in performance or interruption of performance due to any act of God, war, insurrection, acts of terrorism, riot, boycott, strikes, interruption of power service, interruption of Internet or communications service, labor or civil disturbance, acts of any other person not under the control of the Party. The Party claiming an event of force majeure shall give the other Party reasonable written notification of any material or indefinite delay due to such causes. In the event that any force majeure event continues for more than 30 days, either Party can terminate the Agreement and in such event no termination penalty or payments shall be required.

10.10 <u>Independent Contracting Parties</u>.  Nothing in this Agreement creates a joint venture, partnership, principal agent or mutual agency relationship between the Parties.  No Party has any right or power under this Agreement to create any obligation, expressed or implied, on behalf of the other Party or to act for or bind the other Party in any manner, except as expressly provided for in this Agreement.  No employee of a Party will be deemed to be an employee of the other Party by virtue of this Agreement.  As an independent contractor, Leeyo and its employees, agents or contractors shall not participate in, nor be eligible under, any of Client's employee benefit plans, nor shall Leeyo receive any other employee benefits from Client.

10.11 <u>Headings</u>.  The titles or captions used in this Agreement are for convenience only and will not be used to construe or interpret any provision hereof.

10.12 <u>Basis of Bargain</u>.  Each Party recognizes and agrees that the warranty disclaimers and liability and remedy limitations in this Agreement are a materially bargained-for basis of this Agreement and that they have been taken into account and reflected in determining the consideration to be given by each Party under this Agreement and in the decision by each Party to enter into this Agreement.

10.14 <u>Counterparts</u>. This Agreement and the Orders may be signed in any number of counterparts, each of which will be an original, with the same effect as if the signatures hereto were upon the same instrument.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the Effective Date.

| **LEEYO SOFTWARE, INC.** | **TINTRI, INC.** (Client) |
|---|---|
| Signature: *Jagan Reddy* | Signature: *Michael Coleman* |
| Printed Name: Jagan Reddy | Printed Name: Michael Coleman |
| Title: CEO | Title: VP Legal |

*Page 7 of 8*

*License & Services Agreement - Form v.10-29-14*  *Leeyo License Svcs Agt [Tintri] (Executable version 12-23-14)*
*Leeyo Software Confidential Information*

| Legal Approval | Sales Approval | |
|---|---|---|
| *DS* ᵏˢ | *DS* | |