# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TINTRI, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 18-11625 (KJC)<br><br>(Jointly Administered)<br><br>Objection Deadline: November 14, 2018 at 4:00 p.m.<br>Hearing Date: November 27, 2018 at 2:00 p.m. |

## FIRST AND FINAL FEE APPLICATION OF HOULIHAN LOKEY CAPITAL, INC. FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS INVESTMENT BANKER TO THE DEBTOR FOR THE PERIOD OF <u>JULY 10, 2018 THROUGH [AUGUST 31, 2018]</u>

### SUMMARY SHEET

| | |
|---|---|
| Name of Applicant: | Houlihan Lokey Capital, Inc. |
| Authorized to Provide Professional Services to: | Tintri, Inc. |
| Date of Retention: | July 10, 2018, *nunc pro tunc* to [August 31], 2018 |
| Period for which compensation and reimbursement are sought: | July 10, 2018 through [August 31], 2018 |
| Total Compensation Requested On a Final Basis: | $2,350,000.00 |
| Total Expense Reimbursement Requested On a Final Basis: | $18,068.37 |

This is a(n): ___ Monthly   ___ Interim   _X_ Final

---

[1] The last four digits of the Debtor's federal taxpayer identification numbers are 6978. The Debtor's service address is: 303 Ravendale Drive, Mountain View, CA 94043.

Summary of Hours Worked for the Final Application Period:

| | Hours by Work Category by Professional | | | | | |
|---|---|---|---|---|---|---|
| Name | General Case Administration | Correspondence with Debtor and Advisors | Correspondence with Committee and Advisors | Other Correspondence | Analysis, Presentations and Due Diligence | Total Hours |
| Saul Burian | 15.0 | 0.0 | 0.0 | 0.0 | 0.0 | **15.0** |
| Christopher Wilson | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | **0.0** |
| Jay Weinberger | 70.0 | 12.3 | 1.5 | 50.5 | 7.0 | **141.3** |
| Vikram Sood | 1.0 | 5.3 | 0.5 | 25.5 | 23.5 | **55.8** |
| Benjamin Krauskopf | 0.0 | 1.5 | 0.0 | 0.0 | 0.0 | **1.5** |
| David Cumming | 79.5 | 9.8 | 1.5 | 23.0 | 2.5 | **116.3** |
| Prashant Kalantri | 1.0 | 5.3 | 0.5 | 24.0 | 26.5 | **57.3** |
| Heidi Lee | 47.0 | 8.8 | 1.5 | 16.0 | 31.0 | **104.3** |
| Abhishek Ashok | 1.0 | 5.3 | 0.5 | 24.0 | 62.5 | **93.3** |
| **Final Application Period** | **214.5** | **48.0** | **6.0** | **163.0** | **153.0** | **584.5** |

Summary of Expenses Incurred During the Final Application Period:

| Expense Category | Amount Incurred Post-Petition from July 10, 2018 – [August 31, 2018] |
|---|---:|
| Travel and Overtime Meals | $3,031.57 |
| Lodging | $3,741.10 |
| Ground Transportation | $5,626.32 |
| Telephone and Data | $584.38 |
| Legal Fees | $5,085.00 |
| **Total Expenses** | **$18,068.37** |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TINTRI, INC.,[1] | Case No. 18-11625 (KJC) |
| Debtor. | (Jointly Administered) |
| | Objection Deadline: November 14, 2018 at 4:00 p.m.<br>Hearing Date: November 27, 2018 at 2:00 p.m. |

**FIRST AND FINAL FEE APPLICATION OF HOULIHAN LOKEY CAPITAL, INC. FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS AND INVESTMENT BANKER TO THE DEBTOR FOR THE APPLICATION PERIOD OF JULY 10, 2018 THROUGH [AUGUST 31, 2018]**

Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), as investment banker to the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby submits this First and Final Application (the "Final Application") for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses for the Final Application Period commencing July 10, 2018 through [August 31, 2018] (the "Final Application Period").

By this Final Application, Houlihan Lokey requests: (a) final allowance of compensation of $2,350,000.00 and (b) final reimbursement of $18,068.37 in expenses in accordance with the Retention Order (as defined herein). The total amount of compensation (fees and expenses) requested to be approved for this Final Application Period is $2,368,068.37.

Pursuant to Local Bankruptcy Rule 2016-2, this Final Application is supported by the Certification of Saul Burian, which is annexed hereto as <u>Exhibit A</u>. In support of this Final Application, Houlihan Lokey respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal taxpayer identification numbers are 6978. The Debtor's service address is: 303 Ravendale Drive, Mountain View, CA 94043.

4

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of these Cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.  This Final Application is made pursuant to (i) section 328(a) of title 11 of the United States Code (the "Bankruptcy Code"); (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (iii) Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); and (iv) this Court's Order, dated August 23, 2018, authorizing the Debtor to retain and employ Houlihan Lokey as financial advisor and investment banker to the Debtor in this chapter 11 Case (Docket No. 198) (the "Retention Order"), a copy of which is attached hereto as Exhibit B.

## BACKGROUND

3.  On July 10, 2018 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in this chapter 11 case (the "Case").

4. On July 20, 2018, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in this Case (Docket No. 78). No examiner or trustee has been requested or appointed in this Case.

5. The factual background regarding the Debtor, including its current and historical business operations and the events precipitating their chapter 11 filing, are set forth in detail in the Declaration of Robert J. Duffy in Support of First Day Motions filed on the Petition Date at Docket No. 2, which is incorporated herein by reference.

6. On August 23, 2018, the court entered an order (i) Authorizing the Debtor to Obtain Secured Superpriority Postpetition Financing, (ii) Granting Liens and Superpriority Administrative Expense Status, (iii) Authorizing the Use of Cash Collateral, (iv) Adequate Protection, and (v) Granting Related Relief (the "Final DIP Order"). Among other things, the Final DIP Order authorized the Debtor to obtain senior secured post-petition financing in an aggregate principal amount not to exceed $5,493,000 (the "DIP Credit Facility") on the terms set forth in the Superpriority Secured Debtor-In-Possession Credit Facility Term Sheet (the "DIP Term Sheet"), dated as of July 9, 2018, among the Debtor and TriplePoint Capital LLC ("TriplePoint Capital") as the lender (the "DIP Lender") (Docket No. 197). The authorization had been approved on an interim basis on July 11, 2018 (Docket No. 50).

7. The Debtor commenced this Case to continue the process to consummate a sale of all or substantially all of their assets and operations to one or more going-concern buyers or such other parties in order to yield a higher and/or better bid among the Debtor and TI Acquisition Corp., the wholly-owned subsidiary of DataDirect Networks, Inc. (the "Stalking Horse") as Stalking Horse bidder, with respect to the Stalking Horse Assets (as defined herein). The consideration to be provided to the estates under the Stalking Horse bid was $25.0 million of

cash consideration, plus the assumption of $27.5 million of secured debt owed to TriplePoint Capital, LLC ("TriplePoint") for the sale of substantially all of the Debtor's assets. The Debtor, the Stalking Horse, and TriplePoint came to an agreement that the stipulated value of the combined cash and debt assumption for the purposes of the Auction is $40.0 million (the "Stipulated Value").

8. On August 27, 2018, the Debtor, in conjunction with their advisors, held an auction (the "Auction") for substantially all of the Debtor's assets, which included the Debtor's right, title and interest in substantially all of the assets and properties used in connection with the operation of the Debtor's business (collectively, the "Stalking Horse Assets"). At the Bid Deadline, the Debtor received one additional bid for the Stalking Horse Assets from ESW Capital, LLC ("ESW Capital"), which, after consulting with its advisors, the Debtor's Board of Directors and the Consultation Parties, the Debtor determined was a Qualified Bid that, in the Debtor's business judgment, was higher and better than the Stalking Horse bid.

9. The Debtor, in conjunction with its advisors, conducted a robust and active auction for the Stalking Horse Assets. After multiple rounds of bidding at the Auction, it was determined by the Debtor, in conjunction with its advisors, that the bid by the Stalking Horse, which included $35.0 million of cash consideration and the assumption of $25.0 million of secured debt, was the highest and/or otherwise best offer for the Stalking Horse Assets (the "Successful Bid").

10. On August 29, 2018, a sale hearing was held (the "Auction Sale Hearing") at which the Court entered an order (Docket No. 221) (the "Sale Order") authorizing that certain Asset Purchase, Assignment and Transfer Agreement dated August 29, 2018 among the Debtor and TI Acquisition (the "Purchase Agreement"). The sale closed on August 31, 2018.

### Retention of Houlihan Lokey

11. On July 10, 2018, the Company engaged Houlihan Lokey to provide general investment banking and financial advice in connection with the Debtor's attempt to complete a sale of its business, and to also include general investment banking and financial advice in connection with this chapter 11 Case (the "Engagement Agreement"). This engagement was fully described in a letter agreement dated July 10, 2018 between the Company and Houlihan Lokey.

12. On July 20, 2018, the Debtor filed an application with this Court (Docket No. 85) (the "Retention Application") requesting authorization to employ and retain Houlihan Lokey as investment banker pursuant to sections 328(a) and 1103 of the Bankruptcy Code.

13. On August 23, 2018, the Court entered the Retention Order: (i) authorizing the Debtor to employ and retain Houlihan Lokey Capital, Inc., nunc pro tunc to the Petition Date, to provide investment banking services during this Case, pursuant to and in accordance with the terms and conditions set forth in that certain Engagement Agreement, dated July 10, 2018, a copy of which is attached hereto as Exhibit C and (ii) requesting a modification of compliance with the information requirements relating to compensation requests set forth in Local Rule 2016-2.

14. The Retention Order authorized Houlihan Lokey to be compensated for professional services rendered and to be reimbursed for actual and necessary costs and expenses. All services for which compensation is requested by Houlihan Lokey were performed for or on behalf of the Debtor.

15. Pursuant to the Retention Order, Houlihan Lokey was authorized to perform the following services for the Debtor as described in the Engagement Agreement:

> (a) assisting the Debtor in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Debtor in the preparation of an offering memorandum (it

being expressly understood that the Debtor will remain solely responsible for such materials and all of the information contained therein);

(b) assisting the Debtor in evaluating indications of interest and proposals regarding any Transactions) from current and/or potential lenders, equity investors, acquirers and/or strategic partners;

(c) assisting the Debtor with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s);

(d) attending meetings of the Debtor's Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtor and Houlihan Lokey mutually agree; and

(e) if requested in writing by the Debtor, providing such other financial advisory and investment banking services as may be required by additional issues and developments not anticipated on the Effective Date, as described in Section 18 of the Engagement Agreement.

**Terms and Conditions of Compensation of Houlihan Lokey**

16. Except as otherwise modified in the Retention Order, the terms of Houlihan Lokey's compensation for the agreed-upon services are set forth in the Engagement Agreement. Specifically, as set forth in the Engagement Agreement, Houlihan Lokey is entitled to the following consideration for its services:

(a) *Monthly Fees*: In addition to the other fees provided for herein, upon the Effective Date and on each of the first two monthly anniversaries of the Effective Date, the Company shall pay Houlihan Lokey, without notice or invoice, a nonrefundable cash fee of $40,000 and on every monthly anniversary of the Effective Date during the term of this Agreement thereafter the Company shall pay Houlihan Lokey, without notice or invoice, a nonrefundable cash fee of $50,000 ("Monthly Fee"). The Monthly Fee for the first three months following the Effective Date to which Houlihan Lokey becomes entitled hereunder will be creditable against the Transaction Fee (as defined below) (it being understood and agreed that no Monthly Fee shall be credited more than once). Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein; and

(b) *Transaction Fee(s)*: In addition to the other fees provided for herein, the Company shall pay Houlihan Lokey the following transaction fee(s):

   a. Upon the closing of each Sale Transaction or Restructuring Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Sale Transaction or Restructuring Transaction (as defined

below), as a cost of such Sale Transaction or Restructuring Transaction, a cash fee (the "Transaction Fee") based upon Aggregate Gross Consideration ("AGC") (as defined below) or plan value in the case of a Restructuring Transaction ("Plan Value"), calculated as follows:

For AGC/Plan Value up to $25 million:	$850,000.00

For AGC/Plan Value greater than $25 million:	$850,000.00 plus 5.0% of such incremental AGC/Plan Value above $25 million

The Transaction Fee under a Sale Transaction shall be reduced to $550,000 if (i) the Company and DataDirect Networks, Inc. ("DDN") agree to a "stalking horse" purchase agreement by July 31, 2018 on terms substantially similar to DDN's existing letter of intent, dated July 7, 2018 and attached hereto as Exhibit A, and (ii) DDN wins the Section 363 sale auction as part of a Sale Transaction (as defined below) on those same terms without an overbid from any third party.

17. As detailed in the Retention Application, the terms of the Engagement Agreement are comparable to the terms Houlihan Lokey and other financial advisors and investment bankers have agreed upon in similar engagements, both in and outside of bankruptcy.

### Summary of Services Provided by Houlihan Lokey

18. The Debtor has determined, in the exercise of its business judgment, that the size of its business operations and the complexity of the financial difficulties attendant upon operations of such scope, require them to employ an investment banker with knowledge of the Debtor's industry and businesses and experience with the chapter 11 process to advise them with respect to this chapter 11 case. The Debtor further believed that Houlihan Lokey is well qualified to provide its services to the Debtor in a cost-effective, efficient and timely manner. Houlihan Lokey's qualifications and those of Saul Burian are outlined extensively in the declaration filed with this Court (Docket No. 85).

19. Since July 2018, Houlihan Lokey has worked diligently on the matters for which it was engaged. Houlihan Lokey conducted a comprehensive marketing process soliciting

both strategic and financial investors to participate in an auction conducted pursuant to Section 363 of the Bankruptcy Code. In connection with the marketing process, Houlihan Lokey (i) contacted 38 strategic and financial parties to discuss the investment opportunity; (ii) negotiated non-disclosure agreements ("NDAs") with counsel; (iii) facilitated investor diligence requests via management of a virtual data room; and (iv) facilitated diligence calls between parties-in-interest and the Debtor, as needed. A detailed description of Houlihan Lokey's work on behalf of the Debtor is further provided herein.

20. During this Case, Houlihan Lokey used reasonable efforts to coordinate with the Debtor and other retained professionals to avoid the unnecessary duplication of services. Houlihan Lokey's efforts, together with those of the Debtor, Berkeley Research Group, Pachulski Stang Ziehl & Jones LLP, and other retained professionals are essential in managing the Case.

21. Although a number of professionals have worked on this engagement, the following professionals at Houlihan Lokey have performed substantial services for the Debtor in this Case during the Final Application Period (biographies of such professionals are annexed hereto as Exhibit D):

> Saul Burian – Managing Director
> Christopher Wilson – Managing Director
> Jay Weinberger – Director
> Vikram Sood – Director
> Benjamin Krauskopf – Senior Vice President
> David Cumming – Associate
> Prashant Kalantri – Associate
> Heidi Lee – Financial Analyst
> Abhishek Ashok – Financial Analyst

22. Pursuant to the Retention Order, "notwithstanding that Houlihan Lokey does not charge for its services on an hourly basis, Houlihan Lokey will nonetheless maintain reasonably detailed time records in 0.5 hour increments containing descriptions of those services

rendered for the Debtor, including descriptions of those services, the time expended in providing those services and the individuals who provided those services, and will present such records together with its fee applications filed with the Court."

23. During the Final Application Period, Houlihan Lokey's work on behalf of the Debtor involved five (5) general project categories[3], which included:

(a) General Case Administration

(b) Correspondence with Debtor and Advisors

(c) Correspondence with Committee and Advisors

(d) Other Correspondence

(e) Analysis and Due Diligence

24. Set forth below are descriptions of the type of work conducted within each of the five (5) categories during the Final Application Period.

**A. General Case Administration.** During the Final Application Period, Houlihan Lokey expended significant effort to coordinate various case administration tasks necessary to assist the Debtor in their efforts to maximize the value of their assets. This work included: (i) coordinating with the Debtor's legal counsel regarding Houlihan Lokey's formal retention; (ii) tracking fee application hours; (iii) assisting the Debtor and the Debtor's legal counsel in reviewing and drafting court documents; (iv) attending and facilitating the Auction; (v) drafting this Final Application; and (vi) attending to other miscellaneous tasks relating to case administration that do not fall into the other categories listed herein.

---

[3] While specific work could qualify under more than one of these categories, Houlihan Lokey has assigned each of its various tasks/services to the most representative category.

B.  **Correspondence with Debtor and Advisors.** During the Final Application Period, Houlihan Lokey engaged in extensive correspondence, meetings and calls with the Debtor's management, Board of Directors, counsel, and the Debtor's other advisors in this Case, as well as significant preparations related to such communications. Houlihan Lokey worked with the Debtor to explore and evaluate all available restructuring alternatives including alternative sale transaction structures, in order to maximize value for the Debtor's estate. In relation to these efforts, Houlihan Lokey provided periodic situational updates to the Debtor, the Board of Directors, counsel, and other parties. During these updates, Houlihan Lokey reported on the status of the marketing process, feedback from other parties-in-interest, and the status of diligence and other process related issues. Houlihan Lokey also coordinated with the Debtor and the Debtor's other advisors to facilitate post-petition diligence requests and arrange diligence calls and meetings with parties-in-interest, as needed.

C.  **Correspondence with Committee and Advisors.** During the Final Application period, Houlihan Lokey expended time and effort communicating with the financial and legal advisors to the Committee to discuss: (i) the state of the Debtor's business; (ii) the status of ongoing marketing processes; (iii) various claims administration tasks; and (iv) other matters. Houlihan Lokey provided regular update calls and presentation materials to the Committee's advisors throughout the Final Application period, and also furnished the Committee's advisors with copies of all bids received in connection with the Auction, and solicited feedback from the Committee's advisors and other Consultation Parties throughout the pre-auction marketing process in accordance with the bidding procedures.

D.  **Other Correspondence.** Houlihan Lokey held numerous calls, email correspondence and meetings with both creditor and non-creditor parties-in-interest during the

Final Application Period. Such correspondence included but was not limited to: (i) correspondence with a comprehensive universe of potential investors and other third parties interested in purchasing all or a portion of the Debtor's assets, including NDA negotiations; (ii) discussions and coordination with parties-in-interest regarding due diligence; (iii) updates and discussions with the Secured Lenders and their counsel regarding the sale process; and (iv) communication and process updates with the DIP Lenders.

E. **Analysis, Presentations and Due Diligence.** During the Final Application Period, Houlihan Lokey facilitated comprehensive due diligence processes for going-concern buyers, asset purchasers, and parties interested in the Debtor's assets which included: (i) populating and maintaining an electronic data room containing relevant financial and operational diligence information; (ii) preparing materials for distribution to various interested parties; (iii) working with the Debtor and the Debtor's advisors to collect diligence information that was responsive to follow-up requests of the various parties-in-interests; and (iv) coordinating and hosting diligence calls with the Debtor and various parties-in-interest. Houlihan Lokey also assisted the Debtor in analyzing the terms and implied net proceeds associated with the bids received in connection with the Auction in order to determine the highest and/or otherwise best bid for the Debtor's estate.

25. Pursuant to the Retention Order, Houlihan Lokey is excused from complying with the information requirements contained in Local Bankruptcy Rule 2016-2. Instead, Houlihan Lokey has maintained reasonably detailed time records in 0.5 hour increments containing descriptions of those services rendered for the Debtor. Such detailed time records are set forth in Exhibit E.

**Relief Requested**

26. By this Final Application, Houlihan Lokey seeks final allowance of compensation and reimbursement of expenses for the Final Application Period as follows:

(a) Monthly Fees of $80,000 accrued during the Final Application Period beginning on July 10, 2018 through [August 31], 2018 as shown below. Pursuant to the Engagement Agreement and Retention Order, Houlihan Lokey is entitled to a monthly fee of $40,000 on each monthly anniversary of the Effective Date of the Engagement Agreement. Houlihan Lokey is requesting approval of this payment pursuant to the terms of the Retention Order which approves the compensation payments to Houlihan Lokey in accordance with the Engagement Agreement.

| | |
|---|---|
| Initial Monthly Fee (7/10/18) | $ 40,000.00 |
| Monthly Fee (8/10/18) | 40,000.00 |
| **Total Monthly Fees** | **$ 80,000.00** |

(b) Sale Transaction Fee of $2,270,000 (representing a Transaction Fee of $2,825,000 under the Engagement Agreement, net of $475,000 Transaction Fee Discount and $80,000 reduction pursuant to the Monthly Fee Credit). Pursuant to the Engagement Agreement and Retention Order, a Sale Transaction Fee of $2,270,000 becomes due and payable upon the closing of the Sale Transaction, which occurred on August 31, 2018. Houlihan Lokey is requesting approval of this payment pursuant to the terms of the Retention Order which approves the compensation payments to Houlihan Lokey in accordance with the Engagement Agreement.

(c) Reimbursement of reasonable, actual, and necessary expenses in the amount of $18,068.37 incurred in connection with Houlihan Lokey's services during the Final Application Period beginning on July 10, 2018 through [August 31], 2018. A summary of these expenses is attached hereto as <u>Exhibit F</u>. Houlihan Lokey is requesting approval of this payment pursuant to the terms of the Retention Order which approves compensation payments to Houlihan Lokey in accordance with the terms of the Engagement Agreement.

27. The total amount of compensation and reimbursement of expenses requested to be approved for this Final Application Period is $2,368,068.37.

**Authority for Requested Relief**

28. By its Retention Order, the Court specifically provided that (a) "the retention and employment of Houlihan Lokey as investment banker to the Debtor pursuant to sections 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 5002, and Local

Rule 2014-1, nunc pro tunc to the Petition Date, on the terms and conditions set forth in the Engagement Agreement (attached hereto as <u>Exhibit C</u>) and the Application, is approved"; (b) "Houlihan Lokey's compensation shall be subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code"; and (c) "Notwithstanding the preceding paragraph, the United States Trustee shall retain the right to object to the compensation and fees and expenses to be paid to Houlihan Lokey pursuant to the Application and Engagement Letter, including, without limitation, the Monthly Fee and the Sale Transaction Fee, based on the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court shall consider any such objection by the United States Trustee under section 330 of the Bankruptcy Code; provided, that reasonableness for this purpose shall include, among other things, an evaluation by comparing the fees payable in this case to fees paid to other investment banking firms for comparable services in other chapter 11 cases and outside of bankruptcy, and shall not be evaluated solely on the basis of time committed or the length of this case."

29. Section 330 of the Bankruptcy Code provides for the award of compensation to professionals. 11 U.S.C. § 330. Section 330, by its terms, is "subject to" the provisions of section 328 of the Bankruptcy Code. Id. Section 328(a) permits a debtor, with the Court's approval, to employ a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisers, on flexible terms that reflect the nature of their services and prevailing market conditions for those services.

30. Courts consistently find that the purpose of section 328 of the Bankruptcy Code is to permit the pre-approval of compensation arrangements as a method of insuring that the most competent professionals would be available to provide services in bankruptcy cases. See e.g., In the Matter of National Gypsum Co., 123 F.3d 861 (5th Cir. 1997); In re Westbrooks, 202 B.R. 520, 521 (Bankr. N.D. Ala. 1996) (percentage fee arrangements "comport with the Bankruptcy Code's goal of attracting highly qualified professionals to the bankruptcy forum"); In re Olympia Holdings Corp., 176 B.R. 962, 964 (Bankr. M.D. Fla. 1994). As the Court explained in National Gypsum Co., 123 F.3d 863:

> If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment. Courts must protect those agreements and expectations, once found to be acceptable.

31. Once the terms of a professional's retention have been approved under section 328(a) of the Bankruptcy Code, the agreed-upon compensation cannot be altered unless the agreed terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. §328(a); In re Smart World Techs., No. 08-172-bk, 2009 WL 23341, at *3 (2d Cir. Jan. 6, 2009) ("Where the court pre-approves the terms and conditions of the retention under section 328(a), its power to amend those terms is severely constrained"); In re Reimers, 972 F.2d 1127, 1128 (9th Cir. 1992) (compensation agreement approved under section 328(a) must be enforced in the absence of unforeseeable circumstances, and is not subject to a "reasonableness" review under section 330); National Gypsum Co., 123 F.3d at 863 (same).

32. As discussed above, Houlihan Lokey provided extensive advisory services in support of the Debtor' sale and related efforts. The professional services and related expenses that are the subject of this Final Application were rendered and incurred in connection with this Case, and in the discharge of Houlihan Lokey's professional responsibilities as investment banker to the Company. Houlihan Lokey's services have been substantial, necessary and beneficial to the Debtor and its estate. Houlihan Lokey believes that the fees and expenses requested by this Final Application are reasonable, comparable to the compensation charged by investment banking firms of similar stature to Houlihan Lokey for comparable engagements, both in and out of bankruptcy proceedings, and necessary given the variety and complexity of the issues involved in this Case and the need to act or respond on an expedited basis to those issues. Houlihan Lokey respectfully submits that (i) its professional services were necessary and appropriate and substantially benefited the Debtor's estate; (ii) the compensation requested in this Final Application is in accordance with the terms of the Engagement Agreement as approved by the Retention Order pursuant to section 328(a) of the Bankruptcy Code; and (iii) no unforeseeable developments have arisen during this Case that would render the approval of Houlihan Lokey's fees to have been "improvident" within the meaning of section 328(a) of the Bankruptcy Code.

33. By this Final Application, Houlihan Lokey requests that the Court approve and authorize the full amount of the fees and expenses requested in this Final Application.

34. At all relevant times, Houlihan Lokey has been a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code.

35. The professional services for which Houlihan Lokey requests allowance of compensation and reimbursement of expenses were rendered in connection with this Case in the discharge of Houlihan Lokey's professional responsibility as investment banker to the Debtor.

36. The undersigned has reviewed the requirements of Local Rule 2016-2 and certifies to the best of his information, knowledge and belief that this Final Application complies with such Local Rules as modified by the Retention Order.

37. For the reasons set forth above, Houlihan Lokey respectfully requests that the Court allow the fees, costs and expenses sought in this Final Application, and that such allowance be without prejudice to Houlihan Lokey's right to seek additional compensation for services rendered and reimbursement for costs and expenses incurred during the Final Application Period.

WHEREFORE, Houlihan Lokey requests that the Court enter an order providing that, for the period of July 10, 2018 through August 31, 2018 a final allowance be made to Houlihan Lokey for: (a) compensation for investment banking services rendered to the Debtor and reimbursement of expenses during the Final Application Period in the amount of $2,368,068.37 and (b) granting any such and further relief as the Court may deem proper.

Dated: October 8, 2018
New York, New York

HOULIHAN LOKEY CAPITAL, INC.

By: _____
Saul E. Burian
Managing Director

245 Park Avenue
New York, New York, 10167