**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TINTRI, INC., | ) | Case No. 18-11625 (LSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TINTRI, INC.'S
AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF
THE BANKRUPTCY CODE**

**WOMBLE BOND DICKINSON (US) LLP**
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
Morgan L. Patterson (DE Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: matthew.ward@wbd-us.com
E-mail: ericka.johnson@wbd-us.com
E-mail: morgan.patterson@wbd-us.com

Counsel for the Official Committee of
Unsecured Creditors of Tintri, Inc.

Dated: September 23, 2019

# TABLE OF CONTENTS

**Page**

SECTION 1    DEFINITIONS AND INTERPRETATION .................................................... 1

SECTION 2    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS ....................... 10

    2.1    Administrative Expense Claims. ..................................................... 10

    2.2    Administrative Expense Claim Bar Date. ....................................... 11

    2.3    Priority Tax Claims. ....................................................................... 12

SECTION 3    CLASSIFICATION OF CLAIMS AND INTERESTS ........................... 12

SECTION 4    TREATMENT OF CLAIMS AND INTERESTS .................................. 13

    4.1    Class 1—Other Priority Claims. ................................................... 13

    4.2    Class 2—Secured Tax Claims. ..................................................... 14

    4.3    Class 3—Allowed Secured Lender Claims. .................................. 14

    4.4    Class 4—Other Secured Claims. .................................................. 15

    4.5    Class 5— General Unsecured Claims. ......................................... 16

    4.6    Class 6— Convenience Claims. .................................................... 16

    4.7    Class 7—Intercompany Claims. ................................................... 17

    4.8    Class 8—Intercompany Interests. ................................................ 17

    4.9    Class 9—Equity Interests. ............................................................ 17

SECTION 5    ACCEPTANCE OR REJECTION OF THE PLAN ............................. 18

    5.1    Impaired Classes. .......................................................................... 18

    5.2    Acceptance by a Class. .................................................................. 18

    5.3    Claims and Interests Not Entitled to Vote. ................................... 18

SECTION 6    MEANS FOR IMPLEMENTATION .................................................. 18

    6.1    Corporate Action. .......................................................................... 18

    6.2    Plan Transactions. ......................................................................... 19

    6.3    Effectuating Documents and Further Transactions. ..................... 19

    6.4    Authority to Act. ........................................................................... 19

    6.5    Liquidation Trust. ......................................................................... 20

    6.6    Administrative and Priority Claims Reserve. ............................... 23

SECTION 7    DISTRIBUTIONS ............................................................................. 24

    7.1    Distribution Record Date. ............................................................. 24

    7.2    Date of Distributions. .................................................................... 24

i

|       |       |                                                                      |    |
|-------|-------|----------------------------------------------------------------------|----|
| 7.3   |       | Postpetition Interest on Claims.                                     | 24 |
| 7.4   |       | Disbursing Agent.                                                    | 24 |
| 7.5   |       | Powers of Disbursing Agent.                                          | 25 |
| 7.6   |       | Surrender Instruments.                                               | 25 |
| 7.7   |       | Delivery of Distributions.                                          | 25 |
| 7.8   |       | Manner of Payment.                                                  | 25 |
| 7.9   |       | Setoffs.                                                            | 25 |
| 7.10  |       | Minimum Distributions.                                              | 26 |
| 7.11  |       | Allocation of Distributions between Principal and Interest.         | 26 |
| 7.12  |       | Distributions Free and Clear.                                       | 26 |
| SECTION 8 | | PROCEDURES FOR DISPUTED CLAIMS                                       | 26 |
| 8.1   |       | Allowance of Claims and Interests.                                  | 26 |
| 8.2   |       | Objections to Claims.                                               | 27 |
| 8.3   |       | Estimation of Claims.                                               | 27 |
| 8.4   |       | Distributions Relating to Disputed Claims.                          | 27 |
| 8.5   |       | Distributions after Allowance.                                      | 27 |
| SECTION 9 | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES                             | 28 |
| 9.1   |       | General Treatment.                                                  | 28 |
| 9.2   |       | Rejection Damages Claims.                                           | 28 |
| 9.3   |       | Reservation of Rights.                                              | 28 |
| SECTION 10 | | CONDITIONS PRECEDENT TO EFFECTIVE DATE                              | 29 |
| 10.1  |       | Conditions Precedent.                                               | 29 |
| 10.2  |       | Waiver of Conditions.                                               | 29 |
| SECTION 11 | | EFFECT OF CONFIRMATION                                              | 29 |
| 11.1  |       | Vesting of Assets.                                                  | 29 |
| 11.2  |       | Binding Effect.                                                     | 29 |
| 11.3  |       | Release of Claims and Termination of Interests.                     | 30 |
| 11.4  |       | Compromise and Settlement of Claims, Interests, and Controversies.  | 30 |
| 11.5  |       | Injunction.                                                         | 30 |
| 11.6  |       | Term of Injunctions or Stays.                                       | 31 |
| 11.7  |       | Debtor and Estate Releases.                                         | 31 |
| 11.8  |       | Releases by Holders of Claims and Interests.                        | 32 |
| 11.9  |       | Exculpation.                                                        | 33 |
| 11.10 |       | Release of Liens.                                                   | 34 |
| 11.11 |       | Dissolution of Creditors' Committee.                                | 34 |

ii

11.12  Retention of Causes of Action/Reservation of Rights. ....................................... 34

11.13  Cancellation of Agreement, Notes, and Interests............................................... 35

SECTION 12  RETENTION OF JURISDICTION ...................................................... 35

SECTION 13  MISCELLANEOUS PROVISIONS ..................................................... 37

13.1  Payment of Statutory Fees. ......................................................................... 37

13.2  Substantial Consummation. ......................................................................... 37

13.3  Tax Treatment of the Liquidation Trust...................................................... 37

13.4  Determination of Tax Liabilities................................................................ 37

13.5  Amendments. .............................................................................................. 38

13.6  Revocation or Withdrawal of the Plan........................................................ 38

13.7  Severability. ............................................................................................... 38

13.8  Governing Law. .......................................................................................... 39

13.9  Time............................................................................................................ 39

13.10  Binding Effect on Debtor, Holders and Successors and Assigns................... 39

13.11  Entire Agreement. ...................................................................................... 39

13.12  Effective Notice. ........................................................................................ 39

The Official Committee of Unsecured Creditors of Tintri, Inc. (the "Creditors' Committee") hereby proposes the following amended plan of liquidation pursuant to chapter 11 of the Bankruptcy Code:

# SECTION 1                    DEFINITIONS AND INTERPRETATION

## A.    Definitions.

The following terms used herein shall have the respective meanings defined below:

**1.1**    *Accrued Professional Compensation Claims* means at any given moment, all Claims for accrued fees and expenses for services rendered by a Professional through and including the Plan Confirmation Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claims.

**1.2**    *Administrative and Priority Claims Reserve* means the account to be established by the Liquidation Trustee and funded with the Administrative and Priority Claims Reserve Amount pursuant to Section 6.6 of this Plan.

**1.3**    *Administrative and Priority Claims Reserve Amount* means cash from the Administrative Claim Carve-Out (as defined pursuant to the Committee Settlement) and the Liquidation Trust Assets in an amount sufficient to be used by the Liquidation Trustee for the payment of Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Secured Tax Claims, and Other Secured Claims Allowed before or after the Effective Date, to the extent that the foregoing Claims have not been paid in full on or prior to the Effective Date.

**1.4**    *Administrative Expense Claim* means any Claim pursuant to Bankruptcy Code sections 503(b) and 507(a)(1) arising from actual, necessary, and beneficial costs or expenses of administration of the Chapter 11 Case and preservation of the Debtor's Estate.

**1.5**    *Administrative Expense Claim Bar Date* means the date that is the first Business Day that is thirty (30) days after the Effective Date. (On March 26, 2019, the Bankruptcy Court entered the Bar Date Order establishing May 3, 2019, as the deadline to file requests for administrative expenses that first arose (or, only in the case of unexpired leases or real and personal property, accrued) on or after the Petition Date through and including March 1, 2019. Nothing herein shall alter that order or otherwise extend the deadline by which requests for administrative expenses were required to be filed under the Bar Date Order.)

**1.6**    *Affiliate* shall have the meaning set forth in Bankruptcy Code section 101(2).

**1.7**    *Allowed* means, with respect to any Claim, (i) a Claim against the Debtor that has been listed on the Debtor's Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of

Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance has been interposed by a party in interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder, or (iii) any Claim expressly allowed by a Final Order or pursuant to this Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtor, the Creditors' Committee, or the Liquidation Trustee and without any further notice to or action, order, or approval of the Bankruptcy Court.

1.8    ***Allowed Secured Lender Claims*** means the total Claims of the Secured Lender, which are Allowed Secured Claims pursuant to the Final DIP Order, in the amount of not less than $50,000,000 as of the Petition Date, plus interest, fees, end of term payments, and professional fees incurred by the Secured Lender.

1.9    ***Asset Purchase Agreement*** means the First Amended and Restated Asset Purchase Agreement by and between the Debtor and DataDirect Networks, Inc.

1.10    ***Assets*** mean all tangible and intangible assets of every kind and nature of the Debtor and/or its Estate, including, without limitation, the Causes of Action, and all proceeds thereof.

1.11    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

1.12    ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware.

1.13    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and any local rules of the Bankruptcy Court applicable to the Chapter 11 Case.

1.14    ***Business*** means the Debtor's business as of the Petition Date.

1.15    ***Bar Date Order*** means the Order (I) Establishing Bar Dates for Filing Claims and Requests for Administrative Expenses and (II) Approving the Form and Manner of Notice Thereof [D.I. 360].

1.16    ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close.

1.17    ***Carve-Out*** shall have the same meaning as set forth in the Final DIP Order.

1.18    ***Cash*** means legal tender of the United States of America.

**1.19** ***Cash Collateral,*** with reference to the Secured Lender Claims, shall have the same meaning as set forth in the Final DIP Order, all cash collateral as defined in Bankruptcy Code section 363(a); and all proceeds of the Collateral of the Secured Lender.

**1.20** ***Causes of Action*** means, subject to the releases, exculpations, and injunctions set forth in this Plan, any and all claims, causes of action, and/or enforceable rights of a Person against third parties, or assertable by a Person or on behalf of its creditors, its estate, or itself, whether brought in the Bankruptcy Court or any other forum for recovery or avoidance, that has not been settled or resolved as of the Effective Date, of, among other things: (a) obligations, transfers of property or interests in property, offsets, debt forgiveness, Cash, and other types or kinds of property or interests in property or the value thereof, recoverable or avoidable pursuant to Chapter 5 of the Bankruptcy Code or other sections of the Bankruptcy Code or any applicable law, including, but not limited to, those actions that may be asserted against the parties identified in Schedule 1 hereto and the Reserved Chapter 5 Actions; (b) damages, general or statutory or exemplary (or all) or other relief, including but not limited to actions relating to or based upon – (i) indebtedness owing to a Person, (ii) fraud, negligence, gross negligence, willful injury or misconduct, acts or malice, or any other tort actions, including but not limited to defamation, malicious prosecution, or tortious interference with contract, (iii) breaches of contract, (iv) violations of federal or state securities laws, (v) violations of applicable corporate, limited liability company or partnership laws, (vi) breaches of fiduciary or agency duties, including, but not limited to, the duties of care and/or loyalty, (vii) recharacterization, (viii) illegal dividends, (ix) misrepresentations, (x) causes of action based on disregard of the corporate form or piercing the corporate veil or other liability theories, (xi) corporate waste, (xii) corporate opportunity, (xiii) any theory of recovery against a lending institution not otherwise released by this Plan, including any action or any action causing harm to a Person, (xiv) equitable or legal subordination, (xv) indemnity rights against third parties, or (xvi) any other action listed in Bankruptcy Rule 7001; (c) damages or other relief based upon any other claim of a Person to the extent not specifically compromised or released pursuant to this Plan; and (d) any claims or causes of action that the Debtor or its estate possesses as against its current and/or former directors and officers. For the avoidance of doubt, the term "Causes of Action" shall include, without limitation, the Reserved Chapter 5 Actions.

**1.21** ***Chapter 11 Case*** means the case commenced in the Bankruptcy Court by the Debtor pursuant to chapter 11 of the Bankruptcy Code.

**1.22** ***Claim*** means a "claim," as that term is described in Bankruptcy Code section 101(5), against the Debtor.

**1.23** ***Class*** means any group of Claims or Interests classified in Section 3 of this Plan pursuant to Bankruptcy Code section 1122.

**1.24** ***Collateral*** means any property or interest in property of the Estate of the Debtor subject to a valid Lien, charge, or other encumbrance to secure the payment or performance of a Claim.

**1.25** ***Committee Settlement*** shall have the same meaning as set forth in the Final DIP Order.

**1.26    *Contingent Claim*** means any contingent or unliquidated Claim asserted or which may be asserted against the Debtor.

*1.27    **Convenience Claim*** means a General Unsecured Claim that is either (a) asserted in an amount totaling $5,000 or less, or (b) an Allowed Claim in an amount that is greater than $5,000, but with respect to which the Holder of such Allowed Claim voluntarily and irrevocably reduces the aggregate amount of such Allowed Claim to $5,000 pursuant to a Convenience Class Election.

*1.28    **Convenience Claim Election*** means a timely election by a Holder of a General Unsecured Claim to reduce its aggregate Allowed Claim to $5,000 and agree to the classification and treatment of its Allowed Claim as a Class 6 Allowed Convenience Claim made in connection with, and pursuant to the procedures approved by the Bankruptcy Court governing voting on the Plan.

**1.29    *Creditors' Committee*** means the statutory committee of unsecured creditors appointed in the Chapter 11 Case of the Debtor by the United States Trustee.

**1.30    [Omitted]**

**1.31    *Debtor*** means Tintri, Inc.

**1.32    *Debtor in Possession*** means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to Bankruptcy Code sections 1101, 1107(a), and 1108.

**1.33    *Disbursing Agent*** means any Entity, including the Liquidation Trustee, which acts as a Disbursing Agent pursuant to Section 7.4 hereof.

**1.34    *Disclosure Statement*** means that certain disclosure statement relating to this Plan as amended or modified from time to time, including, among other things, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125.

**1.35    *Disputed Claim*** means a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (a) if no Proof of Claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (b) if a Proof of Claim or other request for payment has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed in this Plan; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules to the extent of such variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for

4

which a timely objection or request for estimation is interposed by the Debtor or any other party in interest which has not been withdrawn or determined by a Final Order.

1.36    ***Distribution*** means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

1.37    ***Distribution Record Date*** means five (5) Business Days prior to the Plan Confirmation Date.

1.38    ***Effective Date*** means the first Business Day after the Plan Confirmation Date on which the conditions precedent specified herein have been either satisfied or waived.

1.39    ***Effective Date Cash Payment*** means Cash in an amount equal to the aggregate of all of the following Claims, only to the extent that each is Allowed as of the Effective Date, and only to the extent that any such Allowed Claims have not been paid prior to the Effective Date: Administrative Expense Claims, Accrued Professional Compensation Claims, Priority Tax Claims, Other Priority Claims, Secured Tax Claims, and Other Secured Claims.

1.40    ***Effective Date Distributions*** means all Distributions required to be made on the Effective Date under this Plan to the holders of Claims that are Allowed as of the Effective Date.

1.41    ***Entity*** means an entity as defined in section 101(15) of the Bankruptcy Code.

1.42    ***Estate*** means the estate created in the Debtor's chapter 11 bankruptcy case containing all property and other interests of the Debtor pursuant to Bankruptcy Code section 541.

1.43    ***Final DIP Order*** means that certain Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Authorizing Debtor to Obtain Secured Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, and (V) Granting Related Relief [D.I. 197].

1.44    ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

**1.45** *General Unsecured Claim* means any Claim asserted against the Debtor that is not included within any other specifically defined Class hereunder or which is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.46** *Holder* means an entity holding a Claim or Interest.

**1.47** *Impaired* means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Bankruptcy Code section 1124.

**1.48** *Intercompany Claims* means any Claims between the Debtor and any of the Debtor's Affiliates.

**1.49** *Intercompany Interests* means any Interest between the Debtor and any of the Debtor's Affiliates.

**1.50** *Interest* means the interest of any Holder of an equity security of the Debtor, within the meaning of Bankruptcy Code section 101(16), represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor.

**1.51** *Lien* means a lien as defined in Bankruptcy Code section 101(37).

**1.52** *Liquidation Trust* means the trust established on the Effective Date pursuant to Section 6.5 hereof.

**1.53** *Liquidation Trust Agreement* means the agreement to be executed as of the Effective Date establishing the Liquidation Trust pursuant to this Plan.

**1.54** *Liquidation Trust Assets* means (i) the funds to be received pursuant to the Committee Settlement (including, without limitation, the Wind-Down Reserve, as such term is defined in the Committee Settlement, in the amount of $2,000,000 and the GUC Sales Proceeds Recovery, as such term is defined in the Committee Settlement, in the amount of $1,325,000), and (ii) all Assets of the Debtor and the Estate including remaining funds in the Professional Fee Escrow Account and the Administrative and Priority Claims Reserve other than (a) the Purchased Assets, (b) the Effective Date Cash Payment once made, and (c) any Cause of Action and Claim not released pursuant to Sections 11.7, 11.8, and 11.9 hereof.

**1.55** *Liquidation Trustee* means Carroll Services, LLC.

**1.56** *Local Bankruptcy Rules* means the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware.

**1.57** *Other Priority Claim* means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than an Administrative Expense Claim, Accrued Professional Compensation Claim, or Priority Tax Claim.

1.58    ***Other Secured Claim*** means any Secured Claim other than a Secured Lender Claim against the Debtor.

1.59    ***Oversight Committee*** means Flextronics International USA, Inc., Clari, Inc., and NCR Corporation.

1.60    ***Person*** means any individual, corporation, partnership, joint venture, association, limited liability company, joint stock company, trust, unincorporated organization, government or agency or political subdivision thereof, or any other Entity.

1.61    ***Petition Date*** means July 10, 2018.

1.62    ***Plan*** means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including, without limitation, all exhibits and schedules hereto and thereto.

1.63    ***Plan Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Plan Confirmation Order.

1.64    ***Plan Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court to consider approval of this Plan, as such hearing may be adjourned or continued from time to time.

1.65    ***Plan Confirmation Order*** means any order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

1.66    ***Plan Documents*** means all documents, forms of documents, schedules, and exhibits to this Plan to be executed, delivered, assumed, and/or performed in conjunction with consummation of this Plan on the Effective Date.

1.67    ***Plan Expenses*** means all actual and necessary fees, costs, expenses, and obligations incurred by or owed to the Liquidation Trustee and its agents, employees, attorneys, advisors, or other professionals in administering this Plan and the Liquidation Trust, including, without limitation, (a) reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred by the Liquidation Trustee and its agents, employees and professionals after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Case, and (b) all fees payable pursuant to Section 13.1 of this Plan.

1.68    ***Plan Supplement*** means the compilation of all Plan Documents to be entered into as of the Effective Date and which will be filed with the Bankruptcy Court.

1.69    ***Plan Transactions*** shall have the meaning ascribed to it in Section 6.3 hereof.

**1.70**    ***Preserved Actions*** means all Causes of Action (including, without limitation, all Reserved Chapter 5 Actions) transferred to the Liquidation Trust pursuant to this Plan.

**1.71**    ***Priority Tax Claim*** means any Allowed Claim of a governmental unit pursuant to Bankruptcy Code sections 502(i) and 507(a)(8); provided, however, that any Claims for penalties asserted by governmental units shall not be Priority Tax Claims.

**1.72**    ***Professional*** means any professional firm or professional Person retained by the Debtor or the Creditors' Committee in connection with this Chapter 11 Case and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and/or 1103 of the Bankruptcy Code.

**1.73**    ***Professional Fee Escrow Account*** means an interest-bearing account to hold and maintain an amount of Cash equal to the Professional Fee Reserve Amount funded by the Liquidation Trustee on the Effective Date solely for the purpose of paying all Allowed and unpaid Accrued Professional Compensation Claims.

**1.74**    ***Professional Fee Reserve Amount*** means the aggregate Accrued Professional Compensation Claims through the Effective Date as estimated in accordance with this Plan.

**1.75**    ***Proof of Claim or Interest*** means a written statement conforming substantially to the appropriate official form and Bankruptcy Rule 3001 describing the basis and amount of a Claim or Interest, together with supporting documentation evidencing such Claim or Interest, which complies with applicable provisions of this Plan, the Bankruptcy Code, other Bankruptcy Rules, and any orders of the Bankruptcy Court.

**1.76**    ***Pro Rata Share*** means, with respect to any Distribution on account of any Allowed Claim, the ratio that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in the same Class.

**1.77**    ***Purchased Assets*** means the Assets that were sold, transferred, assigned, conveyed, and delivered pursuant to the Sale Order and in accordance with the terms and subject to the conditions of the Asset Purchase Agreement.

**1.78**    ***Purchaser*** means DataDirect Networks, Inc.

**1.79**    ***Released Parties*** means (a) the Debtor, (b) the Secured Lender, (c) the Creditors' Committee and all members of the Creditors' Committee, and (d) with respect to the persons named in (a)-(c) above, such Entity's agents, affiliates, parents, subsidiaries, predecessors, successors, heirs, executors, and assignees, attorneys and financial advisors, in each case in their capacity as such. For the avoidance of doubt, the Released Parties shall NOT include the Debtor's current or former directors, officers, shareholders, partners, and/or members.

**1.80**    ***Releasing Parties*** means, collectively, (a) the Debtor, (b) the Debtor's officers and directors as of the Petition Date, (c) the Secured Lender, (d) the Creditors'

Committee and all members thereof, and (e) each Holder of a Claim against or Interest in the Debtor, in each case in their capacity as such.

    **1.81    *Rejection Damages Claims*** means any Claim arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to Bankruptcy Code section 365 by the Debtor, as limited, in the case of a rejected unexpired lease, by Bankruptcy Code section 502(b)(6).

    **1.82    *Reserved Chapter 5 Actions*** means, subject to the releases, exculpations, and injunctions set forth in this Plan and the avoidance actions sold (if any) under the Asset Purchase Agreement, any and all potential claims or causes of action to avoid and/or recover property or an obligation incurred by the Debtor pursuant to Bankruptcy Code chapter 5.

    **1.83    *Sale*** means the sale of certain of the Debtor's assets in this Chapter 11 Case as approved by the Sale Order.

    **1.84    *Sale Order*** means that certain Order (A) Authorizing the Sale of Substantially All of the Debtor's Assets Pursuant to Asset Purchase Agreement(s) Free and Clear of Liens, Claims, and Encumbrances, and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief [D.I. 221].

    **1.85    *Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to Bankruptcy Code section 521, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time through the Plan Confirmation Date.

    **1.86    *Secured Claim*** means a Claim (i) secured by a valid and perfected Lien on collateral that is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such collateral (a) as set forth in this Plan, (b) as agreed to by the Holder of such Claim and the Creditors' Committee or the Liquidation Trustee, or (c) as determined by a Final Order in accordance with Bankruptcy Code section 506(a); or (ii) secured by the amount of any rights of setoff of the Holder thereof under Bankruptcy Code section 553 pursuant to a Final Order or as agreed to by the Creditors' Committee or the Liquidation Trustee.

    **1.87    *Secured Lender*** means TriplePoint Capital LLC.

    **1.88    *Secured Lender Deficiency Claim*** means the amount by which the Allowed Secured Lender Claims exceed the value of the Collateral that secures such Allowed Secured Lender Claims. The Secured Lender has waived payment of its Secured Lender Deficiency Claim from the Wind-Down Reserve, as such term is defined in the Committee Settlement, and the GUC Sales Proceeds Recovery, as such term is defined in the Committee Settlement.

    **1.89    *Secured Lender Other Collateral*** means all Collateral of the Secured Lender other than Cash Collateral, existing as of the respective Petition Date or granted pursuant to the Final DIP Order.

     **1.90**   ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8) (determined irrespective of any time limitations therein).

     **1.91**   ***Subordinated 510(b) Claim*** means any Claim subordinated pursuant to Bankruptcy Code section 510(b), which shall include any Claim arising from the rescission of a purchase or sale of any Interest, any Claim for damages arising from the purchase or sale of any Interest, or any Claim for reimbursement, contribution, or indemnification on account of any such Claim.

     **1.92**   ***Unimpaired*** means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Bankruptcy Code section 1124.

     **1.93**   ***Voting Agent*** means Omni Management Group, Inc.

     **1.94**   ***Voting Record Date*** means the date established by the Court for determining the current holders of Claims and Interests.

     **B.**     Interpretation: Application of Definitions and Rules of Construction.

     Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in Bankruptcy Code section 102 shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## SECTION 2        ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

     **2.1**  **Administrative Expense Claims.**

     Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees with the Creditors' Committee or the Liquidation Trustee to a different treatment or has been paid by the Debtor prior to the Effective Date, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable, (b) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is

reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, (c) at such time and upon such terms as may be agreed upon by such Holder and the Creditors' Committee or the Liquidation Trustee, as the case may be, or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that Administrative Expense Claims that have been assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be an obligation of the Debtor, the Creditors' Committee, or the Liquidation Trustee.

## 2.2    Administrative Expense Claim Bar Date.

The Holder of an Administrative Expense Claim that first arose (or, only in the case of unexpired leases or real and personal property, accrued) after, but not including, March 1, 2019, other than (i) an Accrued Professional Compensation Claim, (ii) an Administrative Expense Claim that has been Allowed by Final Order on or before the Effective Date, or (iii) fees of the United States Trustee arising under 28 U.S.C. § 1930, must, by the Administrative Expense Claim Bar Date, file with the Bankruptcy Court and serve on the Liquidation Trustee a request for payment of such Administrative Expense Claim so as to be received on or before the Administrative Expense Claim Bar Date. Failure to file and serve such request for payment timely and properly may result in the Administrative Expense Claim being forever barred.

### 2.2.1    Final Fee Applications.

All final requests for payment of Claims of a Professional shall be filed no later than 30 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.

### 2.2.2    Professional Fee Escrow Account.

In accordance with this Plan, on or after the Effective Date, the Liquidation Trustee shall establish and fund the Professional Fee Escrow Account with Cash, including from Liquidation Trust Assets, equal to the aggregate Professional Fee Reserve Amount for all Professionals. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Debtor's Estate and shall not vest with the Liquidation Trustee. The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order. When all Allowed Accrued Professional Compensation Claims are paid in full in Cash, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Liquidation Trustee and constitute a Liquidation Trust Asset.

### 2.2.3    Professional Fee Reserve Amount.

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall estimate their Accrued Professional Compensation Claims prior to and as of the Confirmation Date, along with an estimate of fees and expenses to be incurred through the Effective Date, and shall deliver such estimate to counsel to the Creditors' Committee no later than five days prior to the anticipated Confirmation Date; provided, that such estimate shall not

be considered an admission with respect to the fees and expenses of such Professional. If a Professional does not provide an estimate, the Creditors' Committee may estimate the unbilled fees and expenses of such Professional. The total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount.

### 2.3    Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees with the Creditors' Committee or the Liquidation Trustee to a different treatment or has been paid by the Debtor prior to the Effective Date in full and final satisfaction, settlement, and release of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Claim, in accordance with Bankruptcy Code section 1129(a)(9)(C), regular installment payments in Cash over a period ending not later than two (2) years after the Petition Date of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim together with interest accrued thereon at the applicable non-bankruptcy rate. The Creditors' Committee and the Liquidation Trustee reserve the right to prepay at any time under this option. Any Claims asserted by a governmental unit on account of any penalties and assessments shall not be Priority Tax Claims. On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

### SECTION 3          CLASSIFICATION OF CLAIMS AND INTERESTS

A.    The following table designates the Classes of Claims against and Interests in the Debtor's Estate, and specifies which of those Classes are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept this Plan in accordance with Bankruptcy Code section 1126, (iii) deemed to reject this Plan, or (iv) deemed to accept this Plan. A Claim or Interest is classified in a particular Class only to the extent that any such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, settled, or otherwise satisfied prior to the Effective Date.

| Class | Claim | Treatment | Voting Rights |
|-------|-------|-----------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 3 | Allowed Secured Lender Claims | Impaired | Entitled to Vote |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Convenience Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Deemed to Reject |
| 8 | Intercompany Interests | Impaired | Deemed to Reject |
| 9 | Equity Interests | Impaired | Deemed to Reject |

## SECTION 4          TREATMENT OF CLAIMS AND INTERESTS

The treatment and voting rights provided to each Class for distribution purposes is specified below:

### 4.1   Class 1—Other Priority Claims.

(a)   *Classification*: Class 1 consists of all Other Priority Claims.

(b)   *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Creditors' Committee, or the Liquidation Trustee to a different treatment of such Claim, and only to the extent that any such Allowed Other Priority Claim has not been paid in full prior to the Effective Date, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Creditors' Committee or the Liquidation Trustee, as the case may be, and the Holder of the Allowed Other Priority Claim.

(c)   *Voting*: Class 1 is Unimpaired, and Holders of Class 1 Other Priority Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

13

**4.2**   **Class 2—Secured Tax Claims.**

(a)   *Classification*:  Class 2 consists of all Secured Tax Claims.

(b)   *Treatment*:  Except to the extent that any such Allowed Secured Tax Claim has not been paid in full prior to the Effective Date, on the Effective Date or as soon thereafter as is reasonably practicable, each Holder of an Allowed Secured Tax Claim shall receive Cash equal to the proceeds of the sale or disposition of the collateral securing such Allowed Secured Tax Claim to the extent of the value of the Holder's secured interest in the Allowed Secured Tax Claim plus postpetition interest to the extent required under Bankruptcy Code section 506(b).

Upon satisfaction of any Allowed Secured Tax Claim, the Liens securing such Allowed Secured Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

The Debtor, the Creditors' Committee, and the Liquidation Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Secured Tax Claims.

(c)   *Voting*:  Class 2 is Unimpaired, and Holders of Class 2 Secured Tax Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

**4.3**   **Class 3—Allowed Secured Lender Claims.**

(a)   *Classification*:  Class 3 consists of all Allowed Secured Lender Claims.

(b)   *Treatment*:  The Holders of the Allowed Secured Lender Claims shall receive distributions of all realized Secured Lender Cash Collateral and any Secured Lender Other Collateral, subject to the terms of the Carve-Out and the Committee Settlement.

Following the Effective Date, the Holders of the Allowed Secured Lender Claims shall continue to receive distributions, from the Liquidation Trustee, of available Secured Lender Cash Collateral or any Secured Lender Other Collateral (if any), in each case subject to the Carve-out and the Committee Settlement, in full and

final satisfaction, settlement, and release of each Allowed Secured Lender Claim.

The Allowed Secured Lender Claims exceed the value of the Collateral that secures such Allowed Secured Lender Claims, and the Holders of the Allowed Secured Lender Claims have Allowed General Unsecured Claims in Class 5 for the Secured Lender Deficiency Claim.

(c)     *Voting*:  Class 3 is Impaired. Therefore, Holders of Allowed Class 3 Secured Lender Claims as of the Voting Record Date are entitled to vote to accept or reject the Plan, subject to the Committee Settlement.

**4.4    Class 4—Other Secured Claims.**

(a)     *Classification*:  Class 4 consists of all Other Secured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim has agreed with the Creditors' Committee or the Liquidation Trustee to a different treatment of such Claim, and only to the extent that any such Allowed Other Secured Claim has not been paid in full prior to the Effective Date in full and final satisfaction, settlement, and release of each Allowed Other Secured Claim, each such Holder, at the option of the Liquidation Trustee, shall (i) be paid in full in Cash, (ii) receive the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code section 506(b), or (iii) receive other treatment rendering such Claim Unimpaired in accordance with Bankruptcy Code section 1124, in each case on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is reasonably practicable.

Upon satisfaction of any Allowed Secured Tax Claim, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

The Debtor, the Creditors' Committee, and the Liquidation Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims. If an Allowed Other Secured Claim exceeds the value of the collateral that secures such Allowed

15

Other Secured Claim, the Holder of such Allowed Other Secured Claim will have a General Unsecured Claim for the deficiency.

(c) *Voting:* Class 4 is Unimpaired, and Holders of Class 4 Other Secured Claims conclusively are presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Therefore, Holders of Class 4 Other Secured Claims are not entitled to vote to accept or reject the Plan.

**4.5   Class 5— General Unsecured Claims.**

(a) *Classification*: Class 5 consists of General Unsecured Claims.

(b) *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim has agreed to a different treatment of such Claim, and only to the extent that any such Allowed General Unsecured Claim has not been paid by the Debtor prior to the Effective Date in full and final satisfaction, settlement, and release of each Allowed General Unsecured Claim, and subject to the Committee Settlement, each Holder of an Allowed General Unsecured Claim will receive on account of such Allowed General Unsecured Claim such Holder's Pro Rata Share of any proceeds of the Liquidation Trust Assets.

(c) *Voting:* Class 5 is Impaired. Therefore, Holders of Allowed Class 5 General Unsecured Claims as of the Voting Record Date are entitled to vote to accept or reject the Plan.

**4.6   Class 6— Convenience Claims.**

(a) *Classification*: Class 6 consists of Convenience Claims.

(b) *Treatment:* Except to the extent that a Holder of an Allowed Convenience Claim has agreed to a different treatment of such Claim, and only to the extent that any such Allowed Convenience Claim has not been paid by the Debtor prior to the Effective Date in full and final satisfaction, settlement, and release of each Allowed Convenience Claim, each Holder of an Allowed Convenience Claim will receive on account of such Allowed Convenience Claim 50% of their Allowed Convenience Claim.

(c) *Voting:* Class 6 is Impaired. Therefore, Holders of Allowed Class 6 Convenience Claims as of the Voting Record Date are entitled to vote to accept or reject the Plan.

**4.7   Class 7—Intercompany Claims.**

(a)   *Classification*:  Class 7 consists of all Intercompany Claims.

(b)   *Treatment:*  On the Effective Date all Intercompany Claims will be cancelled and compromised, and Holders of Intercompany Claims shall receive no distribution on account of such Intercompany Claims.

(c)   *Voting:*  Class 7 is Impaired, and Holders of Intercompany Claims are conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g). Therefore, Holders of Class 7 Intercompany Claims are not entitled to vote to accept or reject the Plan.

**4.8   Class 8—Intercompany Interests.**

(d)   *Classification*:  Class 8 consists of all Intercompany Interests.

(e)   *Treatment:*  On the Effective Date all Intercompany Interests will be cancelled and compromised, and Holders of Intercompany Interests shall receive no distribution on account of such Intercompany Interests.

(f)   *Voting:*  Class 8 is Impaired, and Holders of Intercompany Interests are conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g). Therefore, Holders of Class 8 Intercompany Interests are not entitled to vote to accept or reject the Plan.

**4.9   Class 9—Equity Interests.**

(g)   *Classification*:  Class 9 consists of all Equity Interests in the Debtor.

(h)   *Treatment:*  On the Effective Date all Equity Interests in the Debtor will be cancelled and compromised, and Holders of Equity Interests shall receive no distribution on account of such Equity Interests.

(i)   *Voting:*  Class 9 is Impaired, and Holders of Equity Interests are conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g). Therefore, Holders of Class 9 Equity Interests are not entitled to vote to accept or reject the Plan.

**SECTION 5            ACCEPTANCE OR REJECTION OF THE PLAN**

**5.1    Impaired Classes.**

Pursuant to Bankruptcy Code section 1126, each Impaired Class of Claims or Interests that may receive a Distribution pursuant to this Plan may vote separately to accept or reject this Plan. Each Holder of an Allowed Claim in such an Impaired Class as of the Voting Record Date shall receive a ballot and may cast a vote to accept or reject this Plan.

Classes 7, 8, and 9 are not entitled to receive or retain any Distributions or property under this Plan and are, therefore, conclusively presumed to have rejected this Plan pursuant to Bankruptcy Code section 1126(g). Classes 3, 5, and 6 are Impaired and are the only Classes of Claims or Interests entitled to vote on this Plan.

**5.2    Acceptance by a Class.**

A Class of Claims entitled to vote to accept or reject this Plan shall be deemed to accept this Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept this Plan. Classes 1, 2, and 4 are Unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to Bankruptcy Code section 1126(f).

**5.3    Claims and Interests Not Entitled to Vote.**

Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim (a) has been disallowed, (b) is the subject of a pending objection, or (c) (i) was not listed on the Debtor's Schedules or was listed on the Debtor's Schedules as unliquidated, contingent, or disputed, and (ii) a Proof of Claim was not filed or was filed for an unliquidated, contingent, or disputed claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise. However, if a Claim is disallowed in part, the Holder shall be entitled to vote the Allowed portion of the Claim.

**SECTION 6            MEANS FOR IMPLEMENTATION**

**6.1    Corporate Action.**

**6.1.1    Transfer of Assets and Assumption of Liabilities.**

On the Effective Date, (i) the Debtor and the Secured Lender shall, in accordance with this Plan and the Committee Settlement, cause the Liquidation Trust Assets to be transferred to the Liquidation Trust and (ii) the Liquidation Trust shall assume all obligations of the Debtor under this Plan.

**6.1.2    Cancelation of Existing Securities and Agreements.**

On the Effective Date, all agreements and other documents evidencing (i) any Claim or rights of any holder of a Claim against the Debtor, including any notes evidencing such Claims or (ii) any Interest in the Debtor, including any options or warrants to purchase Interests, shall be

canceled. The holders of, or parties to, such canceled agreements and documents shall have no rights arising from or relating to such agreements and documents or the cancelation thereof, except any rights provided pursuant to this Plan.

### 6.2    Plan Transactions.

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtor, the Creditors' Committee, and the Liquidation Trustee may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate this Plan (the "Plan Transactions"), including, but not limited to, (i) the execution and delivery of appropriate agreements or other documents of financing, merger, consolidation, restructuring, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law, (ii) the execution and delivery of any appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, duty or obligation on terms consistent with this Plan, (iii) the filing of appropriate certificates of incorporation, dissolution, or other similar documents with the appropriate governmental authorities pursuant to applicable law, and (iv) any and all other actions that the Creditors' Committee or Liquidation Trustee determine are necessary or appropriate.

### 6.3    Effectuating Documents and Further Transactions.

Upon entry of the Plan Confirmation Order, the Debtor, the Creditors' Committee, and the Liquidation Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Debtor, the Creditors' Committee, or Liquidation Trustee, as applicable, and all Holders of Claims or Interests receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 6.4    Authority to Act.

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, partners, managers, members, or other owners of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable laws of the state of Delaware, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, managers, members, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

### 6.5    Liquidation Trust.

#### 6.5.1    Establishment of Liquidation Trust.

On the Effective Date, the Liquidation Trust will be established pursuant to the Liquidation Trust Agreement, which will be filed with the Bankruptcy Court prior to the Plan Confirmation Hearing. Upon establishment of the Liquidation Trust, the Secured Lender shall transfer to the Liquidation Trust the Wind-Down Reserve, as such term is defined in the Committee Settlement, in the amount of $2,000,000 and the GUC Sales Proceeds Recovery, as such term is defined in the Committee Settlement, in the amount of $1,325,000. All other Liquidation Trust Assets shall be deemed transferred to the Liquidation Trust without any further action of the Debtor or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtor.

#### 6.5.2    Transfer of Trust Assets.

Pursuant to Bankruptcy Code section 1141, and subject to the terms of the Committee Settlement, all transfers and contributions made pursuant to this Section 6 shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests. Upon completion of the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Debtor will have no further interest in, or with respect to, the Liquidation Trust Assets, or the Liquidation Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidation Trustee and the Liquidation Trust's beneficiaries) will treat the transfer of assets to the Liquidation Trust in accordance with the terms of this Plan, as a transfer to the Liquidation Trust's beneficiaries, followed by a transfer by such Liquidation Trust's beneficiaries to the Liquidation Trust, and the Liquidation Trust's beneficiaries will be treated as the grantors and owners thereof.

#### 6.5.3    Purpose of Liquidation Trust.

The Liquidation Trust shall be established for the purpose of liquidating the Liquidation Trust Assets, prosecuting, settling, or foregoing pursuit of Causes of Action transferred to the Liquidation Trust, to maximize recoveries for the benefit of the Liquidation Trust's beneficiaries, and making distributions in accordance with this Plan to the Liquidation Trust's beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidation Trust's beneficiaries treated as grantors and owners of the trust.

#### 6.5.4    Liquidation Trustee.

(i)    *Retention of Liquidation Trustee.* The Liquidation Trustee is Carroll Services, LLC. The Liquidation Trustee shall file with the Bankruptcy Court a declaration setting forth connections with creditors and parties in interest in the Debtor's case. Once appointed, the Liquidation Trustee shall act as the representative of the Estate for all purposes. Pursuant to Bankruptcy Code section 1123(b)(3), the Liquidation Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any

such rights, Claims, and any Causes of Action transferred to the Liquidation Trust in accordance with the best interests of and for the benefit of the Liquidation Trust's beneficiaries. In the event that the Liquidation Trustee resigns, is removed, terminated or otherwise unable to serve as the Liquidation Trustee, then a successor shall be appointed by majority vote of the Oversight Committee members. Any successor Liquidation Trustee appointed shall be bound by and comply with the terms of this Plan, the Plan Confirmation Order and the Liquidation Trust Agreement.

(ii)    *Responsibilities and Authority of the Liquidation Trustee.* The responsibilities and authority of the Liquidation Trustee shall include: (a) calculating and implementing all Distributions for the Liquidation Trust's beneficiaries; (b) administering and paying taxes, including, among other things, (i) filing of tax returns, and (ii) representing the interest and account of the Liquidation Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; (c) periodic reporting to the Oversight Committee of the status of prosecution of Causes of Action; (d) liquidating the Liquidation Trust Assets, including through the commencement of Causes of Action at the discretion of the Liquidation Trustee, and providing payments to the Liquidation Trust's beneficiaries in accordance with the provisions of this Plan; (e) retaining and paying at normal and customary rates on a monthly basis or on a contingency fee basis professionals in connection with the Liquidation Trustee's performance of its duties under this Plan and Liquidation Trust Agreement; (f) distributing information statements as required for federal income tax and other applicable tax purposes; (g) filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; and (h) such other responsibilities as may be vested in the Liquidation Trustee pursuant to this Plan, the Liquidation Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of this Plan. In addition, after the Plan Confirmation Date, the Liquidation Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation status reports every three months, on or before each of the fifteenth (15th) day of January, April, July, and October as appropriate, until the Chapter 11 Case is closed, converted, or dismissed, whichever happens earlier.

(iii)    *Powers of the Liquidation Trustee.* The powers of the Liquidation Trustee to administer the Liquidation Trust shall, without any further Bankruptcy Court approval in each of the following cases, include, without limitation, (a) in accordance with Bankruptcy Code section 345, the power to invest funds in, and withdraw, make Distributions and pay taxes and other obligations owed by the Liquidation Trust from funds held by the Liquidation Trustee in accordance with this Plan and Liquidation Trust Agreement, (b) the power to engage and compensate without prior Bankruptcy Court order or approval employees and professionals to assist the Liquidation Trustee with respect to its responsibilities, (c) the power to pursue, prosecute, resolve and compromise and settle any Causes of Action on behalf of the Liquidation Trust without prior Bankruptcy Court approval but in accordance with the Liquidation Trust Agreement, (d) the power to object to and settle claims, including, without limitation, the power to subordinate and recharacterize claims by objection, motion, or adversary proceeding, and (e) such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to this Plan, the Liquidation Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Plan. The Liquidation Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash.

The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution from a Liquidation Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to, or on behalf of, such Holder under this Plan unless and until such Holder has made arrangements satisfactory to the Liquidation Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidation Trust shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Liquidation Trustee, as the case may be, until such time as Liquidation Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

(iv)    *Prosecution of Causes of Action*. Pursuant to Bankruptcy Code section 1123(b), the Liquidation Trustee, on behalf of and for the benefit of the Liquidation Trust's beneficiaries, shall be vested with and shall retain and may enforce any Causes of Action transferred to the Liquidation Trust that were held by, though, or on behalf of the Debtor and/or the Estate against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date. The Liquidation Trustee will have the sole power to pursue, prosecute, resolve, compromise, and settle any Causes of Action on behalf of the Liquidation Trust without prior Bankruptcy Court approval; provided, however, with respect to any Causes of Action that are commercial tort claims, including any Causes of Action against the Debtor's current or former directors and officers, the Secured Lender shall have consultation rights. The recoveries from any Causes of Action transferred to the Liquidation Trust will be deposited into the Liquidation Trust and distributed in accordance with the Liquidation Trust Agreement, the Committee Settlement, and this Plan.

(v)    *Compensation of Liquidation Trustee*. The Liquidation Trustee shall be compensated as set forth in the Liquidation Trust Agreement. The Liquidation Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Plan Confirmation Order, and the Liquidation Trust Agreement. The Liquidation Trustee shall not be required to file a fee application to receive compensation.

(vi)    *Retention and Payment of Professionals*. The Liquidation Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidation Trustee in the performance of his duties and compensate such professionals from the assets of the Liquidation Trust as set forth in the Liquidation Trust Agreement.  Such attorneys, accountants, and other professionals and agents shall not be required to file fee applications with the Bankruptcy Court to receive compensation and reimbursement of expenses.

(vii)    *Limitation on Liability of the Liquidation Trustee*. The Liquidation Trustee and its professionals shall be entitled to indemnification against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or

claims that the Liquidation Trustee or its professionals may incur or sustain by reason of being or having been a Liquidation Trustee or professionals of the Liquidation Trustee for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Liquidation Trustee or his professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the Delaware Lawyer's Rules of Professional Conduct.

### 6.5.5    Plan Expenses.

The Liquidation Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Plan Expenses. All Plan Expenses shall be charged against and paid from the Liquidation Trust.

### 6.5.6    Termination of Liquidation Trust.

The Liquidation Trust shall be dissolved upon the earlier of the distribution of all of its assets to the Liquidation Trust's beneficiaries and the fifth anniversary of the creation of the Liquidation Trust, provided that, if warranted by the facts and circumstances involved (including, without limitation, in resolving any Causes of Action) upon application to, and if approved by, the Bankruptcy Court upon a finding such extension is necessary for purposes of resolving such Causes of Action and/or distributing the Liquidation Trust Assets to Liquidation Trust's beneficiaries, the term of the Liquidation Trust may be extended by the Liquidation Trustee for a specified, finite term. Notwithstanding the foregoing, the Liquidation Trust shall be automatically terminated in the event that a final decree is entered closing the Chapter 11 Case.

### 6.5.7    Exculpation Relating to the Liquidation Trust.

No Holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any Claim or cause of action against the Liquidation Trustee, the Liquidation Trust or the employees or professionals thereof (solely in the performance of their duties), for making payments and Distributions in accordance with this Plan or for fulfilling any functions incidental to implementing the provisions of this Plan or the Liquidation Trust, except for any acts or omissions to act that are the result of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the Delaware Lawyers' Rules of Professional Conduct.

### 6.6    Administrative and Priority Claims Reserve.

On the Effective Date, the Liquidation Trustee shall establish the Administrative and Priority Claims Reserve with the Administrative and Priority Claims Reserve Amount, which shall be used by the Liquidation Trustee only for the payment of Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Secured Tax Claims, and Other Secured Claims allowed before or after the Effective Date, to the extent that the foregoing Claims have not been paid in full on or prior to the Effective Date. To the extent any funds remain in the Administrative and Priority Claims Reserve after all of the foregoing Claims have been paid or

otherwise satisfied as set forth herein, such remaining funds shall constitute Liquidation Trust Assets.

**SECTION 7          DISTRIBUTIONS**

**7.1    Distribution Record Date.**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor, or its agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests. Neither the Debtor, the Creditors' Committee, nor the Liquidation Trustee shall have any obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Liquidation Trustee or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

**7.2    Date of Distributions.**

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable. Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed. Distributions made after the Effective Date to holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in this Plan, no interest shall accrue or be payable with respect to such Claims or any distribution related thereto. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**7.3    Postpetition Interest on Claims.**

Except as may be otherwise expressly provided herein, postpetition interest shall not accrue or be paid on any Claims against the Debtor, and no Holder of any such Claim against the Debtor shall be entitled to payment or Distributions on account of interest accruing on or after the Petition Date.

**7.4    Disbursing Agent.**

All Distributions hereunder shall be made by the Creditors' Committee, the Liquidation Trustee, or its named successor or assign, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. For the avoidance of doubt, the Liquidation Trustee, or such other entity designated by the Creditors' Committee or the Liquidation Trustee, shall act as Disbursing Agent with respect to all Effective Date Distributions. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise

ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

### 7.5    Powers of Disbursing Agent.

The Disbursing Agent may (i) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan, (ii) make all Distributions contemplated hereby, and (iii) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### 7.6    Surrender Instruments.

Pursuant to Bankruptcy Code section 1143, as a condition precedent to receiving any Distribution under this Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the third anniversary of the Plan Confirmation Date shall be deemed to have forfeited all rights and claims and may not participate in any Distribution hereunder.

### 7.7    Delivery of Distributions.

Subject to applicable Bankruptcy Rules, all Distributions to Holders of Allowed Claims shall be made to the Disbursing Agent who shall transmit such Distributions to the applicable Holders of Allowed Claims or their designees. If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall have no obligation to determine the correct current address of such Holder, and no Distribution to such Holder needs to be made unless and until the Disbursing Agent is notified by the Holder of the current address of such Holder within ninety (90) days of such Distribution, at which time a Distribution shall be made to such Holder without interest; provided that the Liquidation Trustee, in its sole discretion, may deem such Distributions unclaimed property under Bankruptcy Code section 347(b) at the expiration of ninety (90) days from the Distribution. After such date, all unclaimed property or interest in property shall revert to the Liquidation Trust to be distributed in accordance with the terms of the Liquidation Trust Agreement, and the Claim of any other holder to such property or interest in property shall be forever barred.

### 7.8    Manner of Payment.

Any distributions to be made by or on behalf of the Liquidation Trustee pursuant to this Plan shall be made by checks drawn on accounts maintained by the Liquidation Trustee, or by wire transfer if circumstances justify, at the option of the Liquidation Trustee.

### 7.9    Setoffs.

The Liquidation Trustee, pursuant to the Bankruptcy Code (including sections 553 and 558 of the Bankruptcy Code) and/or applicable bankruptcy or nonbankruptcy law, with the approval of the Bankruptcy Court or as may be agreed to by the Holder of a Claim or Interest,

may, but shall not be required to, set off against any Allowed Claim or Interest and the Distributions to be made pursuant to this Plan on account of such Allowed Claim or Interest (before any Distribution is to be made on account of such Allowed Claim or Interest), any claims of any nature whatsoever, whether or not previously asserted or unasserted, whether or not released under this Plan, that the Debtor or the Liquidation Trustee may have against the Holder of such Allowed Claim or Interest, provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtor or the Liquidation Trustee of any such claim the Debtor or the Liquidation Trustee may have against the Holder of such Claim or Interest.

Notwithstanding any provision in the Plan to the contrary, rights of setoff and recoupment of any Entity or Person are preserved for the purpose of asserting such rights as a defense, including to any Causes of Action of the Debtor, its Estate, or the Liquidating Trustee, and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

### 7.10  Minimum Distributions.

No payment of Cash in an amount of less than $50.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and the Liquidation Trust Agreement. If the Cash available for the final Distribution is less than $10,000, and the Liquidation Trustee, in its sole discretion, determines that it would cost more than $5,000 to distribute such funds, the Liquidation Trustee may donate such funds to the charity of its choice.

### 7.11  Allocation of Distributions between Principal and Interest.

To the extent that any Allowed Claim entitled to a Distribution under this Plan includes both principal and accrued but unpaid interest, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 7.12  Distributions Free and Clear.

Except as otherwise provided in this Plan, any Distribution or transfer made under this Plan, including, without limitation, Distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges and other interests, and no other entity shall have any interest, whether legal, beneficial or otherwise, in property distributed or transferred pursuant to this Plan.

## SECTION 8          PROCEDURES FOR DISPUTED CLAIMS

### 8.1  Allowance of Claims and Interests.

Except as expressly provided herein, or in any order entered in the Chapter 11 Case prior to the Effective Date, including the Plan Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Plan Confirmation Order, in the Chapter 11 Case allowing such Claim or Interest. Prior to and

following the Effective Date, the Liquidation Trust shall be vested with any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

### 8.2    Objections to Claims.

The Liquidation Trustee shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests under this Plan or otherwise. Any objections to Claims shall be served and filed on or before the later of (i) two hundred ten (210) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.

### 8.3    Estimation of Claims.

Before the Effective Date, the Creditors' Committee, and after the Effective Date, the Liquidation Trustee may (but are not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to Bankruptcy Code section 502(c) for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidation Trustee may pursue supplementary proceedings to object to the allowance of such Claim.

### 8.4    Distributions Relating to Disputed Claims.

As soon as practicable after the date that a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's Pro Rata Share of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated *Pro Rata* to the Holders of Allowed Claims in the same Class.

### 8.5    Distributions after Allowance.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

**SECTION 9          EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

### 9.1    General Treatment.

All executory contracts and unexpired leases to which the Debtor is a party are hereby rejected as of the Effective Date except for an executory contract or unexpired lease that (i) previously has been assumed pursuant to Final Order of the Bankruptcy Court, (ii) is specifically designated as an executory contract or unexpired lease to be assumed in this Plan or in any Plan Supplement, or (iii) is the subject of a separate assumption motion under section 365 of the Bankruptcy Code prior to the Effective Date.

Assumption of any executory contract or unexpired lease pursuant to this Plan or otherwise shall result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption. Any Claim listed in the Schedules and any Proofs of Claim filed with respect to any executory contract or unexpired lease that has been assumed prior to the Effective Date shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### 9.2    Rejection Damages Claims.

In the event that the rejection of an executory contract or unexpired lease pursuant to this Plan results in a Rejection Damages Claim in favor of a counterparty to such executory contract or unexpired lease, such Rejection Damages Claim, if not heretofore evidenced by a timely and properly filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtor or the Liquidation Trust, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Liquidation Trustee on or before the date that is thirty (30) days after the Effective Date or such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults. All Allowed Rejection Damages Claims shall be treated as General Unsecured Claims pursuant to the terms of this Plan.

### 9.3    Reservation of Rights.

Neither the exclusion nor inclusion of any contract or lease in this Plan or Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtor, the Creditors' Committee, or the Liquidation Trust that such contract or lease is in fact an executory contract or unexpired lease or that the Debtor, the Creditors' Committee, or the Liquidation Trust has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Creditors' Committee or Liquidation Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, provided that, notwithstanding anything to the contrary herein, any such dispute shall be resolved prior to the Plan Confirmation Date.

**SECTION 10**        **CONDITIONS PRECEDENT TO EFFECTIVE DATE**

### 10.1  Conditions Precedent.

The occurrence of the Effective Date of this Plan is subject to the following conditions precedent:

(a)        the Plan Confirmation Order in form and substance satisfactory to the Creditors' Committee shall have been entered by the Bankruptcy Court and shall be a Final Order;

(b)        all actions, documents, and agreements necessary to implement this Plan, including, without limitation, all actions, documents, and agreements necessary to implement any Plan Transactions, shall have been effected or executed;

(c)        the Debtor or the Creditors' Committee shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any Plan Transactions and that are required by law, regulation, or order;

(d)        the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions; and

(e)        there shall have been no modification or stay of the Plan Confirmation Order or entry of other court order prohibiting transactions contemplated by this Plan from being consummated.

### 10.2  Waiver of Conditions.

Unless otherwise specifically provided in this Plan, the conditions set forth in Section 10.1 of this Plan may be waived in whole or in part by the Creditors' Committee without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

**SECTION 11**        **EFFECT OF CONFIRMATION**

### 11.1  Vesting of Assets.

On the Effective Date, except as otherwise provided in this Plan, pursuant to Bankruptcy Code sections 1141(b) and 1141(c), the Liquidation Trust Assets shall vest in the Liquidation Trust, subject to the rights and interests of the Liquidation Trust's beneficiaries.

### 11.2  Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Secured Lender, the Creditors' Committee, and all present and former Holders of Claims against and Interests in the Debtor, regardless of whether any such Holder of a Claim or Interest has voted or failed to

vote to accept or reject this Plan and regardless of whether any such Holder of a Claim or Interest is entitled to receive any Distribution under this Plan.

### 11.3  Release of Claims and Termination of Interests.

To the fullest extent provided under Bankruptcy Code section 1141(d), and except as otherwise specifically provided in this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in full and final satisfaction, settlement, and release, as of the Effective Date, of all Claims, Interests, and Causes of Action against the Debtor, the Debtor's Estate, and/or the Liquidation Trust of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Estate, the Debtor, or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to Bankruptcy Code section 501; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (iii) the Holder of such a Claim or Interest has accepted this Plan.

### 11.4  Compromise and Settlement of Claims, Interests, and Controversies.

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. After the Effective Date, the Liquidation Trustee, on behalf of the Debtor, may, and shall have the exclusive right to, compromise and settle any Claims and any Causes of Action without notice to or approval from the Bankruptcy Court, including, without limitation, any and all derivative actions.

### 11.5  Injunction.

Except as otherwise expressly provided in this Plan, the Plan Confirmation Order, or a separate order of the Bankruptcy Court, all Persons and Entities who have held, hold, or may hold Claims against or Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, directly or indirectly, including indirect pursuit of any Claims against the Debtor by litigation or other claims against employees of the Debtor as of the Petition Date or an Indemnified Party, who were acting in their

capacities and scope as employees with respect to the litigation claims made against such former employees; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Liquidation Trust on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Liquidation Trust or against the property or interests in property of the Debtor or the Liquidation Trust on account of any such Claim or Interest; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor or the Liquidation Trust or against the property or interests in property of the Debtor or the Liquidation Trust on account of any such Claim or Interest; and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and causes of action that are retained pursuant to this Plan. Such injunction shall extend to successors of the Debtor, including, without limitation, the Liquidation Trust and its properties and interests in property.

Except as otherwise expressly provided in this Plan, upon the Bankruptcy Court's entry of the Plan Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtor's, the Liquidation Trust's, the Liquidation Trustee's, and their respective affiliates', employees', advisors', officers' and directors', or agents' implementation or consummation of this Plan.

### 11.6  Term of Injunctions or Stays.

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan, (a) all injunctions with respect to or stays against an action against property of the Debtor's Estate arising under or entered during the Chapter 11 Case under Bankruptcy Code sections 105 or 362, and in existence on the Plan Confirmation Date, shall remain in full force and effect until such property is no longer property of the Debtor's Estate or the Liquidation Trust, and (b) all other injunctions and stays arising under or entered during the Chapter 11 Case under Bankruptcy Code sections 105 or 362 shall remain in full force and effect until the earliest of (i) the date that the Chapter 11 Case is closed pursuant to a Final Order of the Bankruptcy Court or (ii) the date that the Chapter 11 Case is dismissed pursuant to a Final Order of the Bankruptcy Court.

### 11.7  Debtor and Estate Releases.

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Released Parties are deemed released and discharged by the Debtor and its estate to the fullest extent permitted by applicable law, as such law may be extended or interpreted subsequent to the Effective Date, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor and its estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case,

the negotiation, documentation, and consummation of the Sale, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any of the Released Parties, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, gross negligence, or a criminal act to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, a criminal act, or in the case of an attorney professional as required under rule 1.8(h)(1) of the Delaware Lawyers' Rules of Professional Conduct.

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor's post-petition officers and directors and the Debtor's post-petition employees are deemed released and discharged by the Debtor and its estate to the fullest extent permitted by applicable law, as such law may be extended or interpreted subsequent to the Effective Date, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor and its estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other entity, _provided, however_, that this release in each case is limited only to those based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the negotiation, documentation, and consummation of the Sale, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Plan Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Debtor's post-petition officer or director or of a Debtor's post-petition employee that constitutes willful misconduct, gross negligence, or a criminal act to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, or a criminal act.

**11.8  Releases by Holders of Claims and Interests.**

TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH HOLDER OF A CLAIM RELATED TO THE DEBTOR (WHETHER OR NOT ALLOWED) AGAINST, OR INTEREST IN, THE DEBTOR, AND EACH PERSON OR ENTITY PARTICIPATING IN DISTRIBUTIONS UNDER OR PURSUANT TO THIS PLAN, FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, TRANSFEREES, CURRENT AND FORMER OFFICERS, DIRECTORS, AGENTS AND EMPLOYEES, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL BE DEEMED TO HAVE RELEASED ANY AND ALL CLAIMS AND CAUSES OF ACTION AGAINST THE RELEASED PARTIES AND THEIR RESPECTIVE ATTORNEYS, PROFESSIONALS, OR AGENTS ARISING PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR ANY HOLDER OF A CLAIM WHO (1) TIMELY SUBMITS A BALLOT TO VOTE

AGAINST THE PLAN, (2) IS PART OF A CLASS THAT HAS BEEN DEEMED TO REJECT THE PLAN; OR (3) WHO TIMELY SUBMITS A BALLOT OR OTHER FORM MARKED TO ELECT THE OPTION TO OPT OUT OF THE RELEASES OF THIS SECTION 11.8 (FOR THE AVOIDANCE OF DOUBT, CREDITORS WHO RECEIVE THE DISCLOSURE STATEMENT AND PLAN AND ELECT NOT TO TIMELY RETURN A BALLOT ARE DEEMED TO CONSENT TO THE RELEASES OF THIS SECTION 11.8); PROVIDED, HOWEVER, NOTHING IN THIS SECTION SHALL BE CONSTRUED TO RELEASE OR EXCULPATE ANY PERSON OR ENTITY FROM BAD FAITH, WILLFUL MISCONDUCT, RECKLESS DISREGARD OF DUTY, CRIMINAL CONDUCT, FRAUD, SELF-DEALING, UNAUTHORIZED USE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES OR FOR PERSONAL ULTRA VIRES ACTS, OR, IN THE CASE OF AN ATTORNEY PROFESSIONAL AS REQUIRED UNDER RULE 1.8(H)(1) OF THE DELAWARE LAWYERS' RULES OF PROFESSIONAL CONDUCT.

FURTHER, NOTHING IN THIS PLAN SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST THE RELEASED PARTIES AND THEIR RESPECTIVE ATTORNEYS, ADVISORS, PROFESSIONALS, AGENTS, OR OTHER RELATED PERSONS, NOR SHALL ANYTHING IN THE PLAN ENJOIN THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDING AGAINST THE PARTIES REFERRED TO HEREIN FOR ANY LIABILITY ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY, NOR SHALL ANYTHING IN THIS PLAN EXCULPATE ANY PARTY FROM ANY LIABILITY TO THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY FOR LIABILITIES ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST THE PARTIES REFERRED TO HEREIN.

### 11.9 Exculpation.

Upon and effective as of the Effective Date, the Creditors' Committee and its members, attorneys, financial advisors, and other professional advisors and agents, as of the Petition Date, will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including Bankruptcy Code section 1125(e).

Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement, or related documents, the (a) Debtor; (b) Creditors' Committee and all members thereof in their capacity as such; (c) Secured Lender; (d) Debtor's post-petition officers and directors, post-petition employees, attorneys, accountants, investment bankers, financial and other advisors; (e) Creditors' Committee's attorneys, accountants, investment bankers, financial and other advisors; and (f) Secured Creditor's officers and directors, employees, attorneys, accountants, investment bankers, financial and other advisors; (collectively, the "Exculpated Parties") shall neither have, nor incur any liability to any entity for

33

any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with the Chapter 11 Case or the negotiation, documentation, and consummation of the Sale; provided that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a final order to have constituted willful misconduct, gross negligence, or a criminal act to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, a criminal act, or in the case of an attorney professional as required under rule 1.8(h)(1) of the Delaware Lawyers' Rules of Professional Conduct; provided further that each of the Exculpated Parties shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

### 11.10   Release of Liens.

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released.

### 11.11   Dissolution of Creditors' Committee.

On the Effective Date, the Creditors' Committee shall have no further powers or duties and shall be dissolved for all purposes; provided, however, that the Creditors' Committee and its Professionals shall be entitled, after notice and a hearing, to reasonable compensation and reimbursement of actual and necessary expenses incurred post-Effective Date in preparing and filing applications for Accrued Professional Compensation Claims or for reimbursement of expenses incurred by members of the Creditors' Committee.

### 11.12   Retention of Causes of Action/Reservation of Rights.

#### 11.12.1        No Waiver of Claims

Except as otherwise expressly provided in the Plan, nothing contained in this Plan or in the Plan Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtor or the Liquidation Trustee may have or which the Liquidation Trustee may choose to assert on behalf of the Debtor's Estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all Claims and/or Causes of Action against any Person or Entity, (ii) the turnover of all property of the Debtor's Estate, and (iii) any and all Claims against the Debtor's current or former directors and/or officers.

### 11.12.2          Reservation of All Rights

Except as otherwise expressly provided in this Plan, nothing contained herein or in the Plan Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense of the Debtor or the Liquidation Trust. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any cause of action against it as any indication that the Liquidation Trustee will not pursue any and all available causes of action against them. The Liquidation Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Entity.

### 11.13   Cancellation of Agreement, Notes, and Interests.

On the Effective Date, except to the extent otherwise expressly provided herein, all notes, stock, interests, instruments, certificates, and other documents evidencing the Interests in the Debtor shall be deemed automatically extinguished, cancelled and of no further force or effect, and neither the Debtor nor the Liquidation Trust shall have any continuing obligations thereunder. On the Effective Date, except to the extent otherwise expressly provided herein, any indenture or other agreement relating to any of the foregoing shall be deemed automatically extinguished, cancelled, and of no further force or effect, and neither the Debtor nor the Liquidation Trust shall have any continuing obligations thereunder.

## SECTION 12          RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a)      to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)      to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Plan Confirmation Date, including any litigation with respect to claims against the Debtor's current or former directors and officers;

(c)      to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)      to consider Claims or the allowance, classification, priority, compromise, estimation, recharacterization, subordination, or payment of any Claim;

(e)      to enter, implement, or enforce such orders as may be appropriate in the event the Plan Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(e)      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the

consummation, implementation, or enforcement of this Plan, the Plan Confirmation Order, or any other order of the Bankruptcy Court;

(f)      to hear and determine any application to modify this Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Plan Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(g)      to hear and determine all applications under Bankruptcy Code sections 330, 331, and 503(b) for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(h)      to hear and determine all requests for payment of Administrative Expense Claims;

(i)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Plan Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)      to consider requests for extensions of the term of the Liquidation Trust as provided herein;

(k)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

(l)      to hear any disputes arising out of, and to enforce any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to Bankruptcy Code section 105(a);

(m)      to determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

(n)      to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146 (including any requests for expedited determinations under Bankruptcy Code section 505(b));

(o)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)      to enter a final decree closing the Chapter 11 Case;

(r)      to recover all assets of the Debtor and property of the Debtor's Estate, wherever located; and

(s)    to hear and determine any rights, Claims, or causes of action held by or accruing to the Debtor and/or the Liquidation Trust pursuant to the Bankruptcy Code or any applicable federal statute or legal theory.

## SECTION 13         MISCELLANEOUS PROVISIONS

### 13.1  Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code that are due and payable as of the Effective Date shall be paid by the Liquidation Trustee on the Effective Date or as soon thereafter as is reasonably practicable. All such fees that become due and payable after the Effective Date shall be paid by the Liquidation Trustee with funds from the Liquidation Trust Assets when such fees become due and payable. All such fees shall continue to become due and payable until the entry of a final decree closing the Chapter 11 Case or conversion or dismissal of the Chapter 11 Case, whichever is earlier. In addition, the Debtor or the Liquidation Trustee shall file post confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the case.

### 13.2  Substantial Consummation.

On the Effective Date and the commencement of any distribution under this Plan, this Plan shall be deemed to be substantially consummated within the meaning set forth in Bankruptcy Code sections 1101 and 1127(b).

### 13.3  Tax Treatment of the Liquidation Trust.

The Liquidation Trust is intended to qualify as a Liquidation Trust for U.S. federal income tax purposes that will be treated as a pass-through entity. All parties must treat the transfer of the Liquidation Trust Assets to the Liquidation Trust as a transfer of such assets directly to the beneficiaries of the Liquidation Trust, followed by the transfer of such assets by each beneficiary to the Liquidation Trust. Consistent therewith, all parties must treat the Liquidation Trust as a grantor trust of which the Liquidation Trust's beneficiaries are the owners and grantors. Assuming the Liquidation Trust is treated as a Liquidation Trust, the beneficiaries of the Liquidation Trust generally should be treated for U.S. federal income tax purposes as the direct owners of an undivided interest in the Liquidation Trust Assets. The Liquidation Trustee will determine the fair market value of the Liquidation Trust Assets as soon as possible after the Effective Date, and all parties must consistently use this valuation for all U.S. federal income tax purposes.

### 13.4  Determination of Tax Liabilities.

The Liquidation Trustee shall, pursuant to Bankruptcy Code section 505(b), have the right to request an expedited determination of any unpaid liability of the Debtor's Estate and the Liquidation Trust for any tax incurred during the administration of the Chapter 11 Case. As of the Effective Date, the Liquidation Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Debtor's Estate; provided, however, that the Liquidation Trustee shall not be responsible for preparing or filing any tax forms for holders of Interests in

the Debtor (which Interests shall be canceled pursuant to this Plan), but shall provide such holders with any information reasonably required to prepare such forms.

### 13.5  Amendments.

#### 13.5.1  Modifications to Plan and Plan Supplement.

This Plan and/or the Plan Supplement may be amended, modified, or supplemented by the Creditors' Committee in the manner provided for by Bankruptcy Code section 1127 or as otherwise permitted by law without additional disclosure pursuant to Bankruptcy Code section 1125, provided that notice and an opportunity to object shall be provided with respect to any material post-confirmation modifications to this Plan or the Plan Supplement. In addition, after the Plan Confirmation Date, the Creditor's Committee and/or the Liquidation Trustee may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Supplement, or the Plan Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

#### 13.5.2  Other Amendments.

The Creditors' Committee may make appropriate technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 13.6  Revocation or Withdrawal of the Plan.

The Creditors' Committee reserves the right to revoke or withdraw this Plan prior to the Effective Date. If the Creditors' Committee takes such action, this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in further proceedings involving the Debtor.

### 13.7  Severability.

If, prior to the entry of the Plan Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Creditors' Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Plan Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.8  Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and the transactions consummated or to be consummated in connection therewith.

### 13.9  Time.

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

### 13.10  Binding Effect on Debtor, Holders and Successors and Assigns.

Upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Creditors' Committee, and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims and Interests failed to vote to accept or reject this Plan, voted to accept or reject this Plan, or are deemed to accept or reject this Plan), all Persons or Entities that are parties to or are subject to any settlements, compromises, releases, exculpations, discharges, and injunctions described in this Plan, each Person or Entity acquiring or retaining property under this Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

### 13.11  Entire Agreement.

On the Effective Date, this Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### 13.12  Effective Notice.

All notices, requests, and demands to or upon the Debtor or the Creditors' Committee in the Chapter 11 Case shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

    (a)    If to the Debtor, to:

        Pachulski Stang Ziehl & Jones LLP
        150 California Street, 15th Floor
        San Francisco, CA 94111
        Attention: John D. Fiero, Esq. &
        John W. Lucas, Esq.

        and

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Attention: James E. O'Neill, Esq. &
Colin R. Robinson, Esq.

(b)     If to the Creditors' Committee, to:

Womble Bond Dickinson (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Attention: Matthew P. Ward, Esq. &
Ericka F. Johnson, Esq.

Dated: September 23, 2019                    **THE OFFICIAL COMMITTEE OF**
                                             **UNSECURED CREDITORS OF TINTRI,**
                                             **INC.**

                                             */s/ Ericka F. Johnson*
                                             Counsel to the Official Committee of
                                             Unsecured Creditors of Tintri, Inc.

## **<u>Schedule 1</u>**

Potential Causes of Action

### Preserved Causes of Action of Debtor Against Third Parties

Other than all claims and actions of the Debtor arising under sections 544, 547, 548, 549, and 550 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") against parties other than the Debtor's current or former directors, officers, insiders or affiliates (as such terms are defined in the Bankruptcy Code), any and all claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Entity, including any and all Causes of Action of the Debtor, including, but not limited to, any and all Causes of Action against the Debtor's current or former directors, officers, insiders or affiliates are preserved.

Without limiting the foregoing, the following exhibits, each of which is attached hereto, include specific types of Causes of Action expressly preserved (collectively, the "Causes of Action"):

- Annex 1: Causes of Action related to insurance policies

- Annex 2: Claims, defenses, cross-claims and counter-claims related to litigation and possible litigation

- Annex 3: Causes of Action related to accounts receivable and accounts payable

- Annex 4: Causes of Action related to tax refunds and taxes

- Annex 5: Causes of Action related to contracts and/or leases

- Annex 6: Causes of Action related to deposits, adequate assurance postings and other collateral postings

- Annex 7: Causes of Action related to Reserved Chapter 5 Actions

- Annex 8: Causes of Action related to commercial tort claims

- Annex 9: Causes of Action related to recharacterization

## **Annex 1**

Causes of Action Related to Insurance Policies

Unless otherwise released by the Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtor expressly reserves all Causes of Action based in whole or in part upon any and all insurance contracts, insurance policies, occurrence policies and occurrence contracts to which the Debtor is a party or pursuant to which the Debtor has any rights whatsoever.  The Causes of Action reserved include Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or any other matters.

**Annex 2**

Claims, Defenses, Cross-Claims and Counter-Claims
Related to Litigation and Possible Litigation


Unless otherwise released by the Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtor expressly reserves all Causes of Action against individuals or entities that are party to or that may become party to litigation, arbitration or other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, including, but not limited to the following:


Tuller v. Tintri, Inc. et al., 4:17-CV-05714-YGR

Clayton v. Tintri, Inc. et al., 17-CIV-04312

Nurlybayev v. Tintri, Inc. et al., 17CIV04321

Golosiy v. Tintri, Inc. et al., 17CIV04618

**Annex 3**

**Causes of Action Related to Accounts Receivable and Accounts Payable**

   Unless otherwise released by the Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtor expressly reserves all Causes of Action against or related to all entities that owe or that may in the future owe money to the Debtor.  Further, unless otherwise released in the Plan, the Debtor expressly reserves all Causes of Action against or related to all entities or individuals that assert or may assert that the Debtor owes money to them, including, but not limited to the following actions:

Tintri, Inc. v. P1 Technologies, Adv. P. No. 18-50811-LSS

Tintri, Inc. v. Nuvias Group, Adv. P. No. 18-50830-LSS

Tintri, Inc. v. Abacus Solutions, LLC, Adv. P. No. 18-50831-LSS

**Annex 4**

**Causes of Action Related to Tax Refunds and Taxes**

      Unless otherwise released by the Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtor expressly reserves all Causes of Action against or related to all entities that owe or that may in the future owe money related to tax refunds of the Debtor.  Further, the Debtor expressly reserves all Causes of Action against or related to all entities that assert or that may in the future assert the Debtor owes taxes to them, including, but not limited to with respect to the following:

California State Audit, SR GH 101-688240

## Annex 5

## Causes of Action Related to Contracts and Leases

Unless otherwise released by the Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtor expressly reserves all Causes of Action, based in whole or in part upon any and all contracts and leases to which the Debtor has any right whatsoever.  The Causes of Action reserved include Causes of Actions against vendors, suppliers of goods or services, or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition such performance on additional requirements under contracts with the Debtor before the assumption or rejection, if applicable; (d) for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, lender, lessor, or other party; (e) for any liens held by the Debtor; (f) counter-claims and defenses related to any contractual obligations; (g) turnover actions; and (h) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claim.

**<u>Annex 6</u>**

**Causes of Action Related to Deposits, Adequate Assurance Postings
<u>and Other Collateral Postings</u>**


Unless otherwise released by the Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtor expressly reserves all Causes of Action based in whole or in part upon any and all postings of security deposits, adequate assurance payments or any other type of deposit or collateral.

**Annex 7**

**Causes of Action Related to Reserved Chapter 5 Actions**


Unless otherwise released by the Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtor expressly reserves any and all potential claims or causes of action under chapter 5 of the Bankruptcy Code that were not sold pursuant to the Asset Purchase Agreement, including potential claims or causes of action against the Debtor's current or former directors, officers, insiders or affiliates under chapter 5 of the Bankruptcy Code.

**Annex 8**

**Causes of Action Related to Commercial Tort Claims**

Unless otherwise released by the Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtor expressly reserves all commercial tort claims against any individual or entity, including, but not limited to, claims and causes of action of the Debtor against any of the Debtor's current or former directors, officers, insiders or affiliates (as defined in the Bankruptcy Code), including claims against the Debtor's current or former directors and officers for (i) wrongful acts such as gross mismanagement, material misrepresentations, misstatements, errors, neglect, or breach of duty in connection with the Debtor's operations, practices, financial condition, or otherwise, including the Debtor's financial health and financial projections and (ii) acts, errors, misstatements, misleading statements, omissions or breaches of duty in connection with the purchase or sale of, or offer to purchase or sell, securities issued by the Debtor.

**Annex 9**

**Causes of Action Related to Recharacterization of Claims**

      Unless otherwise released by the Plan or order of the Bankruptcy Court (including in connection with the disposition of any assets), the Debtor expressly reserves all Causes of Action against any Holder of a Claim to recharacterize any asserted Claim as equity in the Debtor, including, but not limited to, recharacterization claims against:

Cary Harty
Insight Venture Parkers (Delaware) Viii, L.P.
Insight Venture Partners (Co-Investors), L.P.
Insight Venture Partners Viii, L.P.
Insight Venture Partners (Cayman) Viii, L.P.
Star Trinity, L.P.
SilverLake Kraftwek Fund L.P.
Silverlake Technology Investors Kraftwerk, L.P.
Ken Klein
Kieran Harty
Peter Sonsini
Ian Halifax
Christopher Schaepe
Lightspeed Venture Partners Viii, L.P.
Thomas Cashman
Michael Mcguire
Nea Ventures 2008, Limited Partnership
Adam Grosser
New Enterprise Associates 12, Limited Partnership
Lightspeed Venture Partners VIII, L.P.
New Enterprise Associates 12, LP
Silver Lake Kraftwerk Fund, L.P.
Silver Lake Technology Investors Kraftwerk Fund, L.P.